**IN THE MIDDLE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| MARK GRAMS,<br>An individual Alabama citizen,<br><br>    Plaintiff,<br><br><br><br>v.<br><br>TREIS BLOCKCHAIN, LLC,<br>CHAIN ENTERPRISES, LLC,<br>CEVON TECHNOLOGIES, LLC,<br>STRONGHOLD DIGITAL MINING,<br>LLC, DAVID PENCE, MICHAEL<br>BOLICK, SENTER SMITH,<br>BRIAN LAMBRETTI, AND<br>JOHN CHAIN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No.:**<br>**)  3:23-CV-00299-SMD**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT TREIS BLOCKCHAIN, LLC'S MOTION TO DISMISS**

**PLAINTIFF'S COMPLAINT**

COMES NOW, Defendant Treis Blockchain, LLC, by and through counsel, and moves to dismiss the Complaint. In support thereof, Defendant shows unto the Court as follows:

**NATURE AND STAGE OF THE PROCEEDINGS**

On May 4, 2023, Plaintiff Mark Grams ("Plaintiff") filed a civil action against Treis Blockchain, LLC ("Treis"), Chain Enterprises, LLC ("CEL"), Cevon Technologies, LLC ("Cevon"), Stronghold Digital Mining, LLC ("Stronghold"), David

Pence ("Pence"), Michael Bolick ("Bolick"), Senter Smith ("Smith"), Brian Lamberti ("Lamberti"),[1] and John Chain ("Chain") in the Middle District of Alabama, Eastern Division, Civil Action No.: 3:23-CV-00299-SMD. Plaintiff asserts thirteen causes of action against nine defendants. Pursuant to this Motion, Defendant Treis respectfully requests that this Court dismiss Plaintiff's Complaint against it: (I) for lack of personal jurisdiction pursuant to Fed R. Civ. P. 12(b)(2); (II) for improper venue (or in the alternative, to transfer this case to the District of South Carolina) pursuant to Rule 12(b)(3); and (III) for failure to state a claim under Rule 12(b)(6) as to Counts 2 and 4 (Misappropriation of Trade Secrets), Count 5 (Conspiracy to Commit Theft of Trade Secrets), Count 6 (RICO), Count 7 (Unjust Enrichment), Count 10 (Fraudulent Misrepresentation), Count 12 (Tortious Interference with Business or Contractual Relations), and Count 13 (Conversion).

## SUMMARY OF ARGUMENT

First, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction against Treis. As a threshold matter, while the Complaint alleges a RICO violation, it fails to allege RICO as a basis for personal jurisdiction against Treis. Nevertheless, Plaintiff has failed to allege a RICO claim and therefore cannot invoke RICO's nationwide service of process provision to establish jurisdiction over Treis. For the purposes of dismissal pursuant to Rule

---

[1] Plaintiff incorrectly Lamberti's name as "Lambretti."

12(b)(2), this Motion addresses RICO as a potential basis for personal jurisdiction first.

This Motion addresses Alabama's long arm statute next: Treis neither has continuous or systematic contacts with Alabama, nor minimum contacts with Alabama, as required under Alabama's long arm statute. Because Plaintiff cannot rely on RICO's nationwide service of process to establish personal jurisdiction, and there is no basis for general or specific personal jurisdiction against Treis under Alabama's long arm statute, this case must be dismissed as to Treis.

Second, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(3) for improper venue because no substantial part of the events giving rise to Plaintiff's claims occurred either in this District, or indeed, anywhere in the State of Alabama. In the alternative, Treis requests that this Court transfer this case to the District of South Carolina, where it could initially have been brought. The doctrine of *forum non conveniens* provides an additional basis of dismissal, as the private interest factors related to the Defendants and non-party witnesses support dismissal.

Even if the Court does not dismiss this case under Rule 12(b)(2), 12(b)(3), or under  the doctrine of *forum non conveniens*, the following Counts must be dismissed for failure to state a claim under Rule 12(b6). Counts 2 and 4 (Misappropriation of Trade Secrets) must be dismissed because Plaintiff fails to adequately plead he took reasonable measures to keep WAO2 secret. Count 5 (Conspiracy to Commit Theft of Trade Secrets) must be dismissed because no

private cause of action exists under 18 U.S.C. § 1832, a criminal statute. Count 6 (RICO) must be dismissed because Plaintiff failed to plead with particularity a violation of RICO. Count 12 (Tortious Interference with Business or Contractual Relations) must be dismissed for failure to state a claim, as Plaintiff fails to support this claim with any facts. Finally, Counts 7 (Unjust Enrichment), 10 (Fraudulent Misrepresentation), and 13 (Conversion) must be dismissed because they are preempted by the Alabama Trade Secrets Act, Ala. Code § 8-27-1 et seq.

For the reasons set forth below, Treis respectfully requests that this Court grant its motion.

## STATEMENT OF ALLEGED FACTS

Plaintiff alleges the following facts in his Complaint: Plaintiff pioneered firmware, WAO, which optimized the cryptocurrency mining industry. (Compl. ¶ 46). Chain asked to help Plaintiff monetize WAO, and began negotiations with Asic.World. (Compl. ¶¶ 48, 54). Chain, however, failed to protect the secrecy of WAO, and Asic.World stole WAO. (Compl. ¶ 55). Plaintiff then designed a second version, WAO2. (Compl. ¶ 61). Chain had also been negotiating with Treis to install WAO on their Whatsminers to test WAO's efficacy. After learning WAO had been stolen, they agreed to pay a Developer Fee for a nonexclusive license to install and use WAO2. (Compl. ¶¶ 63-64, 122(b), 123). Throughout 2020, Plaintiff worked on customizing WAO2 for Treis, and in the summer of 2020, they started the testing phase of WAO2. (Compl. ¶¶ 66, 81). When Treis encountered a physical problem

with the use of WAO2, Plaintiff developed a solution and shared the design for the solution with Treis' metal sheet fabricator. (Compl. ¶¶ 95-98).

Treis and Chain/CEL created the business entity "Cevon" to purchase WAO2 from Chain; however, by April 2021, Treis "knew that Chain had never owned WAO or WAO2 and that [Plaintiff] was the developer and sole owner." (Compl. ¶¶ 73-74, 80). In April 2021, Plaintiff informed Treis he was no longer working with Chain. (Compl. ¶¶ 86-88). Treis continued paying Plaintiff the Development Fee, but declined Plaintiff's Fall 2021 offer to sell them a license to include WAO2 on machines to sell to third parties. (Compl. ¶¶ 92-93).

When firmware is in its testing phase, it cannot be encrypted. (Compl. ¶ 103). Plaintiff primarily worked from his "heavily-secured personal site in Alabama," and kept all copies of WAO2 on "password-protected devices, with a camera system recording all access, on private property." (Compl. ¶¶ 100, 105). Treis' machines using WAO2 were in Pennsylvania and South Carolina. (Compl. ¶ 101). Plaintiff insisted and Treis agreed to use "password protected, locked and otherwise secured" devices. (Compl. ¶ 104). Plaintiff "requested" Treis install security cameras at all entry points. (Compl. ¶ 106).

In September 2021, more than a year after Treis began their testing phase of WAO2, Plaintiff traveled to the Scrubgrass Power Plant in Pennsylvania and discovered there was "no security whatsoever safeguarding the firmware." (Compl. ¶¶ 66, 107-108). Plaintiff "accepted [Treis'] confirmations the security issues would be immediately remedied." (Compl. ¶ 112). Plaintiff continued to code

improvements for Treis into 2022. (Compl. ¶¶ 118-120). In January 2022, Plaintiff's access was blocked to most of the machines, but he continued to work on the machines he could access at Defendant Lamberti's direction. (Compl. ¶¶ 128-131). On February 7, 2022, Lamberti told Plaintiff that the machines had been sold and falsely stated that WAO2 had been removed from the machines. (Compl. ¶¶ 133-134). Plaintiff subsequently learned Treis had sold the machines to Defendant Stronghold without removing WAO2. (Compl. ¶ 138). Treis claimed they owned WAO2, accused Plaintiff of stealing from them, and "disparaged" Plaintiff in front of Stronghold and "thoroughly discredited [him] in his field." (Compl. ¶¶ 143-144). Plaintiff alleges Treis's Managing Directors, Pence, Bolick, Smith, and Lamberti "conspired to bury the truth that [Plaintiff] was the sole developer of WAO2 and that they had no right to use or sell it" and "falsely represented to third party buyers that Treis had the right to sell Whatsminer machines optimized by WAO2." (Compl. ¶ 156-157).

## **ARGUMENT**

### I. **Plaintiff's Complaint Must be Dismissed Because this Court Lacks Personal Jurisdiction Against Treis.**

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Cont'l Cas. Co. v. Cura Grp., Inc.*, 2005 U.S. Dist. LEXIS 51116, at *96-97 (S.D. Fla. Apr. 5, 2005) (internal citations omitted); *Republic of Panama v. BCCI Holdings*

*(Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). "In analyzing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), we first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process.*" Republic of Panama,* 119 F.3d at 942. Fed. R. Civ. P. 4(k)(1)(C) establishes personal jurisdiction if a federal statute permits it ("[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant […] when authorized by a federal statute.").

Here, the Complaint is silent as to the basis of personal jurisdiction over Treis. However, to the extent RICO applies in the Court's personal jurisdiction analysis, RICO's nationwide service of process provision is unavailable to Plaintiff to establish personal jurisdiction over Treis because, as discussed below, Plaintiff fails to adequately allege a RICO violation.

Accordingly, as discussed below, there is no basis for personal jurisdiction under RICO and because Treis lacks the requisite contacts, there is no other basis to establish personal jurisdiction over Treis under Alabama law.

### A. Plaintiff cannot invoke RICO's nationwide service provision to establish personal jurisdiction over Treis because Plaintiff fails to adequately allege a RICO violation.

"Section 1965(d) [RICO] can serve as 'the statutory basis for personal jurisdiction." *In re Takata Airbag Prods. Liab. Litig.,* 396 F. Supp. 3d 1101, 1143 (S.D. Fla. 2019). However, a plaintiff cannot invoke RICO's nationwide service provision if the RICO claim is "wholly immaterial or insubstantial". *Republic of*

*Panama,* 119 F.3d at 941. A claim is "wholly insubstantial" where a plaintiff "fail[s] to state their RICO claims with the requisite specificity." *James v. Hunt*, 761 Fed. App'x 975, 980 (11th Cir. 2018).[2] In *James,* the 11th Circuit determined that the district court did not err in granting the defendant's motion to dismiss for lack of personal jurisdiction: "[t]he Plaintiffs could not rely upon § 1965(d) of the RICO statute to establish jurisdiction over [defendant] because their asserted RICO claim against her is […] wholly insubstantial, where they failed to state their RICO claims with the requisite specificity." *Id.* (internal citations omitted).  Plaintiff's RICO claim against Treis is likewise wholly insubstantial where he failed to state his RICO claim with the requisite specificity. As such, Plaintiff is unable to invoke RICO's nationwide service of process provision to establish jurisdiction over Treis.

Count 6 of Plaintiff's Complaint alleges violation of RICO "pursuant to 18 U.S.C. 1964 and 18 U.S.C. 1962(c)." To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise  (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014).

"A RICO claim . . is not a 'typical' civil claim that may be sufficiently pled by following Rule 8." *Cruz v. Cinram International, Inc.*, 574 F. Supp. 2d 1227, 1230

---

[2]Fed. R. App. P. 32.1(a) (permitting citations of unpublished opinions issued on or after January 1, 2007).

(N.D. Ala. 2008). Rather, RICO claims based on the predicate act of fraud must satisfy the heightened pleading standard imposed by Fed. Rule Civ. P. 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). Similarly, RICO predicate acts not sounding in fraud must also be pleaded with particularity where "*the same misrepresentation forms the basis of both the fraud and non-fraud claim.*" *Cruz,* 574 F. Supp. 2d at 1232. (*quoting Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355-56 (11th Cir. 2008)) (emphasis in original). "RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia*, 482 F. 3d at 1316 (*citing Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

In *Brooks*, the 11th Circuit determined a RICO claim "did not meet the Rule 9(b) particularity standard 'because it was devoid of specific allegations with respect to each defendant; the plaintiffs lumped together all of the defendants in their allegations of fraud. . . . [I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Id.* (*quoting Brooks*, 116 F.3d at 1381). *See also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) means alleging "the who, what, when, where, and how"). Claims under RICO "must be subjected to scrutiny due to their potential for abuse by civil litigants." *DePaola v. Nissan North*

*America, Inc.*, 2006 WL 1181311, at *12 (M.D. Ala. May 2, 2006) (citations omitted) (dismissing RICO claims for failure "to answer the who, when, where, how, and why with sufficient specificity as to the RICO claims alleged against twenty-two defendants").

Here, Plaintiff's RICO claim is "devoid of specific allegations with respect to each defendant," and does not meet the requisite specificity of Rule 9(b). *See Ambrosia*, 482 F.3d at 1316-17. Plaintiff's RICO claim is asserted against all nine Defendants and only contains the following conclusory allegations:

199.  Plaintiff incorporates and realleges paragraphs 18 through 159 as if the same were set forth fully herein.

200.  Plaintiff brings this claim against all Defendants.

201.  Defendants are associated as an enterprise.

202.  Defendants' activities affect interstate and foreign commerce.

204.  Defendants have conducted their affairs through a pattern of racketeering activity.

    a.    Defendants have misappropriated Plaintiff's trade secrets.
    b.    All Defendants have used Plaintiff's trade secret without the right to such use;
    c.    Defendant Treis and its Managing Directors defrauded Plaintiff.

205.  Plaintiff suffered damages as set forth herein or otherwise.

(Compl. ¶¶ 199-205) (¶ 203 is missing in the Complaint). Plaintiff's allegations are all based on the same conduct: Treis' alleged use and selling of WAO2 without authorization. Plaintiff's conclusory allegations of misappropriation, use and fraud

fail to answer the "who, what, when, where and how" with sufficient specificity to state a RICO claim. Instead, in shotgun pleading, Plaintiff merely refers to allegations in 142 paragraphs previously set forth in his Complaint, which involve nine defendants and various third parties. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir. 2014) (shotgun pleading, where each count adopts allegations of all preceding counts, thus rendering it virtually impossible to know which allegations of fact are intended to support which claims for relief).

Plaintiff's RICO claim falls woefully short of informing each defendant of the nature of his alleged participation in the alleged misappropriation, use, or fraud. *See Ambrosia*, 482 F. 3d at 1316; *Birmingham v. Doe*, 2022 WL 18134962 (S.D. Fla. Dec. 6, 2022), *recommendation and report adopted*, 2023 WL 112308 (S.D. Fla. Jan. 5, 2023) (where Plaintiffs merely resort to reciting relevant statutory language when discussing actual claims, the Court is unwilling to parse through every allegation to speculate which events and actions Plaintiffs believe support which elements and why).

Plaintiff's RICO claim is therefore "wholly insubstantial." Without a RICO claim, Plaintiff cannot invoke RICO's nationwide service of process provision against Treis to establish jurisdiction and, as discussed below, there is no other basis to establish personal jurisdiction in Alabama over Treis. His Complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## B. There is no basis for either general or specific jurisdiction over Treis.

Without the availability of the RICO service of process provision, Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) where there is no other basis for personal jurisdiction over Treis under Alabama law. When considering a motion to dismiss for lack of personal jurisdiction, "[t]he court must construe the allegations in the complaint as true, to the extent they are uncontroverted by [the] defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A personal jurisdiction challenge in federal court generally requires a two-part analysis: (1) the court must first determine its jurisdiction under the forum state's long-arm statute; and, (2) it must decide whether exercising jurisdiction comports with principles of constitutional due process. *Id.* at 492, fn. 3. However, because the limits of Alabama's long-arm jurisdiction (Ala. R. Civ. P. 4.2(b)) are coextensive with constitutional due process requirements, only one analysis is necessary. *See Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (*citing* Ala. R. Civ. P. 4.2(b)) (stating that Alabama's long-arm statute (Ala. R. Civ. P. 4.2(a)(2)) permits state and federal courts in Alabama to exercise personal jurisdiction "to the fullest extent constitutionally permissible")), and *Slocumb Law Firm, LLC v. Trollinger*, 2015 U.S. Dist. LEXIS 103547, at *5 (M.D. Ala. Aug. 7, 2015) (stating that the limits of Alabama's long-arm jurisdiction are coextensive with constitutional due process requirements). Accordingly, due process requires that (1) a defendant have

"minimum contacts" with the forum state and that (2) a court's exercise of jurisdiction conform to "traditional notions of fair play and substantial justice." *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 618 (1990).

When determining whether a Defendant's "minimum contacts" support personal jurisdiction in the forum, a court must consider the distinction between general and specific jurisdiction. *Slocumb,* 2015 U.S. Dist. LEXIS 103547, at *5. A Court may exercise "general jurisdiction" over a defendant when the defendant's continuous and systematic contacts with the forum state are unrelated to the suit, while "specific jurisdiction" arises from the defendant's sporadic or limited contacts with the forum state at issue in the Complaint. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984).

It is Plaintiff's burden to establish "that personal jurisdiction is present. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). Because Plaintiff cannot establish either general or specific jurisdiction over Treis, as discussed below, this Court should dismiss this action against Treis for lack of personal jurisdiction pursuant to Rule 12(b)(2).

### 1.   Treis is not at home in Alabama; therefore, no general jurisdiction exists.

"The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286,

1292 (11th Cir. 2000). The United States Supreme Court recently reviewed the requirements for exercising general jurisdiction in *BNSF Ry. Co. v. Tyrrell, U.S.*, 137 S. Ct. 1549, 198 L. Ed. 2d 36 (2017), clarifying that a court may assert general jurisdiction over a foreign corporation when the corporation's affiliations with the state are so continuous and systematic as to render them "essentially at home" in the forum state. *Id*. at 1558-59. The Supreme Court explained in *BNSF* that the "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *Id*. The Court noted that in an "exceptional case," a corporate defendant's operations in another forum may by so substantial and of such a nature as to render the corporation "essentially at home" in the forum. *Id.* The Court suggested that its decision in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) was an exemplary case. In *Perkins*, war had forced the defendant corporation's owner to temporarily relocate the corporation from the Philippines to Ohio, thus rendering Ohio the center of the corporation's wartime activities. As such, the Court found suit was proper in Ohio. But limited "in-state business does not suffice to permit the assertion of general jurisdiction over claims that are unrelated to any activity occurring in the forum state." *Id.*

In *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 874-75 (11th Cir. 2018), the 11th Circuit affirmed that the court lacked general jurisdiction over the corporate defendants, whose principal places of business and state of incorporation were outside the forum. The Court found the plaintiff's

allegations of the corporate defendants' contacts with the forum, which included meetings in the forum and phone calls and emails made by the plaintiff in the forum to the defendants outside the forum, to be insufficient contacts to establish general jurisdiction over the corporate defendants. *Id*. at 875 (11th Cir. 2018) ("Because the allegations in the complaint do not demonstrate any facts that indicate the Gary Defendants are 'essentially at home' in the State of Georgia, general personal jurisdiction is improper.")

Treis is not "at home" in Alabama under the general jurisdiction analysis. The entity is a South Carolina limited liability corporation (Compl. ¶ 7), whose principal place of business is Greenville, South Carolina (Declaration of Michael Bolick ¶ 4 ("Treis Dec."), attached hereto). Therefore, Treis is not "at home" in Alabama. Moreover, Plaintiff alleges no facts to even suggest that Treis has any connections between itself and Alabama. This is likely because Treis does not have an office or branch in Alabama, has not done business in Alabama, does not have an Alabama telephone listing, does not have an Alabama bank account, does not have real or personal property in Alabama, and has not been involved in any prior litigation in Alabama or availed itself of the Alabama courts. (Treis Dec. ¶¶ 5-11). Treis's physical equipment is all located in South Carolina and Pennsylvania, not Alabama. (Com. ¶ 101; Treis Dec. ¶ 10). Rather, Plaintiff merely alleges that "all Defendants are subject to this Court's personal jurisdiction." (Compl. ¶ 17.) As such, there are no facts to suggest that Treis is "essentially at home" in Alabama.

Further, a court outside of the defendant's "home" states can only exercise general jurisdiction in rare circumstances. *Daimler*, 571 U.S. at 139 n.19; *see*, *e.g.*, *Perkins v. Benguuet Consol. Mining Co.*, 342 U.S. 437 (1952) (holding that foreign defendant was subject to general jurisdiction in Ohio because the company's president temporarily relocated there, making Ohio the company's principal place of business). But this is not such an exceptional case—Plaintiff has not plead any facts suggesting that Treis has any contacts with Alabama, let alone contacts that are so substantial that Treis is essentially at home in the forum. Therefore, this Court cannot exercise general jurisdiction over Treis.

### 2. Treis lacks minimum contacts in Alabama; therefore, no specific jurisdiction exists.

In a case premised on specific jurisdiction, a "defendant's contacts with the forum state must satisfy three criteria: [(1)] they must be related to the plaintiff's cause of action or have given rise to it; [(2)] they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and [(3)] they must be such that the defendant should reasonably anticipate being haled into court there." *Sloss*, 488 F.3d at 925 (internal quotation marks omitted). Additionally, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 & 1360 n.3 (11th Cir. 2006).

Here, Plaintiff's Complaint baldly concludes that "all Defendants are subject to this Court's personal jurisdiction." (Compl. ¶ 17). However,  Plaintiff fails to allege any facts in support of such allegation, and likewise fails to allege any action taken by Treis in (or even related to) the State of  Alabama. Even taking the allegations in the Complaint as true, as the Court must on a motion to dismiss, all such incidents occurred somewhere other than Alabama. Specifically:

- Treis, domiciled in South Carolina (Compl. ¶¶ 7, 11, 12, 14, 15), is not alleged to have conspired to steal Plaintiff's purported trade secrets in Alabama, thus the only reasonable inference is that any such conspiracy took place in South Carolina, where Treis is located;

- WAO2, Plaintiff's purported trade secret, was installed on Treis's miners "housed **in Pennsylvania and South Carolina**" (Compl. ¶ 101, emphasis added);

- Treis's alleged failure to protect Plaintiff's purported trade secret occurred in **Pennsylvania** (Compl. ¶¶107-112); and

- Any misappropriation of Plaintiff's trade secret occurred in Pennsylvania and/or South Carolina.

Thus, Plaintiff has failed to allege that Treis had any contacts, let alone minimum contacts, that would establish specific personal jurisdiction over it.

In fact, the only events alleged to have taken place in Alabama are Plaintiff's own actions. Specifically, Plaintiff alleges that he:

- Worked on WAO2 from his "personal site in Alabama" (Compl. ¶ 100); and

- Plaintiff received no direct compensation from Treis (Compl. ¶ 118), but rather Plaintiff affirmatively retained a portion of the cryptocurrency as it was mined (Compl. ¶ 50), and directed where the Dev Fee went and how it was managed (Compl. ¶ 88).

Although *Plaintiff* may have taken such actions in Alabama, "it is important to remember [for the purposes of identifying minimum contacts in determining personal jurisdiction] that *the conduct at issue is that of the defendants*. No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) (emphasis supplied in *Ruiz*) (*citing Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Therefore, courts in Alabama must determine what a particular *defendant* did to purposefully avail himself "of the benefits of doing business in Alabama such that the notions of reasonableness and fairness are not offended by requiring [him] to defend [himself] in an Alabama court." *Ruiz*, 207 F.3d at 1356 (emphasis in the original). Here, Plaintiff has failed to allege any way in which Treis purposefully availed itself of the benefits of doing business in Alabama with respect to any of his thirteen causes of action.

Because Plaintiff can neither invoke RICO's nationwide service of process provision to establish jurisdiction over Treis, nor otherwise establish either general jurisdiction or specific jurisdiction over Treis under Alabama's long-arm statute, the Complaint should be dismissed as to Treis.

## II.    Venue is Improper in this District Under 28 U.S.C. § 1391; therefore, Plaintiff's Complaint Must be Dismissed; in the alternative, the Case Should be Transferred to the District of South Carolina.

The standard for deciding a motion to dismiss for improper venue is very similar to the standard articulated above for deciding a Rule 12(b)(2) motion. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). The plaintiff

carries the burden of showing that venue is proper in his chosen forum once the defendant contests venue under Rule 12(b)(3). *Id.*; *Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171, 1174 (M.D. Ala. 2010). Even if the Court determines personal jurisdiction exists, venue may still be improper. *Graceland v. Plutus Enters. LLC*, 2022 U.S. Dist. LEXIS 75016, at *13 (M.D. Fla. Apr. 22, 2022). Here, venue is improper in this District for the reasons set forth below, thus the Court should dismiss this case as against Treis or, in the alternative, transfer this case to the District of South Carolina, where it could have originally been brought.

### A. Venue is improper under 28 U.S.C. § 1391(b)(2) because no substantial part of the events or omissions giving rise to the Complaint occurred in Alabama.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Plaintiff merely states venue is proper under Section 1391(b)(2). (Compl. ¶ 17). Venue is improper here, however, because no substantial part of the events or omissions giving rise to the Complaint occurred in this District or indeed in any District in Alabama.

In considering whether venue is proper under 28 U.S.C. § 1391(b)(2), "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Tognaci v. Ameris Bank*, 2023 WL 1788555 (S.D. Ala. Jan. 4, 2023) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)), *adopted,* 2023 WL 1786709 (S.D. Ala. Feb. 6, 2023). "Moreover, when

determining whether venue is proper, courts must focus on the relevant activities of the defendants rather than the plaintiff." *Id.*

As previously set forth, even taking the allegations in the Complaint as true, the locations hosting a substantial part of the events that are the subject of this lawsuit occurred outside of Alabama. Plaintiff does not allege Treis conspired to steal his purported trade secret in Alabama, and the only reasonable inference is that any such conspiracy occurred in South Carolina, where Treis is located. WAO2 was installed on the Treis' miners "*housed in Pennsylvania and South Carolina*" (Compl. ¶ 101, emphasis added), and any alleged failure to protect Plaintiff's purported trade secret occurred in *Pennsylvania* (Compl. ¶¶107-112, emphasis added). In focusing on the relevant activities of Treis, Plaintiff has failed to show that substantial part of the events or omissions giving rise to his claims occurred in Alabama; therefore, venue is improper in this District and Plaintiff's Complaint should be dismissed under Rule 12(b)(3).

**B.    In the alternative, the Court should transfer this case to the District of South Carolina.**

Pursuant to 28 U.S.C. § 1404(a), venue may be transferred by the district court "[f]or the convenience of the parties and witnesses, in the interest of justice […] to any other district or division where it might have been brought." "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (internal citation omitted). "[T]he burden [is] on the defendant to demonstrate why

the forum should be changed." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994) (internal citations omitted). While the purpose of the transfer statute is convenience afforded the parties and witnesses, the district court's power to transfer is "expressly limited […] to those federal districts in which the action 'might have been brought.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*quoting* 28 U.S.C. § 1404(a)).

Therefore, the Court's analysis is a two-part inquiry. First, the Court must determine if the case could have been brought initially in the transferee court. Second, the Court must determine whether the factors of convenience and interests of justice under Section 1404 favor changing venue to the transferee court. *See A.J. Taft Coal Co., v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003) (internal citations omitted).

### 1. The case could have been brought in the District of South Carolina.

The first prong of the Court's analysis is to determine under Section 1404(a) if this case could have originally been brought in the District of South Carolina, where Treis proposes to transfer venue. Thus, the Court must not only verify that venue would have been proper in the District of South Carolina, but also, whether jurisdiction exists in that court.

The District of South Carolina would have original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) based on the diversity of citizenship between Treis, who is domiciled in South Carolina (Compl. ¶¶ 7, 11-12, 14- 15)

and whose principal place of business is in South Carolina (Compl. ¶ 7), and Plaintiff who is domiciled in Alabama (Compl. ¶ 6 ), and the amount in controversy is in excess of $75,000.00 (Compl.¶ 16).

Personal jurisdiction in the District of South Carolina exists as to Treis because Treis' principal place of business is Greenville, South Carolina (Compl. ¶ 7; Treis Dec. ¶ 4). Moreover, venue in the District of South Carolina would have been proper if the case had initially been brought there. In diversity cases, venue is appropriate in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

Here, there are sufficient factual allegations in the Complaint demonstrating that "a substantial part of the events" forming the basis of Plaintiff's claims occurred in the District of South Carolina. The basis of Plaintiff's claims is Defendants' alleged misappropriation of Plaintiff's "trade secret," WAO2. (Compl. ¶¶ 155-159). Because there are no allegations that Treis conspired to steal Plaintiff's purported trade secret in Alabama, a reasonable inference is that any alleged conspiracy likely took place in South Carolina, where Treis is located. Plaintiff further contends that WAO2, Plaintiff's purported trade secret, was installed on Treis's miners "housed in Pennsylvania and *South Carolina*" (Compl. ¶ 101, emphasis added). The declaration of Michael Bolick, CEO of Treis, submitted in support of this motion and attached hereto as **Exhibit A,** submitted in support of this Motion confirms that Treis' use of WAO2, which they contend was legal and permissible under the

parties' agreement, occurred in South Carolina and Pennsylvania. (Treis Dec. ¶ 11).

For the reasons set forth above, Treis has met its burden under the first prong of Section 1404 to show that this case might have initially been brought in the District of South Carolina.

> **2.  The convenience of the parties and witnesses, and the interests of justice, dictate that this case be transferred to the District of South Carolina.**

The second prong of the Court's analysis is whether transfer of venue promotes, on the whole, greater convenience and advances the interests of justice. 28 U.S.C. § 1404(a). The Eleventh Circuit has identified nine factors considered on a motion to transfer venue:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (internal citations omitted); *see also Madison Oslin, Inc. v. Interstate Res., Inc.*, No. 2:11-cv-01343-SLB, 2012 U.S. Dist. LEXIS 142082, at *51 (N.D. Ala. Sep. 30, 2012).

With regard to the first factor, Eleventh Circuit precedent holds that the plaintiff's choice of forum is "accorded . . . considerable deference," *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (citation omitted), and "'should not be

disturbed unless it is clearly outweighed by other considerations.'" *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (*quoting Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981)). Here, however, as discussed in Section I.B., *supra*, the gravamen of the facts alleged against Treis in the Complaint occurred in either South Carolina or Pennsylvania. *See* Section I. *supra.* Therefore, deference to the Plaintiff's choice of forum is lessened. *See Madison Oslin,* at *54 (N.D. Ala. Sep. 30, 2012) ("In light of these competing factual allegations, deference for the initial forum based on plaintiffs' claimed harm in Alabama is lessened").

As discussed in Sections I and II, *supra*, the allegations in the Complaint, and Treis' evidentiary declaration make clear that all operative facts giving rise to this litigation occurred in either South Carolina or Pennsylvania. Additionally, all sources of proof for Plaintiff's claims (such as the machines which housed WAO2), are located in South Carolina and Pennsylvania. (Treis Dec. ¶¶ 10-11.) Defendants Smith, Pence, Bolick and Lamberti also reside in South Carolina. (Compl.¶¶ 11-12, 14-15)

Aside from Plaintiff's own choice of forum, "the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Yaeger v. Wyndham Vacation Resorts, Inc.*, 2013 U.S. Dist. LEXIS 204641, at *4-6 (N.D. Ala. Aug. 12, 2013) (internal citations omitted). Here, as discussed in Treis' affidavit, all known witnesses other than Plaintiff reside outside of Alabama, in the states of South Carolina, Pennsylvania, and the state in which

Defendants Chain Enterprises and John Chain reside which, upon information and belief, is also outside of Alabama. (Compl. ¶¶ 8, 13). Moreover, all witnesses known to Treis would be beyond the Court's subpoena power if this matter were to be litigated in Alabama. *See Madison Oslin*, 2012 U.S. Dist. LEXIS 142082, at *62-63 ("If this case remains in the Northern District of Alabama, and assuming the defendants' witnesses do not come willingly, the only witnesses the court can compel to testify are the named parties and plaintiffs' principals. However, if the case is transferred to Maryland, there are sixteen identified witnesses who either live in the District or are subject to subpoena there. Because Corrpack's facility is located in Maryland and the greater number of non-party witnesses reside in Maryland and work for or are former employees of defendants, the availability of process to compel these witnesses tips in favor of the transferee forum"). In fact, the only individual for whom litigation in Alabama is convenient is Plaintiff.

For the reasons set forth above, the majority of factors at the second prong of the Court's analysis weigh in favor of transferring this case to the District of South Carolina.

### III.    Plaintiff's Complaint Should be Dismissed Based on *Forum Non Conveniens.*

The doctrine of *forum non conveniens* provides an additional basis for the Court's dismissal of this action against Treis. This Court has broad discretion to dismiss an action under the doctrine of *forum non conveniens* where the "private

interest facts" justify dismissal. *King v. Cessna Aircraft Co.,* 562 F.3d 1374 (11th Cir. 2009). Those private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1946).

Here, these factors overwhelmingly favor dismissal of this action. First, the "sources of proof," namely the machines on which WAO2 was installed, are located in Pennsylvania and South Carolina. (Compl. ¶ 101), and the possibility of view of the machines would necessarily have to occur in South Carolina or Pennsylvania. Further, the nine named defendants reside in states outside of Alabama (Compl. ¶¶ 7-15), thus the majority of non-party fact witnesses also likely reside outside of Alabama. There is a strong likelihood, then, that this Court lacks the ability to compel the testimony of any of these non-party witnesses in Alabama. Accordingly, the private-interest factors considering the availability and expenses of witnesses likewise favor dismissal of this action.

For the reasons set forth above, the doctrine of *forum non conveniens* provides an additional basis for dismissal of this action against Treis.

## IV. Counts 2, 4, 5, and 6 Must be Dismissed For Failure to State a Claim.

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the

claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2)." *Gulf S. Communications, Inc. v. Woof, Inc.*, 2021 WL 2405199, at *1 (M.D. Ala. June 11, 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Whether a complaint states a plausible claim for relief, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "The plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* "Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the 'grounds' for his entitlement to relief, and a 'formulaic recitation of the elements of a cause of action will not do.'" *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956038, at *2 (S.D. Fla. Dec. 27, 2022) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## A. Counts 2 and 4 must be dismissed for failure to sufficiently allege reasonable secrecy measures

Counts 2 and 4 of Plaintiff's Complaint purport to state claims for "Willful and Wanton Misappropriation Pursuant to 18 U.S.C. § 1836." Because Plaintiff has failed to sufficiently allege that he took reasonable measures to protect the secrecy of WAO2, Counts 2 and 4 should be dismissed.

"To plead a violation of the DTSA, a plaintiff must allege that he '(i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff, (b) *for which the plaintiff took reasonable measures to keep secret*, and (ii) the defendant used and/or disclosed that information despite (iii) a duty to maintain its secrecy.'" *Resnick*, 2019 WL 2092567, at *5 (*quoting Trinity Graphic, USA, Inc.*, 320 F. Supp. 3d at 1293) (emphasis added). "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1222 (N.D. Ala. 2021) (citations omitted); *Am. Red Cross v. Palm Beach Blood Bank, Inc*. 143 F.3d 1407, 1410 (11th Cir. 1998). "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *Id.* (citations omitted). To survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above a speculative level." *Martin v. Auburn Univ. Montgomery*, 2012 WL 787047, *1 (M.D. Ala. Mar. 12, 2012). Here, Plaintiff has failed to raise a right to relief above a speculative level, because the Complaint is replete with ways in which Plaintiff failed to take measures to keep WAO2 secret.

In *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956038 (S.D. Fla. Dec. 27, 2022), the plaintiff's predecessor, Pabellon, entered a business relationship with the Trigon Defendants relating to Pabellon's communications technology. *Id.*, at *1. Pabellon and the Trigon Defendants executed a mutual non-disclosure and confidentiality agreement. *Id.* To assist the Trigon Defendants with

finding potential business partners for Pabellon's technology, Pabellon gave them a Demo Kit which contained confidential, proprietary information (trade secrets) that could be reverse engineered. The Trigon Defendants gave the Demo Kit to the Point Blank Defendants, a potential customer. Plaintiff brought an action against the Point Blank and Trigon Defendants for violation of the DTSA and the Florida Uniform Trade Secrets Act. *Id.* at *2.

The Court granted the Point Blank Defendants' motion to dismiss Plaintiff's trade secrets claims for failure to take reasonable steps to safeguard its alleged trade secrets, reasoning:

> Defendants argue that the allegations in the Second Amended Complaint establish that ***Plaintiff was aware of and consented to Defendants' possession of the Demo Kit; yet, Plaintiff took no steps to protect its trade secrets while in Defendants' possession.*** In response, Plaintiff asserts several motives for not taking any steps to protect its trade secrets from Defendants prior to asking for the return of the Demo Kit on October 16, 2020. ***Plaintiff states that when it learned that Defendants were in possession of the Demo Kit, Defendants were in negotiations to enter into a partnership with Plaintiff and Plaintiff did not want to disrupt those efforts. […]***
>
> Plaintiff's arguments are unavailing. First, Plaintiff affirmatively pled that it took reasonable steps to safeguard its trade secrets as between itself and the Trigon Defendants because it turned over the Demo Kit after the Trigon Defendants signed the NDA. Plaintiff relies on *Disability Law Claims, P.A. v. IM Sols., LLC*, 2014 WL 12589140 (S.D. Fla. Sept. 4, 2014), for the proposition that Plaintiff took reasonable steps that were simply circumvented by the Defendants. However, the facts in *Disability Law Claims* are not analogous to the instant case. Here, Defendants were not a party to the NDA; thus, there can be no reasonable expectation that Defendants were bound by the NDA, let alone needed to circumvent the NDA.

Plaintiff has not pled that it took any steps to safeguard its trade secrets as between itself and Defendants. Plaintiff points instead to its motives. Plaintiff cites to no authority for its proposition that a motive for not instituting a safeguard of trade secrets absolves Plaintiff of the responsibility to protect its trade secret. ***While Plaintiff was aware that Defendants had possession of the Demo Kit, the only step Plaintiff took to protect its trade secrets was to ask Defendants to return the Demo Kit*** *after Defendants told Plaintiff that they would be putting the business discussions with Plaintiff on hold until Plaintiff and the Trigon Defendants resolved their issues.* ***There are no allegations of fact that Plaintiff attempted to take any measures, let alone reasonable measures, to protect Plaintiff's trade secrets vis-à-vis Defendants. See Greenberg v. Miami Children's Hosp. Research Inst., Inc., 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003) (dismissing a trade secret claim because the complaint stated only that the parties had an "expectation that [the idea] would remain confidential"); In re Maxxim Med. Grp., Inc., 434 B. R. 660, 691 (Bankr. M.D. Fla. 2010) ("Disclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret***.") Accordingly, Plaintiff has failed to adequately plead claims for misappropriation of trade secrets against Defendants, and Counts III, IV, and V are dismissed with prejudice as against Defendants." Id. at *12-15 (S.D. Fla. Dec. 27, 2022).

*Id.* at *4-5 (emphasis added); *see also Temurian v. Piccolo*, 2019 WL 1763022, at *11 (S.D. Fla. Apr. 19, 2019) (dismissing trade secrets claim where password-protecting computer network and limiting employee access were undermined by lack of a confidentiality agreement), *reh'g denied,* 2019 WL 2491781 (S.D. Fla. June 14, 2019); *Protegrity Corp. v. Elavon Inc.*, (licensing agreement may constitute reasonable step if it contains confidentiality provision); 2018 WL 8949789, at *3 (N.D. Ga. Aug. 21, 2018).

The Court in *Physiotherapy Assocs. v. ATI Holdings, LLC* discussed what constitutes reasonable measures to protect secrets of a corporate nature (client

lists, financial data, and business expansion plans). *Physiotherapy Assocs., v. ATI Holdings, LLC*, 592 F Supp. 3d 1032, 1034-35 (N.D. Ala. 2022) (examining ATSA which also requires reasonable efforts to maintain secrecy to establish a trade secret), *appeal dismissed,* 2022 WL 2708913 (N.D. Ala. May 9, 2022). At the motion to dismiss stage, the court ruled Physiotherapy had not sufficiently alleged it used reasonable efforts to keep information secret where "the non-solicitation agreement made no reference to trade secrets or confidential information" and where filing a lawsuit for disclosing confidential information in a memo "was not a precautionary measure that prevented [Defendant] from disclosing information." *Id.* at 1040.

Later, at the summary judgment phase, the Court rejected Physiotherapy's argument that its use of a "secured, password-protected network and limiting information to a few executives and managers" constituted reasonable efforts:

> Physiotherapy first relies on its password-protection efforts. But this court's research indicates that **the use of password-protected servers shows reasonable secrecy only when paired with other substantial efforts**. For example, in *Unisource Worldwide*, the court found that the plaintiff company exercised reasonable secrecy when the company "required passwords on computers *and marked information as confidential*." 199 F Supp. 2d at 1210 (emphasis added). And another court found reasonable secrecy when the company password-protected its computer systems, required employees to sign ethics policies about trade secret information, and entered into confidentiality agreements with any competitors who saw the information. *Movie Gallery US, LLC v. Greenshields*, 648 F/ Supp. 2d 1252, 1264 (M.D. Ala. 2009). Physiotherapy presents no evidence that it employed such additional protections here.
>
> **Persuasive authority also indicates that the use of password protection shows only a minimal effort at secrecy**. As one court

> pointed out, "[i]f a basic computer-login password were enough, then every document stored on a company device would potentially be protectible." *Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 397 (D. Minn. 2020). And another court found that restricting access by requiring computer passwords is merely a "normal business practice[ ] in any business." *Maxpower Corp. v. Abraham*, 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008).

*Id.* at 1042-1043 (**bold italics** emphasis added). The Court also pointed to the secrecy efforts that Physiotherapy "did not undertake." *Id.* at 1042. "As stated above, *confidentiality agreements exist in nearly every case where Alabama courts have found reasonable secrecy efforts, and the lack of such agreements is a common thread in cases finding the opposite.*" *Id.* (emphasis added); *see also J.H. Wright Associates, Inc. v. Engerson*, 2000 WL 1848135 (S.D. Ala. 2000) (plaintiff failed to take reasonable measures despite written policy manual generally requiring confidentiality, locking premises at night, having security system, and using non-networked computer where part-time contract employee making drawings never signed non-compete or confidentiality agreement, was free to work with competitors, drawings were not marked confidential, and plaintiff shared information with customers where necessary).

Here, Plaintiff did not undertake reasonable measures to keep WAO2 secret. Though Plaintiff alleges he used a password-protected computer in his *own* secured facility, he failed to take other substantial efforts to protect the secrecy of WAO2. As the plaintiff in *Surfaces,* 2022 WL 18956038 (S.D. Fla. 2022), here, Plaintiff was aware of and consented to Treis being in possession of WAO2, yet did not take reasonable actions to protect WAO2's secrecy while Treis was in

possession of WAO2. (Compl. ¶¶ 64-67; 89). Instead, although Plaintiff was aware Treis's machines were housed in Pennsylvania and South Carolina (Compl. ¶ 101), and Plaintiff alleges he "insisted" Treis's use be password protected, locked and on secured devices using WAO2 (Compl. ¶ 104), Plaintiff, by his own admission, did not check to see if Treis was taking measures to protect devices using WAO2 until September 2021, more than a year after Plaintiff began customizing WAO2 for Treis. (Compl. ¶ 107). Plaintiff's delay is unreasonable in light of Plaintiff's admitted knowledge that his prior WAO firmware had not been adequately kept secret. (Compl. ¶ 55). There is nothing in Plaintiff's Complaint to indicate he entered into any nondisclosure or confidentiality agreements with Treis concerning use of WAO2. Rather, Plaintiff alleges he entered a Development Fee agreement with Treis (Compl. ¶ 63), but does not allege that this agreement contained any confidentiality provisions or agreements to protect the secrecy of WAO2. *See Physiotherapy Assocs*., 592 F. Supp. 3d at 1042 ("confidentiality agreements exist in nearly every case where Alabama courts have found reasonable secrecy efforts, and the lack of such agreements is a common thread in cases finding the opposite").

Further, Plaintiff admits that he worked with Defendant Chain to broker a deal with Treis concerning WAO2 *even though Plaintiff knew Chain had mishandled the secrecy of WAO* (Compl. ¶¶ 54, 55, 62, 64). Chain was involved with negotiating the use of Plaintiff's second version of the firmware, WAO2, with Treis (Compl. ¶ 68). Subsequently, Plaintiff informed Treis he was no longer

working with Chain and was not comfortable with "the way things were being handled." (Compl. ¶¶ 86, 87). There is nothing in Plaintiff's Complaint to indicate he took *any* measures to ensure that Chain, who was helping negotiate the use of WAO2 by Treis and had botched the secrecy of WAO, kept WAO2 secret. There is likewise nothing in Plaintiff's Complaint to indicate he imposed any confidentiality or nondisclosure obligations on Chain or asked *him* to keep WAO2 secret. Under these circumstances, Plaintiff did not take reasonable measures to keep WAO2 secret.

Finally, Plaintiff *also* shared WAO2 with a third party, when he shared a workaround to physical problems with the miners' use of WAO2 with Treis's metal sheet fabricator. (Compl. ¶¶ 95-98). Unsurprisingly, there is nothing in Plaintiff's Complaint alleging he took any measures to ensure that this third party kept WAO2 secret, in the form of a non-disclosure or confidentiality agreement, or otherwise. "Disclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." *In re Maxxim Medical Group, Inc.*, 434 B.R. 660, 691 (Bankr. M.D. Fla. 2010) (*citing Ruckelshaus*, 467 U.S. at 1002, 104 S. Ct. 2862).

Because Plaintiff has failed to allege facts sufficient to show he took reasonable efforts to protect the secrecy of WAO2, Plaintiff has not established that a trade secret exists under the DTSA and Alabama law. Therefore, Counts 2 and 4 of Plaintiff's Complaint should be dismissed.

**B. Count 5 of Plaintiff's Complaint should be dismissed because there is no private cause of action pursuant to 18 U.S.C. § 1832.**

Count 5 of Plaintiff's Complaint, "Conspiracy to Commit Theft or Trade Secrets in Violation of 18 U.S.C. § 1832(A)(5)," should be dismissed where Section 1832 is a criminal statute and does not provide a private cause of action. *See Smith v. JP Morgan Chase,* 837 Fed. Appx. 769, 769 (11th Cir. Feb. 24, 2021) ("criminal statutes do not provide for private civil causes of action, so it follows that Smith's Title 18 allegations are also without merit because those criminal statutes do not provide for private causes of action") (unpublished)[3]. "Section 1832 is a criminal statute that establishes a crime and specifies punishment." *Vest Safety Med. Servs. v. Arbor Envtl., LLC*, 2020 WL 4003642, at *3 (S.D. Tex. Jul. 15, 2020); 18 U.S.C. § 1832(a)(5) (punishment is fine, imprisonment, or both); *Zegato Travel Solutions, LLC v. Bailey*, 2014 WL 7365807, at *2 (D. Md. Dec. 22, 2014) (18 U.S.C. § 1832 "is the federal criminal statute for the theft of trade secrets").

"In the Economic Espionage Act of 1996, Congress criminalized the theft of trade secrets, as well as attempts and conspiracies to steal trade secrets. 18 U.S.C. § 1832(a). This criminal provision 'does not provide for a private right of action to redress the trade secret thefts that it proscribes.'" *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021) (*quoting Steves and Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 841 (E.D.

---

[3] Fed. R. App. P. 32.1(a) (permitting citations of unpublished opinions issued on or after January 1, 2007).

Va. 2017)). A violation of Section 1832 is punishable by a fine and/or imprisonment "not more than 10 years." 18 U.S.C. § 1832(a)(5). Thus, conspiracy to steal trade secrets, in violation of 18 U.S.C. § 1832(a)(5), is a criminal violation to be prosecuted by the government. *See, e.g., United States v Williams,* 526 F.3d 1312 (11th Cir. 2008) (defendants indicted for violations of Sections 1832(a)(2), (3), and (5); *United States v. Xiaorong Yu*, 2019 WL 2426659 (E.D. Tenn. Jun. 10, 2019); *United States v. German*, 2020 WL 6143559 (S.D. Ga. Oct. 19, 2020). A private citizen, such as Plaintiff, cannot commence criminal proceedings on his own and has no right to institute criminal prosecutions in federal court. *Linda R.S. v. Richard D,* 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L.Ed.2d 536 (1973); *Otero v. United States Attorney General*, 832 F.2d 141, 141 (11th Cir. 1987).

Although Congress enacted the DTSA in 2016 to allow a civil private right of action (18 U.S.C. § 1836), a plaintiff cannot automatically enforce the criminal statute "in the absence of some expression of Congressional intent." *Carey v. Jones*, 2017 WL 559588, at *3 (M.D. Ala. Jan. 18, 2017), *report and recommendation adopted*, 2017 WL 561813 (M.D. Ala. Feb. 10, 2017); *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002); *Power*, 2021 WL 3856459, at *10. *Vest Safety*, 2020 WL 4003642, at *3; *Hopkins v. Rich*, 2015 WL 1400837, at *7 (S.D. Ala. Mar. 3, 2015). Congress did not create a private cause of action to enforce a claim for conspiracy under Section 1832. *Stevens and Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 840-43 (E.D. Va. 2017) (holding that a civil plaintiff could not bring a claim for conspiracy to violate the DTSA because

Congress did not expressly provide the civil cause of action); *Power*, 2021 WL 3856459; *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash. 2021) ("the weight of authority tips against the viability of conspiracy claims based on the misappropriation of trade secrets under the DTSA"); *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (agreeing that 18 U.S.C. § 1832(a)(5), which criminalizes conspiracy to violate the DTSA, does not provide a private right of action); *Vest Safety*, 2020 WL 4003642, at *3 (courts "refer to a trade secrets claim as 18 U.S.C. § 1832 *et seq.* because the DTSA amended Title 18 from sections 1832 to 1838, not because a private cause of action is located in 1832").

Further, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. *Statutory intent on this latter point is determinative*. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Love*, 310 F.3d at 1352 (*quoting Sandoval*, 532 U.S. at 286-87, 121 S. Ct. at 1519-1520) (emphasis in original). 18 U.S.C. § 1832 does not create a private remedy. While the only remedy under Section 1832 is a fine, imprisonment, or both, Plaintiff seeks the following damages in Count 5: "(a) damages for his actual loss of caused by Defendants' misappropriation of the trade secrets; (b) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or (c) alternatively, damages

caused by the misappropriation for a reasonable royalty for Defendants' unauthorized disclosure or use of the trade secrets", as well as "exemplary damages".

18 U.S.C. § 1832(a)(5) displays no intent to create a private cause of action; therefore, Plaintiff is not entitled to relief under 18 U.S.C. § 1832(a)(5), and Count 5 of his Complaint should be dismissed. *Gulf S. Communications*, 2021 WL 2405199, at *1 (must state claim for relief that is plausible on its face).

### C. Count 6, Plaintiff's RICO claim, should be dismissed where Plaintiff has failed to meet the heightened pleading requirement of Rule 9(b).

As set forth in Section I.A., *supra,* Plaintiff's conclusory allegations in his RICO claim that Treis engaged in a pattern of racketeering activity of misappropriation, use and fraud, do not meet the required specificity to state a claim under RICO. *See Ambrosia*, 482 F.3d at 1316 (RICO claims based on fraud must meet Rule 9(b) heightened pleading standard); *Cruz*, 574 F. Supp. 2d at 1230 (heightened standard also applies to non-fraud claims based on same misrepresentation). Plaintiff's allegations fail to inform each of the nine defendants of the nature of each defendant's alleged participation in the alleged wrongdoing. *See Ambrosia*, 482 F.3d at 1316-17. Because of his failure to answer the "who, when, where, how, and why with sufficient specificity as to the RICO claim[s],"

Count 6 of Plaintiff's Complaint must be dismissed. *See DePaola*, 2006 WL 1181311, at *12. [4]

**V.** **Plaintiff Fails to Allege Any Facts in Support of His Tortious Interference with Business or Contractual Relations Claim (Count 12); Therefore, Count 12 Must Be Dismissed for Failure to State a Claim.**

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*citing Twombly*, 550 U.S. at 556). While the Court on a 12(b)(6) motion must accept the allegations in the Complaint as true and construe them in the light most favorable to the plaintiff, this Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

---

[4] Although unnecessary to address at this juncture because Plaintiff fails to meet the required specificity of a RICO claim, Treis points out that Count 6 should also be dismissed for failing to state sufficient facts to establish any of the following required elements of a RICO claim: (1) the operation or management (2) of an enterprise (3) through a pattern of (4) racketeering activity that included at least two racketeering acts. *Ray*, 767 F.3d at 1224. 18 U.S.C. § 1836 is not in the list of violations that can form the basis of a RICO claim, "[c]onsequently, a defendant's repeated use of a misappropriated trade secret will not constitute a pattern of racketeering activity for the purposes of RICO." 3 Milgrim on Trade Secrets § 13.03 (citations omitted); *ESPOT, Inc. v. Myvue*, 492 F. Supp. 3d 672, 694 (E.D. Tex. 2020); *Crossborder Sols. v. Macias, Gini & O'Connell, LLP*, 2022 WL 562934 (S.D.N.Y. Feb. 23, 2022). Fraud, alone, is also not a racketeering activity under RICO. 18 U.S.C. § 1961(1); *Friedlander v. Nims*, 571 F. Supp. 1188, 1194 (N.D. Ga. 1983), *aff'd*, 755 F.2d 810 (11th Cir. 1985); *Calmes v. Boca W. Country Club, Inc.*, Case No. 9:17-CV-80574 (S.D. Fla. Oct. 13, 2017).

In Alabama, to state a claim for Tortious Interference with Business or Contractual Relations, a complaint must plausibly allege, "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Walter Energy, Inc. v. Audley Capital Advisors LLP*, 176 So. 3d 821, 828 (Ala. 2015). In *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 U.S. App. LEXIS 21039 (11th Cir. July 29, 2022), the 11th Circuit upheld the Florida district court's finding that the plaintiff's reliance on mere "assertions that [defendant] UCMS 'knew, and was aware' of, and that UCMS 'purposefully and intentionally' interfered with, CMR's contractual and business relationships with the Association to support its claims" was insufficient to support a claim for tortious interference with business or contractual relations because "CMR failed to allege facts to support those otherwise conclusory assertions." *Id.* at *16.

Here, like the plaintiff in *CMR Constr. & Roofing*, Plaintiff's allegations in his Tortious Interference claim are mere threadbare recitals of the elements of the cause of action without factual support. For example, Plaintiff alleges he "was involved in and/or party to *various business or contractual relationships*", (Compl. ¶ 262), emphasis added, without identifying those purported business or contractual relationships in Count 12, let alone anywhere else in the Complaint. As such, Plaintiff has failed to allege the first element of a claim for tortious interference, "the existence of a protectible business relationship." *Id*.

Plaintiff also fails to allege that Treis was *aware* of any purported protectible business relationship, the second element of a claim for tortious interference. *Id*. Rather, Plaintiff merely concludes that "*Plaintiff* was fully aware of the existence of these business or contractual relationships." (Compl. ¶ 264, emphasis added). Further, although Plaintiff alleges that Defendants "tortiously interfered with Plaintiff's valid and enforceable contractual or business relationships", (Compl. ¶ 265), he fails to offer *any facts* in support of these allegations. *See CMR Constr. & Roofing*, at *16-17 ("Because CMR failed to support its tortious interference claims with facts from which a reasonable trier of fact could infer that CMR's claims were plausible, the district court  did not err in dismissing CMR's tortious interference claims.")

Moreover, to the extent Plaintiff attempts to rely on his incorporation and re-allegation of "paragraphs 18 through 159 as if the same were fully set forth herein", (Compl. ¶ 260), such pleading is also insufficient to state a claim, as the preceding paragraphs in the Complaint involve nine defendants and various third parties. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir. 2014) (a shotgun pleading, where each count adopts allegations of all preceding counts, renders it virtually impossible to know which allegations of fact are intended to support which claims for relief).

Because Plaintiff fails to allege the necessary factual support of his Tortious Interference claim, Count 12 must be dismissed.

**VI.**   **Counts 7, 10 and 13 of the Complaint are Preempted by the ATSA and Therefore Must be Dismissed for Failure to State a Claim.**

Plaintiff's claims against Treis for Unjust Enrichment (Count 7), Fraudulent Misrepresentation (Count 10), and Conversion (Count 12) are each premised on the same facts as Plaintiff's Misappropriation of Trade Secret claims (Counts 2 and 4). As such, Counts 7, 10 and 13 are preempted by the Alabama Trade Secrets Act, Ala. Code § 8-27-1 et seq ("ATSA") and accordingly, must be dismissed.

The ATSA "is modeled after and closely parallels the Uniform Trade Secrets Act ["UTSA"]." *Gulf*, 2021 WL 2405199, at *2 (quoting *Parker*, 2020 WL 3972761, at *11 & n.9). Further the "ATSA's statutory language is 'nearly identical to that in the DTSA.'" *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1221 (N.D. Ala. 2021) (quoting *Parker v. Petrovics*, 2020 WL 3972761, at *4 (N.D. Ala. July 14, 2020). The ATSA protects a trade secret from disclosure or unauthorized use by another, and a person is liable for misappropriation if:

> (1) That person discovered the trade secret by improper means; (2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other; (3) That person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances which violate the provisions of (1) or (2), above; or (4) That person learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake.

Ala. Code § 8-27-3.

Common law torts are preempted by the ATSA when the tort claim is based on the same or similar facts giving rise to a claim under the ATSA. *See Gulf*, 2021

U.S. Dist. LEXIS 109963, at *13-22; and *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019); *see also Hauck Manufacturing Co. v. Astec Industries, Inc.*, 375 F. Supp.2d 649, 654 (E.D. Ten. 2004) ("The USTA has been uniformly interpreted to preempt previously existing misappropriation of trade secret actions, whether statutory or common law . . . . Courts are also in general agreement the USTA"s preemptive force reaches at least some additional causes of action."). The ATSA "is intended to both codify and to modify the common law of trade secrets in Alabama." ATSA, Comment, § 8-27-6. As such, a plaintiff cannot pursue both statutory and common law theories of recovery for a defendant's alleged "misappropriation of 'trade secrets' or confidential documents." *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991) (interior citations and quotations omitted). Thus, "any common law tort claim that, whatever its name, provides a theory of recovery for the misappropriation of a trade secret is preempted by [the] ATSA." *Arkema*, at 1194. At bottom, "[t]he issue is whether the tort claim is an attempt to recover for wrongful appropriation of the same commercially valuable item as the commercially valuable trade secret." *Id.*, at 1195.

### A. Plaintiff's Unjust Enrichment claim (Count 7) is premised on the same facts as his Trade Secrets Claims (Counts 2 and 4), and is therefore preempted by the ATSA and subject to dismissal.

Plaintiff's Unjust Enrichment claim is based on the same facts underlying his Trade Secrets claims (Counts 2 and 4) and is therefore preempted by the ATSA. In *Madison Oslin, Inc.*, 2012 U.S. Dist. LEXIS 142082, 2012 WL 4730877, over the

course of exploring a joint venture agreement with the defendants, the plaintiff divulged its confidential process of applying polyester coating to corrugated cardboard. Plaintiff brought suit, alleging the defendants misappropriated its confidential information by making their own polyester coating for corrugated cardboard boxes. The court held that "[t]he allegations setting forth this [unjust enrichment] claim assert no independent conduct or injury except that defendants 'have been unjustly enriched at the expense of Plaintiffs as a result' of the misappropriation", and "therefore [is] preempted as the underlying facts are 'essentially the same' as those pled for relief under the ATSA." *Id.* at *28.

Here, as in *Madison Oslin*, the facts underlying Plaintiff's Unjust Enrichment claim are "essentially the same" as those pled for relief under Plaintiff's Trade Secret claims. In fact, Plaintiff's allegations in Counts 2 and 4 conflate his Trade Secret claims with his claim for Unjust Enrichment (Count 7), when he alleges the following:

- <u>Trade Secret Count 2:</u> Plaintiff demand "damages for any **unjust enrichment caused by the misappropriation of the trade secret**" in Count 2 (Compl. at ¶175); and

- <u>Trade Secret Count 4:</u> Defendants "were **unjustly enriched through their misappropriation of WAO2**." (Compl. at ¶ 190).

Plaintiff's allegations further demonstrate that his Unjust Enrichment claim is essentially the same as his Trade Secret claims, as displayed below:

| Count 2 Misappropriation of Trade Secrets | Count 4 Misappropriation of Trade Secrets | Count 7 Unjust Enrichment |
|---|---|---|

| | | |
|---|---|---|
| Treis "knowingly **delivered, sent, or conveyed** WAO2 to Stronghold and/or other third parties **without authorization**".<br><br>Compl. ¶ 174, emphasis added. | Treis "knew **Plaintiff is the owner** of WAO2", and<br><br>"Defendants did not create WAO2 but **used the code optimization to mine cryptocurrency**".<br><br>Compl. ¶¶ 186-187, emphasis added. | "Treis **sold the machines** enhanced by WAO2 [to Stronghold] for several million dollars".<br><br>Compl. ¶ 209, emphasis added. |
| | Treis "**intentionally blocked Plaintiff's Dev Fee**", and<br><br>"**refused to compensate** Plaintiff".<br><br>Compl. ¶¶ 188-189, emphasis added. | "received hundreds of hours of Plaintiff's work **without compensating** him for same".<br><br>Compl. ¶ 208, emphasis added. |
| "Plaintiff sustained actual losses **by the misappropriation of WAO2** including but not limited to the decimation of its value through public dissemination".<br><br>Compl. ¶175, emphasis added. | Plaintiff demands judgment [...] for: (a) damages for his actual loss of caused by Defendants' **misappropriation of the trade secrets**".<br><br>Compl. ¶ 191, emphasis added. | "**Without Plaintiff's code and optimization work**, Treis would not have been able to sell the machines, as they would not have functioned as the contract required."<br><br>Compl. ¶ 210, emphasis added. |

Finally, Plaintiff's Unjust Enrichment claim is essentially the same as his Trade Secrets claims when in that Count he demands damages because Treis has "been *unjustly enriched* at Plaintiff's expense" and *"[t]he circumstances under which each Defendant received benefits* at [...] Plaintiff's expense make it unjust

for any Defendant to retain the benefits without commensurate compensation." (Compl. ¶¶ 215-217) (emphasis added). The "circumstances" under which Treis received benefits are those same circumstances identified in Counts 2 and 4; namely, the alleged misappropriation of WAO2.

Because, as in *Madison Oslin,* Plaintiff's Unjust Enrichment claim (Count 7) is "essentially the same" as his Trade Secrets claims (Counts 2 and 4), Count 7 is preempted by the ATSA. Accordingly, Count 7 must be dismissed.

**B.     Plaintiff's Fraudulent Misrepresentation claim (Count 10) is premised on the same facts as his Trade Secrets Claims (Counts 2 and 4), and is therefore preempted by the ATSA and subject to dismissal.**

Plaintiff's Fraudulent Misrepresentation claim (Count 10), like his Unjust Enrichment claim, is based on the same facts underlying his Trade Secrets claims (Counts 2 and 4) and is therefore preempted by the ATSA. "[T]he ATSA preempts not only common law claims 'specifically alleging the misappropriation of trade secrets but also other causes of action based on the same underlying facts'" *Gulf*, 2021 U.S. Dist. LEXIS 109963. *15 (*citing Madison Oslin, Inc.*, 2012 U.S. Dist. LEXIS 142082, 2012 WL 4730877, at *6).

In *Madison Oslin*, the court dismissed the plaintiff's misrepresentation claim because the factual allegations underlying the misrepresentation claim merely "repeat the same theory plaintiffs use in support of their ATSA claim". *Id.* at *29. Here, as in *Madison Oslin*, the "misrepresentations" Treis is alleged to have made to Plaintiff in Count 10 are based on Treis' purported knowledge that that it did not

have rights to WAO2.  As such, in Count 10 Plaintiff likewise essentially repeats "the same theory" he uses to support his Trade Secrets claims, as displayed below:

| Count 2 Misappropriation of Trade Secrets | Count 4 Misappropriation of Trade Secrets | Count 10 Fraudulent Misrepresentation |
|---|---|---|
| Treis "knowingly **delivered, sent, or conveyed** WAO2 to Stronghold and/or other third parties **without authorization**." Compl. ¶174, emphasis added. | Defendants "knew **Plaintiff is the owner** of WAO2", "Defendants did not create WAO2 but **used the code** optimization to mine cryptocurrency", "blocked Plaintiff's Dev Fee", and "refused to compensate Plaintiff".<br><br>Compl. ¶¶186-189, emphasis added. | Treis "misrepresented to Grams that they would pay him his Dev Fee, **would not disseminate his code, would protect his code**" […]<br><br>Compl. ¶ 237. |

*Id.* at *29.

Because Count 10 for Fraudulent Misrepresentation is premised on Plaintiff's Misappropriation of Trade Secrets claims, Count 10 is therefore preempted by the ATSA. Accordingly, Count 10 should be dismissed.

**C.    Plaintiff's Conversion claim (Count 13) is premised on the same facts  as his Trade Secrets Claims (Counts 2 and 4) and is therefore preempted by the ATSA and subject to dismissal; in the alternative, Count 13 Should Be Dismissed for Failure to State a Claim.**

Plaintiff's Conversion claim (Count 13), like his Unjust Enrichment and Fraudulent Misrepresentation claims, is based on the same facts underlying his Trade Secrets claims (Counts 2 and 4) and is therefore preempted by the ATSA. Even if the Court finds that the ATSA does not preempt Count 13; however, Count

13 fails to state a claim for conversion because Plaintiff fails to allege facts in support of his claim.

### 1.    Plaintiff's Conversion claim (Count 13) is based on the same facts giving rise to Plaintiff's Trade Secrets Claims (Counts 2 and 4); therefore, Count 13 is preempted by the ATSA and subject to dismissal

"A misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA and not under the common law theory of conversion." *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019). In *Parker v. Petrovics*, 2020 U.S. Dist. LEXIS 123029, at *29-31 (N.D. Ala. July 14, 2020), the plaintiff alleged the defendants had "used and exercised control over Plaintiff's intellectual property without permission to utilize his concepts or trade secrets in the creation of the Pointz application."  Thus, the court found that the plaintiff's conversion claim was "based on the act of misappropriating the trade secret information" and that "therefore, the court concludes that Plaintiff's common law conversion claim is preempted by the ATSA."  *Id.*, at *30.

Here, Plaintiff's Conversion claim is based on allegations that "Defendants have converted property legally belonging to Counterclaim Plaintiffs [sic]". (Compl. ¶ 271). The only "property" of Plaintiff's at issue in this matter—and thus the only property possible of having been "converted" by Defendants—is WAO2, the purported trade secret. As such, Plaintiff's Conversion claim can only be read as

premised on Treis's misappropriation of Plaintiff's purported trade secret. Accordingly, Count 13 must be dismissed.

### 2. Plaintiff's Conversion claim (Count 13) fails to allege facts in support of its threadbare conclusory allegations, thus Count 13 fails to state a claim.

Alternatively, even if the Court finds Plaintiff's Conversion claim is not preempted by the ATSA, Count 13 fails to allege facts in support of this claim. Again, while the Court on a 12(b)(6) motion must accept the allegations in the Complaint as true and construe them in the light most favorable to the plaintiff, this Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. To state a claim for conversion under Alabama law, "a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use o[r] misuse of another's property[,] or a wrongful detention or interference with another's property." *Ages Grp., L.P. v. Raytheon Aircraft Co.*, 22 F. Supp. 2d 1310, 1323 (M.D. Ala. 1998) (*citing Birmingham-Jefferson Cty. Transit Authority v. Arvan*, 669 So. 2d 825, 828 (Ala. 1995)).

Here, the allegations comprising Count 13 are "threadbare recitals" of the elements of conversion: "Defendants have *converted* property legally belonging to Counterclaim Plaintiffs [sic]"; "As a result Plaintiff has been *deprived* of his [sic] in *the property*"; and "Defendants took and converted Plaintiff's property to their own use in knowing *violation of Plaintiff's rights and Alabama law*, thereby causing Plaintiff to suffer injuries and damages". (Compl. ¶¶ 271-273). Plaintiff offers *no*

49

*facts* in support of these allegations. Further, to the extent Plaintiff attempts to rely on his incorporation and re-allegation of "paragraphs 18 through 159 as if the same were fully set forth herein", (Compl. ¶ 269), such pleading is also insufficient to state a claim, as the preceding paragraphs in the Complaint involve nine defendants and various third parties. *See Paylor*, 748 F.3d at 1125 (a shotgun pleading, where each count adopts allegations of all preceding counts, renders it virtually impossible to know which allegations of fact are intended to support which claims for relief).

Because Plaintiff fails to allege the necessary factual support of his claim for Conversion, Count 13 must be dismissed.

## CONCLUSION

For the reasons set forth above, Treis respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In addition, Treis respectfully requests this Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3) for improper venue or *forum non conveniens*; or in the alternative, transfer this case to the District of South Carolina. If the Court does not dismiss this case under Rule 12(b)(2) or (3), Treis respectfully requests the Court dismiss Counts 2, 4, 5, 6, 7, 10, 12, and 13 for failure to state a claim under Rule 12(b)(6).

Respectfully submitted this the __26th__ day of June, 2023.


_____/s Joshua J. Jackson_____
Joshua J. Jackson (ASB-8286-U79J)
Attorney for defendant Treis Blockchain, LLC

**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com




## CERTIFICATE OF SERVICE

I hereby certify that on the __26th__ day of __June__, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com


_____/s Joshua J. Jackson_____
OF COUNSEL