## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **MARK GRAMS,**<br>**an individual Alabama citizen,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**TREIS BLOCKCHAIN, LLC,**<br>**CHAIN ENTERPRISES, LLC,**<br>**CEVON TECHNOLOGIES, LLC,**<br>**STRONGHOLD DIGITAL MINING,**<br>**LLC, DAVID PENCE, MICHAEL**<br>**BOLICK, SENTER SMITH,**<br>**BRIAN LAMBRETTI, AND**<br>**JOHN CHAIN,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Civil Action No.**<br>**3:23-CV-00299-SMD** |

### DEFENDANT JOHN CHAIN'S MOTION TO DISMISS

COMES NOW Defendant John Chain ("Defendant" or "Chain" hereafter), by and through the undersigned counsel, and moves to dismiss Plaintiff's Complaint. In support thereof, Defendant shows unto the Court as follows:

### NATURE AND STAGE OF THE PROCEEDINGS

On May 4, 2023, Plaintiff Mark Grams ("Plaintiff") filed a civil action against Chain Enterprises, LLC ("CEL"), Treis Blockchain, LLC ("Treis"), Cevon Technologies, LLC ("Cevon"), Stronghold Digital Mining, LLC ("Stronghold"), John Chain ("Chain"), David Pence ("Pence"), Michael Bolick ("Bolick"), Senter Smith ("Smith"), and Brian Lamberti ("Lamberti") in the Middle District of Alabama, Eastern Division, Civil Action

No.: 3:23-CV-00299-SMD. Plaintiff asserts thirteen causes of action against nine defendants. Pursuant to this Motion, Defendant Chain respectfully requests that this Court dismiss Plaintiff's Complaint against him: (I) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (II) for improper venue (or in the alternative to transfer this case to South Carolina) pursuant to Rule 12(b)(3); and (III) for failure to state a claim under Rule 12(b)(6) as to Counts 1 and 5 (Misappropriation of Trade Secrets), Count 6 (RICO), Count 7 (Unjust Enrichment), and Count 10 (Fraudulent Misrepresentation).

## **SUMMARY OF ARGUMENT**

First, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction against Chain. As a threshold matter, while the Complaint alleges a RICO violation, it fails to allege RICO as a basis for personal jurisdiction against Chain. Nevertheless, Plaintiff has failed to allege a RICO claim and therefore cannot invoke RICO's nationwide service of process provision to establish jurisdiction over Chain. For the purposes of dismissal pursuant to Rule 12(b)(2), this Motion addresses RICO as a potential basis for personal jurisdiction first.

This Motion addresses Alabama's long arm statute next. Chain neither has continuous or systematic contacts with Alabama, nor minimum contacts with Alabama, as required under Alabama's long arm statute. Because Plaintiff cannot rely on RICO's nationwide service of process to establish personal jurisdiction, and there is no basis for

general or specific jurisdiction against Chain under Alabama's long arm statute, this case must be dismissed as to Chain.

Second, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(3) for improper venue because no substantial part of the events giving rise to Plaintiff's claims occurred either in this District, or indeed, anywhere in the State of Alabama. In the alternative, Chain requests that this Court transfer this case to the District of South Carolina, where it could have been brought initially. The doctrine of *forum non conveniens* provides an additional basis of dismissal, as the private interest factors related to the Defendants and non-party witnesses support dismissal.

Even if the Court does not dismiss this case under Rule 12(b)(2), 12(b)(3), or under the doctrine of *forum non conveniens*, the following Counts must be dismissed for failure to state a claim under Rule 12(b)(6): Counts 1, 5, 6, 7, and 10. Counts 1 and 5 (Misappropriation of Trade Secrets) must be dismissed because Plaintiff fails to adequately plead he took reasonable measures to keep WAO2 secret, and, in the case of Count 5, does not articulate a claim against this Defendant. Count 6 (RICO) must be dismissed because Plaintiff failed to plead with particularity a violation of RICO. Count 7 (Unjust Enrichment) and Count 10 (Fraudulent Misrepresentation) must be dismissed because they are preempted by the Alabama Trade Secrets Act, Ala. Code § 8-27-1 et seq. Additionally, Plaintiff does not articulate a claim against this Defendant under Count 7. Furthermore, if this Court finds that Alabama has personal jurisdiction in this matter and finds that Alabama law applies, Count 10 (Fraudulent Misrepresentation) is due to be

dismissed for failure to state a claim because this count is barred by the applicable statute of limitations.

## STATEMENT OF ALLEGED FACTS

Plaintiff alleges the following facts in his Complaint: Plaintiff pioneered firmware, WAO, which optimized the cryptocurrency mining industry. (Compl. ¶ 46). Chain asked to help Plaintiff monetize WAO, and began negotiations with Asic.World. (Compl. ¶¶ 48, 54). Chain, however, failed to protect the secrecy of WAO, and Asic.World stole WAO. (Compl. ¶ 55). Plaintiff then designed a second version, WAO2. (Compl. ¶ 61). Chain had also been negotiating with Treis to install WAO on their Whatsminers to test WAO's efficacy. After learning WAO had been stolen, they agreed to pay a Developer Fee for a nonexclusive license to install and use WAO2. (Compl. ¶¶ 63-64, 122(b), 123). Throughout 2020, Plaintiff worked on customizing WAO2 for Treis, and in the summer of 2020, they started the testing phase of WAO2. (Compl. ¶¶ 66, 81). When Treis encountered a physical problem with the use of WAO2, Plaintiff developed a solution and shared the design for the solution with Treis' metal sheet fabricator. (Compl. ¶¶ 95-98).

Treis and Chain/CEL created the business entity "Cevon" to purchase WAO2 from Chain: however, by April 2021, Treis "knew that Chain had never owned WAO or WAO2 and that [Plaintiff] was the developer and sole owner." (Compl. ¶¶ 73-74, 80). In April 2021, Plaintiff informed Treis he was no longer working with Chain. (Compl. ¶¶ 86-88). Treis continued paying Plaintiff the Development Fee, but declined Plaintiff's

Fall 2021 offer to sell them a license to include WAO2 on machines to sell to third parties. (Compl. ¶¶ 92-93).

When firmware is in its testing phase, it cannot be encrypted. (Compl. ¶ 103). Plaintiff primarily worked from his "heavily-secured personal site in Alabama.," and kept all copies of WAO2 on "password-protected devices, with a camera system recording all access, on private property." (Compl. ¶¶ 100, 105). Treis' machines using WAO2 were in Pennsylvania and South Carolina. (Compl. ¶ 101). Plaintiff insisted and Treis agreed to use "password protected, locked and otherwise secured" devices. (Compl. ¶ 104). Plaintiff "requested" Treis install security cameras at all entry points. (Compl. ¶ 106).

In September 2021, more than a year after Treis began their testing phase of WAO2, Plaintiff traveled to the Scrubgrass Power Plant in Pennsylvania and discovered there was "no security whatsoever safeguarding the firmware." (Compl. ¶¶ 66, 107-108). Plaintiff "accepted [Treis'] confirmations the security issues would be immediately remedied." (Compl. ¶ 112). Plaintiff continued to code improvements for Treis into 2022. (Compl. ¶¶ 118-120). In January 2022, Plaintiff's access was blocked to most of the machines, but he continued to work on the machines he could access at Defendant Lamberti's direction. (Compl. ¶ 128-131). On February 7, 2022, Lamberti told Plaintiff that the machines had been sold and falsely stated that WAO2 had been removed from the machines. (Compl. ¶¶ 133-134). Plaintiff subsequently learned Treis had sold the machines to Defendant Stronghold without removing WAO2. (Compl. ¶ 138). Treis claimed they owned WAO2, accused Plaintiff of stealing from them, and "disparaged"

Plaintiff in front of Stronghold and "thoroughly discredited [him] in his field." (Compl. ¶¶ 143-144). Plaintiff alleges Treis' Managing Directors, Pence, Bolick, Smith, and Lamberti "conspired to bury the truth that [Plaintiff] was the sole developer of WAO2 and that they had no right to use or sell it" and "falsely represented to third party buyers that Treis had the right to sell Whatsminer machines optimized by WAO2." (Compl. ¶¶ 156-157).

## ARGUMENT

**I.    Plaintiff's Complaint Must be Dismissed Because this Court Lacks Personal Jurisdiction Against Chain.**

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Cont'l Cas. Co. v. Cura Grp., Inc.*, 2005 U.S. Dist. LEXIS 51116, at \*96-97 (S.D. Fla. Apr. 5, 2005) (internal citations omitted); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). "In analyzing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), we first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Republic of Panama*, 119 F.3d at 942. Fed. R. Civ. P. 4(k)(1)(C) establishes personal jurisdiction if a federal statute permits it ("[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant [. . .] when authorized by a federal statute.").

Here, the Complaint is silent as to the basis of personal jurisdiction over Chain. However, to the extent RICO applies in this Court's personal jurisdiction analysis, RICO's nationwide service of process provision is unavailable to Plaintiff to establish personal jurisdiction over Chain because, as discussed below, Plaintiff fails to adequately allege a RICO violation.

Accordingly, as discussed below, there is no basis for personal jurisdiction under RICO and because Chain lacks the requisite contacts, there is no other basis to establish personal jurisdiction over Chain under Alabama law.

**A. Plaintiff cannot invoke RICO's nationwide service provision to establish personal jurisdiction over Chain because Plaintiff fails to adequately allege a RICO violation.**

"Section 1965(d) [RICO] can serve as 'the statutory basis for personal jurisdiction.'" *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1143 (S.D. Fla. 2019). However, a plaintiff cannot invoke RICO's nationwide service provision if the RICO claim is "wholly immaterial or insubstantial." *Republic of Panama*, 119 F. 3d at 941. A claim is "wholly insubstantial" where a plaintiff "fail[s] to state their RICO claim with the requisite specificity." *James v. Hunt*, 761 Fed. App'x 975, 980 (11th Cir. 2018).[1]  In *James*, the 11th Circuit determined that the district court did not err in granting the defendant's motion to dismiss for lack of personal jurisdiction: "[t]he Plaintiffs could not rely upon § 1965(d) of the RICO statute to establish personal

---

[1] Fed. R. App. P. 32.1(a) (permitting citations of unpublished opinions issued on or after January 1, 2007).

jurisdiction over [defendant] because their asserted RICO claim against her is [. . .] wholly insubstantial, where they failed to state their RICO claims with the requisite specificity." *Id.* (internal citations omitted). Plaintiff's RICO claim against Chain is likewise wholly insubstantial where he failed to state his RICO claim with the requisite specificity. As such, Plaintiff is unable to invoke RICO's nationwide service of process to establish jurisdiction over Chain.

Count 6 of Plaintiff's Complaint alleges violation of RICO "pursuant to 18 U.S.C. 1964 and 18 U.S.C. 1962(c)." To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014).

"A RICO claim . . . is not a 'typical' civil claim that may be sufficiently pled by following Rule 8." *Cruz v. Cinram International, Inc.*, 574 F. Supp. 2d 1227, 1230 (N.D. Ala. 2008). Rather, RICO claims based on the predicate act of fraud must satisfy the heightened pleading standard imposed by Fed. R. Civ. P. 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). Similarly, RICO predicate acts not sounding in fraud must also be pleaded with particularity where "*the same misrepresentation forms the basis of both the fraud and non-fraud claim.*" *Cruz*, 574 F. Supp. 2d at 1232. (quoting *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355-56 (11th Cir. 2008)) (emphasis in original). "RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time

and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia*, 482 F.3d at 1316 (*citing Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

In *Brooks*, the 11th Circuit determined a RICO claim "did not meet the Rule 9(b) particularity standard 'because it was devoid of specific allegations with respect to each defendant; the plaintiffs lumped together all of the defendants in their allegations of fraud . . .[I]n a case involving multiple defendants . . .the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (*quoting Brooks*, 116 F.3d at 1381). *See also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) means alleging "the who, what, when, where, and how"). Claims under RICO "must be subjected to scrutiny due to their potential for abuse by civil litigants." *DePaola v. Nissan North America, Inc.*, 2006 WL 1181311, at *12 (M.D. Ala. May 2, 2006) (citation omitted) (dismissing RICO claims for failure "to answer the who, when, where, how, and why with sufficient specificity as to the RICO claims alleged against twenty-two defendants").

Here, Plaintiff's RICO claim is "devoid of specific allegations with respect to each defendant," and does not meet the requisite specificity of Rule 9(b). *See Ambrosia*, 482 F.3d at 1316-17. Plaintiff's RICO claim is asserted against all nine Defendants and only contains the following conclusory allegations:

199.    Plaintiff incorporates and realleges paragraphs 18 through 159 as if the same were set forth fully herein.

200.    Plaintiff brings this claim against all Defendants.

201.    Defendants are associated as an enterprise.

202.    Defendants' activities affect interstate and foreign commerce.

204.    Defendants have conducted their affairs through a pattern of racketeering activity.

      a.    Defendants have misappropriated Plaintiff's trade secrets.

      b.    All Defendants have used Plaintiff's trade secret without the right to such use;

      c.    Defendant Treis and its Managing Directors defrauded Plaintiff.

205.    Plaintiff suffered damages as set forth herein or otherwise.

(Compl. ¶¶ 199-205) (¶ 203 is missing in the Complaint). Plaintiff's allegations are all based on the same conduct: Treis' alleged use and selling of WAO2 without authorization. Moreover, that alleged use and selling of WAO2 occurred *after* Plaintiff told both Chain and Treis that he would no longer be working with Chain. (Compl. ¶¶ 86-89). Plaintiff's conclusory allegations of misappropriation, use and fraud fail to answer the "who, what, when, where and how" with sufficient specificity to state a RICO claim. Instead, in shotgun pleading, Plaintiff merely refers to allegations in 142 paragraphs previously set forth in his Complaint, which involve nine defendants and various third parties. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir.

2014) (shotgun pleading, where each count adopts allegations of all preceding counts, thus rendering it virtually impossible to know which allegations of fact are intended to support which claims for relief).

Plaintiff's RICO claim falls woefully short of informing each defendant of the nature of his alleged participation in the alleged misappropriation, use, or fraud. *See Ambrosia*, 482 F.3d at 1316; *Birmingham v. Doe*, 2022 WL 18134962 (S.D. Fla. Dec. 6, 2022), *recommendation and report adopted*, 2023 WL 112308 (S.D. Fla. Jan. 5, 2023) (where Plaintiffs merely resort to reciting relevant statutory language when discussing actual claims, the Court is unwilling to parse through every allegation to speculate which events and actions Plaintiffs believe support which elements and why).

Plaintiff's RICO claim is therefore "wholly insubstantial." Without a RICO claim, Plaintiff cannot invoke RICO's nationwide service of process provision against Chain to establish jurisdiction and, as discussed below, there is no other basis to establish personal jurisdiction in Alabama over Chain. Plaintiff's Complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## B. There is no basis for either general or specific jurisdiction over Chain.

Without the availability of the RICO service of process provision, Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) where there is no other basis for personal jurisdiction over Chain under Alabama law. When considering a motion to dismiss for lack of personal jurisdiction, "[t]he court must construe the

allegations in the complaint as true, to the extent they are uncontroverted by [the] defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A personal jurisdiction challenge in federal court generally requires a two-part analysis: (1) the court must first determine its jurisdiction under the forum state's long-arm statute; and, (2) it must decide whether exercising jurisdiction comports with principles of constitutional due process. *Id.* at 492, fn. 3. However, because the limits of Alabama's long-arm jurisdiction (Ala. R. Civ. P. 4.2(b)) are coextensive with constitutional due process requirements, only one analysis is necessary. *See Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (*citing* Ala. R. Civ. P. 4.2(b)) (stating that Alabama's long-arm statute (Ala. R. Civ. P. 4.2(b)) permits state and federal courts in Alabama to exercise personal jurisdiction "to the fullest extent constitutionally permissible")), and *Slocumb Law Firm, LLC v. Trollinger*, 2015 U.S. Dist. LEXIS 103547, at *5 (M.D. Ala. Aug. 7, 2015) (stating that the limits of Alabama's long-arm jurisdiction are coextensive with constitutional due process requirements). Accordingly, due process requires that (1) a defendant have "minimum contacts" with the forum state and that (2) a court's exercise of jurisdiction conform to "traditional notions of fair play and substantial justice." *Burnham v. Superior Ct. of Cal.,* 495 U.S. 604, 618 (1990).

When determining whether a Defendant's "minimum contacts" support personal jurisdiction in the forum, a court must consider the distinction between general and specific jurisdiction. *Slocumb*, 2015 U.S. Dist. LEXIS 103547, at *5. A Court may exercise "general jurisdiction" over a defendant when the defendant's continuous and

systematic contacts with the forum state are unrelated to the suit, while "specific jurisdiction" arises from the defendant's sporadic or limited contacts with the forum state at issue in the Complaint. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 nn. 8-9 (1984).

It is Plaintiff's burden to establish "that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). Because Plaintiff cannot establish either general or specific jurisdiction over Chain, as discussed below, this Court should dismiss this action against Chain for lack of personal jurisdiction pursuant to Rule 12(b)(2).

**1.    Chain is not at home in Alabama; therefore, no general jurisdiction exists.**

"The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292. (11th Cir. 2000). The United States Supreme Court recently reviewed the requirements for exercising general jurisdiction in *BNSF Ry. Co. v. Tyrrell, U.S.*, 137 S. Ct. 1549, 198 L. Ed. 2d 36 (2017), clarifying that a court may assert general jurisdiction over a foreign corporation when the corporation's affiliations with the state are so continuous and systematic as to render them "essentially at home" in the forum state. *Id.* at 1558-59. The Supreme Court explained in *BNSF* that the "paradigm" forums in which a corporate defendant is "at

home" are the corporation's place of incorporation and its principal place of business. *Id.* The Court noted that in an "exceptional case," a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation "essentially at home" in the forum. *Id.* The Court suggested that its decision in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) was an exemplary case. In *Perkins*, war had forced the defendant corporation's owner to temporarily relocate the corporation from the Philippines to Ohio, thus rendering Ohio the center of the corporation's wartime activities. As such, the Court found suit was proper in Ohio. But limited "in-state business does not suffice to permit the assertion of general jurisdiction over claims that are unrelated to any activity occurring in the forum state." *Id.*

In *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 874-75 (11th Cir. 2018), the 11th Circuit affirmed that the court lacked general jurisdiction over the corporate defendants, whose principal place of business and state of incorporation were outside the forum. The Court found the plaintiff's allegations of the corporate defendants' contacts with the forum, which included meetings in the forum and phone calls and emails made by the plaintiff in the forum to the defendants outside the forum, to be insufficient contacts to establish general jurisdiction over the corporate defendants. *Id.* at 875 (11th Cir. 2018) ("Because the allegations in the complaint do not demonstrate any facts that indicate the Gary Defendants are 'essentially at home' in the State of Georgia, general jurisdiction is improper.").

Chain is not "at home" in Alabama under the general jurisdiction analysis. Chain is not a resident of Alabama (Compl. ¶ 8). Therefore, Chain is not "at home" in Alabama. Moreover, Plaintiff alleges no facts to even suggest that Chain has any connections between himself and Alabama. This is likely because Chain does not have an office in Alabama, has not done business in Alabama, does not have an Alabama telephone listing, does not have an Alabama bank account, does not have real or personal property in Alabama, and has not been involved in any prior litigation in Alabama or availed himself of the Alabama courts. (Chain Affidavit/Declaration, ¶ ¶ 3-8). Rather, Plaintiff merely alleges that "all Defendants are subject to this Court's personal jurisdiction." (Compl. ¶ 17.) As such, there are no facts to suggest that Chain is "essentially at home" in Alabama.

Further, a court outside of the defendant's "home" states can only exercise general jurisdiction in rare circumstances. *Daimler*, 571 U.S. at 139 n. 19; *see, e.g., Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (holding that foreign defendant was subject to general jurisdiction in Ohio because the company's president temporarily relocated there, making Ohio the company's principal place of business). But this is not such an exceptional case – Plaintiff has not plead any facts suggesting that Chain has any contacts with Alabama, let alone contacts that are so substantial that Chain is essentially at home in the forum. Therefore, this Court cannot exercise general jurisdiction over Chain.

**2.    Chain lacks minimum contacts with Alabama; therefore, no specific jurisdiction exists.**

15

In a case premised on specific jurisdiction, a "defendant's contacts with the forum state must satisfy three criteria: [(1)] they must be related to the plaintiff's cause of action or have given rise to it; [(2)] they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and [(3)] they must be such that the defendant should reasonably anticipate being haled into court there." *Sloss*, 488 F.3d at 925 (internal quotation marks omitted). Additionally, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 & 1360 n.3 (11th Cir. 2006).

Here, Plaintiff's Complaint baldly concludes that "all Defendant are subject to this Court's personal jurisdiction." (Compl. ¶ 17). However, Plaintiff fails to allege any facts in support of such allegation, and likewise fails to allege any action taken by Chain in (or even related to) the State of Alabama. Even taking the allegations in the Complaint as true, as the Court must on a motion to dismiss, all such incidents occurred somewhere other than Alabama. Specifically, the Plaintiff alleges:

\* Defendant Chain Enterprises, LLC ("CEL" is a limited liability company formed under the laws of the State of Nevada. CEL resides at 3900 S. Hualapai, Suite 110, Las Vegas, Nevada 89147. . . CEL is also a foreign citizen. (Compl. ¶ 8).

\*    Chain was negotiating with Defendant Treis, who wanted to install WAO on their Whatsminers. (Compl. ¶ 62).

* According to Treis's directors, Chain tricked them into believing his entity, Chain Enterprises, LLC  ("CEL"), owned the firmware and Grams was a mere employee. (Compl. ¶ 70).

* Plaintiff, Chain, and/or CEL entered into a broker style arrangement in they would equally share all profits from any contract Defendant procured for Plaintiff's WAO2. (Compl. ¶ 220).

Each of the above events indicate Chain was located outside of Alabama and his activities occurred outside the state of Alabama. Even assuming Chain and/or CEL entered into a "broker style arrangement" with Plaintiff, based on the other allegations of Plaintiff's Complaint, any performance of that "arrangement" on Chain's part occurred outside the state of Alabama. (See Compl. ¶¶ 62, 70) Thus, Plaintiff has failed to allege that Chain had minimum contacts that would establish specific personal jurisdiction over him.

In fact, the only events alleged to have taken place in Alabama are Plaintiff's own actions. Specifically, Plaintiff alleges that he:

* Worked on WAO2 from his "personal site in Alabama" (Compl. ¶ 100); and

* Plaintiff received no direct compensation from Treis (Compl. ¶ 118), but rather Plaintiff affirmatively retained a portion of the cryptocurrency as it was mined (Compl. ¶ 50), and directed where the Dev Fee went and how it was managed (Compl. ¶ 88).

Although *Plaintiff* may have taken such actions in Alabama, "it is important to remember [for the purposes of identifying minimum contacts in determining personal

jurisdiction] that *the conduct at issue is that of the defendants*. No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc*., 207 F.3d 1351, 1356 (11th Cir. 2000) (emphasis supplied in *Ruiz*) (*citing Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Therefore, courts in Alabama must determine what a particular *defendant* did to purposefully avail himself "of the benefits of doing business in Alabama such that the notions of reasonableness and fairness are not offended by requiring [him] to defend [himself] in an Alabama court." *Ruiz*, 207 F.3d at 1356 (emphasis in the original). Here, Plaintiff has failed to allege any way in which Chain purposefully availed himself of the benefits of doing business in Alabama with respect to any of his thirteen causes of action.

Because Plaintiff can neither invoke RICO's nationwide service of process provision to establish jurisdiction over Chain, nor otherwise establish either general jurisdiction or specific jurisdiction over Chain under Alabama's long-arm statute, the Complaint should be dismissed as to Chain.

**II.    Venue is Improper in this District Under 28 U.S.C. § 1391; therefore, Plaintiff's Complaint Must Be Dismissed; in the alternative, the Case Should Be Transferred to the District of South Carolina.**

The standard for deciding a motion to dismiss for improper venue is very similar to the standard articulated above for deciding a Rule 12(b)(2) motion. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). The plaintiff carries the burden of showing that venue is proper in his chosen forum once the defendant contests

venue under Rule 12(b)(3). *Id.*; *Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171, 1174 (M.D. Ala. 2010). Even if the Court determines personal jurisdiction exists, venue may still be improper. *Graceland v. Plutus Enters. LLC*, 2022 U.S. Dist. LEXIS 75016, at *13 (M.D. Fla. Apr. 22, 2022). Here, venue is improper in this District for the reasons set forth below, thus the Court should dismiss this case as against Chain or, in the alternative, transfer this case to the District of South Carolina, where it could have originally been brought.

**A. Venue is improper under 28 U.S.C. § 1391(b)(2) because no substantial part of the events or omissions giving rise to the Complaint occurred in Alabama.**

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Defendant Chain resides in Wyoming, which would be the most convenient location for him, but the other defendants are not residents of Wyoming, so this section of 28 U.S.C. § 1391 appears to be inapplicable to this matter.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Plaintiff merely states venue is proper under Section 1391(b)(2). (Compl. ¶ 17). Venue is improper here, however, because no substantial part of the events or omissions giving rise to the Complaint occurred in this District or indeed in any District in Alabama.

In considering whether venue is proper under 28 U.S.C. § 1391(b)(2), "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Tognaci v. Ameris Bank*, 2023 WL 1788555 (S.D. Ala. Jan. 4, 2023) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)), *adopted,* 2023 WL 1786709 (S.D. Ala. Feb. 6, 2023). "Moreover, when determining whether venue is proper, courts must focus on the relevant activities of the defendants rather than the plaintiff." *Id.*

As previously set forth, even taking the allegations in the Complaint as true, the locations hosting a substantial part of the events that are the subject of this lawsuit occurred outside of Alabama. Plaintiff does not allege Chain conspired to steal his purported trade secret in Alabama, and the only reasonable inference is that any such conspiracy occurred either Wyoming, where Chain is located, in Nevada, where CEL is located, or wherever Chain's alleged co-conspirators were located. WAO2 was installed on the Treis' miners "*housed in Pennsylvania and South Carolina*" (Compl. ¶ 101, emphasis added), and any alleged failure to protect Plaintiff's purported trade secret occurred in *Pennsylvania* (Compl. ¶¶107-112, emphasis added). In focusing on the relevant activities of Chain, which all occurred outside the state of Alabama, Plaintiff has failed to show that substantial part of the events or omissions giving rise to his claims occurred in Alabama; therefore, venue is improper in this District and Plaintiff's Complaint should be dismissed under Rule 12(b)(3).

20

Further, although Plaintiff has asserted a Breach of Contract claim against Chain, he has failed to plead the existence of a valid contract between himself and Chain. His Complaint reads as if he isn't even certain he had a contract with Chain. Plaintiff states "Plaintiff, Chain, and/or CEL entered into a broker style arrangement . . ." (Compl. ¶ 220). Even if one is to assume a valid contract existed between Plaintiff and Chain, the performance and/or breach of said contract would have occurred outside Alabama, as Plaintiff's Complaint involves only allegations regarding a purported transaction with Treis Blockchain, LLC, a South Carolina company. Therefore, venue is improper in this District and should be dismissed under Rule 12(b)(3).

**B.  In the alternative, the Court should transfer this case to the District of South Carolina.**

Pursuant to 28 U.S.C. § 1404(a), venue may be transferred by the district court "[f]or the convenience of the parties and witnesses, in the interest of justice […] to any other district or division where it might have been brought." "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (internal citation omitted). "[T]he burden [is] on the defendant to demonstrate why the forum should be changed." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994) (internal citations omitted). While the purpose of the transfer statute is convenience afforded the parties and witnesses, the district court's power to transfer is "expressly

limited […] to those federal districts in which the action 'might have been brought.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*quoting* 28 U.S.C. § 1404(a)).

Therefore, the Court's analysis is a two-part inquiry. First, the Court must determine if the case could have been brought initially in the transferee court. Second, the Court must determine whether the factors of convenience and interests of justice under Section 1404 favor changing venue to the transferee court. *See A.J. Taft Coal Co., v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003) (internal citations omitted).

### 1. The case could have been brought in the District of South Carolina.

The first prong of the Court's analysis is to determine under Section 1404(a) if this case could have originally been brought in the District of South Carolina, where Chain proposes to transfer venue. Thus, the Court must not only verify that venue would have been proper in the District of South Carolina, but also, whether jurisdiction exists in that court.

The District of South Carolina would have original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) based on the diversity of citizenship between Chain, who is domiciled outside of Alabama (specifically in Wyoming) (Compl. ¶ 8), and Plaintiff who is domiciled in Alabama (Compl. ¶ 6 ), and the amount in controversy is in excess of $75,000.00 (Compl.¶ 16).

Venue in the District of South Carolina would have been proper if the case had initially been brought there. In diversity cases, venue is appropriate in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28

U.S.C. § 1391(b)(2). (Chain does not concede that South Carolina has personal jurisdiction over him, but, based on the Pleadings in this case, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred there.)

Here, there are sufficient factual allegations in the Complaint demonstrating that "a substantial part of the events" forming the basis of Plaintiff's claims occurred in the District of South Carolina. The basis of Plaintiff's claims is Defendants' alleged misappropriation of Plaintiff's "trade secret," WAO2. (Compl. ¶¶ 155-159). Because there are no allegations that Chain conspired to steal Plaintiff's purported trade secret in Alabama, a reasonable inference is that any alleged conspiracy likely took place in Wyoming, where Chain resides, Nevada, where CEL is located, or wherever CEL's alleged co-conspirators were located. Plaintiff further contends that WAO2, Plaintiff's purported trade secret, was installed on Treis's miners "housed in Pennsylvania and *South Carolina*" (Compl. ¶ 101, emphasis added).

For the reasons set forth above, Chain has met its burden under the first prong of Section 1404 to show that this case might have initially been brought in the District of South Carolina.

**2.      The convenience of the parties and witnesses, and the interests of justice, dictate that this case be transferred to the District of South Carolina.**

The second prong of the Court's analysis is whether transfer of venue promotes, on the whole, greater convenience and advances the interests of justice. 28 U.S.C. § 1404(a). The Eleventh Circuit has identified nine factors considered on a motion to transfer venue:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (internal citations omitted); *see also Madison Oslin, Inc. v. Interstate Res., Inc.*, No. 2:11-cv-01343-SLB, 2012 U.S. Dist. LEXIS 142082, at *51 (N.D. Ala. Sep. 30, 2012).

With regard to the first factor, Eleventh Circuit precedent holds that the plaintiff's choice of forum is "accorded . . . considerable deference," *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (citation omitted), and "'should not be disturbed unless it is clearly outweighed by other considerations.'" *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (*quoting Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981)). Here, however, as discussed in Section I.B., *supra*, the gravamen of the facts alleged against Chain in the Complaint occurred outside of Alabama, in either Wyoming, where Chain resides, Nevada, where CEL is located, or South Carolina or Pennsylvania. *See* Section I. *supra.* Therefore, deference to the Plaintiff's choice of forum is lessened. *See Madison Oslin,* at *54 (N.D. Ala. Sep. 30, 2012) ("In light of these competing factual allegations, deference for the initial forum based on plaintiffs' claimed harm in Alabama is lessened").

As discussed in Sections I and II, *supra*, the allegations in the Complaint, and Chain's evidentiary declaration make clear that all operative facts giving rise to this litigation occurred in either Wyoming, Nevada, South Carolina or Pennsylvania. Additionally, all sources of proof for Plaintiff's claims (such as the machines which housed WAO2), are located in South Carolina and Pennsylvania. (Treis Dec. ¶¶ 10-11.) Defendants Smith, Pence, Bolick and Lamberti also reside in South Carolina. (Compl.¶¶ 11-12, 14-15).

Aside from Plaintiff's own choice of forum, "the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Yaeger v. Wyndham Vacation Resorts, Inc.*, 2013 U.S. Dist. LEXIS 204641, at \*4-6 (N.D. Ala. Aug. 12, 2013) (internal citations omitted). Here, as discussed in Plaintiff's Complaint and Chain's affidavit, all known witnesses other than Plaintiff reside outside of Alabama, in the states of Wyoming, Nevada, South Carolina, and Pennsylvania. (Compl. ¶¶ 8, 13). Moreover, all witnesses known to Chain would be beyond the Court's subpoena power if this matter were to be litigated in Alabama. *See Madison Oslin*, 2012 U.S. Dist. LEXIS 142082, at \*62-63 ("If this case remains in the Northern District of Alabama, and assuming the defendants' witnesses do not come willingly, the only witnesses the court can compel to testify are the named parties and plaintiffs' principals. However, if the case is transferred to Maryland, there are sixteen identified witnesses who either live in the District or are subject to subpoena there. Because Corrpack's facility is located in Maryland and the greater number of non-party witnesses reside in Maryland and work for

or are former employees of defendants, the availability of process to compel these witnesses tips in favor of the transferee forum"). In fact, the only individual for whom litigation in Alabama is convenient is Plaintiff.

For the reasons set forth above, the majority of factors at the second prong of the Court's analysis weigh in favor of transferring this case to the District of South Carolina. Alternatively, the second prong of the Court's analysis weigh in favor of transferring this case to the District of South Carolina.

### III.    Plaintiff's Complaint Should Be Dismissed Based on *Forum Non Conveniens.*

The doctrine of *forum non conveniens* provides an additional basis for the Court's dismissal of this action against Chain. This Court has broad discretion to dismiss an action under the doctrine of *forum non conveniens* where the "private interest facts" justify dismissal. *King v. Cessna Aircraft Co.,* 562 F.3d 1374 (11th Cir. 2009). Those private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process  for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1946).

Here, these factors overwhelmingly favor dismissal of this action. First, the "sources of proof," namely the machines on which WAO2 was installed, are located in Pennsylvania and South Carolina. (Compl. ¶ 101), and the possibility of view of the

machines would necessarily have to occur in South Carolina or Pennsylvania. Further, the nine named defendants reside in states outside of Alabama (Compl. ¶¶ 7-15), thus the majority of non-party fact witnesses also likely reside outside of Alabama. There is a strong likelihood, then, that this Court lacks the ability to compel the testimony of any of these non-party witnesses in Alabama. Accordingly, the private-interest factors considering the availability and expenses of witnesses likewise favor dismissal of this action.

For the reasons set forth above, the doctrine of *forum non conveniens* provides an additional basis for dismissal of this action against Chain.

## IV.    Counts 1, 5, 6, 7, and 10 Must Be Dismissed For Failure to State a Claim.

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2)." *Gulf S. Communications, Inc. v. Woof, Inc.*, 2021 WL 2405199, at *1 (M.D. Ala. June 11, 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Whether a complaint states a plausible claim for relief, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "The plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* This standard "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* "Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the 'grounds' for his entitlement to relief, and a 'formulaic recitation of the elements of a cause of action will not do.'" *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956038, at *2 (S.D. Fla. Dec. 27, 2022) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## A. Count 5 Should Be Dismissed as to Chain Because it Makes No Allegations Against Chain

Count 5 alleges a Conspiracy to Commit Theft of Trade Secrets in Violation of 18 U.S.C. § 1832(A)(5) against all Defendants but contains no allegations specifically describing any conduct by Chain. Instead, this Count states:

193.    Plaintiff brings this claim against all Defendants.

194.    Treis and each of its Managing Directors, as owners for their personal benefit, conspired to misappropriate WAO2.

195.    Each Managing Director, Treis, and Stronghold conspired to continue using WAO2 in violation of Plaintiff's ownership rights.

196.    Each Managing Director, Treis, and Stronghold conspired to block Plaintiff's Developer Fee.

197.    Each Managing Director, Treis, and Stronghold performed acts to effect the object of the conspiracy.

Additionally, the *ad damnum* clause following Count V of Plaintiff's Complaint identifies Defendants Stronghold, Treis, Cevon, Pence, Bolick, Smith, and Lambretti by name, but does not identify Chain. Because Chain is not identified and no acts or omissions of Chain are identified, this Count should be dismissed as to Chain for a failure to state a claim.

**B.    Counts 1 and 5 must be dismissed for failure to sufficiently allege reasonable secrecy measures.**

Counts 1 and 5 of Plaintiff's Complaint purport to state claims for "Willful and Wanton Misappropriation Pursuant to 18 U.S.C. § 1836." Because Plaintiff has failed to sufficiently allege that he took reasonable measures to protect the secrecy of WAO2, Counts 1 and 5 should be dismissed.

"To plead a violation of the DTSA, a plaintiff must allege that he '(i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff, (b) *for which the plaintiff took reasonable measures to keep secret*, and (ii) the defendant used and/or disclosed that information despite (iii) a duty to maintain its secrecy.'" *Resnick*, 2019 WL 2092567, at *5 (*quoting Trinity Graphic, USA, Inc.*, 320 F. Supp. 3d at 1293) (emphasis added). "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1222 (N.D. Ala. 2021) (citations omitted); *Am. Red Cross v. Palm Beach Blood Bank, Inc.* 143 F.3d 1407, 1410 (11th Cir. 1998). "Reasonable

29

efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *Id.* (citations omitted). To survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above a speculative level." *Martin v. Auburn Univ. Montgomery*, 2012 WL 787047, *1 (M.D. Ala. Mar. 12, 2012). Here, Plaintiff has failed to raise a right to relief above a speculative level, because the Complaint is replete with ways in which Plaintiff failed to take measures to keep WAO2 secret.

In *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956038 (S.D. Fla. Dec. 27, 2022), the plaintiff's predecessor, Pabellon, entered a business relationship with the Trigon Defendants relating to Pabellon's communications technology. *Id.*, at *1. Pabellon and the Trigon Defendants executed a mutual non-disclosure and confidentiality agreement. *Id.* To assist the Trigon Defendants with finding potential business partners for Pabellon's technology, Pabellon gave them a Demo Kit which contained confidential, proprietary information (trade secrets) that could be reverse engineered. The Trigon Defendants gave the Demo Kit to the Point Blank Defendants, a potential customer. Plaintiff brought an action against the Point Blank and Trigon Defendants for violation of the DTSA and the Florida Uniform Trade Secrets Act. *Id.* at *2.

The Court granted the Point Blank Defendants' motion to dismiss Plaintiff's trade secrets claims for failure to take reasonable steps to safeguard its alleged trade secrets, reasoning:

> Defendants argue that the allegations in the Second Amended Complaint establish that ***Plaintiff was aware of and consented to Defendants' possession of the Demo Kit; yet, Plaintiff took no steps to protect its trade secrets while in***

***Defendants' possession.*** In response, Plaintiff asserts several motives for not taking any steps to protect its trade secrets from Defendants prior to asking for the return of the Demo Kit on October 16, 2020. ***Plaintiff states that when it learned that Defendants were in possession of the Demo Kit, Defendants were in negotiations to enter into a partnership with Plaintiff and Plaintiff did not want to disrupt those efforts. […]***

Plaintiff's arguments are unavailing. First, Plaintiff affirmatively pled that it took reasonable steps to safeguard its trade secrets as between itself and the Trigon Defendants because it turned over the Demo Kit after the Trigon Defendants signed the NDA. Plaintiff relies on *Disability Law Claims, P.A. v. IM Sols., LLC*, 2014 WL 12589140 (S.D. Fla. Sept. 4, 2014), for the proposition that Plaintiff took reasonable steps that were simply circumvented by the Defendants. However, the facts in *Disability Law Claims* are not analogous to the instant case. Here, Defendants were not a party to the NDA; thus, there can be no reasonable expectation that Defendants were bound by the NDA, let alone needed to circumvent the NDA.

Plaintiff has not pled that it took any steps to safeguard its trade secrets as between itself and Defendants. Plaintiff points instead to its motives. Plaintiff cites to no authority for its proposition that a motive for not instituting a safeguard of trade secrets absolves Plaintiff of the responsibility to protect its trade secret. ***While Plaintiff was aware that Defendants had possession of the Demo Kit, the only step Plaintiff took to protect its trade secrets was to ask Defendants to return the Demo Kit*** *after Defendants told Plaintiff that they would be putting the business discussions with Plaintiff on hold until Plaintiff and the Trigon Defendants resolved their issues.* ***There are no allegations of fact that Plaintiff attempted to take any measures, let alone reasonable measures, to protect Plaintiff's trade secrets vis-à-vis Defendants. See Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003) (dismissing a trade secret claim because the complaint stated only that the parties had an "expectation that [the idea] would remain confidential");** *In re Maxxim Med. Grp., Inc.*, **434 B. R.**

31

> 660, 691 (Bankr. M.D. Fla. 2010) ("**Disclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret.**"). Accordingly, Plaintiff has failed to adequately plead claims for misappropriation of trade secrets against Defendants, and Counts III, IV, and V are dismissed with prejudice as against Defendants." Id. at *12-15 (S.D. Fla. Dec. 27, 2022).

*Id.* at *4-5 (emphasis added); *see also Temurian v. Piccolo*, 2019 WL 1763022, at *11 (S.D. Fla. Apr. 19, 2019) (dismissing trade secrets claim where password-protecting computer network and limiting employee access were undermined by lack of a confidentiality agreement), *reh'g denied,* 2019 WL 2491781 (S.D. Fla. June 14, 2019); *Protegrity Corp. v. Elavon Inc.*, (licensing agreement may constitute reasonable step if it contains confidentiality provision); 2018 WL 8949789, at *3 (N.D. Ga. Aug. 21, 2018).

The Court in *Physiotherapy Assocs. v. ATI Holdings, LLC* discussed what constitutes reasonable measures to protect secrets of a corporate nature (client lists, financial data, and business expansion plans). *Physiotherapy Assocs., v. ATI Holdings, LLC*, 592 F Supp. 3d 1032, 1034-35 (N.D. Ala. 2022) (examining ATSA which also requires reasonable efforts to maintain secrecy to establish a trade secret), *appeal dismissed,* 2022 WL 2708913 (N.D. Ala. May 9, 2022). At the motion to dismiss stage, the court ruled Physiotherapy had not sufficiently alleged it used reasonable efforts to keep information secret where "the non-solicitation agreement made no reference to trade secrets or confidential information" and where filing a lawsuit for disclosing confidential information in a memo "was not a precautionary measure that prevented [Defendant] from disclosing information." *Id.* at 1040.

Later, at the summary judgment phase, the Court rejected Physiotherapy's argument that its use of a "secured, password-protected network and limiting information to a few executives and managers" constituted reasonable efforts:

> Physiotherapy first relies on its password-protection efforts. But this court's research indicates that ***the use of password-protected servers shows reasonable secrecy only when paired with other substantial efforts***. For example, in *Unisource Worldwide*, the court found that the plaintiff company exercised reasonable secrecy when the company "required passwords on computers *and marked information as confidential*." 199 F Supp. 2d at 1210 (emphasis added). And another court found reasonable secrecy when the company password-protected its computer systems, required employees to sign ethics policies about trade secret information, and entered into confidentiality agreements with any competitors who saw the information. *Movie Gallery US, LLC v. Greenshields*, 648 F/ Supp. 2d 1252, 1264 (M.D. Ala. 2009). Physiotherapy presents no evidence that it employed such additional protections here.
>
> ***Persuasive authority also indicates that the use of password protection shows only a minimal effort at secrecy***. As one court pointed out, "[i]f a basic computer-login password were enough, then every document stored on a company device would potentially be protectible." *Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 397 (D. Minn. 2020). And another court found that restricting access by requiring computer passwords is merely a "normal business practice[ ] in any business." *Maxpower Corp. v. Abraham*, 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008).

*Id.* at 1042-1043 (***bold italics*** emphasis added). The Court also pointed to the secrecy efforts that Physiotherapy "did not undertake." *Id.* at 1042. "As stated above, *confidentiality agreements exist in nearly every case where Alabama courts have found reasonable secrecy efforts, and the lack of such agreements is a common thread in cases*

*finding the opposite.*" *Id.* (emphasis added); *see also J.H. Wright Associates, Inc. v. Engerson*, 2000 WL 1848135 (S.D. Ala. 2000) (plaintiff failed to take reasonable measures despite written policy manual generally requiring confidentiality, locking premises at night, having security system, and using non-networked computer where part-time contract employee making drawings never signed non-compete or confidentiality agreement, was free to work with competitors, drawings were not marked confidential, and plaintiff shared information with customers where necessary).

Here, Plaintiff did not undertake reasonable measures to keep WAO2 secret. Though Plaintiff alleges he used a password-protected computer in his *own* secured facility, he failed to take other substantial efforts to protect the secrecy of WAO2. As the plaintiff in *Surfaces,* 2022 WL 18956038 (S.D. Fla. 2022), here, Plaintiff was aware of and consented to Treis being in possession of WAO2, yet did not take reasonable actions to protect WAO2's secrecy while Treis was in possession of WAO2. (Compl. ¶¶ 64-67; 89). Instead, although Plaintiff was aware Treis's machines were housed in Pennsylvania and South Carolina (Compl. ¶ 101), and Plaintiff alleges he "insisted" Treis's use be password protected, locked and on secured devices using WAO2 (Compl. ¶ 104), Plaintiff, by his own admission, did not check to see if Treis was taking measures to protect devices using WAO2 until September 2021, more than a year after Plaintiff began customizing WAO2 for Treis. (Compl. ¶ 107). Plaintiff's delay is unreasonable in light of Plaintiff's admitted knowledge that his prior WAO firmware had not been adequately kept secret. (Compl. ¶ 55). There is nothing in Plaintiff's Complaint to indicate he

entered into any nondisclosure or confidentiality agreements with Chain concerning use of WAO2. Rather, Plaintiff alleges he entered a Development Fee agreement with Treis (Compl. ¶ 63), but does not allege that this agreement contained any confidentiality provisions or agreements to protect the secrecy of WAO2. *See Physiotherapy Assocs*., 592 F. Supp. 3d at 1042 ("confidentiality agreements exist in nearly every case where Alabama courts have found reasonable secrecy efforts, and the lack of such agreements is a common thread in cases finding the opposite").

Further, Plaintiff admits that he worked with Defendant Chain to broker a deal with Treis concerning WAO2 *even though Plaintiff knew Chain had mishandled the secrecy of WAO* (Compl. ¶¶ 54, 55, 62, 64). Chain was involved with negotiating the use of Plaintiff's second version of the firmware, WAO2, with Treis (Compl. ¶ 68). Subsequently, Plaintiff informed Treis he was no longer working with Chain and was not comfortable with "the way things were being handled." (Compl. ¶¶ 86, 87). There is nothing in Plaintiff's Complaint to indicate he took *any* measures to ensure that Chain, who was helping negotiate the use of WAO2 by Treis and had botched the secrecy of WAO, kept WAO2 secret. There is likewise nothing in Plaintiff's Complaint to indicate he imposed any confidentiality or nondisclosure obligations on Chain or asked him to keep WAO2 secret. Under these circumstances, Plaintiff did not take reasonable measures to keep WAO2 secret.

In addition to the preceding, even though Plaintiff alleges that Chain misappropriated his trade secrets, specifically as they related to WAO2, Plaintiff

indicates that he continued to work with Treis on WAO2 *after* cutting ties with Chain and CEL. (Compl. ¶ 86-92). Plaintiff states "Chain and CEL purported to deliver, send, or convey WAO2 to Cevon and/or Treis without authorization." (Compl. ¶ 165). Yet, Plaintiff continued to work with Treis on WAOS. In other words, Plaintiff has not indicated *how* Chain misappropriated trade secrets when he himself was still in control of those secrets.

Finally, Plaintiff *also* shared WAO2 with a third party, when he shared a workaround to physical problems with the miners' use of WAO2 with Treis's metal sheet fabricator. (Compl. ¶¶ 95-98). Unsurprisingly, there is nothing in Plaintiff's Complaint alleging he took any measures to ensure that this third party kept WAO2 secret, in the form of a non-disclosure or confidentiality agreement, or otherwise. "Disclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." *In re Maxxim Medical Group, Inc.*, 434 B.R. 660, 691 (Bankr. M.D. Fla. 2010) (*citing Ruckelshaus*, 467 U.S. at 1002, 104 S. Ct. 2862).

Because Plaintiff has failed to allege facts sufficient to show he took reasonable efforts to protect the secrecy of WAO2, Plaintiff has not established that a trade secret exists under the DTSA and Alabama law. Therefore, Counts 1 and 5 of Plaintiff's Complaint should be dismissed.

**C.    Count 5 of Plaintiff's Complaint should be dismissed because there is no private cause of action pursuant to 18 U.S.C. § 1832.**

Count 5 of Plaintiff's Complaint, "Conspiracy to Commit Theft or Trade Secrets in Violation of 18 U.S.C. § 1832(A)(5)," should be dismissed where Section 1832 is a criminal statute and does not provide a private cause of action. *See Smith v. JP Morgan Chase,* 837 Fed. Appx. 769, 769 (11th Cir. Feb. 24, 2021) ("criminal statutes do not provide for private civil causes of action, so it follows that Smith's Title 18 allegations are also without merit because those criminal statutes do not provide for private causes of action") (unpublished)[2]. "Section 1832 is a criminal statute that establishes a crime and specifies punishment." *Vest Safety Med. Servs. v. Arbor Envtl., LLC*, 2020 WL 4003642, at *3 (S.D. Tex. Jul. 15, 2020); 18 U.S.C. § 1832(a)(5) (punishment is fine, imprisonment, or both); *Zegato Travel Solutions, LLC v. Bailey*, 2014 WL 7365807, at *2 (D. Md. Dec. 22, 2014) (18 U.S.C. § 1832 "is the federal criminal statute for the theft of trade secrets").

"In the Economic Espionage Act of 1996, Congress criminalized the theft of trade secrets, as well as attempts and conspiracies to steal trade secrets. 18 U.S.C. § 1832(a). This criminal provision 'does not provide for a private right of action to redress the trade secret thefts that it proscribes.'" *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021) (*quoting Steves and Sons, Inc. v. JELD-WEN, Inc*., 271 F. Supp. 3d 835, 841 (E.D. Va. 2017)). A violation of Section 1832 is punishable by a fine and/or imprisonment "not more than 10 years." 18 U.S.C. § 1832(a)(5). Thus, conspiracy to steal trade secrets, in violation of 18 U.S.C. § 1832(a)(5),

---

[2]  Fed. R. App. P. 32.1(a) (permitting citations of unpublished opinions issued on or after January 1, 2007).

is a criminal violation to be prosecuted by the government. *See, e.g., United States v Williams,* 526 F.3d 1312 (11th Cir. 2008) (defendants indicted for violations of Sections 1832(a)(2), (3), and (5); *United States v. Xiaorong Yu*, 2019 WL 2426659 (E.D. Tenn. Jun. 10, 2019); *United States v. German*, 2020 WL 6143559 (S.D. Ga. Oct. 19, 2020). A private citizen, such as Plaintiff, cannot commence criminal proceedings on his own and has no right to institute criminal prosecutions in federal court. *Linda R.S. v. Richard D,* 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L.Ed.2d 536 (1973); *Otero v. United States Attorney General*, 832 F.2d 141, 141 (11th Cir. 1987).

Although Congress enacted the DTSA in 2016 to allow a civil private right of action (18 U.S.C. § 1836), a plaintiff cannot automatically enforce the criminal statute "in the absence of some expression of Congressional intent." *Carey v. Jones*, 2017 WL 559588, at *3 (M.D. Ala. Jan. 18, 2017), *report and recommendation adopted*, 2017 WL 561813 (M.D. Ala. Feb. 10, 2017); *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002); *Power*, 2021 WL 3856459, at *10.*Vest Safety*, 2020 WL 4003642, at *3; *Hopkins v. Rich*, 2015 WL 1400837, at *7 (S.D. Ala. Mar. 3, 2015). Congress did not create a private cause of action to enforce a claim for conspiracy under Section 1832. *Stevens and Sons, Inc. v. JELD-WEN, Inc*., 271 F. Supp. 3d 835, 840-43 (E.D. Va. 2017) (holding that a civil plaintiff could not bring a claim for conspiracy to violate the DTSA because Congress did not expressly provide the civil cause of action); *Power*, 2021 WL 3856459; *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash. 2021) ("the weight of authority tips against the viability of conspiracy claims based on

the misappropriation of trade secrets under the DTSA"); *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (agreeing that 18 U.S.C. § 1832(a)(5), which criminalizes conspiracy to violate the DTSA, does not provide a private right of action); *Vest Safety*, 2020 WL 4003642, at *3 (courts "refer to a trade secrets claim as 18 U.S.C. § 1832 *et seq.* because the DTSA amended Title 18 from sections 1832 to 1838, not because a private cause of action is located in 1832").

Further, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. *Statutory intent on this latter point is determinative.* Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Love*, 310 F.3d at 1352 (*quoting Sandoval*, 532 U.S. at 286-87, 121 S. Ct. at 1519-1520) (emphasis in original). 18 U.S.C. § 1832 does not create a private remedy. While the only remedy under Section 1832 is a fine, imprisonment, or both, Plaintiff seeks the following damages in Count 5: "(a) damages for his actual loss caused by Defendants' misappropriation of the trade secrets; (b) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or (c) alternatively, damages caused by the misappropriation for a reasonable royalty for Defendants' unauthorized disclosure or use of the trade secrets", as well as "exemplary damages".

18 U.S.C. § 1832(a)(5) displays no intent to create a private cause of action; therefore, Plaintiff is not entitled to relief under 18 U.S.C. § 1832(a)(5), and Count 5 of

his Complaint should be dismissed. *Gulf S. Communications*, 2021 WL 2405199, at *1 (must state claim for relief that is plausible on its face).

**D.     Count 6, Plaintiff's RICO claim, should be dismissed where Plaintiff has failed to meet the heightened pleading requirement of Rule 9(b).**

As set forth in Section I.A., *supra,* Plaintiff's conclusory allegations in his RICO claim that Chain engaged in a pattern of racketeering activity of misappropriation, use and fraud, do not meet the required specificity to state a claim under RICO. *See Ambrosia*, 482 F.3d at 1316 (RICO claims based on fraud must meet Rule 9(b) heightened pleading standard); *Cruz*, 574 F. Supp. 2d at 1230 (heightened standard also applies to non-fraud claims based on same misrepresentation). Plaintiff's allegations fail to inform each of the nine defendants of the nature of each defendant's alleged participation in the alleged wrongdoing. *See Ambrosia*, 482 F.3d at 1316-17. Because of his failure to answer the "who, when, where, how, and why with sufficient specificity as to the RICO claim[s]," Count 6 of Plaintiff's Complaint must be dismissed. *See DePaola*, 2006 WL1181311, at *12.[3]

---

[3] Although unnecessary to address at this juncture because Plaintiff fails to meet the required specificity of a RICO claim, Chain points out that Count 6 should also be dismissed for failing to state sufficient facts to establish any of the following required elements of a RICO claim: (1) the operation or management (2) of an enterprise (3) through a pattern of (4) racketeering activity that included at least two racketeering acts. *Ray*, 767 F.3d at 1224. 18 U.S.C. § 1836 is not in the list of violations that can form the basis of a RICO claim, "[c]onsequently a defendant's repeated use of a misappropriated trade secret will not constitute a pattern of racketeering activity for the purpose of RICO." 3 Milgrim on Trade Secrets § 13.03 (citations omitted); *ESPOT, Inc. v. Myvue*, 492 F.Supp. 3d 672, 694 (E.D. Tex. 2020); *Crossborder Sols. v. Macias, Gini & O'Connell, LLP*, 2022 WL 562934 (S.D.N.Y. Feb. 23, 2022). Fraud, alone, is also not a racketeering activity under RICO. 18 U.S.C. § 1961(1); *Friedlander v. Nims*, 571 F.Supp. 1188, 1194 (N.D. Ga. 1983), *aff'd*, 755 F.2d 810 (11th Cir. 1985); *Calmes v. Boca W. Country Club, Inc.*, Case No. 9:17-CV-80574 (S.D. Fla. Oct. 13, 2017).

**E.      Plaintiff's Unjust Enrichment Claim, Count 7, Should Be Dismissed as to Chain Because it Makes No Allegations Against Chain**

Count 7 alleges Unjust Enrichment against all Defendants but contains no allegations specifically describing any conduct, acts, omissions, or enrichment by Chain. Instead, this Count states:

207.    Plaintiff brings this claim against all Defendants.

208.    Defendant Treis received hundreds of hours of Plaintiff's work without compensating him for same.

209.    Defendant Treis sold the machines enhanced by WAO2 for several million dollars.

210.    Without Plaintiff's code and optimization work, Treis would not have been able to sell the machines, as they would not have functioned as the contract required.

211.    Stronghold deployed Plaintiff's code to collect sybercurrency without compensating him.

212.    There are *de minimus* expenses for the mining of the cryptocurrency.

213.    Treis' Managing Directors accordingly passed the substantial profits directly on to themselves.

214.    All Defendants have received benefits, as stated above.

215.    All Defendants have been unjustly enriched at Plaintiff's expense.

Because Chain is not identified and no acts or omissions of Chain are identified and no explanation of how Chain was unjustly enriched at Plaintiff's expense are enumerated, this Count should be dismissed as to Chain for a failure to state a claim.

**V. Count 10 of the Complaint is Preempted by the ATSA and Therefore Must Be Dismissed for Failure to State a Claim.**

Plaintiff's claims against Chain for Fraudulent Misrepresentation (Count 10) is premised on the same facts as Plaintiff's Misappropriation of Trade Secret claim (Counts 1). As such, Count 10 is preempted by the Alabama Trade Secrets Act, Ala. Code § 8-27-1 et seq ("ATSA") and accordingly, must be dismissed.

The ATSA "is modeled after and closely parallels the Uniform Trade Secrets Act ["UTSA"]." *Gulf*, 2021 WL 2405199, at *2 (quoting *Parker*, 2020 WL 3972761, at *11 & n.9). Further the "ATSA's statutory language is 'nearly identical to that in the DTSA.'" *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1221 (N.D. Ala. 2021) (quoting *Parker v. Petrovics*, 2020 WL 3972761, at *4 (N.D. Ala. July 14, 2020). The ATSA protects a trade secret from disclosure or unauthorized use by another, and a person is liable for misappropriation if:

> (1) That person discovered the trade secret by improper means; (2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other; (3) That person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances which violate the provisions of (1) or (2), above; or (4) That person learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake.

42

Ala. Code § 8-27-3.

Common law torts are preempted by the ATSA when the tort claim is based on the same or similar facts giving rise to a claim under the ATSA. *See Gulf*, 2021U.S. Dist. LEXIS 109963, at *13-22; and *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019); *see also Hauck Manufacturing Co. v. Astec Industries, Inc.*, 375 F. Supp.2d 649, 654 (E.D. Ten. 2004) ("The USTA has been uniformly interpreted to preempt previously existing misappropriation of trade secret actions, whether statutory or common law . . . . Courts are also in general agreement the USTA"s preemptive force reaches at least some additional causes of action."). The ATSA "is intended to both codify and to modify the common law of trade secrets in Alabama." ATSA, Comment, § 8-27-6. As such, a plaintiff cannot pursue both statutory and common law theories of recovery for a defendant's alleged "misappropriation of 'trade secrets' or confidential documents." *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991) (interior citations and quotations omitted). Thus, "any common law tort claim that, whatever its name, provides a theory of recovery for the misappropriation of a trade secret is preempted by [the] ATSA." *Arkema*, at 1194. At bottom, "[t]he issue is whether the tort claim is an attempt to recover for wrongful appropriation of the same commercially valuable item as the commercially valuable trade secret." *Id*., at 1195.

Plaintiff's Fraudulent Misrepresentation claim (Count 10) is based on the same facts underlying his Trade Secrets claim (Count 1) and is therefore preempted by the ATSA. "[T]he ATSA preempts not only common law claims 'specifically alleging the

misappropriation of trade secrets but also other causes of action based on the same underlying facts'" *Gulf*, 2021 U.S. Dist. LEXIS 109963. *15 (*citing Madison Oslin, Inc.*, 2012 U.S. Dist. LEXIS 142082, 2012 WL 4730877, at *6).

In *Madison Oslin*, the court dismissed the plaintiff's misrepresentation claim because the factual allegations underlying the misrepresentation claim merely "repeat the same theory plaintiffs use in support of their ATSA claim". *Id.* at *29. Here, as in *Madison Oslin*, the "misrepresentations" Chain is alleged to have made in Count 10 are based on Chain misrepresenting to Treis that it owned WAO2, which is something Plaintiff would not even have standing to bring a claim for because the representations were not made to Plaintiff. (Compl. ¶ ¶ 234-235).

As such, in Count 10 Plaintiff likewise essentially repeats "the same theory" he uses to support his Trade Secrets claims, as displayed below:

Because Count 10 for Fraudulent Misrepresentation is premised on Plaintiff's Misappropriation of Trade Secrets claim, Count 10 is therefore preempted by the ATSA. Accordingly, Count 10 should be dismissed.

**VI. Alternatively, 10 of the Complaint is Barred by the Applicable Statute of Limitations and Therefore Must Be Dismissed for Failure to State a Claim.**

When federal jurisdiction is founded upon diversity of citizenship, the law of the forum state provides the appropriate statute of limitations. *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280 (11th Cir. 2003). Alabama law determines when the applicable statute of limitations begins to run, but "federal law determines whether the evidence supporting

this starting date suffices to entitle the defendant[s] to summary judgment." *Bernard Schoninger Shopping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp.*, 102 F.3d 1173, 1177 (11th Cir. 1997).

It is undisputed that a two-year statutory limitations period applies to Plaintiffs' fraud claim. Ala. Code § 6-2-38(l); *Kelly v. Conn. Mut. Life Ins. Co.*, 628 So. 2d 454, 460 (Ala. 1993). That being said, in Alabama, causes of action for fraud do not accrue "until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6–2–3. Section 6-2-3 of the Alabama Code tolls the statute of limitations for causes of action that were fraudulently concealed from the aggrieved party. *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010). More specifically, Alabama law tolls the limitations period for a cause of action until the plaintiff actually discovers the fraud or discovers facts that would alert a reasonable person to the possibility of fraud. *Wheeler v. George,* 39 So. 3d 1061, 1081 (Ala. 2009); *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689 (Ala. 2000).

In other words, "the limitations period begins to run when the plaintiff [is] privy to facts which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 237 (Ala. 2014) (quotations and citations omitted); *see also Jefferson County Truck Growers Ass'n v. Tanner*, 341 So.2d 485, 488 (Ala. 1977) ('Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were

known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.')."

The question of when a party discovered, or should have discovered, the fraud is normally a question for the jury. *Kelly*, 628 So. 2d at 458 (citing *Vandegrift v. Lagrone*, 477 So. 2d 292, 295 (Ala. 1985)). There are times when this question is removed from the purview of the jury, however. "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases in which the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Hicks v. Globe Life & Accident Ins. Co.*, 584 So.2d 458, 463 (Ala. 1991) (emphasis in original) (overruled on other grounds).

Here, Plaintiff's Complaint indicates that "[i]n April 2021 Grams announced that he was not comfortable with the way things were being handled" and "[h]e told Treis that he suspected Chain was in breach of their agreement and that he would no longer be working with Chain." (Compl. ¶¶ 86-87). This indicates that Plaintiff actually knew of facts that would have put a reasonable person on notice of fraud. Plaintiff's Complaint was not filed until May 4, 2023, more than two years after April 2021. Therefore, Plaintiff's fraudulent misrepresentation claim is barred by the applicable statute of limitations.

## **CONCLUSION**

For the reasons set forth above, Chain respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In

addition, Chain respectfully requests this Court dismiss Plaintiff's Complaint pursuant to

Rule 12(b)(3) for improper venue or *forum non conveniens*; or in the alternative, transfer

this case to the District of South Carolina. If the Court does not dismiss this case under

Rule 12(b)(2) or (3), Chain respectfully requests the Court dismiss Counts 1, 5, 6, 7, and

10 for failure to state a claim under Rule 12(b)(6).


Respectfully submitted,

*/s/ Clifton E. Slaten*
**CLIFTON E. SLATEN (ASB-4091-N73C)**
**ATTORNEY FOR CHAIN ENTERPRISES,**
**LLC and JOHN CHAIN**


**OF COUNSEL:**
**SLATEN LAW, P.C.**
**7027 Halcyon Park Drive**
Montgomery, Alabama   36117
(334) 396-8882 Telephone
(334) 398-8880 Facsimile
cslaten@slatenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com

Joshua J. Jackson
SAMFORD & DENSON, LLP
P.O. Box 2345
Opelika, AL 36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com

*/s/ Clifton E. Slaten*
**Of Counsel**