**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK GRAMS,<br>An individual Alabama citizen, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Civil Action No.:**<br>**3:23-CV-00299-RAH** |
| TREIS BLOCKCHAIN, LLC,<br>CHAIN ENTERPRISES, LLC,<br>CEVON TECHNOLOGIES, LLC,<br>STRONGHOLD DIGITAL MINING,<br>LLC, DAVID PENCE, MICHAEL<br>BOLICK, SENTER SMITH,<br>BRIAN LAMBRETTI, AND<br>JOHN CHAIN, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

**DEFENDANTS' MOTION TO TRANSFER OR ALTERNATIVELY**
**TO DISMISS PURSUANT TO RULE 12(b)(2)**

---

## <u>INTRODUCTION</u>

The appropriate forum for this litigation is the District of South Carolina.

Transferring this case to that District would resolve all of the procedural issues that

have been raised by the defendants bringing this motion (the "Defendants"). During

the October 2 hearing, each of the Defendants acknowledged, through their

counsel of record, that personal jurisdiction and venue would be proper in the

District of South Carolina because each of the Defendants either reside in that

District or consent to jurisdiction and venue within that District. Therefore,

Defendants Treis Blockchain, LLC ("Treis"), Cevon Technologies, LLC ("Cevon"), Stronghold Digital Mining, LLC ("Stronghold") (collectively, the "Corporate Defendants"); Michael Bolick, Brian Lamberti, David Pence, and Senter Smith (collectively, "Treis Directors"[1]) (collectively, the "Individual Defendants") respectfully request that the Court transfer this case to the District of South Carolina pursuant to 28 U.S.C. § 1406 for improper venue and/or 28 U.S.C. § 1404 for convenience of the parties and witnesses.

If this Court does not transfer the case, it must then determine, on a defendant-by-defendant basis, whether the case should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and/or 12(b)(5) for improper service in the cases of Bolick and Cevon. If the Court finds that both jurisdiction and service are proper, the Court must then determine whether each of the Counts specifically alleged against each Defendant should be dismissed pursuant to Defendants' Rule 12(b)(6) motion filed contemporaneously herewith.

Transfer of this case is warranted because it (a) provides an efficient manner to resolve the jurisdictional and venue issues raised by each Defendant, and (b) serves the interests of justice by providing a more convenient forum for the vast majority of the parties and witnesses involved in this dispute.

---

[1] The Amended Complaint incorrectly refers to Defendant Lamberti as a "member" of Treis when, as Lamberti's Declaration in Support of this Motion states, Lamberti is an *employee* of Treis, not a member. *See* Lamberti Dec. ¶ 6. For purposes of this Motion, however, Lamberti is referred to collectively with Bolick, Smith and Pence as a "Treis Director."

## ANALYSIS

**I.    The Case Should be Transferred to the District of South Carolina Pursuant to 28 U.S.C. § 1406 Because Venue is Improper and Personal Jurisdiction is Lacking against Defendants.**

28 U.S.C. § 1406 provides that when venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which [the case] could have been brought." "So when venue is challenged, the court must determine whether the case falls within one of the [two] categories set out in § 1391(b). 'And if it does, venue is proper. But if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)'." *Wiggins v. Darden Rests., Inc.*, 2021 U.S. Dist. LEXIS 103356, *2 (M.D. Ala. June 2, 2021) (citations omitted).

"To transfer a case under § 1406(a), it is enough simply that the court thinks transfer is in the interest of justice." *Hardman v. The Se. Permanente Med. Grp., Inc.*, 2018 U.S. Dist. LEXIS 48117, *18-19 (M.D. Ala. March 23, 2018) (citations omitted). In reaching this conclusion, this Middle District explained that "a transfer under § 1406 is warranted if the district is wrong, and clarifying that a district is wrong within the meaning of § 1406 whenever there exists an obstacle to expeditious and orderly adjudication on the merits and that although the statute speaks only of cases where venue in the original forum is wrong, it has been held to operate where there exists in the original forum an obstacle — whether incorrect venue, absence of personal jurisdiction, or both — to prompt adjudication on the merits." *Id.* at 17-18 (internal quotations and citations omitted).

### A.    This Court Lacks Personal Jurisdiction Over the Defendants.

The jurisdictional issues raised herein present an obstacle to the expeditious and orderly adjudication on the merits of this case because "courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Cont'l Cas. Co. v. Cura Grp., Inc.*, 2005 U.S. Dist. LEXIS 51116, at *96-97 (S.D. Fla. Apr. 5, 2005) (internal citations omitted); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). "In analyzing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), we first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Republic of Panama,* 119 F.3d at 942. Transferring this case to the District of South Carolina, wherein all Defendants have agreed to personal jurisdiction will resolve all jurisdictional and due process concerns. Alternatively, the Defendants should be dismissed from this case pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

### 1.    There is no basis for either general or specific jurisdiction over Defendants.

Plaintiff has the burden of establishing "that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). When analyzing jurisdiction, "[t]he court must construe the allegations in the complaint as

true, to the extent they are uncontroverted by [the] defendant's affidavits or deposition testimony." *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir. 1988).

Because the limits of Alabama's long-arm jurisdiction (Ala. R. Civ. P. 4.2(b)) are coextensive with constitutional due process requirements, a court need only decide whether exercising jurisdiction comports with principles of constitutional due process. *Morris* at 492, fn. 3. *See also Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (Alabama's long-arm statute permits Alabama courts to exercise personal jurisdiction "to the fullest extent constitutionally permissible"). Accordingly, due process requires that (1) a defendant have "minimum contacts" with the forum state and that (2) a court's exercise of jurisdiction conform to "traditional notions of fair play and substantial justice." *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 618 (1990). When determining whether a Defendant's "minimum contacts" support personal jurisdiction in the forum, a court must consider the distinction between general and specific jurisdiction. *Slocumb Law Firm, LLC v. Trollinger*, 2015 U.S. Dist. LEXIS 103547, at *5 (M.D. Ala. Aug. 7, 2015).

     **a.**    **The Corporate Defendants are not at home in Alabama; therefore, no general jurisdiction exists.**

A court may assert general jurisdiction over a foreign corporation when the corporation's affiliations with the state are so "continuous and systematic" as to render them "essentially at home" in the forum state. *BNSF Ry. Co. v. Tyrrell, U.S.*, 137 S. Ct. 1549, 1558-59 (2017). Traditionally, corporate defendants are "at home"

where their place of incorporation and/or principal place of business is located. *Id*. In "exceptional" cases, corporate operations may be so substantial and of such a nature as to render the corporation "essentially at home" in the forum. *Id. See also Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 874-75 (11th Cir. 2018) (affirming a lack of general jurisdiction over corporate defendants whose principal places of business and state of incorporation were outside the forum, despite having several contacts with the forum, including meetings in the forum).

### i.    Treis is not "at home" in Alabama.

Plaintiff merely alleges that "all Defendants are subject to this Court's personal jurisdiction" (Am. Compl. ¶ 17), but offers no facts to suggest that Treis is "essentially at home" in Alabama. Treis is a South Carolina limited liability corporation (Am. Compl. ¶ 7), whose principal place of business is Greenville, South Carolina.   *See* Ex. A ("Treis Dec."), ¶ 4 Treis does not have an office or branch in Alabama, has not done business in Alabama, does not have an Alabama telephone listing, does not have an Alabama bank account, does not have real or personal property in Alabama, and has not been involved in any prior litigation in Alabama. *See* Treis Dec. ¶¶ 5-8, 11. Treis' physical equipment is located in South Carolina and Pennsylvania, not Alabama. *See* Am. Com. ¶ 199; Treis Dec. ¶ 9. Therefore, this Court cannot exercise general jurisdiction over Treis.

### ii.   Cevon is not "at home" in Alabama.

Cevon is likewise not "at home" in Alabama under the general jurisdiction analysis. The entity is a Delaware limited liability corporation (Am. Compl. ¶ 8), whose principal place of business is Greenville, South Carolina. *See* Ex. B ("Cevon Dec."), ¶ 4. Like Treis, Cevon does not have an office or branch in Alabama, has not done business in Alabama, does not have an Alabama telephone listing, does not have an Alabama bank account, does not have real or personal property in Alabama, and has not been involved in any prior litigation in Alabama or availed itself of the Alabama courts. *Id.* at ¶¶ 8-12. As such, the Amended Complaint lacks any facts suggesting Cevon is "essentially at home" in Alabama. Therefore, this Court cannot exercise general jurisdiction over Cevon.

### iii.   Stronghold is not "at home" in Alabama.

Like the other Corporate Defendants, Stronghold is also not at home in Alabama. Stronghold is a Delaware limited liability corporation (Am. Compl. ¶ 10) whose principal place of business is Pennsylvania *See* Ex. C ("Stronghold Dec."), ¶ 4-5. Stronghold does not have an office or branch in Alabama, has not done business in Alabama, does not have an Alabama telephone listing, does not have an Alabama bank account, does not have real or personal property in Alabama, and has not been involved in any prior litigation in Alabama or availed itself of the Alabama courts. *Id.* at ¶¶ 7-12. Stronghold's physical equipment is located in Pennsylvania and New York, not Alabama. *Id.* at ¶ 6.  As such, there are no facts

to suggest that Stronghold is "essentially at home" in Alabama, thus this Court cannot exercise general jurisdiction over Stronghold.

> **b.    The Individual Defendants have few or no contacts with Alabama, let alone "continuous and systematic" contacts.**

"In most cases, for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Ex parte M.E.J.*, No. SC-2023-0062, 2023 Ala. LEXIS 113, at *11 (Oct. 13, 2023) (quoting *Ex parte Bradshaw*, 328 So. 2d 236, 242 (2020)). But "general personal jurisdiction can arise through a defendant's 'general contacts' with a forum state that are unrelated to the cause of action and that are both 'continuous and systematic.'" *Id.* (internal citations omitted). In this case, the Amended Complaint fails to establish general jurisdiction over the Individual Defendants because they are all domiciled outside of Alabama, and they have no "continuous and systematic" contacts with Alabama sufficient to sustain general jurisdiction over them.

> **i.    Bolick's contacts with Alabama are not continuous and systematic.**

Defendant Bolick's contacts with Alabama are insufficient to establish general jurisdiction over him. First, he is a resident of South Carolina. *See* Am. Compl. ¶ 11. *See also* Ex. D ("Bolick Dec."), ¶ 4. Further, Bolick has never owned real estate or personal property in Alabama, owed child support or alimony to an Alabama resident, had an office in Alabama, or been involved in litigation in the forum. *See* Bolick Dec., ¶¶ 6-9, 11. Therefore, the Amended Complaint fails to allege facts sufficient for this Court to exercise general jurisdiction over Bolick. *See*

*e.g. Ex parte M.E.J.*, No. SC-2023-0062, 2023 Ala. LEXIS 113, at *12 (finding no general jurisdiction in Alabama over a Washington resident who lacked any personal or professional relationships in Alabama, and had never transacted business there).

Bolick's birth in Alabama is also insufficient to sustain general jurisdiction over him. In *Ex parte Dragomir*, 65 So. 3d 388, 392-93 (Ala. 2010), the Alabama Supreme Court held that, even combined with sporadic contacts with the forum, the defendant's "prior residency in Alabama— some 10 years before the accident in Iowa— is temporally too remote to serve as a basis for establishing that Dragomir had 'continuous and systematic' contacts with Alabama that would sustain jurisdiction over Dragomir in the underlying action.") Bolick's prior residency occurred more than three decades before the present action and is "temporally too remote" to constitute continuous and systematic contacts with Alabama. *See also Ex parte Bradshaw*, 328 So. 3d at 243 (finding a former Alabama resident's prior residency and "brief and intermittent" contacts with Alabama did not establish grounds for exercising general jurisdiction). Because the Amended Complaint fails to allege that Bolick had continuous and systematic contacts unrelated to the present action, this Court may not exercise general jurisdiction over Bolick.

### ii. Lamberti, Smith, and Pence lack continuous and systematic contacts with the forum.

Defendants Lamberti, Smith and Pence likewise lack continuous and systematic contacts with Alabama to establish general jurisdiction over them. As set forth in their Declarations in Support of this Motion, none of these defendants are residents of Alabama. *See* Ex. E ("Lamberti Dec."); Ex. F ("Smith Dec."); and Ex. G ("Pence Dec."). Lamberti, Smith and Pence are South Carolina residents while Chain is a North Dakota resident. *See* Am. Compl. ¶¶ 12-15 and Lamberti, Smith, Pence and Chain Decs. ¶ 4. Further, Lamberti, Smith, Pence have never been residents of or had family in Alabama, have never owned real estate or personal property in Alabama, owed child support or alimony to an Alabama resident, had an office in Alabama, or been involved in litigation in the forum. *See* Lamberti, Smith, and Pence Decs. ¶¶ 7-13.) Because the Amended Complaint fails to allege Lamberti, Smith or Pence had continuous and systematic contacts unrelated to the present action, this Court may not exercise general jurisdiction over them. Accordingly, this Court should transfer this case to the District of South Carolina where the Individual Defendants have consented to jurisdiction.

### c. The Defendants lack minimum contacts in Alabama; therefore, no specific jurisdiction exists.

The Amended Complaint also fails to establish that Defendants have sufficient minimum contacts to sustain the exercise of specific jurisdiction in Alabama. To exercise specific jurisdiction, a "defendant's contacts with the forum state must satisfy three criteria: [(1)] they must be related to the plaintiff's cause of

action or have given rise to it; [(2)] they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and [(3)] they must be such that the defendant should reasonably anticipate being haled into court there." *Sloss*, 488 F.3d at 925 (internal quotations omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Hand v. Wholesale Auto Shop, LLC*, 2018 WL 305818, at *5 (N.D. Ala. Jan. 5, 2018) (quotations omitted). In addition, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction *for each claim*." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 & 1360 n.3 (11th Cir. 2006) (emphasis added).

Plaintiff baldly asserts that "all Defendants are subject to this Court's personal jurisdiction" (Am. Compl. ¶ 17) without setting forth specific allegations as to why exercise of specific personal jurisdiction *as to each Defendant* is constitutional. Nevertheless, in examining Plaintiff's allegations, he fails to meet his burden of establishing sufficient minimum contacts for the exercise of specific jurisdiction over any of the Corporate or Individual Defendants.

### i. Defendants' suit-related conduct does not create a substantial connection with Alabama.

Under the first criteria for exercising specific jurisdiction over a nonresident defendant consistent with due process, "the defendant's *suit-related* conduct must

create a substantial connection with the forum state." *Hand,* 2018 WL 305818, at

*6 (internal citation omitted). The only suit-related actions that were allegedly taken

by Defendants occurred outside of Alabama. Specifically:

- Treis and its Directors, all domiciled in South Carolina (Am. Compl., ¶¶ 7, 11, 12, 14, 15), and Cevon, domiciled in Delaware (*Id.* ¶ 9), are not alleged to have misappropriated or conspired to steal Plaintiff's purported trade secrets in Alabama; thus, the only reasonable inference is that any such misappropriation took place in South Carolina, where Treis, Bolick and Lamberti are located, or Delaware, where Cevon is located;

- Any alleged unauthorized use or misappropriation of Plaintiff's alleged trade secret by Stronghold or blocking of the Dev. Fee by Stronghold occurred in Pennsylvania, where Stronghold is located (*Id.* ¶ 10);

- Plaintiff's purported trade secret, was installed on Treis's miners "housed *in Pennsylvania and South Carolina*" (*Id.* ¶ 199, emphasis added);

- Any alleged failure by Defendants to protect Plaintiff's trade secret giving rise to the § 1836 claim occurred in *Pennsylvania* (*Id.* ¶¶ 214-225);

- Any of Defendants' alleged predicate acts that gave rise to Plaintiff's RICO claim occurred in *Pennsylvania*, where Stronghold is located, and/or *South Carolina* where Treis and its Directors are located;

- Any alleged unjust enrichment or quantum meruit with respect to Treis, and its Directors occurred in *South Carolina*, where they are domiciled and where Treis allegedly received the benefit of "several million dollars" from the sale of the miners (*Id.* ¶ 411);

- Any alleged unjust enrichment or quantum meruit of Stronghold occurred in Pennsylvania, where it is located and where it "deployed Plaintiff's code to collect substantial cybercurrency without compensating him." (*Id.* ¶ 414);

- Any alleged breach of a purported contract by Treis "proactively blocking and refusing to pay Plaintiff's Dev Fee, not protecting the confidentiality of WAO2, and selling machines containing WAO2" (Am. Compl. ¶ 432) occurred in *South Carolina and/or Pennsylvania*;

- The alleged actions by Treis and its Directors that allegedly give rise to Plaintiff's intentional tort claims "were never directed solely to Plaintiff or solely into Alabama." (Treis Dec. ¶¶ 16-19). Rather, "all of Treis' communications were directed to [Defendant] Chain and/or to a group chat to which Grams was one of multiple participants." *Id. See also, e.g., Am.* Compl. ¶¶ 92, 101, 139, 159; 197.

Thus, Plaintiff has failed to satisfy the requirement that the Defendants' suit-related contacts with Alabama are related to Plaintiff's numerous causes of action or have given rise to them.

### ii. Defendants have not purposefully availed themselves of the privilege of conducting activities within Alabama.

"The *'substantial connection'* between the defendant and the forum state necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State." Ex Parte M.E.J.*, 2023 Ala. LEXIS 113, at *10 (citations omitted). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at *15 (citations omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* The Eleventh Circuit has applied the traditional purposeful availment analysis in contract and tort cases and the *Calder* effects test where intentional torts are alleged. *Louis Vuitton Malletier v. Mosseri*, 736 F.3d 1339, 1356-57 (11th Cir. 2013)

### a. Plaintiff has failed to establish specific personal jurisdiction under the traditional purposeful availment test for Count 8.

Under the traditional minimum contacts test for purposeful availment, the Court assesses whether a defendant's contacts with the forum "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. "In performing this analysis, we identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Id.* "The contacts with the forum state must also be purposeful and created by the 'defendant *himself*.'" *Hand,* 2018 WL 305818, at *6 (*quoting Walden v. Fiore*, 134 S. Ct. at 1122). "Due process requires that a defendant be subjected to specific jurisdiction of a State 'based on his own affiliation with the State." *Id.*

As to Cevon, Treis and its Directors, Plaintiff makes numerous allegations regarding his *own* affiliation with Alabama, but scant allegations regarding the affiliation of these Defendants with the forum. It was *Plaintiff*, through Chain and CEL, who reached out to Treis, not the other way around. *See* Treis Dec. ¶ 12 and Am. Compl. ¶¶ 50-53. Only after such solicitation did Treis begin negotiations with Chain and CEL who are not residents of Alabama (Am. Compl. ¶¶ 8, 13), with no indication that Treis or its Directors even knew of Plaintiff at the time, or that Plaintiff lived and had his "lab" in Alabama. Plaintiff alleges that *he introduced himself* to

Treis and its directors as the developer of the firmware after Chain added Plaintiff to a group chat. (*Id.* ¶ 66). It was also *Plaintiff* who made the request to test his firmware on Treis's machines, not as part of a joint venture or contract.  *See* Treis Dec. ¶ 13; Am. Compl. ¶ 69. Additionally, Plaintiff himself, from Alabama, set up the way in which the Dev Fee would be paid to him by agreeing with Chain that all Dev Fees would be paid into an electronic wallet to be shared equally between Plaintiff and Chain. (Am. Compl. ¶¶ 141-142). Later, Plaintiff informed Chain that Plaintiff was redirecting the Dev Fee into an account under Plaintiff's sole management (Am. Compl. ¶ 154).

Thus, Plaintiff's attempts to rely on actions taken by or on behalf of himself to establish personal jurisdiction against Cevon, Treis and its Directors fail because "No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc*., 207 F.3d 1351, 1356 (11th Cir. 2000) (citation omitted). Although *Plaintiff* may have taken numerous actions from his home in Alabama, he fails to allege any way in which Cevon, Treis or its Directors purposefully availed themselves of the benefits of doing business in Alabama.

Moreover, courts in this District have found that a plaintiff's unilateral activities do not indicate a defendant's purposeful availment of the privilege of conducting activities in Alabama. In *Pease v. Kelly Aerospace, Inc.*, 2008 WL 2516454 (M.D. Ala. 2008), for example, this Court  found that where there was no evidence  the  defendant  had  any  say  as  to  the  state  the  plaintiff  chose  to

manufacture products, manufacturing the products in Alabama was a "unilateral activity" by the plaintiff, not purposeful availment by the defendant. Here, as in *Pease*, there are no allegations that *anyone other than Plaintiff* had any say as to where Plaintiff should be located or where he should set up a "lab" to develop and/or test his firmware. Although Treis's machines were housed in South Carolina and Pennsylvania, Plaintiff's lab was in Alabama, and *Plaintiff* took machines from Pennsylvania to Alabama to repair them in his lab. (Am. Compl. ¶ 85). As in *Pease*, Plaintiff's setting up of his repair lab in Alabama is a "unilateral activity" by Plaintiff, not purposeful availment by Cevon, Treis or its Directors. *See also Madera v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) ("[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State") (internal citation omitted).

While Plaintiff also alleges he sold machines for Treis in Alabama (Am. Compl. ¶ 98), such activity is equally insufficient to establish personal jurisdiction over Treis or its Directors. First, it was Plaintiff who initiated the sale ("[Plaintiff] let Treis know he had a prospective purchaser for the machines." (*Id*. ¶ 96)). And notably, there is not a single allegation that this one-off sale of ten machines to someone in Alabama relates in any way to any of Plaintiff's claims against Treis or its Directors: that they misappropriated Plaintiff's trade secret by selling machines to Stronghold, conspired against Plaintiff, breached a contract with Plaintiff, etc. This sale is not related to Plaintiff's claims, does not give rise to any of Plaintiff's claims, and thus does not establish purposeful availment by Treis or its Directors.

Plaintiff alleges Lamberti made a trip to Alabama in September 2021; however, Plaintiff admits Lamberti only made this trip to pick up machines *Plaintiff himself* had taken from Pennsylvania to Alabama. (Am. Compl. ¶ 85). There are no allegations that this single trip to pick up machines that Plaintiff himself first took to Alabama relates in any way to Plaintiff's claims against Treis or its Directors, or gives rise to any of Plaintiff's claims. Therefore, this single trip does not establish purposeful availment by Treis or its Directors.

Plaintiff also alleges he communicated with Treis and its Directors. However, the communications between these Defendants and Plaintiff (who had an interest in doing business with Treis and initiated discussions with Treis, and who happens to reside in Alabama), do not constitute purposeful availment of the forum state. *See Hand* 2018 WL 305818, at *8-9 ("[h]ad Wholesale Auto initiated the negotiations, it may have 'purposefully availed' itself of the  forum state; however, Mr. Hand initiated contact with Wholesale Auto. […] Dialing an Alabama number does not rise to the level of establishing minimum contacts with the State"). *See also Tinsley v. BP Corp. North America, Inc.*, 112 F. Supp. 3d 1253, 1260 (N.D. Ala. 2015) (handful of telephone calls and even fewer emails for a limited time period to a plaintiff who had an interest in becoming a broker, initiated the discussions, and happened to live in Alabama does not meet minimum contacts); *see also Aeropower, Ltd., v. Matherly*, 511 F. Supp. 2d 1139, 1156 (M.D. Ala. 2007) (where defendant had virtually no contact with Alabama other than telephone, fax, mail and wire communications in relation to aircraft transactions, and no evidence

defendants initiated any contact with Alabama concerning transactions, there is no purposeful availment). Based on the foregoing, Cevon, Treis and its Directors' contacts are not such that they should reasonably anticipate being haled into Alabama.

Plaintiff's Amended Complaint is also devoid of any allegations that Stronghold purposefully directed any activity toward Alabama. Rather, Plaintiff again alleges *he* initiated contact with Stronghold (Am. Compl. ¶¶ 270-273). Indeed, prior to the purchase of computers from Treis, "Stronghold had no material contact or relationship with Mark Grams and no knowledge of what, if any, involvement Grams may have had with the computers or the WAO2 firmware." (Stronghold Dec. ¶ 13), and any use of the computers by Stronghold occurred outside of Alabama (Stronghold Dec. ¶ 14). As such, Plaintiff has failed to allege any act by which Stronghold purposefully availed itself of the privilege of conducting activities within Alabama. Based on the foregoing, Plaintiff has failed to meet his burden of establishing that personal jurisdiction is present as to Treis or its Directors, Cevon, or Stronghold.[2]

---

[2] Should the Court find personal jurisdiction over the Defendants for some but not all claims, the Court is left with (1) the procedurally improper option of splitting the claims, or (2) transferring the case for the reasons set forth in Sections I(B) and II, *infra*, namely that transferring this case to the District of South Carolina (a) provides an efficient manner in which to resolve the jurisdictional and venue issues raised by each of the served Defendants, and (b) serves the interests of justice in providing a more convenient forum for the vast majority of the parties and witnesses involved in this dispute.

> **b. Plaintiff has also failed to establish specific personal jurisdiction with respect to Counts 9-12 under the *Calder* effects test.**

Under the *Calder* "effects test," purposeful availment occurs when a tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton*, 736 F.3d at 1356 (11th Cir. 2013) (citation omitted). "The test weighs the effects of the defendant's intentional conduct aimed at the forum state, including the contacts with the forum created thereby." *Ex part M.E.J*., 2023 Ala. LEXIS 113, at *16. The "effects of a nonresident's alleged actions must create sufficient contacts with the forum, not just with the plaintiff." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the *defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285-286 (emphasis added). The *Walden* Court further explained:

> "*Calder* made clear that *mere injury to a forum resident is not a sufficient connection to the forum*. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. *The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.*"

*Walden*, at 577 U.S. at 289-90 (emphasis added).

Count 12 alleges "Defendants [Treis and its Directors] converted Plaintiff's property" (Am. Compl. ¶ 483), misappropriated WAO2 by conveying WAO2 to Stronghold without authorization (*Id*. ¶ 335), and "conspired to continue using

WAO2 in violation of Plaintiff's ownership rights." (*Id*. ¶ 364). As discussed above, any alleged conspiracy, conversion, or misappropriation of WAO2 by Treis and its directors or employees would have occurred in Pennsylvania, where Stronghold and Treis's miners are located (*Id*. ¶¶ 10, 199), and/or South Carolina, where Treis and its Directors are domiciled and Treis's miners are located (*Id*. ¶¶ 11, 12, 14, 15, 199). There are no allegations indicating Treis and its Directors' alleged conversion, misappropriation or conspiracy occurred or was directed to Alabama.

Count 10 alleges that Treis and its Directors slandered Plaintiff by accusing Plaintiff of "lying and stealing" and claiming the "firmware had *di minimus* value" (*Id*. ¶¶ 284-286, 464, 466), and these statements were made to and "damaged [Plaintiff]'s reputation *with Stronghold*", which is located in Pennsylvania. *Id*. at ¶ 468 (emphasis added). There are no allegations indicating the reputation-based effects of the alleged slanderous statements made in a phone call involving Bolick and Pence—South Carolina residents, and Stronghold—a Delaware company with a location in Pennsylvania, connects Bolick or Pence's conduct to *Alabama*, and not solely with Plaintiff. *See Walden*, 577 U.S. at 287 (in *Calder*, the injurious effects caused by defendant's defamatory article were damaging to a California plaintiff's reputation *in California*, thus defendant's conduct was connected to California, *not just to the plaintiff*). Additionally, the only allegations against Lamberti and Smith concerning Plaintiff's slander claim is that "[o]n information and belief, Smith and Lamberti repeated and/or supported those false claims to third parties." Am. Compl. ¶ 465. This conclusory assertion is insufficient to support a

finding that Lamberti and Smith engaged in any defamatory conduct directed at Alabama. *See Resnick*, 2019 WL 2092567 ("Conclusory allegations founded on 'information and belief' are insufficient to defeat a motion to dismiss").

In Count 11, Plaintiff generally alleges that Treis and its Directors "tortiously interfered with Plaintiff's valid and enforceable contractual or business relationships" without identifying any third party, much less a third party located in Alabama. *See* Am. Compl. ¶ 474. Plaintiff has not set forth any allegations that these defendants directed their alleged tortious interference towards Alabama or that they have any link to Alabama other than Plaintiff.

Count 9 alleges that Defendants Cevon, Pence and Lamberti made various fraudulent misrepresentations to Plaintiff or to each other concerning the sharing of profits, ownership of WAO2, Plaintiff's relationship with CEL, the payment or blocking of a Development Fee, and the selling of machines containing WAO2 (*Id.* ¶¶ 436-452). Nothing in the Amended Complaint establishes that any of these alleged misrepresentations occurred in Alabama or were directed to anyone other than Plaintiff in Alabama. Rather, any such conduct was directed specifically to Plaintiff or other Defendants (none of whom are Alabama residents).

Plaintiff's allegations that Treis and its Directors "chatted regularly" and directed questions to Plaintiff, who "answered from Alabama" and "worked with the group from his home in Alabama," fails to establish a "meaningful connection" with Alabama. As the *Walden* Court emphasized, "shifting the analytical focus from [defendant]'s contacts with the forum to his contacts with [plaintiff]" "impermissibly

- 21 -

allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. "Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. . . It also obscures the reality that none of [defendant]'s challenged conduct had anything to do with [the forum state] itself." *Id*. Thus, the *Walden* Court determined that "[p]etitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* Similarly, the alleged conduct of Cevon, Treis or its Directors did not create sufficient contacts with Alabama simply because they allegedly directed conduct at Plaintiff whom they knew resided in Alabama. Under these circumstances, Plaintiff has failed to meet his burden of showing that the intentional conduct of these Defendants connects them to Alabama in a meaningful way. *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").

Additionally, allegations that one or more of the Defendants travelled to Alabama fail for at least three reasons. First, the allegation that "Treis directors traveled to Alabama to meet with potential customers" (Am. Compl. ¶ 88) is made upon information and belief, which is insufficient to defeat a motion to dismiss. *Resnick,* 2019 WL 2092567. Second, the alleged trips to meet with potential

customers or Lamberti's single trip in September 2021 to pick up machines from Plaintiff (Am. Compl. ¶¶ 85 & 88) are unrelated to Defendants' alleged intentional conduct and, thus, irrelevant for purposes of determining whether jurisdiction is proper under the effects test. Third, such allegations are contradicted by the Treis Declaration and need not be taken as true. *See* Treis Dec. ¶ 19 ("[n]one of Treis's directors, officers or employees ever traveled to Alabama to meet with any potential customers"). In short, all of the alleged intentional conduct occurred entirely in South Carolina and/or Pennsylvania.

Therefore, when "viewed through the proper lens – whether the *defendant*'s actions connect him to the *forum,*" *Walden*, 571 U.S. at 289, the Defendants have not purposely availed themselves of the forum.

> **2. Plaintiff cannot invoke RICO's nationwide service provision to establish personal jurisdiction over Defendants because Plaintiff fails to adequately allege a RICO violation.**

RICO's nationwide service of process provision is unavailable to Plaintiff to establish personal jurisdiction over Defendants because Plaintiff's RICO claim fails to (a) adequately allege an "enterprise," and (b) meet the heightened pleading standard required under RICO.

### a. Plaintiff fails to allege an "enterprise" as required under RICO.[3]

To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014). Plaintiff fails to plausibly allege an "enterprise" under RICO because on its face, the Amended Complaint demonstrates Defendants lacked a common purpose or operated as a continuing unit. A RICO "enterprise" is "a group of persons associated together for a common purpose" and "is proved by evidence of an ongoing organization […] and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). A RICO plaintiff can establish an enterprise by: (1) proving the existence of a legal entity joining the parties; or (2) proving the existence of an association-in-fact between the parties.[4] *See* 18 U.S.C. § 1961(4). Because Plaintiff has not alleged a legal entity joining all of the Defendants, Plaintiff must allege facts sufficient to create an association-in-fact enterprise. "The Supreme Court has instructed us that an association-in-fact enterprise must possess three qualities: a purpose, relationships among those

---

[3] Defendants do not concede that Plaintiff has adequately pled the other elements of his RICO claim but for purposes of brevity, Defendants address only the enterprise element in their Motion.

[4] 18 U.S.C. § 1961(4): "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) (internal quotations and citation omitted). "What is required is evidence of an *ongoing organization*, formal or informal, and evidence that the various associates function *as a continuing unit*." *Id.* (emphasis added.)

Here, Plaintiff alleges that the purpose of Defendants' enterprise was "to take the economic benefit associated with WAO2 and its trade secrets for themselves, without compensating the developer, Plaintiff." (Am. Compl. ¶ 372.) However, he fails to allege that the Defendants were all working together as a *continuing unit* to affect this purpose. Instead, Defendants are alleged to have worked *against* each other: Chain and CEL worked against Treis when they "misrepresented to Treis that CEL owned WAO2 and its Trade Secrets." (Am. Compl. ¶ 375); subsequently, Treis and its Managing Directors worked *against* Chain and CEL when they "conspired to steal the loot (WAO2) from the thief (Chain/CEL)"[5] (Am. Compl. ¶ 383), and against Stronghold by allegedly "misappropriating the firmware and misrepresenting its true ownership" (*Id.* ¶ 398). As such, the Amended Complaint fails to allege the *continuing* involvement of all

---

[5] To the extent the Amended Complaint alleges Treis and its Managing Directors "conspired with themselves," it is well established that "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000)

of the Defendants as associates in an enterprise. *Ray* at, 1352 (11th Cir. 2016). Thus, Plaintiff has failed to plausibly allege a RICO enterprise.

Plaintiff's attempts to lump the Defendants' actions together in Paragraphs 394-395 fare no better in establishing an enterprise. As discussed above, the alleged "pattern of fraud and theft" (*Id.* ¶ 394) and Defendants' intentions to "convert ownership and economic benefit… to themselves" (*Id.* ¶ 395) were never simultaneously employed by all of the Defendants as a *continuing unit*. Rather, each group of Defendants (Treis and its Managing Directors; Chain/CEL; Cevon; and Stronghold) is alleged to have acted in their own interests, at times against each other, toward the alleged illegal purpose. Stated differently, the Amended Complaint proves that at no point were "all" of the Defendants acting in concert such that they were on the same page at the same time.

### b. Plaintiff fails to meet the heightened pleading standard required by RICO.

While the RICO statute can serve as the statutory basis for personal jurisdiction, a plaintiff cannot invoke RICO's nationwide service provision if the RICO claim is "wholly immaterial or insubstantial". *Republic of Panama*, 119 F.3d at 941. A claim is "wholly insubstantial" where a plaintiff "fail[s] to state their RICO claims with the requisite specificity." *James v. Hunt*, 761 Fed. App'x 975, 980 (11th Cir. 2018). When based, at least in part, on fraud, a RICO claim must be pleaded with particularity. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) and *Cruz v. Cinram International, Inc.,* 574 F. Supp. 2d

1227,1232 (N.D. Ala. 2008) (internal quotations and citations omitted). Specifically, "RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia*, 482 F. 3d at 1316 (*citing Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Claims under RICO "must be subjected to scrutiny due to their potential for abuse by civil litigants." *DePaola v. Nissan North America, Inc.*, 2006 WL 1181311, at *12 (M.D. Ala. May 2, 2006). In *Brooks*, the 11th Circuit determined a RICO claim "did not meet the Rule 9(b) particularity standard 'because it was devoid of specific allegations with respect to each defendant; the plaintiffs lumped together all of the defendants in their allegations of fraud. . . [I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Id.* (*quoting Brooks*, 116 F.3d at 1381). *See also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) means alleging "the who, what, when, where, and how").

Plaintiff's RICO claim is asserted against all nine Defendants and contains only conclusory allegations that fail to allege the who, what, when, where and how. *See, e.g.,* Am. Compl. ¶¶ 368-394. Plaintiff's further allegations of a conspiracy to sell machines with WAO2 to Stronghold similarly lump the Defendants together without delineating specific statements, times, places and individual speakers as

required to state a claim under RICO. (Am. Compl. ¶¶ 395-407). Plaintiff repeatedly alleges actions by "Treis, and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti)" or by "Treis, and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti), CEL, Cevon, and Chain", but fails to specifically set forth a single statement, document or misrepresentation made by an individual Defendant, much less the date, time and manner of any specific statement. Plaintiff therefore fails to set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; [and] (3) the content and manner in which the statements misled the Plaintiffs" that is required. *Ambrosia*, 482 F. 3d at 1316.

As Plaintiff can neither invoke RICO's nationwide service of process provision to establish personal jurisdiction over Defendants, nor otherwise establish either general jurisdiction or specific jurisdiction over Defendants under Alabama law, the Court should transfer this case to the District of South Carolina, where all Defendants have consented to personal jurisdiction, or in the alternative, dismiss the Defendants from this case pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

### B. Venue is improper under 28 U.S.C. § 1391(b)(2) because no substantial part of the events or omissions giving rise to the Amended Complaint occurred in Alabama.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). While Plaintiff merely states venue is proper under Section 1391(b)(2) (Am. Compl. ¶ 17),

venue is improper because no substantial part of the events or omissions giving rise to the Amended Complaint occurred in this District or anywhere in Alabama.

In considering whether venue is proper under § 1391(b)(2), "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Tognaci v. Ameris Bank*, 2023 WL 1788555 (S.D. Ala. Jan. 4, 2023) (internal citation omitted). "Moreover, when determining whether venue is proper, courts must focus on the relevant activities of the defendants rather than the plaintiff." *Id.*

As previously set forth in Section (I)(A)(1)(c)(i), *supra*, even taking the allegations in the Amended Complaint as true, the locations hosting a substantial part of the events that are the subject of this lawsuit occurred outside of Alabama. When focusing on the relevant activities of *the Defendants*, Plaintiff has failed to show that a substantial part of the events or omissions giving rise to his claims occurred in Alabama. Therefore, venue is improper in this District and the Court should employ its discretion to transfer this case to the District of South Carolina, wherein all Defendants have agreed venue is proper.

## II.    In The Alternative, The Court Should Transfer This Case to The District of South Carolina Pursuant to 28 U.S.C. § 1404.

Pursuant to 28 U.S.C. § 1404(a), venue may be transferred by the district court "[f]or the convenience of the parties and witnesses, in the interest of justice […] to any other district or division where it might have been brought." "The

decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (internal citation omitted). "[T]he burden [is] on the defendant to demonstrate why the forum should be changed." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994) (internal citations omitted). While the purpose of the transfer statute is convenience afforded the parties and witnesses, the district court's power to transfer is "expressly limited […] to those federal districts in which the action 'might have been brought.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*quoting* 28 U.S.C. § 1404(a)).

Therefore, the Court's analysis is a two-part inquiry: (1) the Court must determine if the case could have been brought initially in the transferee court, and (2) the Court must determine whether the factors of convenience and interests of justice under §1404 favor changing venue to the transferee court. *See A.J. Taft Coal Co., v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003).

## A. The case could have been brought in the District of South Carolina.

The first prong of the Court's analysis is to determine under §1404(a) if this case could have originally been brought in the District of South Carolina, where the Defendants propose to transfer venue. Thus, the Court must not only verify that venue would have been proper in the District of South Carolina, but also whether jurisdiction exists in that court.

The District of South Carolina would have original subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) based on the diversity of citizenship

between the Defendants, who are domiciled or whose principal places of business are outside of Alabama (Am. Compl. ¶¶ 7-15), and Plaintiff who is domiciled in Alabama (*Id*. ¶ 6 ), and the amount in controversy is in excess of $75,000.00 (*Id*. ¶ 16). Here, personal jurisdiction in the District of South Carolina exists as to the Defendants, who have consented to personal jurisdiction there.

Moreover, in diversity cases, venue is appropriate in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Thus, venue in the District of South Carolina would have been proper if the case had initially been brought there. Here, even taking the allegations in the Amended Complaint as true, the locations hosting a "a substantial part of the events" forming the basis of Plaintiff's claims occurred in the District of South Carolina. The basis of Plaintiff's claims is Defendants' alleged misappropriation of Plaintiff's firmware. As discussed in Section (I)(A)(1)(c)(i) *supra*, most of the events occurred in South Carolina. For example, the alleged conspiracy took place in South Carolina, where Treis and its Directors (five of the nine Defendants) are located; WAO2 was installed on Treis's miners "housed in Pennsylvania and South Carolina" (Am. Compl. ¶ 199); Treis received the benefit of "several million dollars" from the sale of the miners (*Id*. ¶ 411) in South Carolina; the sale of the machines containing WAO2 by Treis and its Directors occurred in South Carolina, where Treis and its Directors are located.

For the reasons set forth above, Defendants have met their burden under the first prong of §1404 to show that this case might have initially been brought in the District of South Carolina.

### B. Convenience of the parties and witnesses, and the interests of justice, dictate transfer to the District of South Carolina.

The second prong of the Court's analysis is whether transfer of venue promotes, on the whole, greater convenience and advances the interests of justice. 28 U.S.C. § 1404(a). The Eleventh Circuit has identified nine factors considered on a motion to transfer venue:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (internal citations omitted); *see also Madison Oslin, Inc. v. Interstate Res., Inc.*, No. 2:11-cv-01343-SLB, 2012 U.S. Dist. LEXIS 142082, at *51 (N.D. Ala. Sep. 30, 2012).

With regard to the first factor, the plaintiff's choice of forum is "accorded […] considerable deference", *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (citation omitted), and "'should not be disturbed unless it is clearly outweighed by other considerations.'" *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (internal citations omitted). Here, however, the gravamen of the facts alleged against the Defendants occurred in either South Carolina or Pennsylvania.

*See* Section (I)(A)(1)(c)(i), *supra.* Therefore, deference to Plaintiff's choice of forum is lessened. *See Madison Oslin,* at *54 (N.D. Ala. Sep. 30, 2012) ("[i]n light of these competing factual allegations, deference for the initial forum based on plaintiffs' claimed harm in Alabama is lessened").

As discussed in Section (I)(A)(1)(c)(i), *supra*, the allegations in the Amended Complaint and the Defendants' evidentiary declarations make clear that all operative facts giving rise to this litigation occurred in either South Carolina or Pennsylvania. Additionally, all sources of proof for Plaintiff's claims (such as the machines which housed Plaintiff's firmware), are located in South Carolina and Pennsylvania. (Treis Dec. ¶ 9.) Additionally, five of the nine Defendants (Treis and its Directors) also reside in South Carolina. (Am. Compl. ¶¶ 7, 11-12, 14-15)

Aside from Plaintiff's own choice of forum, "the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Yaeger v. Wyndham Vacation Resorts, Inc.*, 2013 U.S. Dist. LEXIS 204641, at *4-6 (N.D. Ala. Aug. 12, 2013) (internal citations omitted). Here, all known witnesses other than Plaintiff reside outside of Alabama, in the states of South Carolina, Pennsylvania, Nevada and North Dakota. Moreover, all witnesses known to the Defendants would be beyond the Court's subpoena power if this matter were to be litigated in Alabama. *See Madison Oslin*, 2012 U.S. Dist. LEXIS 142082, at *62-63 ("If this case remains in the Northern District of Alabama, and assuming the defendants' witnesses do not come willingly, the only witnesses the court can compel to testify are the named parties and plaintiffs' principals.

However, if the case is transferred to Maryland, there are sixteen identified witnesses who either live in the District or are subject to subpoena there. Because Corrpack's facility is located in Maryland and the greater number of non-party witnesses reside in Maryland and work for or are former employees of defendants, the availability of process to compel these witnesses tips in favor of the transferee forum"). In fact, the only individual for whom litigation in Alabama is convenient is Plaintiff.

For the reasons set forth above, the majority of factors at the second prong of the Court's analysis weigh in favor of transferring this case to the District of South Carolina.

### III.   In the Alternative, Bolick and Cevon Should Be Dismissed Under Rule 12(b)(5) for Lack of Proper Service.

"[A]n individual or entity is not obliged to engage in litigation unless officially notified of the action . . . under a court's authority, by formal process." *De Gazelle Grp., Inc. v. Establishment*, 817 F.3d 747, 748 (11th Cir. 2016)) (quotation and alteration omitted). "In other words, a defendant's actual notice is 'not sufficient to cure defectively executed service.'" *Albra v. Advan., Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). "[W]hen a defendant contests the sufficiency of service, the plaintiff bears the burden of proving proper service." *Davis v. Country Cas. Ins. Co.*, 2013 WL 3874709, at *3 (N.D. Ala. July 25, 2013).

## A. Bolick Should be Dismissed for Insufficient Service of Process.

Plaintiff failed to properly serve Bolick, thus if the Court does not transfer this case to the District of South Carolina, where Bolick will waive service, Bolick should be dismissed from this action under Rule 12(b)(5). Under Fed. R. Civ. P. 4, service on an individual is proper:

> (e) Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
>
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>>
>> (2) doing any of the following:
>>
>>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>>
>>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>>
>>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Under Alabama state law, service "shall be made as follows":

> (A) Individual. Upon an individual, other than a minor or an incompetent person, by serving the individual or by leaving a copy of the summons and complaint at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive such process.

Ala. R. Civ. P. 4(c)(1). The Alabama rule "requires the person serving process to locate the 'individual' to be served and to deliver a copy of the process to that

'individual.' Strict compliance regarding service of process is required." *M.M. v. B.L.*, 926 So.2d 1038, 1042 (Ala. Civ. App. 2005) (citations omitted). "Failure of proper service under Rule 4 deprives a court of [personal] jurisdiction." *Id.* (citations omitted). Because Plaintiff has failed to properly serve Bolick and Cevon pursuant to Fed. R. Civ. P. 4(e) or Ala. R. Civ. P. 4(c)(2), this Court may not exercise personal jurisdiction over either, and Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).

In this case, Plaintiff has asserted claims against Bolick in his individual capacity. (Am. Compl. ¶¶ 327, 463, 471, 480, 506). On or about 8 May 2023, at the address 601 Hitech Court, Greer, South Carolina, Pence accepted and signed for certified mail containing a summons and the complaint and addressed to "Michael Bolick, 601 Hitech Court, Greer, SC 29650." (Docket No. 15; Pence Dec. ¶ 15.) Treis's place of business is located at 601 Hitech Court, Greer, South Carolina and is not Bolick's "dwelling or usual place of abode." (Bolick Dec. ¶ 15). Therefore, Plaintiff did not comply with Fed. R. Civ. P. 4(e)(2)(B) or Ala. R. Civ. P. 4(c)(1). Further, Bolick did not authorize Pence to receive service of process on behalf of Bolick.  (*Id*. ¶ 16), thus Plaintiff did not comply with Fed. R. Civ. P. 4(e)(2)(C) or Ala. R. Civ. P. 4(c)(1). Finally, Plaintiff did not deliver a copy of the summons and complaint personally to Bolick (Bolick Dec. ¶ 17) and therefore failed to comply with Fed. R. Civ. P. 4(e)(2)(A) or Ala. R. Civ. P. 4(c)(1). Plaintiff has failed to satisfy the procedural requirement of service of process as to Bolick, therefore

this Court lacks personal jurisdiction over Bolick, and Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5). *See De Gazelle*, 817 F.3d at 748.

### B. Cevon Should Be Dismissed for Insufficient Service of Process.

Plaintiff likewise failed to properly serve Cevon, thus if the Court does not transfer this case to the District of South Carolina, where Cevon will waive service, Cevon should be dismissed from this action under Rule 12(b)(5). Federal Rule of Civil Procedure 4(h)(1) provides the methods for serving process on corporations located within a judicial district of the United States. Fed. R. Civ. P. 4(h)(1). Service under Rule 4(h) "must be accomplished in one of two manners: (1) in accordance with the law of the forum state; or (2) by delivering a copy of the summons and complaint to an officer, managing agent, general agent, or any other agent authorized by appointment or by law to receive service of process." *Eastern Shore Marine, Inc. v. Smith*, 2008 WL 697716, *1 (S.D. Ala. Mar. 10, 2008); F.R.C.P. 4(h)(1)(A). Service on a corporation is ordinarily governed by Alabama Rule of Civil Procedure 4(c)(6); however, "in a suit against a dissolved domestic corporation service of process is properly had upon one of the directors-trustees." *Id.* (*quoting Railway Fuel Co. v. Ackerman*, 114 So.2d 142, 145 (Ala. 1959). This rule also applies to foreign corporations. *Id.*  That rule is equally applicable to service upon dissolved foreign corporations. *Id.* (*citing W.T. Ratliff Co., Inc. v. Henley*, 405 So.2d 141, 144 (Ala. 1981)). "While this default judicial rule could be overcome by legislation expressly addressing service on dissolved corporations, *id.*, there appears to be no such legislation on the books." *Id.* Because Plaintiff has failed to

properly serve Cevon pursuant to Fed. R. Civ. P. 4(h) or Alabama law, this Court may not exercise personal jurisdiction over Cevon, and Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).

Cevon was a limited liability company formed under the laws of Delaware, whose members consisted of Treis Blockchain, LLC and Chain Enterprises, LLC. (Am. Compl. ¶ 9). A certificate of cancellation of Cevon's certificate of formation was executed on April 10, 2023, and subsequently filed with the State of Delaware on May 9, 2023, as evidenced in the declaration of Cevon. Plaintiff filed an Affidavit of Service purporting to serve Cevon on May 19, 2023 by leaving the "Summons in a Civil Action" with Teresa Grandison, Administrative Assistant at Cogency Global, Inc. at 850 New Burton Road, #201, Dover, Delaware 19904. (Docket No. 13). Neither Teresa Grandison nor Cogency Global, Inc. is or was a "director-trustee" of Cevon. (Am. Compl. ¶¶ 11-15). Because Plaintiff did not serve a director-trustee of Cevon, it has not perfected service of process in accordance with Alabama law pursuant to Rule 4(h)(a)(A). As such, Plaintiff has failed to satisfy the procedural requirement of service of process as to Cevon. Accordingly, Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) with respect to Cevon.

## **CONCLUSION**

For the reasons set forth above, the Defendants respectfully request that this Court transfer this case to the District of South Carolina pursuant to 28 U.S.C. § 1404 and/or § 1406, where they have consented to personal jurisdiction and

venue and, in the case of Bolick and Cevon, will waive service. Alternatively, Defendants request that they be dismissed from this case pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and Bolick and Cevon additionally request they be dismissed under Rule 12(b)(5) for failure to effect service.

Respectfully submitted this the __30th__ day of October, 2023.


_____/s Joshua J. Jackson_____
Joshua J. Jackson (ASB-8286-U79J)
Attorney for Defendants Treis Blockchain, LLC, Cevon Technologies, LLC, Stronghold Digital Mining, LLC, Michael Bolick, David Pence, and Senter Smith

**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on the __30th__ day of __October__, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com

Carissa V. Sears
The Sears Law Office, LLC
7887 E. Belleview Ave. Suite 1100
Greenwood Village, CO 80111
carissa@searslaw.org


_____/s Joshua J. Jackson_____
OF COUNSEL

- 39 -

**IN THE MIDDLE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| MARK GRAMS,<br>An individual Alabama citizen,<br><br>    Plaintiff,<br><br>v.<br><br>TREIS BLOCKCHAIN, LLC,<br>CHAIN ENTERPRISES, LLC,<br>CEVON TECHNOLOGIES, LLC,<br>STRONGHOLD DIGITAL MINING,<br>LLC, DAVID PENCE, MICHAEL<br>BOLICK, SENTER SMITH,<br>BRIAN LAMBRETTI, AND<br>JOHN CHAIN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Civil Action No.:<br>3:23-CV-00299-SMD**<br><br>**DECLARATION OF<br>TREIS BLOCKCHAIN, LLC<br>IN SUPPORT OF<br>MOTION TO TRANSFER** |

I, Michael Bolick, swear and affirm as follows:

1.   My name is Michael Bolick and I am a Co-Founder and Managing Director of Defendant Treis Blockchain, LLC ("Treis") in the above-captioned case.

2.   I am over the age of eighteen and have personal knowledge of and am competent to testify about the matters addressed in this declaration.

3.   I submit this declaration in support of Treis Blockchain, LLC's Motion to Transfer or Alternatively Dismiss Plaintiff's Amended Complaint.

4.   Treis's only office is in Greenville, South Carolina, and Treis does not have an office or branch in Alabama.

5.   Treis does not have an Alabama telephone listing.

6.   Treis does not have an Alabama bank account.

7.  Treis does not have real or personal property in Alabama.

8.  Other than the above-captioned lawsuit, Treis has not been involved in any prior litigation in Alabama or availed itself of the courts in Alabama.

9.  All of the physical equipment at issue in this litigation is located in South Carolina and Pennsylvania, not Alabama.

10. Any of Treis's use of WAO2 firmware was legal, permissible and occurred with Grams' consent and within the states of South Carolina and Pennsylvania.

11. Treis has not done business in Alabama.

12. When initially discussing the potential development, use and/or purchase of the WAO2 firmware in question (the "Firmware"), Treis was negotiating and/or doing business with Chain Enterprises, LLC, which is headquartered and located in Las Vegas, Nevada (hereinafter "CEL") and/or John Chain as CEO of CEL.

13. During Treis' initial negotiations with CEL, Mr. Chain asked if Treis would allow CEL to test the Firmware on some of Treis' computers for the purpose of finalizing the Firmware. In response, Treis provided access to approximately 1,500 computers onto which the Firmware was installed. These computers were, at all relevant times, located in South Carolina and Pennsylvania.

14. Subsequently, Grams requested that Treis loan him several computers so that Grams could continue development of the Firmware. In response, Treis provided less than 20 computers for this purpose.

15. Other than its agreement to allow the Firmware to be installed and tested on Treis' computers, Treis has never had an agreement with Grams, CEL or Chain wherein Grams would repair and/or maintain Treis' computers. Instead, Treis

2

offered to loan Grams less than 20 computers so that Grams could continue to develop and finalize the Firmware. The only work performed on Treis' computers was the installation, operation and testing of the Firmware on the computers.

16. Prior to Grams' disclosure that he was not an officer, director, member and/or employee of CEL, all of Treis' communications were directed to CEL by way of communications to Chain and/or to a group chat to which Grams was one of multiple participants.

17. After Grams disclosed that he was not an officer, director, member and/or employee of CEL, Treis' communications with Grams were limited to informing Grams (a) of the lawsuit that Treis filed against Chain and CEL (the "Lawsuit") and (b) that any negotiations between Grams, Treis and/or Cevon would need to occur after the resolution of the Lawsuit.

18. Treis never directed Grams to sell any of Treis' computers within the State of Alabama. Treis consented to Grams' request to sell some of the computers, but Treis did not know that the potential buyer was located in Alabama because Grams never provided the identity of the potential buyer prior to the sale. Treis never met with or communicated with this buyer.

19. None of Treis's directors, officers or employees ever traveled to Alabama to meet with any potential customers.

20. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20 day of October 2023.

_____
Michael Bolick, on Behalf of Treis Blockchain, LLC

3

**IN THE MIDDLE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

MARK GRAMS,
An individual Alabama citizen,

    Plaintiff,

v.

TREIS BLOCKCHAIN, LLC,
CHAIN ENTERPRISES, LLC,
CEVON TECHNOLOGIES, LLC,
STRONGHOLD DIGITAL MINING,
LLC, DAVID PENCE, MICHAEL
BOLICK, SENTER SMITH,
BRIAN LAMBRETTI, AND
JOHN CHAIN,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil Action No.:**
**3:23-CV-00299-SMD**

**DECLARATION OF**
**MICHAEL BOLICK IN**
**SUPPORT OF CEVON**
**TECHNOLOGIES, LLC'S**
**MOTION TO TRANSFER**

I, Michael Bolick, swear and affirm as follows:

1. My name is Michael Bolick, and I am a Co-Founder and Managing Director of Defendant Treis Blockchain, LLC ("Treis") in the above-captioned case. I was a member of Cevon Technologies, LLC ("Cevon").

2. I am over the age of eighteen and have personal knowledge of and am competent to testify about the matters addressed in this declaration.

3. I submit this declaration in support of Defendant Cevon's Motion to Transfer or Alternatively to Dismiss Plaintiff's Amended Complaint.

4. Cevon was a limited liability company formed under the laws of Delaware on October 7, 2020 by Treis, Treis's members, Chain Enterprises, LLC ("CEL"), and

1

John Chain. Cevon's principal place of business was in Greenville, South Carolina.

5.   Cevon was formed to act solely as a holding company.

6.   I executed a certificate of cancellation of Cevon's certificate of formation on April 10, 2023, which was subsequently filed with the State of Delaware on May 9, 2023.

7.   I was born in Decatur, Alabama but my parents moved us from that state before my second birthday and I have never been a resident of Alabama since then.

8.   I have never worked in Alabama. I do not have personal property located in Alabama.

9.   None of Cevon's other members ever lived or worked in Alabama.

10.  Cevon has never maintained an office or branch in Alabama, maintained any bank accounts in Alabama or had a phone listing in Alabama.

11.  Cevon has never owned property, real or personal, in Alabama.

12.  Prior to this litigation, Cevon has never been involved in any prior litigation in Alabama and has never availed itself of the Alabama courts.

13.  Other than the Plaintiff, the persons having knowledge concerning Cevon and the allegations against Cevon in the Amended Complaint reside outside of Alabama.

14.  Cevon has never done any business in Alabama.

15.  Cevon never owned the computers on which the WAO2 firmware (the "Firmware") was installed.

16. Cevon never had any agreements with Mark Grams, including any employment, independent contractor, or membership agreements.

17. There was a brief discussion regarding Cevon's potential employment of Grams, but no such employment was ever offered or otherwise materialized.

18. No person acting on Cevon's behalf has ever traveled to Alabama or done business with a person or entity residing in Alabama.

19. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20 day of October 2023.

_____
Michael Bolick, on Behalf of Cevon Technologies, LLC

3

EXHIBIT C

**IN THE MIDDLE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

MARK GRAMS,                                    )
An individual Alabama citizen,                 )
                                               )
     Plaintiff,               )
                                               )
                                               )      **Civil Action No.:**
                                               )      **3:23-CV-00299-SMD**
                                               )
v.                                             )
                                               )      **AFFIDAVIT OF**
TREIS BLOCKCHAIN, LLC,                         )      **MATTHEW SMITH**
CHAIN ENTERPRISES, LLC,                        )      **IN SUPPORT OF**
CEVON TECHNOLOGIES, LLC,                       )      **STRONGHOLD DIGITAL**
STRONGHOLD DIGITAL MINING,                     )      **MINING LLC's MOTION**
LLC, DAVID PENCE, MICHAEL                      )      **TO TRANSFER**
BOLICK, SENTER SMITH,                          )
BRIAN LAMBRETTI, AND                           )
JOHN CHAIN,                                    )
                                               )
     Defendants.

_____

     I, Matthew Smith, swear and affirm as follows:

1.    My name is Matthew Smith, and I am an Authorized Person of Stronghold Digital

     Mining LLC ("Stronghold") and Chief Financial Officer of its affiliate, Stronghold

     Digital Mining, Inc. in the above-captioned matter.

2.    I am over the age of eighteen and have personal knowledge of and am

     competent to testify about the matters in this affidavit.

3.    I submit this affidavit in support of Stronghold's Motion to Transfer or Alternatively

     to Dismiss Plaintiff's Amended Complaint.

4.    Stronghold is a limited liability company formed under the laws of Delaware and

     whose corporate office is located at 2151 Lisbon Road, Kennerdell,

     Pennsylvania.

1

5. Stronghold is a bitcoin mining operation which together with its affiliates, operates two power facilities, the Scrubgrass Plant in Venango County, Pennsylvania, and the Panther Creek Plant in Carbon County, Pennsylvania.

6. All of Stronghold's offices, buildings, facilities and equipment are located in Pennsylvania and New York.

7. Stronghold has never owned or operated a power facility in Alabama.

8. Stronghold has never had an office in Alabama or owned property, real or personal, in Alabama.

9. Stronghold does not have any bank accounts in Alabama.

10. Stronghold, prior to this litigation, has never been involved in litigation in Alabama.

11. Stronghold has never availed itself of the courts in Alabama.

12. Stronghold has never done business in Alabama.

13. Prior to the purchase of the computers in question, Stronghold had no material contact or relationship with Mark Grams and no knowledge of what, if any, involvement Grams may have had with the computers or the WAO2 firmware installed thereon (the "Firmware).

14. Any use of the Firmware by Stronghold occurred after Stronghold's purchase of the computers and occurred outside of the state of Alabama.

15. To the best of Stronghold's knowledge, all of Stronghold's communications with Grams relating to his alleged ownership of the Firmware occurred through Stronghold's legal counsel.

16. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of October 2023.

By: _____

Matthew Smith
Authorized Person

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF ALLEGHENY

I, Chelsey Elaine Hartman Notary Public, do hereby certify that Matthew Smith personally appeared before me this day and acknowledged due execution of the foregoing instrument. Witness my hand and official seal, this the 19th day of October 2023.

My Commission Expires: April 27, 2026          Chelsey Elaine Hartman
                                                Notary Public

Commonwealth of Pennsylvania - Notary Seal
CHELSEY ELAINE HARTMAN - Notary Public
Allegheny County
My Commission Expires April 27, 2026
Commission Number 1420042

3

## IN THE MIDDLE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| MARK GRAMS,<br>An individual Alabama citizen,<br><br>    Plaintiff,<br><br><br>v.<br><br>TREIS BLOCKCHAIN, LLC,<br>CHAIN ENTERPRISES, LLC,<br>CEVON TECHNOLOGIES, LLC,<br>STRONGHOLD DIGITAL MINING,<br>LLC, DAVID PENCE, MICHAEL<br>BOLICK, SENTER SMITH,<br>BRIAN LAMBRETTI, AND<br>JOHN CHAIN,<br><br>    Defendants. | **Civil Action No.:**<br>**3:23-CV-00299-SMD**<br><br><br>**DECLARATION OF**<br>**MICHAEL BOLICK**<br>**IN SUPPORT OF**<br>**MOTION TO TRANSFER** |

I, Michael Bolick, swear and affirm as follows:

1. My name is Michael Bolick and I am a Co-Founder and Managing Director of Defendant Treis Blockchain, LLC ("Treis") in the above-captioned case.

2. I am over the age of eighteen and have personal knowledge of and am competent to testify about the matters addressed in this affidavit.

3. I submit this affidavit in support of my Motion to Transfer or Alternatively Dismiss Plaintiff's Amended Complaint.

4. I have lived in Greenville County, South Carolina since June 1997.

5. I was born in Decatur, Alabama but my parents moved us from Alabama before my second birthday and I have not lived in Alabama since then.

1

6.  I have never owned real estate in Alabama.

7.  I do not and have never owed child support or alimony in Alabama.

8.  I do not and have never owned personal property in Alabama.

9.  I do not and have never had an office in Alabama.

10. I do not have any family in Alabama.

11. I have never, prior to this litigation, been involved in litigation in Alabama.

12. All the physical equipment at issue in this litigation is located in South Carolina and Pennsylvania, not Alabama.

13. All of my interactions with Mark Grams and/or the WAO2 firmware were undertaken solely in my capacity as Managing Director of Treis and were undertaken for the benefit of Treis and/or Cevon Technologies, LLC, of which Treis was a member.

14. Any of Treis' use of WAO2 was legal, permissible, and occurred with Grams' consent and within the states of South Carolina and Pennsylvania.

15. Treis' office is located at 601 Hitech Court, Greer, South Carolina 29650. This address is not my dwelling or usual place of abode.

16. I did not and have not authorized or given consent for David Pence to accept or receive service of process on my behalf.

17. Neither Mark Grams nor anyone acting on his behalf has personally delivered a copy of a summons and complaint to me.

18. I declare under penalty of perjury that the foregoing is true and correct.

2

Executed on this 20 day of October 2023.

_____

Michael Bolick

EXHIBIT E

# IN THE MIDDLE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

MARK GRAMS,
An individual Alabama citizen,

    Plaintiff,

v.

TREIS BLOCKCHAIN, LLC,
CHAIN ENTERPRISES, LLC,
CEVON TECHNOLOGIES, LLC,
STRONGHOLD DIGITAL MINING,
LLC, DAVID PENCE, MICHAEL
BOLICK, SENTER SMITH,
BRIAN LAMBRETTI, AND
JOHN CHAIN,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil Action No.:**
**3:23-CV-00299-SMD**

**DECLARATION OF**
**BRIAN LAMBERTI**
**IN SUPPORT OF**
**MOTION TO TRANSFER**

I, Brian Lamberti, swear and affirm as follows:

1.   My name is Brian Lamberti and I am Fleet Manager of Defendant Treis Blockchain, LLC ("Treis") in the above-captioned case.

2.   I am over the age of eighteen and have personal knowledge of and am competent to testify about the matters addressed in this affidavit.

3.   I submit this affidavit in support of my Motion to Dismiss Plaintiff's Complaint.

4.   I have lived in Greenville County, South Carolina since April 1998.

5.   I have been a co-owner of Pelham Falls Deli and Catering in Greenville, South Carolina since 2001.

1

6. I have been an employee of Treis since 2018.

7. I have never been a resident of Alabama.

8. I have never owned real estate in Alabama.

9. I do not and have never owed child support or alimony in Alabama.

10. I do not and have never owned personal property in Alabama.

11. I do not and have never had an office in Alabama.

12. I do not have any family in Alabama.

13. I have never, prior to this litigation, been involved in litigation in Alabama.

14. I have never availed myself of the courts in Alabama.

15. All of my interactions with Mark Grams, the computers owned by Treis and/or the WAO2 firmware installed on those computers were undertaken solely in my capacity as an employee of Treis and were undertaken for the benefit of Treis.

16. Treis's office is located at 601 Hitech Court, Greer, South Carolina 29650. This address is not my dwelling or usual place of abode.

17. I did not and have not authorized or given consent for David Pence to accept service of process on my behalf.

18. Neither Mark Grams nor anyone acting on his behalf has personally delivered a copy of a summons and complaint to me.

19. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20 day of October 2023.

Brian Lamberti

EXHIBIT F

# IN THE MIDDLE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| MARK GRAMS,<br>An individual Alabama citizen,<br><br>    Plaintiff,<br><br>v.<br><br>TREIS BLOCKCHAIN, LLC,<br>CHAIN ENTERPRISES, LLC,<br>CEVON TECHNOLOGIES, LLC,<br>STRONGHOLD DIGITAL MINING,<br>LLC, DAVID PENCE, MICHAEL<br>BOLICK, SENTER SMITH,<br>BRIAN LAMBRETTI, AND<br>JOHN CHAIN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.:**<br>**3:23-CV-00299-SMD**<br><br>**DECLARATION OF**<br>**SENTER SMITH**<br>**IN SUPPORT OF**<br>**MOTION TO TRANSFER** |

I, Senter Smith, swear and affirm as follows:

1.  My name is Senter Smith and I am a Co-Founder and Managing-Director of Defendant Treis Blockchain, LLC ("Treis") in the above-captioned case.

2.  I am over the age of eighteen and have personal knowledge of and am competent to testify about the matters addressed in this affidavit.

3.  I submit this affidavit in support of my Motions to Transfer or Dismiss Plaintiff's Amended Complaint.

4.  I reside in Greenville County, South Carolina.

5.  I have never been a resident of Alabama.

1

6.   I have never owned real estate in Alabama.

7.   I do not and have never owed child support or alimony in Alabama.

8.   I do not and have never owned personal property in Alabama.

9.   I do not and have never had an office in Alabama.

10.  I do not have any family in Alabama.

11.  I have never, prior to this litigation, been involved in litigation in Alabama.

12.  I have never availed myself of the courts in Alabama.

13.  All of my interactions with Mark Grams, the computers owned by Treis, and/or the WAO2 firmware installed on those computers, were undertaken solely in my capacity as an employee of Treis and were undertaken for the benefit of Treis.

14.  Treis's office is located at 601 Hitech Court, Greer, South Carolina 29650. This address is not my dwelling or usual place of abode.

15.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 26 day of October 2023.

_____
Senter Smith

2

**IN THE MIDDLE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK GRAMS,<br>An individual Alabama citizen,<br><br>    Plaintiff,<br><br>v.<br><br>TREIS BLOCKCHAIN, LLC,<br>CHAIN ENTERPRISES, LLC,<br>CEVON TECHNOLOGIES, LLC,<br>STRONGHOLD DIGITAL MINING,<br>LLC, DAVID PENCE, MICHAEL<br>BOLICK, SENTER SMITH,<br>BRIAN LAMBRETTI, AND<br>JOHN CHAIN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.:**<br>**3:23-CV-00299-SMD**<br><br>**DECLARATION OF**<br>**DAVID PENCE**<br>**IN SUPPORT OF**<br>**MOTION TO TRANSFER** |

I, David Pence, swear and affirm as follows:

1.   My name is David Pence and I a Co-Founder and Managing-Director of Defendant Treis Blockchain, LLC ("Treis") in the above-captioned case.

2.   I am over the age of eighteen and have personal knowledge of and am competent to testify about the matters addressed in this affidavit.

3.   I submit this affidavit in support of my Motions to Transfer or Dismiss Plaintiff's Amended Complaint.

4.   I have lived in Greenville County, South Carolina since May 1994.

5.   I have never been a resident of Alabama.

6.   I have never owned real estate in Alabama.

1

7.  I do not and have never owed child support or alimony in Alabama.

8.  I do not and have never owned personal property in Alabama.

9.  I do not and have never had an office in Alabama.

10. I do not have any family in Alabama.

11. I have never, prior to this litigation, been involved in litigation in Alabama.

12. I have never availed myself of the courts in Alabama.

13. All of my interactions with Mark Grams, the computers owned by Treis, and/or the WAO2 firmware installed on those computers, were undertaken solely in my capacity as an employee of Treis and were undertaken for the benefit of Treis.

14. Treis's office is located at 601 Hitech Court, Greer, South Carolina 29650. This address is not my dwelling or usual place of abode.

15. I declare under penalty of perjury that the foregoing is true and correct.


Executed on this 26 day of October 2023.

David Pence