**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK GRAMS, | ) | |
| An individual Alabama citizen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.:** |
| | ) | **3:23-CV-00299-RAH** |
| TREIS BLOCKCHAIN, LLC, | ) | |
| CHAIN ENTERPRISES, LLC, | ) | |
| CEVON TECHNOLOGIES, LLC, | ) | |
| STRONGHOLD DIGITAL MINING, | ) | |
| LLC, DAVID PENCE, MICHAEL | ) | |
| BOLICK, SENTER SMITH, | ) | |
| BRIAN LAMBRETTI, AND | ) | |
| JOHN CHAIN, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)**

---

## INTRODUCTION

Treis Blockchain, LLC, Cevon Technologies, LLC, Stronghold Digital Mining, LLC, Michael Bolick, Brian Lamberti, David Pence, and Senter Smith (collectively the "Defendants") have, contemporaneously herewith, collectively filed a Motion to Transfer to the District of South Carolina or to be individually dismissed from this action. If the Court grants that Motion, it need not reach this Rule 12(b)(6) motion. If, however, the Court decides against transferring this case, Defendants respectfully request that

Counts 2-5, 11, 12, and 14-16 against them be dismissed for failing to state a claim for which relief can be granted.

According to the Amended Complaint, the heart of this dispute involves a breach of contract(s) in which Mark Grams ("Plaintiff" or "Grams") agreed to develop and finalize certain firmware that could be used to mine cryptocurrency in exchange for a development fee that would consist of a percentage of the value of the cryptocurrency mined using the firmware. The Amended Complaint alleges that the contract(s) in question were breached when computers on which the firmware was installed were sold to Defendant Stronghold Digital Mining, LLC. The lack of any written agreements and the number of parties involved makes it difficult to discern what contracts allegedly existed as well as the parties to and terms of the contracts.  But what is not difficult to discern is that the Amended Complaint seeks to allege several superfluous causes of action that are not applicable to the facts alleged. Defendants, therefore, seek to dismiss those claims so that the real dispute (as alleged in Counts 6-10 and 17-18) may be resolved.

## **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Gulf S. Communications, Inc. v. Woof, Inc.*, 2021 WL 2405199, at *1 (M.D. Ala. June 11, 2021) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Turner v. Williams*, 65 F.4th 564,

577 (11th Cir. 2023) (*quoting Ashcroft*, 556 U.S. at 678). The Eleventh Circuit requires "more than labels and conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to survive a Rule 12(b)(6) motion. Further, where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citations omitted).

"Where a district court faces an amended complaint containing multiple claims for relief based on conclusory and ambiguous allegations, the court has two options. After disregarding legal conclusions and conclusory statements of fact, it can dismiss the amended complaint with an explanation of why it is deficient and grant the plaintiff leave to amend, or it can convene a conference of counsel, explain why the amended complaint is deficient, determine whether the pleader can cure the amended complaint's deficiencies, and, if he can, have the pleader replead the amended complaint accordingly and without delay." *Turner*, 65 F.4th at 577-578.

## ANALYSIS

### I.    Counts 2-3 Must be Dismissed for Failure to Sufficiently Allege Reasonable Secrecy Measures.

Counts 2-3 of the Amended Complaint [Doc. 52] purport to state a claim for "Willful and Wanton Misappropriation Pursuant to 18 U.S.C. § 1836," which is also known as the Defend Trade Secrets Act. Because Plaintiff has not alleged any

reasonable measures to protect the secrecy of the WAO2 firmware (the "Firmware"), Counts 2-3 should be dismissed.

"To plead a violation of the DTSA, a plaintiff must allege that he '(i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff, (b) *for which the plaintiff took reasonable measures to keep secret*, and (ii) the defendant used and/or disclosed that information despite (iii) a duty to maintain its secrecy.'" *Resnick v. City of Troy,* 2019 U.S. Dist. LEXIS 79881, *15 (M.D. Ala. May 13, 2019) (*quoting Trinity Graphic, USA, Inc.*, 320 F. Supp. 3d 1285, 1293 (M.D.Fla 2018)) (emphasis added). "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1222 (N.D. Ala. 2021) (citations omitted); *Am. Red Cross v. Palm Beach Blood Bank, Inc*. 143 F.3d 1407, 1410 (11th Cir. 1998). "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *Id.* (citations omitted). To survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above a speculative level." *Martin v. Auburn Univ. Montgomery*, 2012 WL 787047, *1 (M.D. Ala. Mar. 12, 2012).

While the Amended Complaint alleges that Grams took reasonable secrecy efforts to protect the Firmware *while it was in his possession*, the Amended Complaint also makes clear that Grams failed to take any reasonable secrecy efforts to protect the Firmware when it left his possession.

- The only discussion of a non-disclosure agreement occurring prior to Gram's delivery of the Firmware to Treis occurred in May 2020, when Defendant *John Chain* ("Chain") told Treis that *he* takes security of information seriously and *offered* to enter into a nondisclosure agreement with Treis. *Am. Cmplt.* ¶ 79. The Amended Complaint makes no mention of such an agreement being reached because no agreement *was* ever reached.

- This lack of a non-disclosure agreement is evidenced by Grams' allegation that in September 2020, *Treis requested Chain* to maintain the confidence of a pricing matrix that Treis disclosed to Chain. *Id.* at ¶ 80.

- From at least as early as the summer of 2020, Grams knew that computers running the Firmware were located in South Carolina. *Id.* at ¶ 84. Despite this knowledge, Grams never made any efforts to inspect or otherwise ensure that any of Grams' previously requested security measures had been put in place for those computers.

- Grams also knew that most of the computers on which the Firmware was installed were in Pennsylvania. *Id.* at ¶ 199. Grams failed to make a site inspection to ensure that the requested security measures were in place for such computers until September 2021, when, as requested, Grams visited the Pennsylvania site to work on the Firmware.

- Upon learning that the Pennsylvania computers had not been secured such that "anyone could simply walk up to one of the containers… and steal Grams's WAO2," Grams "alerted Lamberti." *Id.* at ¶ 219-220.

- Curiously, despite the alleged failure by Treis to comply with Grams' prior security request, "Grams trusted Lamberti's reassurances" that the requested security measures would now be put in place. *Id.* at ¶ 226. The Amended Complaint makes no mention of any additional inspections or other efforts taken by Grams to verify that reasonable security measures had been put in place.

- Grams admits that Treis did not install cameras as allegedly requested by Grams. *Id.* at ¶ 227.

- In or around March 2021, Grams disclosed to a third-party computer fabricator with whom Grams had no confidentiality agreement, information regarding a workaround that Grams developed to keep the computers cool while running the Firmware. *Id.* at ¶ 129-134. The Amended Complaint makes no mention of any efforts taken by Grams to ensure that the fabricator would not access the Firmware and/or that the fabricator would not use or disclose the alleged trade secrets associated with the Firmware.

- In or around July 2021, Grams allowed VNish Mining Software Company ("VNish") to install and use a copy of the Firmware. *Id.* at ¶ 183. While the Amended Complaint references a written agreement, it makes no mention of any confidentiality restrictions contained in that agreement. *Id.* at ¶ 52 & 184.

- Tellingly, Counts 2 and 3 *never allege* that Grams took reasonable secrecy efforts to protect the Firmware or the alleged trade secrets associated with that Firmware. *Id.* at ¶ 326-358.

Additionally, the reasonableness of any alleged secrecy efforts must be judged in light of the fact that a prior version of the Firmware had been stolen due to Grams' past failures to take reasonable secrecy efforts. *See Cmplt.* [Doc. 1]*,* ¶ 54-61. As explained in the original Complaint, Grams allowed Chain to market the first version of the Firmware but because neither Grams nor Chain devised a plan on how to protect the Firmware from misappropriation, one of the potential customers with whom Chain was negotiating stole it. *Id.* at ¶ 54-55. Therefore, Grams was forced to develop a second version of the Firmware[1]. *Id.* at ¶ 60-61.

Despite having been burned once before, Grams continued to put his hand on the stove by (1) continuing to allow Chain to handle the distribution of Firmware with *no additional safeguards in place* to ensure that the alleged trade secrets would be protected by Chain; (2) failing to enter into a confidentiality agreement with Treis prior to providing a copy of the Firmware to Treis; (3) repeatedly failing to verify that Treis had implemented reasonable safety measures to protect the Firmware in its possession (which it had not); and (4) allowing, on at least two

---

[1] The Amended Complaint fails to describe what changes were made when developing the second version of the Firmware at issue in the Amended Complaint, which raises questions as to whether the Firmware even "derives independent economic value… from not being generally known", as is required to qualify for protection. *See* 18 U.S.C. 1839(3).

occasions, third parties to have possession of the Firmware without ensuring that the confidentiality of the alleged trade secrets would be maintained by such parties.

### A.  Grams Took No Precautions to Protect the Firmware from Use or Disclosure by VNish or a Third-Party Computer Fabricator.

Even if Grams could prove that he took reasonable secrecy efforts prior to disclosing the Firmware to Treis, his complete failure to take *any* secrecy efforts prior to disclosure of the Firmware to VNish and/or a third-party computer fabricator hired by Treis defeats his claim for trade secret protection.  Grams was aware that computers running the Firmware were provided to Treis' computer fabricator so that the fabricator could implement the cooling modification on those machines. *See Am. Cmplt.*, ¶ 129-134. Grams did not object to the fabricator's access to such machines or take any precautions to ensure that the fabricator would maintain the confidentiality of the alleged trade secrets associated with the Firmware. *Id.* Instead, Grams provided the fabricator with information about how to access and modify the machines to ensure that they remained cool while running the Firmware. *Id.* at 134. Similarly, Grams allowed VNish to install and use a copy of the Firmware *Id.* at ¶ 183. There is no allegation that Grams required VNish to agree to restrictions that would protect the confidentiality of the alleged trade secrets. *Id.* at ¶ 184.

However, "[d]isclosing the information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." *Core Labs. LP v. AMSPEC*, 2018 U.S. Dist. LEXIS

228565, *52 (S.D.Ala. May 10, 2018) (*quoting M.C. Dean, Inc. v. City of Miami Beach*, 199 F. Supp. 3d 1349, 1353 (S.D.Fla. 2016)). So, regardless of what secrecy efforts Grams may have taken to protect the Firmware while it was in his own possession or the possession of Treis, his unrestricted disclosure of the Firmware to VNish and/or the third party fabricator destroys is ability to claim trade secret protection.

### B.  Grams Failed to Control the Manner in Which Chain Could Disclose the Firmware to Third Parties.

As clearly outlined in the original Complaint, Grams allowed Chain to handle negotiations for the sale of the first version of the Firmware. *See Am. Cmplt.*, ¶ 54-55. In doing so, however, Grams never entered a contract with Chain detailing the circumstances under which Chain could disclose the Firmware, including the secrecy measures that needed to be in place prior to its disclosure. *Id.* This failure resulted in a potential customer stealing the Firmware and misappropriating the associated trade secrets. *Id.* at ¶ 55-58.

Despite the prior misappropriation, Grams allowed Chain to continue to handle the negotiations for the sale of the Firmware. *See Am. Cmplt.*, ¶ 51 & 53. Grams *again* failed to put any safeguards in place that would prevent disclosure of the Firmware without a confidentiality agreement first being reached with the potential customer (e.g., Treis). Failure to ensure such an agreement is in place prior to disclosure is an unreasonable secrecy effort, even in normal circumstances. *See Physiotherapy Assocs., v. ATI Holdings, LLC*, 592 F Supp. 3d

1032, 1034-35 (N.D. Ala. 2022) ("confidentiality agreements exist in nearly every case where Alabama courts have found reasonable secrecy efforts, and the lack of such agreements is a common thread in cases finding the opposite") *appeal dismissed,* 2022 WL 2708913 (N.D. Ala. May 9, 2022). But failure to require such an agreement *after having just had the first version of the Firmware stolen* is an extremely unreasonable secrecy effort. But as discussed below, Grams allowed Chain to provide Treis a copy of the Firmware with nothing more than an expectation of confidently. As a matter of law, a mere expectation of confidentiality is insufficient. *See Greenberg v. Miami Children's Hosp. Research Inst., Inc*., 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003) (dismissing a trade secret claim because the complaint stated only that the parties had an "expectation that [the idea] would remain confidential").

### C.    Grams' Alleged Secrecy Efforts with Treis Were Both Untimely and Insufficient.

Grams allowed Chain to provide the Firmware to Treis, despite the fact that Treis was not obligated by a non-disclosure agreement. After Treis installed the Firmware on its computers, Grams asked that the computers be password protected and stored in a secure area. (Am. Cmpl. ¶ 203.) These facts are substantially similar to, and in some ways more egregious, than those involved in *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 U.S. Dist. LEXIS 231881 (S.D. Fla. Dec. 27, 2022), which ultimately dismissed the trade secrets claim for failure to take reasonable secrecy efforts.

- 10 -

In the *Surfaces* case, the plaintiff's predecessor, Pabellon, entered a business relationship with the Trigon defendants relating to Pabellon's communications technology. *Id.*, at *1. Pabellon and the Trigon defendants executed a mutual non-disclosure and confidentiality agreement. *Id.* To assist the Trigon defendants with finding potential business partners for Pabellon's technology, Pabellon gave the Trigon defendants a Demo Kit which contained confidential, proprietary information (trade secrets) that could be reverse engineered. The Trigon defendants gave the Demo Kit to the Point Blank defendants, a potential customer. Plaintiff subsequently brought an action against the Point Blank and Trigon defendants for violation of the DTSA and the Florida Uniform Trade Secrets Act. *Id.* at *2-5.

The Court dismissed the plaintiff's trade secrets claims (with prejudice) for failure to take reasonable steps to safeguard its alleged trade secrets, reasoning that even though the plaintiff had an NDA with the Trigon defendants (who provided the Demo Kit to the Point Blank Defendants), the Point Blank Defendants "were not a party to the NDA; thus, there can be no reasonable expectation that Defendants were bound by the NDA, let alone needed to circumvent the NDA." *Id.* at *14. The *Surfaces* court went on to note that "[w]hile Plaintiff was aware that [the Point Blank] Defendants had possession of the Demo Kit, the only step Plaintiff took to protect its trade secrets was to ask Defendants to return the Demo Kit after [the Point Blank] Defendants told Plaintiff that they would be putting the business

discussions with Plaintiff on hold until Plaintiff and the Trigon Defendants resolved their issues." *Id.* at *15.

Like the plaintiff in *Surfaces*, Grams provided the Firmware to Chain so that he could market it to potential customers. But unlike the *Surfaces* plaintiff, Grams failed to have Chain execute a confidentiality agreement. With Grams' knowledge, Chain provided a copy of the Firmware to Treis; and he did so without ever obtaining a non-disclosure agreement. Grams attempts to overcome this lack of security measures by alleging that the "group relied on trust and oral or informal instructions." *See Am. Cmpl.*, ¶ 80. However, Grams' argument fails both factually and legally: prior to or at the time of disclosure, the only party who requested that its information be kept confidential was *Treis*. *Id.* at ¶ 79(b). The Amended Complaint makes no mention of a request that Treis (or any of the other Defendants) refrain from disclosing the Firmware to third parties. As discussed above, Grams knew that Treis provided the Firmware to a computer fabricator and did not attempt to object or otherwise limit its disclosure. It is hard to understand the justification for Grams' "trust" when there were no requests or instructions that were provided to Treis prior to its possession of the Firmware.

As a legal matter, disclosing confidential with a mere "expectation that [the idea] would remain confidential" is insufficient to maintain the trade secret status of the information. *Surfaces*, 2022 U.S. Dist. LEXIS 231881, 15 (*quoting Greenberg v. Miami Children's Hosp. Research Inst., Inc*., 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003)). As the *Surfaces* court explained, a plaintiff's motive for not

taking reasonable secrecy efforts will not save a trade secret that has not been adequately protected. *Id.* (dismissing trade secret claim where "Plaintiff has not pled that it took any steps to safeguard its trade secrets as between itself and Defendants. Plaintiff points instead to its motives"). The fact remains that "[d]isclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." *In re Maxxim Med. Grp., Inc.*, 434 B. R. 660, 691 (Bankr. M.D. Fla. 2010).

Grams' after-the-fact request that the computers be password protected and stored in a secure location also fails to establish that he took reasonable security measures for several reasons. First, without a confidentiality agreement in place, such a request constitutes only a minimal secrecy effort. *Temurian v. Piccolo*, 2019 WL 1763022, at *11 (S.D. Fla. Apr. 19, 2019) (dismissing trade secrets claim where password-protecting computer network and limiting employee access were undermined by lack of a confidentiality agreement), *reh'g denied,* 2019 WL 2491781 (S.D. Fla. June 14, 2019). Even written agreements are not enough where the "agreement made no reference to trade secrets or confidential information" *Physiotherapy*, 592 F Supp. 3d at 1040.

The *Physiotherapy* court found that restricting access through computer passwords is merely a "normal business practice in any business." *Id.* (*quoting Maxpower Corp. v. Abraham*, 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008). The court, therefore, explained that "[i]f a basic computer-login password were enough, then every document stored on a company device would potentially be protectible."

*Id.* (*quoting Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 397 (D. Minn. 2020)).

Even if Grams' insistence that the computers be securely stored and password protected could be sufficiently reasonable, such measures could only be reasonable if they were actually implemented. But the Amended Complaint admits that Grams failed to inspect the locations of the computers or to take other actions to ensure that the security measures had been implemented. Such a failure is unreasonable, especially considering Grams' prior experience in having his alleged trade secrets misappropriated just months before. *See Cmplt*. ¶ 55.

Because Grams failed to take reasonable efforts to protect the secrecy of the Firmware, his claim for trade secret misappropriation under the DTSA should be dismissed with prejudice.

## II. Plaintiff's Claims Under the Alabama Trade Secrets Act (Counts 14-16) Should be Dismissed against Defendants for Failure to take Reasonable Secrecy Efforts.

The Alabama Trade Secrets Act (ATSA) "is modeled after and closely parallels the Uniform Trade Secrets Act," *Gulf*, 2021 WL 2405199, at *2, and "is nearly identical to that in the DTSA." *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1221 (N.D. Ala. 2021) (internal quotation omitted).  Under the ATSA, information qualifies as a "trade secret" only if in relevant part, it "is the subject of efforts that are reasonable under the circumstances to maintain its

secrecy." AL Code 8-27-2(1)(e).[2] For the reasons discussed above, Plaintiff's claims for misappropriation under the ATSA should also be dismissed with prejudice.

### III.    Count 4 of the Amended Complaint Should be Dismissed Because There is No Private Right of Action Pursuant to 18 U.S.C. § 1832.

Plaintiff's claim for "Conspiracy to Commit Theft or Trade Secrets in Violation of 18 U.S.C. § 1832(A)(5)," should be dismissed because Section 1832 is a criminal statute and does not provide a private right of action. *See Smith v. JP Morgan Chase,* 837 Fed. Appx. 769, 769 (11th Cir. Feb. 24, 2021) ("criminal statutes do not provide for private civil causes of action, so it follows that Smith's Title 18 allegations are also without merit because those criminal statutes do not provide for private causes of action") (unpublished)[3]. "Section 1832 is a criminal statute that establishes a crime and specifies punishment." *Vest Safety Med. Servs. v. Arbor Envtl., LLC*, 2020 WL 4003642, at *3 (S.D. Tex. Jul. 15, 2020); 18 U.S.C. § 1832(a)(5) (punishment is fine, imprisonment, or both); *Zegato Travel Solutions, LLC v. Bailey*, 2014 WL 7365807, at *2 (D. Md. Dec. 22, 2014) (18 U.S.C. § 1832 "is the federal criminal statute for the theft of trade secrets").

---

[2] The ATSA also requires that the information is not generally known and cannot be readily ascertained or derived from a publicly available source. *Id*. subsections (c)-(d). The fact that the first version of the Firmware is publicly known calls into question whether the second version at issue could ever qualify as a trade secret.

[3] Fed. R. App. P. 32.1(a) (permitting citations of unpublished opinions issued on or after January 1, 2007).

"In the Economic Espionage Act of 1996, Congress criminalized the theft of trade secrets, as well as attempts and conspiracies to steal trade secrets. 18 U.S.C. § 1832(a). This criminal provision 'does not provide for a private right of action to redress the trade secret thefts that it proscribes.'" *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021) (*quoting Steves and Sons, Inc. v. JELD-WEN, Inc*., 271 F. Supp. 3d 835, 841 (E.D. Va. 2017)). *See also Stevens and Sons, Inc. v. JELD-WEN, Inc*., 271 F. Supp. 3d 835, 840-43 (E.D. Va. 2017) (holding that a civil plaintiff could not bring a claim for conspiracy to violate the DTSA because Congress did not expressly provide the civil cause of action); *Power*, 2021 WL 3856459; *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash. 2021) ("the weight of authority tips against the viability of conspiracy claims based on the misappropriation of trade secrets under the DTSA"); and *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (agreeing that 18 U.S.C. § 1832(a)(5), which criminalizes conspiracy to violate the DTSA, does not provide a private right of action).

Because no private right of action and/or private remedy exists under 18 U.S.C. § 1832, Plaintiff's claim for conspiracy under this statute must be dismissed.

## IV.    Count 5, Plaintiff's RICO Claim, Should Be Dismissed Because Plaintiff Has Failed to Adequately Plead a RICO Claim.

To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through

a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014). As discussed in the Defendants' Motion to Transfer filed contemporaneously herewith, Grams has failed to both adequately plead an "enterprise" or meet the heightened pleading standard that requires Plaintiff to "allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (*citing Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)). For the reasons set forth in Defendants' Motion to Transfer, Plaintiff's RICO claim should be dismissed with prejudice.

## V.     Plaintiff's Tortious Interference Claim Should Be Dismissed for Failing to Allege the Most Basic and Necessary Facts.

In Alabama, to state a claim for Tortious Interference with Business or Contractual Relations, a complaint must plausibly allege, "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Walter Energy, Inc. v. Audley Capital Advisors LLP*, 176 So. 3d 821, 828 (Ala. 2015). In *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 U.S. App. LEXIS 21039 (11th Cir. July 29, 2022), the 11th Circuit upheld the Florida district court's finding that the plaintiff's reliance on mere "assertions that [defendant]

UCMS 'knew, and was aware' of, and that UCMS 'purposefully and intentionally' interfered with, CMR's contractual and business relationships with the Association to support its claims" was insufficient to support a claim for tortious interference with business or contractual relations because "CMR failed to allege facts to support those otherwise conclusory assertions." *Id.* at *16.

Like the plaintiff in *CMR Constr. & Roofing*, Grams fails to identify the contracts at issue and simply alleges he was involved in and/or party to "various business or contractual relationships" (Am. Cmplt. ¶ 472), without identifying those purported business or contractual relationships. Such a failure is critical as this claim is asserted against Treis and its officers / employees (Pence, Bolick, Smith and Lamberti). As evidenced by Grams' breach of contract claim in Count 8, Treis was a party to at least one of the alleged contracts. While a party to a contract can *breach the contract*, it cannot intentionally interfere with a contract to which it is a party; nor can the employees and/or officers of the breaching party. *See Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1585 (N.D.Ala. 1996) ("Neither a party to the contract nor an agent or employee or a party to the contract, if acting within the scope of authority, can be liable for tortious interference with the contract"). As such, Plaintiff has failed to allege the first element of a claim for tortious interference, "the existence of a protectible business relationship." *Id*.

Plaintiff also fails to allege that Defendants were *aware* of any purported protectible business relationship, the second element of a claim for tortious interference. *Id*. Rather, Plaintiff merely concludes that <u>he</u> was aware of the

contracts at issue. *See* Am. Cmpl. ¶ 473 ("*Plaintiff* was fully aware of the existence of these business or contractual relationships") (emphasis added). Further, although Plaintiff alleges that Defendants "tortiously interfered with Plaintiff's valid and enforceable contractual or business relationships" (Am. Cmpl. ¶ 474), he fails to offer *any facts* in support of these allegations. *See CMR Constr. & Roofing*, at *16-17 ("Because CMR failed to support its tortious interference claims with facts from which a reasonable trier of fact could infer that CMR's claims were plausible, the district court did not err in dismissing CMR's tortious interference claims.")

Moreover, to the extent Plaintiff attempts to rely on his incorporation and re-allegation of "paragraphs 18 through 159 as if the same were fully set forth herein", (Am. Cmplt. ¶ 470), such pleading is also insufficient to state a claim, as the preceding paragraphs in the Amended Complaint involve nine defendants and various third parties. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir. 2014) (a shotgun pleading, where each count adopts allegations of all preceding counts, renders it virtually impossible to know which allegations of fact are intended to support which claims for relief).

Because Plaintiff fails to allege the necessary factual support of his Tortious Interference claim, Count 11 must be dismissed.

**VI.    Count 12 for Conversion is Preempted by the ATSA and Therefore Must be Dismissed for Failure to State a Claim.**

Plaintiff's claim for Conversion must be dismissed because it is premised on the same facts as Plaintiff's Misappropriation of Trade Secret claims and are thus preempted by the ATSA.

Alabama courts have uniformly held that "a misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA and not under the common law theory of conversion." *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019). In *Parker v. Petrovics*, 2020 U.S. Dist. LEXIS 123029, at *29-31 (N.D. Ala. July 14, 2020) (finding that "Plaintiff's common law conversion claim is preempted by the ATSA"  because the conversion claim was "based on the act of misappropriating the trade secret information").

This preemption continues regardless of whether the material converted qualifies as a trade secret. *See Allied Supply Co.,* 585 So. 2d 33, 37 (Ala. 1991) (affirming the trial court's finding that the documents were not trade secrets for failure to maintain reasonable secrecy but finding that the ATSA preempted the plaintiff's claims regarding the same, non-trade secret information). "Following the reasoning of Allied Supply, at least three federal courts in Alabama have found that "preemption under the ATSA is not dependent on whether the misappropriated information constitutes a trade secret." *Physiotherapy Assocs.*, 592 F. Supp. 3d at 1047 (citing *Rotor Blade, LLC*, 545 F. Supp. 3d 1202; *Parker v. Petrovics*, No. 2:19-

cv-699-RDP, 2020 U.S. Dist. LEXIS 123029, (N.D. Ala. July 14, 2020) and *Gulf South Communs.*, 2021 U.S. Dist. LEXIS 1099630).  "Allowing a claim to proceed when the ATSA claim failed would defeat the purpose of the ATSA to supersede common law inconsistent with the statute." *Physiotherapy Assocs.*, 592 F. Supp. 3d at 1047. *See also Hauck Manufacturing Co. v. Astec Industries, Inc.*, 375 F. Supp.2d 649, 654 (E.D. Ten. 2004) ("The USTA has been uniformly interpreted to preempt previously existing misappropriation of trade secret actions, whether statutory or common law. . . Courts are also in general agreement the USTA's preemptive force reaches at least some additional causes of action").

Here, Plaintiff's conversion claim is based on allegations that "Defendants have converted property legally belonging to Plaintiffs [sic]". *See Am. Cmpl.* ¶ 481). The only "property" of Plaintiff's at issue in this matter—and thus the only property possible of having been "converted" by any of the Defendants—is the Firmware, the purported trade secret. As such, Plaintiff's conversion claim can only be read as premised on Defendants' misappropriation of Plaintiff's purported trade secret. Accordingly, Count 12 must be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that Counts 2-5, 11, 12, and 14-16 be dismissed for failing to state a claim for which relief can be granted.

Respectfully submitted this the  30th  day of October, 2023.

                     /s Joshua J. Jackson
                     Joshua J. Jackson (ASB-8286-U79J)
                     Attorney for Defendants Treis Blockchain, LLC,
                     Cevon Technologies, LLC, Stronghold Digital
                     Mining, LLC, Michael Bolick, Brian Lamberti,
                     David Pence, and Senter Smith

**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com

## CERTIFICATE OF SERVICE

        I hereby certify that on the  30th  day of  October  , 2023, I electronically
filed the foregoing with the Clerk of Court using the CM/ECF system, which will
send electronic notification of such filing to the following:

Jonathan K. Corley                    Carissa V. Sears
WHITTELSEY & CORLEY, LLC              The Sears Law Office, LLC
PO Box 106                            7887 E. Belleview Ave. Suite 1100
Opelika, AL 36803-0106                Greenwood Village, CO 80111
jcorley@wwp-law.com                   carissa@searslaw.org

                     /s Joshua J. Jackson
                     OF COUNSEL