## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK GRAMS, an individual Alabama citizen,<br><br>Plaintiff,<br><br>vs.<br><br>TREIS BLOCKCHAIN, LLC, CHAIN ENTERPRISES, LLC, CEVON TECHNOLOGIES, LLC, STRONGHOLD DIGITAL MINING, LLC, DAVID PENCE, MICHAEL BOLICK, SENTER SMITH, BRIAN LAMBRETTI, AND JOHN CHAIN,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.<br>3:23-CV-00299-SMD |

## DEFENDANTS JOHN CHAIN AND CHAIN ENTERPRISES, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COME NOW Defendants John Chain ("Defendant" or "Chain" hereafter) and Chain Enterprises, LLC ("Defendant" or "CEL" hereafter), by and through the undersigned counsel, and move to dismiss Plaintiff's Amended Complaint. In support thereof, Defendants show unto the Court as follows:

## NATURE AND STAGE OF THE PROCEEDINGS

On October 6, 2023, Plaintiff Mark Grams ("Plaintiff") filed an Amended Complaint (hereinafter "Am. Compl.") in this civil action against Chain Enterprises, LLC ("CEL"), Treis Blockchain, LLC ("Treis"), Cevon Technologies, LLC ("Cevon"),

Stronghold Digital Mining, LLC ("Stronghold"), John Chain ("Chain"), David Pence ("Pence"), Michael Bolick ("Bolick"), Senter Smith ("Smith"), and Brian Lamberti ("Lamberti") in the Middle District of Alabama, Eastern Division, Civil Action No.: 3:23-CV-00299-RAH. Plaintiff asserts eighteen causes of action against nine defendants. Pursuant to this Motion, Defendants Chain and CEL respectfully request that this Court dismiss Plaintiff's Complaint against them: (I) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (II) for improper venue pursuant to Rule 12(b)(3); and (III) for failure to state a claim under Rule 12(b)(6) as to Count 5 (RICO),_Count 9 (Fraudulent Misrepresentation), Counts 13 and 16 (Misappropriation pursuant to Alabama's Trade Secrets Act) and Count 17 (Work and Labor Done).

## SUMMARY OF ARGUMENT

First, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction against John Chain and CEL. As a threshold matter, while the Complaint alleges a RICO violation, Plaintiff has failed to plead an actual RICO claim and therefore cannot invoke RICO's nationwide service of process provision to establish jurisdiction over John Chain and CEL. For the purposes of dismissal pursuant to Rule 12(b)(2), this Motion addresses RICO as a potential basis for personal jurisdiction first.

This Motion addresses Alabama's long arm statute next. Neither John Chain nor CEL have continuous or systematic contacts with Alabama, nor minimum contacts with Alabama, as required under Alabama's long arm statute. Absent RICO, Plaintiff's basis for personal jurisdiction over these Defendants hinges on two main allegations in

Plaintiff's Amended Complaint: (1) Plaintiff's Alabama residence, and (2) that John Chain allegedly communicated and allegedly contracted with Plaintiff. These contacts are not enough to satisfy personal jurisdiction in this case.

In addition to John Chain's alleged communications and alleged contract with Plaintiff, the Amended Complaint focuses on Defendants' interactions with certain other co-defendants, all of whom reside outside the State of Alabama. As alleged, all interactions between these Defendants and any co-defendants occurred entirely outside the State of Alabama. This is an insufficient basis to justify personal jurisdiction over a nonresident.

Nothing alleged in Plaintiff's Amended Complaint indicates that these Defendants purposefully availed themselves of the privileges of conducting business in the State of Alabama. Because Plaintiff cannot rely on RICO's nationwide service of process to establish personal jurisdiction, and there is no basis for general or specific jurisdiction against Defendants under Alabama's long arm statute, this case must be dismissed as to John Chain and CEL.

Second, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(3) for improper venue because no substantial part of the events giving rise to Plaintiff's claims occurred either in this District, or indeed, anywhere in the State of Alabama.

The doctrine of *forum non conveniens* provides an additional basis of dismissal, as the private interest factors related to the Defendants and non-party witnesses support dismissal.

Even if the Court does not dismiss this case under Rule 12(b)(2), 12(b)(3), or under the doctrine of *forum non conveniens*, the following Counts must be dismissed for failure to state a claim under Rule 12(b)(6): Counts 5, 9, 13, 16, and 17. Count 5 (RICO) must be dismissed because Plaintiff failed to adequately plead a violation of RICO. Count 9 (Fraudulent Misrepresentation) is due to be dismissed for failure to state a claim because this claim is barred by the applicable statute of limitations. Additionally, Counts 13 (Misappropriation pursuant to the Alabama Trade Secrets Act) and 16 (Conspiracy to Commit Theft of Trade Secrets in Violation of the Alabama Trade Secrets Act) are due to be dismissed for failure to state a claim because both claims are barred by the applicable statute of limitations. Finally, Count 17 (Work and Labor Done) is due to be dismissed for failure to state a claim because plaintiff has failed to state a cognizable cause of action.

## STATEMENT OF ALLEGED FACTS

Plaintiff alleges the following facts in his Complaint: Plaintiff pioneered firmware, WAO2, which optimized the cryptocurrency mining industry. (Am. Compl. ¶ 44). Defendant Chain asked to help Plaintiff monetize the firmware in 2020. (Am. Compl. ¶ 47). Plaintiff agreed Chain could try to find companies interested in using WAO and he would pay Chain a fee for any new contracts Chain could procure for him. (Am. Compl. ¶ 51). All Dev Fees were sent to an electronic wallet. (Am. Compl. ¶ 141). Distributions from the wallet were to be shared equally. (Am. Compl. ¶ 142).

In the spring of 2020, Chain negotiated with Defendant Treis, who wanted to install WAO on their Whatsminers. (Am. Compl. ¶ 53). Plaintiff believed he, Treis, and Grams were involved in a joint venture. (Am. Compl. ¶ 57).

In the fall of 2020, Treis began negotiating with Chain to purchase WAO2 outright. (Am. Compl. ¶ 102). The deal was alleged to have occurred through a business called Cevon Technologies, LLC. (Am. Compl. ¶ 109). Treis owned 50% of Cevon and CEL owned 50% (Am. Compl. ¶ 110). CEL's initial capital contribution to Cevon was "all intellectual property that it owns or exclusively licenses related to firmware and dual phase immersion cooling systems for crypto-currency and blockchain applications." (Am. Compl. ¶ 112). WAO2 was never specifically referenced in any way regarding the formation of Cevon. (Am. Compl. ¶ 118).

Plaintiff suspected Chain was taking more than 50% of the Dev Fee being deposited into the electronic wallet and suspected Chain was stealing from him. (Am. Compl. ¶¶ 145-146). In April 2021 Plaintiff announced that he was not comfortable with the way things were being handled. (Am. Compl. ¶ 149). Plaintiff told Treis that he suspected Chain was in breach of their agreement and that he would no longer be working with Chain. (Am. Compl. ¶ 150). On April 28, 2021, Treis informed Plaintiff they wanted to work with him directly. (Am. Compl. ¶ 153). Plaintiff then told Chain he was redirecting the Dev Fees to an account under Plaintiff's sole management. (Am. Compl. ¶ 154).

By April of 2021, Treis knew that Chain had never owned WAO or WAO2 and that Grams was the developer and sole owner. (Am. Compl. ¶ 136).

Plaintiff had the ability to monitor the funds going into the wallet originally designated for deposit of the Dev Fees. (Am. Compl. ¶ 159). On May 25, 2021, Plaintiff informed Defendant Bolick he no longer had the ability to monitor the funds in that wallet. (Id.)

## ARGUMENT

### I.    Plaintiff's Complaint Must be Dismissed Because this Court Lacks Personal Jurisdiction Against Chain and CEL.

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." *Cont'l Cas. Co. v. Cura Grp., Inc.*, 2005 U.S. Dist. LEXIS 51116, at *96-97 (S.D. Fla. Apr. 5, 2005) (internal citations omitted); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). "In analyzing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), we first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Republic of Panama*, 119 F.3d at 942. Fed. R. Civ. P. 4(k)(1)(C) establishes personal jurisdiction if a federal statute permits it ("[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant [. . .] when authorized by a federal statute.").

Here, the Complaint is silent as to the basis of personal jurisdiction over Chain and CEL. However, to the extent RICO applies in this Court's personal jurisdiction analysis, RICO's nationwide service of process provision is unavailable to Plaintiff to establish personal jurisdiction over Chain and CEL because, as discussed below, Plaintiff fails to adequately allege a RICO violation.

Accordingly, as discussed below, there is no basis for personal jurisdiction under RICO and because Chain and CEL lack the requisite contacts, there is no other basis to establish personal jurisdiction over Chain and CEL under Alabama law.

**A. Plaintiff cannot invoke RICO's nationwide service provision to establish personal jurisdiction over Chain and CEL because Plaintiff fails to adequately allege a RICO violation.**

"Section 1965(d) [RICO] can serve as 'the statutory basis for personal jurisdiction.'" *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1143 (S.D. Fla. 2019).

Count 5 of Plaintiff's Complaint alleges violation of RICO "pursuant to 18 U.S.C. 1964 and 18 U.S.C. 1962(c)." To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014).

In order to allege a pattern of racketeering, a plaintiff must show: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the

predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264, 2004 U.S. App. LEXIS 11578 (11th Cir. 2004) (citing 18 U.S.C. § 1961(5); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239-43, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

The Supreme Court has said:

> "[B]oth a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time . . . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated."

*H.J. Inc.*, 492 U.S. at 241-42.

For a closed period, a substantial period of time is measured "in years, not weeks." *Cisneros v. Petland, Inc.*, 972 F.3d  1204, 1216 (11th Cir. 2020) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1267 (11th Cir. 2004)). The Eleventh Circuit has made it clear that "the substantial period of time requirement for establishing closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Jackson*, 372 F.3d at 1267.

Here, Plaintiff has alleged a closed-ended continuity with allegations of schemes lasting less than a year. Plaintiff specifically alleges the following:

"In fall of 2020 Treis, apparently satisfied with Gram's progress, began negotiating with Chain to purchase WAO2 outright." (Am. Compl. ¶ 102).

"Defendant John Chain falsely represented that WAO2 was solely owned by his entity, Chain Enterprises, LLC ("CEL")." (Am. Compl. ¶ 104).

"Instead of an outright purchase the deal was funneled through a subsidiary created for the purpose, Cevon Technologies, LLC ("Cevon")." (Am. Compl. ¶ 109).

"Cevon is owned 50% by Treis and 50% by CEL." (Am. Compl. ¶ 110).

"CEL and Chain initiated the enterprise forming Cevon to steal WAO2 and its Trade Secrets from Grams." (Am. Compl. ¶ 373).

"CEL and Chain concocted a scheme to create Cevon to obscure ownership of the WAO2 intellectual property, and to hold WAO2 out as their own property." (Am. Compl. ¶ 374).

"CEL and Chain misrepresented to Treis that CEL owned WAO2 and its Trade Secrets." (Am. Compl. ¶ 375).

"CEL and Chain misrepresented to Treis that Grams was part of its memberships and approved of transferring WAO2 to Cevon." (Am. Compl. ¶ 376).

"Cevon conspired by covering up the fact that Grams was the true owner of WAO2 even in the Delaware federal suit." (Am. Compl. ¶ 377).

"CEL, Chain, Cevon, Treis, and its Managing Directors (Pence, Bolick, Smith, and Lamberti) all conspired to convince Grams to continue working on WAO2." (Am. Compl. ¶ 378).

9

Plaintiff alleges that the enterprise CEL was involved in was Cevon.[1] According to Plaintiff's Complaint this enterprise began in the Fall of 2020. Plaintiff's Complaint also indicates that John Chain, and therefore CEL, was pushed out of the "enterprise" in April 2021. Specifically, Plaintiff alleges the following:

"But regardless, as set forth below, it is beyond dispute that by April of 2021, Treis knew that Chain had never owned WAO or WAO2 and that Grams was the developer and sole owner." (Am. Compl. ¶ 136).

"He [Grams] suspected Chain was taking more than fifty percent of the Dev Fee being deposited into the wallet, and was allocating less than fifty percent to Grams." (Am. Compl. ¶ 145).

"Simply put, he suspected Chain was stealing from him." (Am. Compl. ¶ 146).

"In April 2021 Grams announced that he was not comfortable with the way things were being handled." (Am. Compl. ¶ 149).

"Grams told Treis that he suspected Chain was in breach of the agreement between Grams and Chain and that he would no longer be working with Chain." (Am. Compl. ¶ 150).

"On April 28, 2021, Bolick wrote to Grams, "Thanks for the call yesterday. I spoke with David and Senter and we want to figure out a way to work directly with you."" (Am. Compl. ¶ 153).

---

[1] Defendant would also point out that, while the allegations are somewhat confusing, based on the pleading, it appears that the "enterprise" CEL took part in may have only involved CEL and John Chain. Plaintiff's Complaint also indicates John Chain is the sole member of CEL. As such, John Chain cannot form an enterprise with himself. This would be another basis upon which the Plaintiff has failed to assert a RICO claim.

Furthermore, by the Fall of 2021, specifically September 3, 2021, Treis had filed suit against Chain in the Court of Chancery of the State of Delaware, a case which was removed to federal court. (Am. Compl. ¶ 188). While Plaintiff's Complaint fails to state the exact date that Cevon – which is alleged to be the RICO enterprise Chain/CEL was a part of – was formed, the formation date is a matter of public record and can be found using a Secretary of State business entity search in Delaware. Cevon was formed on October 7, 2020.[2] Eleven months later the members of Cevon were suing each other in Delaware. The "enterprise," if there was one, did not last long enough to meet the required length of time to constitute closed-ended continuity according to the Eleventh Circuit. Accordingly, Plaintiff has failed to plead a viable RICO cause of action and RICO cannot be used as the basis for personal jurisdiction over this Defendant.

Plaintiff's also fails to allege a viable RICO cause of action because he has failed to plead a "pattern of racketeering." His Complaint contains one alleged fraudulent activity performed by the enterprise – the theft of Plaintiff's intellectual property, WAO2. (Am. Compl. ¶ 372). Multiple instances of deception do not show a pattern of racketeering when they are all in furtherance of a single fraud. *Bandyopadhyay v. Obei*, 2023 U.S. Dist. Lexis 33382 *6, 2023 WL 2263552 (S.D. Fla. February 28, 2023).

Plaintiff's RICO count contains a number of confusing allegations, most of which either involving CEL conspiring with or making misrepresentations in conjunction with

---

[2] As business entity records in Delaware are searchable on the Delaware Secretary of State website, Defendant would ask the Court to take judicial notice of Cevon's formation date. Should the Court disregard October 7, 2020 as the formation date of Cevon, Plaintiff's Amended Complaint still states on its face that the entity was formed in

its sole member, Chain (Am. Compl. ¶¶ 374-376) or co-defendant Treis conspiring with its own members (Am. Compl. ¶¶ 383, 388, 390). One cannot create an enterprise with oneself. Taken at face value, Plaintiff's Complaint alleges an "enterprise," Cevon, whose members were conspiring **against each other**. In other words, there was no "enterprise."

Also under Plaintiff's RICO count is the allegation that "CEL and Chain conspired to steal Gram's earnings in the developer wallet." (Am. Compl. ¶ 380). This allegation, that CEL and its sole member conspired to steal earnings from the developer wallet does not meet any definition of what is required to constitute a RICO claim.

Without a RICO claim, Plaintiff cannot invoke RICO's nationwide service of process provision against Chain or CEL to establish jurisdiction and, as discussed below, there is no other basis to establish personal jurisdiction in Alabama over Chain or CEL. Plaintiff's Complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**B. There is no basis for either general or specific jurisdiction over Chain or CEL.**

Without the availability of the RICO service of process provision, Plaintiff's Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) where there is no other basis for personal jurisdiction over CEL under Alabama law. When considering a motion to dismiss for lack of personal jurisdiction, "[t]he court must construe the allegations in the complaint as true, to the extent they are uncontroverted by [the] defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492

---

the Fall of 2020, which still makes the duration of the alleged enterprise less than one year even if one chooses the first day of Fall as the starting date.

(11th Cir. 1988). A personal jurisdiction challenge in federal court generally requires a two-part analysis: (1) the court must first determine its jurisdiction under the forum state's long-arm statute; and, (2) it must decide whether exercising jurisdiction comports with principles of constitutional due process. *Id.* at 492, fn. 3. However, because the limits of Alabama's long-arm jurisdiction (Ala. R. Civ. P. 4.2(b)) are coextensive with constitutional due process requirements, only one analysis is necessary. *See Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (*citing* Ala. R. Civ. P. 4.2(b)) (stating that Alabama's long-arm statute (Ala. R. Civ. P. 4.2(b)) permits state and federal courts in Alabama to exercise personal jurisdiction "to the fullest extent constitutionally permissible")), and *Slocumb Law Firm, LLC v. Trollinger*, 2015 U.S. Dist. LEXIS 103547, at *5 (M.D. Ala. Aug. 7, 2015) (stating that the limits of Alabama's long-arm jurisdiction are coextensive with constitutional due process requirements). Accordingly, due process requires that (1) a defendant have "minimum contacts" with the forum state and that (2) a court's exercise of jurisdiction conform to "traditional notions of fair play and substantial justice." *Burnham v. Superior Ct. of Cal.,* 495 U.S. 604, 618 (1990).

When determining whether a Defendant's "minimum contacts" support personal jurisdiction in the forum, a court must consider the distinction between general and specific jurisdiction. *Slocumb*, 2015 U.S. Dist. LEXIS 103547, at *5. A Court may exercise "general jurisdiction" over a defendant when the defendant's continuous and systematic contacts with the forum state are unrelated to the suit, while "specific jurisdiction" arises from the defendant's sporadic or limited contacts with the forum state

at issue in the Complaint. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 nn. 8-9 (1984).

It is Plaintiff's burden to establish "that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). Because Plaintiff cannot establish either general or specific jurisdiction over CEL, as discussed below, this Court should dismiss this action against CEL for lack of personal jurisdiction pursuant to Rule 12(b)(2).

**1.     CEL is not at home in Alabama; therefore, no general jurisdiction exists.**

"The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292. (11th Cir. 2000). The United States Supreme Court recently reviewed the requirements for exercising general jurisdiction in *BNSF Ry. Co. v. Tyrrell, U.S.*, 137 S. Ct. 1549, 198 L. Ed. 2d 36 (2017), clarifying that a court may assert general jurisdiction over a foreign corporation when the corporation's affiliations with the state are so continuous and systematic as to render them "essentially at home" in the forum state. *Id.* at 1558-59. The Supreme Court explained in *BNSF* that the "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *Id.* The Court noted that in an "exceptional case," a corporate defendant's operations in

14

another forum may be so substantial and of such a nature as to render the corporation "essentially at home" in the forum. *Id.* The Court suggested that its decision in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) was an exemplary case. In *Perkins*, war had forced the defendant corporation's owner to temporarily relocate the corporation from the Philippines to Ohio, thus rendering Ohio the center of the corporation's wartime activities. As such, the Court found suit was proper in Ohio. But limited "in-state business does not suffice to permit the assertion of general jurisdiction over claims that are unrelated to any activity occurring in the forum state." *Id.*

In *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 874-75 (11th Cir. 2018), the 11th Circuit affirmed that the court lacked general jurisdiction over the corporate defendants, whose principal place of business and state of incorporation were outside the forum. The Court found the plaintiff's allegations of the corporate defendants' contacts with the forum, which included meetings in the forum and phone calls and emails made by the plaintiff in the forum to the defendants outside the forum, to be insufficient contacts to establish general jurisdiction over the corporate defendants. *Id.* at 875 (11th Cir. 2018) ("Because the allegations in the complaint do not demonstrate any facts that indicate the Gary Defendants are 'essentially at home' in the State of Georgia, general jurisdiction is improper.").

CEL is not "at home" in Alabama under the general jurisdiction analysis. The entity is a Nevada limited liability company (Compl. ¶ 8). Therefore, CEL is not "at home" in Alabama. Moreover, Plaintiff alleges no facts to even suggest that CEL has any

connections between itself and Alabama. This is likely because CEL does not have an office or branch in Alabama, has not done business in Alabama, does not have an Alabama telephone listing, does not have an Alabama bank account, does not have real or personal property in Alabama, and has not been involved in any prior litigation in Alabama or availed itself of the Alabama courts. (Exh. A., Chain Affidavit/Declaration, ¶¶ 5-11). Rather, Plaintiff merely alleges that "all Defendants are subject to this Court's personal jurisdiction." (Am. Compl. ¶ 17.) As such, there are no facts to suggest that CEL is "essentially at home" in Alabama.

Further, a court outside of the defendant's "home" states can only exercise general jurisdiction in rare circumstances. *Daimler*, 571 U.S. at 139 n. 19; *see, e.g., Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (holding that foreign defendant was subject to general jurisdiction in Ohio because the company's president temporarily relocated there, making Ohio the company's principal place of business). But this is not such an exceptional case – Plaintiff has not plead any facts suggesting that CEL has any contacts with Alabama, let alone contacts that are so substantial that CEL is essentially at home in the forum. Therefore, this Court cannot exercise general jurisdiction over CEL.

**2.    CEL lacks minimum contacts with Alabama; therefore, no specific jurisdiction exists.**

In a case premised on specific jurisdiction, a "defendant's contacts with the forum state must satisfy three criteria: [(1)] they must be related to the plaintiff's cause of action or have given rise to it; [(2)] they must involve some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum; and [(3)] they must be such that the defendant should reasonably anticipate being haled into court there." *Sloss*, 488 F.3d at 925 (internal quotation marks omitted). Additionally, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 & 1360 n.3 (11th Cir. 2006).

Here, Plaintiff's Complaint baldly concludes that "all Defendant are subject to this Court's personal jurisdiction." (Am. Compl. ¶ 17). However, Plaintiff fails to allege any facts supporting the allegation that CEL is subject to this Court's personal jurisdiction, and likewise fails to allege any action taken by CEL in the State of Alabama. Even taking the allegations in the Complaint as true, as the Court must on a motion to dismiss, all such incidents occurred somewhere other than Alabama. Specifically, the Plaintiff alleges:

"Defendant Chain Enterprises, LLC ("CEL") is a limited liability company formed under the laws of the State of Nevada. CEL resides at 3900 S. Hualapai, Suite 110, Las Vegas, Nevada 89147. On information and belief, CEL's sole member is Defendant Chain. . .   CEL is also a foreign citizen." (Am. Compl. ¶ 8).

"Defendant John Chain is a resident of the State of South Dakota." (Am. Compl. ¶ 13).

In fall of 2020, Treis . . . began negotiating with Chain to purchase WAO2 outright. (Am. Compl. ¶ 102). Chain falsely represented that WAO2 was solely owned by his entity, Chain Enterprises, LLC ("CEL"). (Am. Compl. ¶ 104). Grams never had any membership in CEL. (Am. Compl. ¶ 106).

Instead of an outright business purchase the deal was funneled through a subsidiary created for the purpose, Cevon Technologies, LLC ("Cevon"). (Am. Compl. ¶ 109). Cevon is owned 50% by Treis and 50% by CEL. (Am. Compl. ¶ 109).

Plaintiff's only stated connection between CEL and the State of Alabama is Plaintiff's claim, based on the following, that John Chain, CEL's sole member, contracted, apparently over the internet, with an Alabama resident:

"In February of 2020, Chain learned that Grams had successfully completed the firmware and asked if he could help Grams monetize it." (Am. Compl. ¶ 47).

"Plaintiff, Chain, and/or CEL entered into a broker style arrangement in they would equally share all profits from any contract Defendant procured for Plaintiff's WAO2." (Am. Compl. ¶ 423).

The fact that one enters into a contract with a citizen of another state, by itself, does not automatically satisfy the minimum contacts requirement. *Burger King Co. v. Rudzewicz*, 471 U.S. 462, 478 (1985). There is no allegation that the alleged contract between the parties involved Chain or CEL performing services in the State of Alabama, selling the product in Alabama, or availing itself in any way of the State of Alabama. Even assuming Chain and/or CEL entered into a "broker style arrangement" with

Plaintiff, based on the other allegations of Plaintiff's Complaint, any performance of that "arrangement" on CEL's part occurred outside the state of Alabama. Thus, Plaintiff has failed to allege that CEL had minimum contacts that would establish specific personal jurisdiction over it.

In fact, the only events alleged to have taken place in Alabama are Plaintiff's own actions. Specifically, Plaintiff alleges that he resided in Alabama and the majority of the work he performed on WAO2 occurred in Alabama. (Said work being performed for someone other than Chain or CEL.) (Am. Compl. ¶¶ 6, 90).

Although *Plaintiff* may have taken such actions in Alabama, "it is important to remember [for the purposes of identifying minimum contacts in determining personal jurisdiction] that *the conduct at issue is that of the defendants*. No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc*., 207 F.3d 1351, 1356 (11th Cir. 2000) (emphasis supplied in *Ruiz*) (*citing Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Therefore, courts in Alabama must determine what a particular *defendant* did to purposefully avail himself "of the benefits of doing business in Alabama such that the notions of reasonableness and fairness are not offended by requiring [him] to defend [himself] in an Alabama court." *Ruiz*, 207 F.3d at 1356 (emphasis in the original). Here, Plaintiff has failed to allege any way in which CEL purposefully availed itself of the benefits of doing business in Alabama with respect to any of his eighteen causes of action.

Because Plaintiff can neither invoke RICO, nor otherwise establish either general jurisdiction or specific jurisdiction over CEL under Alabama's long-arm statute, the Complaint should be dismissed as to CEL.

**3.    John Chain lacks minimum contacts with Alabama; therefore, no specific jurisdiction exists.**

"In most cases, for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Ex parte M.E.J.*, No. SC-2023-0062, 2023 Ala. LEXIS 113, at *11 (Oct. 13, 2023) (quoting *Ex parte Bradshaw*, 328 So. 2d 236, 242 (2020)). But "general personal jurisdiction can arise through a defendant's 'general contacts' with a forum state that are unrelated to the cause of action and that are both 'continuous and systematic.'" Id. (internal citations omitted). In this case, the Amended Complaint fails to establish general jurisdiction over John Chain because he is domiciled outside of Alabama, and he does not have "continuous and systematic" contacts with Alabama sufficient to invoke general jurisdiction over him.

**a.    John Chain's contacts with Alabama are not continuous and systematic.**

Defendant John Chain lacks continuous and systematic contacts with Alabama to establish jurisdiction over him. Chain is not "at home" in Alabama under the general jurisdiction analysis. Chain is not a resident of Alabama (Am. Compl. ¶ 8). Chain does not have an office in Alabama, has not done business in Alabama, does not have an Alabama telephone listing, does not have an Alabama bank account, does not have real or

personal property in Alabama, and has not been involved in any prior litigation in Alabama or availed himself of the Alabama courts. (Exh. B., Chain Affidavit/Declaration, ¶ ¶ 3-8). Because the Amended Complaint fails to allege that Chain had continuous and systematic contacts unrelated to the present action, this Court may not exercise general jurisdiction over him.

**b.    John Chain lacks minimum contacts in Alabama and no specific jurisdiction over him exists in this case.**

The Amended Complaint fails to establish that John Chain has sufficient minimum contacts with Alabama to sustain the exercise of specific jurisdiction in Alabama. To exercise specific jurisdiction, a "defendant's contacts with the forum state must satisfy three criteria: [(1)] they must be related to the plaintiff's cause of action or have given rise to it; [(2)] they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and [(3)] they must be such that the defendant should reasonably anticipate being haled into court there." *Sloss,* 488 F.3d at 925 (internal quotations omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Hand v. Wholesale Auto Shop, LLC,* 2018 WL 305818, at *5 (N.D. Ala. Jan. 5, 2018) (quotations omitted). In addition, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Stubbs v. Wyndham*

*Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 & 1360 n.3 (11th Cir. 2006) (emphasis added).

Plaintiff baldly asserts that "all Defendants are subject to this Court's personal jurisdiction" (Am. Compl. ¶ 17) without setting forth specific allegations as to why exercise of specific personal jurisdiction as to each Defendant is constitutional. Nevertheless, in examining Plaintiff's allegations, he fails to meet his burden of establishing sufficient minimum contacts for the exercise of specific jurisdiction over Defendant John Chain.

> **i.    John Chain's suit-related conduct does not create a substantial connection with Alabama.**

Under the first criteria for exercising specific jurisdiction over a nonresident defendant consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Hand*, 2018 WL 305818, at *6 (internal citation omitted). The only suit-related actions that were allegedly taken by John Chain occurred outside of Alabama, namely negotiating with out of state defendant Treis (Am. Compl. ¶ 53) and allegedly taking money from an electronic wallet. (Am. Compl. ¶ 141). Defendant's only alleged suit-related contact with Alabama is that the Plaintiff resides in Alabama.

ii.    **John Chain has not purposely availed himself of the privilege of conducting activities within Alabama.**

"The 'substantial connection' between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Ex Parte M.E.J.,* 2023 Ala. LEXIS 113, at *10 (citations omitted). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." Id. at *15 (citations omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Id. The Eleventh Circuit has applied the traditional purposeful availment analysis in contract and tort cases and the Calder effects test where intentional torts are alleged. *Louis Vuitton Malletier v. Mosseri*, 736 F.3d 1339, 1356-57 (11th Cir. 2013).

Plaintiff's Amended Complaint contains no allegations that John Chain performed any actions pursuant to the alleged broker-style arrangement with Plaintiff in the State of Alabama. All such actions occurred outside the State of Alabama with out of state individuals/entities. (Am. Compl. ¶ 53). There are no allegations that John Chain was ever in the state of Alabama, negotiated business deals in Alabama, or even spoke to anyone in Alabama other than the Plaintiff himself. Chain's communications with the Plaintiff, who happened to reside in Alabama, do not constitute purposeful availment of the forum state. See *Tinsley v. BP Corp. of North America*, 112 F. Supp. 3d 1253, 1260

(N.D. Ala. 2015) (handful of telephone calls and even fewer emails for a limited time period to a plaintiff who had an interest in becoming a broker, initiated the discussions, and happened to live in Alabama does not meet minimum contacts); *see also Aeropower, Ltd. v. Matherly*, 511 F. Supp. 2d 1139, 1156 (M.D. Ala. 2007) (where defendant had virtually no contact with Alabama other than telephone, fax, mail and wire communications in relation to aircraft transactions, and no evidence defendants initiated any contact with Alabama concerning transactions, there is no purposeful availment). Based on the foregoing, John Chain's contacts are not such that he should reasonably anticipate being haled into Alabama. Moreover, there is no indication in Plaintiff's Amended Complaint that John Chain even knew Plaintiff resided in Alabama when he first communicated with Plaintiff.

### iii.    Plaintiff has failed to establish specific jurisdiction for intentional torts pursuant to the *Calder* effects test.

Under the Calder "effects test," purposeful availment occurs when a tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Louis Vuitton, 736 F.3d at 1356 (11th Cir. 2013) (citation omitted). "The test weighs the effects of the defendant's intentional conduct aimed at the forum state, including the contacts with the forum created thereby." *Ex part M.E.J.,* 2023 Ala. LEXIS 113, at *16. The "effects of a nonresident's alleged actions must create sufficient contacts with the forum, not just with the plaintiff." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[T]he plaintiff cannot be the

only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. at 285-286 (emphasis added). The *Walden* Court further explained:

> "Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."

Walden, at 577 U.S. at 289-90 (emphasis added).

To the extent Plaintiff has alleged intentional torts by Defendant Chain, nothing shows that Defendant Chain has formed a contact with Alabama or that his conduct connects him to Alabama in a meaningful way. Chain's alleged conduct occurred outside of Alabama, involved other nonresidents, and did not implicate or involve transactions that occurred inside Alabama or implicated Alabama in any way. The *Walden* court emphasized that "shifting the analytical focus from [defendant]'s contacts with the forum to his contacts with [plaintiff] 'impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. "Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. . . It also obscures the reality that none of [defendant]'s challenged conduct had anything to do with [the forum state] itself." Id. Thus, the *Walden* Court determined that "[p]etitioner's actions in

Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." Id. Similarly, the alleged conduct of Chain did not create sufficient contacts with Alabama simply because he allegedly directed conduct at Plaintiff who resided in Alabama. Under these circumstances, Plaintiff has failed to meet his burden of showing that the intentional conduct of Chain connects him to Alabama in a meaningful way. See *Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").

Therefore, Chain has not purposely availed himself of the forum, Alabama.

**II.    Venue is Improper in this District Under 28 U.S.C. § 1391; therefore, Plaintiff's Complaint Must Be Dismissed**

The standard for deciding a motion to dismiss for improper venue is very similar to the standard articulated above for deciding a Rule 12(b)(2) motion. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). The plaintiff carries the burden of showing that venue is proper in his chosen forum once the defendant contests venue under Rule 12(b)(3). *Id.*; *Pritchett v. Paschall Truck Lines, Inc*., 714 F. Supp. 2d 1171, 1174 (M.D. Ala. 2010). Even if the Court determines personal jurisdiction exists, venue may still be improper. *Graceland v. Plutus Enters. LLC*, 2022 U.S. Dist. LEXIS 75016, at *13 (M.D. Fla. Apr. 22, 2022). Here, venue is improper in this District for the

26

reasons set forth below, thus the Court should dismiss this case as against Chain and CEL.

**Venue is improper under 28 U.S.C. § 1391(b)(2) because no substantial part of the events or omissions giving rise to the Complaint occurred in Alabama.**

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Defendant CEL resides in Nevada (Am. Compl. ¶ 8) and Chain resides outside Alabama (Am. Compl. ¶ 13) in Wyoming (Exh. B., Chain Affidavit/Declaration, ¶ 3), which would be the most convenient location for it, but the other defendants are not residents of Nevada or Wyoming, so this section of 28 U.S.C. § 1391 appears to be inapplicable to this matter.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Plaintiff merely states venue is proper under Section 1391(b)(2). (Am. Compl. ¶ 17). Venue is improper here, however, because no substantial part of the events or omissions giving rise to the Complaint occurred in this District or indeed in any District in Alabama.

In considering whether venue is proper under 28 U.S.C. § 1391(b)(2), "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Tognaci v. Ameris Bank*, 2023 WL 1788555 (S.D. Ala. Jan. 4, 2023) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)), *adopted,*

2023 WL 1786709 (S.D. Ala. Feb. 6, 2023). "Moreover, when determining whether venue is proper, courts must focus on the relevant activities of the defendants rather than the plaintiff." *Id.*

As previously set forth, even taking the allegations in the Complaint as true, the locations hosting a substantial part of the events that are the subject of this lawsuit occurred outside of Alabama. Plaintiff does not allege Chain or CEL conspired to steal his purported trade secret in Alabama, and the only reasonable inference is that any such conspiracy occurred either in Nevada, where CEL is located, in Wyoming, where Chain is located, or wherever CEL's alleged co-conspirators were located. Any alleged failure to protect Plaintiff's purported trade secret occurred outside the state of Alabama. Any alleged misappropriation of the Dev Fee by Chain and/or CEL occurred outside the State of Alabama. In focusing on the relevant activities of Chain and CEL, Plaintiff has failed to show that substantial part of the events or omissions giving rise to his claims occurred in Alabama; therefore, venue is improper in this District and Plaintiff's Complaint should be dismissed under Rule 12(b)(3).

Further, while Plaintiff has plead a count for breach of contract against Chain/CEL, even if one is to assume a valid contract existed between Plaintiff and Chain or CEL, the performance and/or breach of said contract would have occurred outside Alabama, as Plaintiff's Complaint involves only allegations regarding a purported transaction with Treis Blockchain, LLC, a South Carolina company. (Am. Compl. ¶ 53). Plaintiff's Complaint contains no allegations that Chain or CEL brokered or attempted to

broker any deals inside the State of Alabama or with citizens of the State of Alabama. Therefore, venue is improper in this District and this suit should be dismissed under Rule 12(b)(3).

**III.    Plaintiff's Complaint Should Be Dismissed Based on *Forum Non Conveniens*.**

The doctrine of *forum non conveniens* provides an additional basis for the Court's dismissal of this action against Chain and CEL. This Court has broad discretion to dismiss an action under the doctrine of *forum non conveniens* where the "private interest facts" justify dismissal. *King v. Cessna Aircraft Co.,* 562 F.3d 1374 (11th Cir. 2009). Those private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process  for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1946).

Here, these factors overwhelmingly favor dismissal of this action. First, the "sources of proof," namely the machines on which WAO2 was installed, are located in Pennsylvania and South Carolina. (see Treis Dec. ¶ 9, Doc. 60), and the possibility of view of the machines would necessarily have to occur in South Carolina or Pennsylvania. Further, the nine named defendants reside in states outside of Alabama (Am. Compl. ¶¶ 7-15), thus the majority of non-party fact witnesses also likely reside outside of Alabama. There is a strong likelihood, then, that this Court lacks the ability to compel the testimony

of any of these non-party witnesses in Alabama. Accordingly, the private-interest factors considering the availability and expenses of witnesses likewise favor dismissal of this action.

For the reasons set forth above, the doctrine of *forum non conveniens* provides an additional basis for dismissal of this action against CEL.

## IV.   Counts 5, 9, 13, 16, and 17 Must Be Dismissed For Failure to State a Claim.

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2)." *Gulf S. Communications, Inc. v. Woof, Inc.*, 2021 WL 2405199, at *1 (M.D. Ala. June 11, 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Whether a complaint states a plausible claim for relief, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "The plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* "Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the 'grounds' for his entitlement to relief, and a 'formulaic

recitation of the elements of a cause of action will not do.'" *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956038, at *2 (S.D. Fla. Dec. 27, 2022) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A.      **Count 5, Plaintiff's RICO claim, should be dismissed because Plaintiff has failed to plead a viable RICO claim.**

As set forth in Section I.A., *supra*, should be dismissed because Plaintiff has failed to plead a viable RICO claim.

Count 5 of Plaintiff's Complaint alleges violation of RICO "pursuant to 18 U.S.C. 1964 and 18 U.S.C. 1962(c)." To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014).

In order to allege a pattern of racketeering, a plaintiff must show: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264, 2004 U.S. App. LEXIS 11578 (11th Cir. 2004) (citing 18 U.S.C. § 1961(5); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239-43, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

The Supreme Court has said:

> "[B]oth a closed-and open-ended concept, referring either to a
> closed period of repeated conduct, or to past conduct that by

> its nature projects into the future with a threat of repetition . .
> . A party alleging a RICO violation may demonstrate
> continuity over a closed period by proving a series of related
> predicates extending over a substantial period of time . . .
> Often a RICO action will be brought before continuity can be
> established in this way. In such cases, liability depends on
> whether the threat of continuity is demonstrated."

*H.J. Inc.*, 492 U.S. at 241-42.

For a closed period, a substantial period of time is measured "in years, not weeks."

*Cisneros*, 972 F.3d at 1216 (citing *Jackson*, 372 F.3d at 1267). The Eleventh Circuit has

made it clear that "the substantial period of time requirement for establishing

closed-ended continuity cannot be met with allegations of schemes lasting less than a

year." *Jackson*, 372 F.3d at 1267.

Here, Plaintiff has alleged a closed-ended continuity with allegations of schemes

lasting less than a year. Plaintiff specifically alleges the following:

"In fall of 2020 Treis, apparently satisfied with Gram's progress, began

negotiating with Chain to purchase WAO2 outright." (Am. Compl. ¶ 102).

"Defendant John Chain falsely represented that WAO2 was solely owned by his

entity, Chain Enterprises, LLC ("CEL")." (Am. Compl. ¶ 104).

"Instead of an outright purchase the deal was funneled through a subsidiary

created for the purpose, Cevon Technologies, LLC ("Cevon")." (Am. Compl. ¶ 109).

"Cevon is owned 50% by Treis and 50% by CEL." (Am. Compl. ¶ 110).

"CEL and Chain initiated the enterprise forming Cevon to steal WAO2 and its

Trade Secrets from Grams." (Am. Compl. ¶ 373).

"CEL and Chain concocted a scheme to create Cevon to obscure ownership of the WAO2 intellectual property, and to hold WAO2 out as their own property." (Am. Compl. ¶ 374).

"CEL and Chain misrepresented to Treis that CEL owned WAO2 and its Trade Secrets." (Am. Compl. ¶ 375).

"CEL and Chain misrepresented to Treis that Grams was part of its memberships and approved of transferring WAO2 to Cevon." (Am. Compl. ¶ 376).

"Cevon conspired by covering up the fact that Grams was the true owner of WAO2 even in the Delaware federal suit." (Am. Compl. ¶ 377).

"CEL, Chain, Cevon, Treis, and its Managing Directors (Pence, Bolick, Smith, and Lamberti) all conspired to convince Grams to continue working on WAO2." (Am. Compl. ¶ 378).

Plaintiff alleges that the enterprise CEL was involved in was Cevon.[3] According to Plaintiff's Complaint this enterprise began in the Fall of 2020. Plaintiff's Complaint also indicates that John Chain, and therefore CEL, was pushed out of the "enterprise" in April 2021. Specifically, Plaintiff alleges the following:

"But regardless, as set forth below, it is beyond dispute that by April of 2021, Treis knew that Chain had never owned WAO or WAO2 and that Grams was the developer and sole owner." (Am. Compl. ¶ 136).

---

[3] Defendant would also point out that, while the allegations are somewhat confusing, based on the pleading, it appears that the "enterprise" CEL took part in may have only involved CEL and John Chain. Plaintiff's Complaint also indicates John Chain is the sole member of CEL. As such, John Chain cannot form an enterprise with himself. This would be another basis upon which the Plaintiff has failed to assert a RICO claim.

"He [Grams] suspected Chain was taking more than fifty percent of the Dev Fee being deposited into the wallet, and was allocating less than fifty percent to Grams." (Am. Compl. ¶ 145).

"Simply put, he suspected Chain was stealing from him." (Am. Compl. ¶ 146).

"In April 2021 Grams announced that he was not comfortable with the way things were being handled." (Am. Compl. ¶ 149).

"Grams told Treis that he suspected Chain was in breach of the agreement between Grams and Chain and that he would no longer be working with Chain." (Am. Compl. ¶ 150).

"On April 28, 2021, Bolick wrote to Grams, "Thanks for the call yesterday. I spoke with David and Senter and we want to figure out a way to work directly with you."" (Am. Compl. ¶ 153).

Furthermore, by the Fall of 2021, specifically September 3, 2021, Treis had filed suit against Chain in the Court of Chancery of the State of Delaware, a case which was removed to federal court. (Am. Compl. ¶ 188). While Plaintiff's Complaint fails to state the exact date that Cevon – which is alleged to be the RICO enterprise Chain/CEL was a part of – was formed, the formation date is a matter of public record and can be found using a Secretary of State business entity search in Delaware. Cevon was formed on October 7, 2020. Eleven months later the members of Cevon were suing each other in Delaware. The "enterprise," if there was one, did not last long enough to meet the required length of time to constitute closed-ended continuity according to the Eleventh

Circuit. Accordingly, Plaintiff has failed to plead a viable RICO cause of action and Count 5 should be dismissed.

Plaintiff's also fails to allege a viable RICO cause of action because he has failed to plead a "pattern of racketeering." His Complaint contains one alleged fraudulent activity performed by the enterprise – the theft of Plaintiff's intellectual property, WAO2. Multiple instances of deception do not show a pattern of racketeering when they are all in furtherance of a single fraud. *Bandyopadhyay v. Obei*, 2023 U.S. Dist. Lexis 33382 *6, 2023 WL 2263552 (S.D. Fla. February 28, 2023).

**B. Parts of Count 9 Are Due to Be Dismissed Because Plaintiff Lacks Standing to Bring Suit for Misrepresentations Made to Other People**

Count 13 of Plaintiff's Complaint alleges Fraudulent Misrepresentation as to Defendants Treis, Cevon, CEL, Chain, Lamberti, and Pence. Among the allegations regarding CEL are the following:

"Chain and CEL also allegedly misled Treis and its directors, claiming that CEL owned WAO2." (Am. Compl. ¶ 438)

"Chain and CEL further allegedly misrepresented to Treis that Grams was an employee, when he was not, never had been, and was not being paid anything by Chain or CEL." (Am. Compl. ¶ 439).

The elements of a fraudulent misrepresentation claim in Alabama are "(1) [a] false representation (2) of a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation." *Earnest v. Pritchett-Moore, Inc.*, 401

So.2d 752 (Ala. 1981). Obviously, a plaintiff cannot rely on statements made to others and of which the plaintiff has no knowledge.

Because the allegations contained in paragraphs 438 and 439 involve statements made to people other than Plaintiff, Plaintiff cannot recover for those statements.

**C. Additionally, Count 9 of the Complaint is Barred by the Applicable Statute of Limitations and Therefore Must Be Dismissed for Failure to State a Claim.**

Count 9 of Plaintiff's Complaint alleges Fraudulent Misrepresentation as to numerous Defendants. The only specific misrepresentations alleged to have been made by Chain and CEL to Plaintiff are the following:

"In February of 2020, Chain misrepresented to Grams that he would share half the profits of any deal he could strike between Grams and any third party for the sale of WAO2." (Am. Compl. ¶ 436).

By April of 2021 Plaintiff either knew this representation had not been true or believed it had not been true. (Am. Compl. ¶¶ 144-146, 149-150).

When federal jurisdiction is founded upon diversity of citizenship, the law of the forum state provides the appropriate statute of limitations. *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280 (11th Cir. 2003). Alabama law determines when the applicable statute of limitations begins to run.

It is undisputed that a two-year statutory limitations period applies to Plaintiff's fraud claim. Ala. Code § 6-2-38(l); *Kelly v. Conn. Mut. Life Ins. Co.*, 628 So. 2d 454, 460 (Ala. 1993). That being said, in Alabama, causes of action for fraud do not accrue "until

the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6–2–3. Section 6-2-3 of the Alabama Code tolls the statute of limitations for causes of action that were fraudulently concealed from the aggrieved party. *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010). More specifically, Alabama law tolls the limitations period for a cause of action until the plaintiff actually discovers the fraud or discovers facts that would alert a reasonable person to the possibility of fraud. *Wheeler v. George,* 39 So. 3d 1061, 1081 (Ala. 2009); *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689 (Ala. 2000).

In other words, "the limitations period begins to run when the plaintiff [is] privy to facts which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 237 (Ala. 2014) (quotations and citations omitted); *see also Jefferson County Truck Growers Ass'n v. Tanner*, 341 So.2d 485, 488 (Ala. 1977) ('Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.')."

The question of when a party discovered, or should have discovered, the fraud is normally a question for the jury. *Kelly*, 628 So. 2d at 458 (citing *Vandegrift v. Lagrone*, 477 So. 2d 292, 295 (Ala. 1985)). There are times when this question is removed from the purview of the jury, however. "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only

in cases in which the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Hicks v. Globe Life & Accident Ins. Co.*, 584 So.2d 458, 463 (Ala. 1991) (emphasis in original) (overruled on other grounds).

Here, Plaintiff's Complaint indicates that "[i]n April 2021 Grams announced that he was not comfortable with the way things were being handled" and "[he] told Treis that he suspected Chain was in breach of the agreement between Grams and Chain and that he would no longer be working with Chain." (Am. Compl. ¶¶ 149-150). This indicates that Plaintiff actually knew of facts that would have put a reasonable person on notice of fraud.   Plaintiff's Complaint was not filed until May 4, 2023, more than two years after April 2021. Therefore, Plaintiff's fraudulent misrepresentation claim would be barred by the applicable statute of limitations.

**D.    Count 13 of the Complaint is Barred by the Applicable Statute of Limitations and Therefore Must Be Dismissed for Failure to State a Claim.**

Count 13 of Plaintiff's Complaint alleges "Misappropriation (Alabama Trade Secrets Act)" as to "Defendants Chain and CEL." Alabama's Trade Secrets Act is found at Ala. Code §§ 8-27-1 – 8-27-6.

Ala. Code § 8-27-5 states "[a]n action for misappropriation must be brought within two years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."

Count 13 of Plaintiff's Complaint contains the following general allegations:

Defendants Chain and CEL purported to deliver, send, or convey the WAO2 trade secrets to Cevon and/or Treis without authorization (Am. Compl. ¶ 494).

Defendants Chain and CEL's delivery of the trade secret constituted a breach of confidence between Chain and CEL and Plaintiff. (Am. Compl. ¶ 495).

Defendants Chain and CEL stole and/or without authorization appropriated, took, or carried away WAO2. (Am. Compl. ¶¶ 496-497).

According to Plaintiff's Complaint, CEL was cut out of any relationship with the other parties in this lawsuit due to Plaintiff's knowledge and suspicions about the very acts being alleged against CEL in April 2021, more than two years prior to the filing of this lawsuit. (Am. Compl. ¶¶ 136, 145-147, 149-150, 153-154). Plaintiff states "regardless . . . it is beyond dispute that by April of 2021, Treis knew that Chain had never owned WAO or WAO2 and that Grams was the developer and sole owner." (Am. Compl. ¶ 136). The reason they knew this is because the Plaintiff himself told them he was the owner, he suspected Chain was in breach of their agreement, he would no longer be working with Chain, and, because of this, Plaintiff and Treis would work with each other directly moving forward and if Treis wanted to continue using WAO2 they had three options. (Am. Compl. ¶¶ 146-155).

It is indisputable, based on the Plaintiff's Amended Complaint, that Plaintiff either discovered or by the exercise of reasonable diligence should have been discovered the alleged misappropriation of trade secrets by April 2021. Therefore, any alleged misappropriation of trade secrets by CEL was not brought within the two year period

proscribed by Ala. Code § 8-27-5. Accordingly, Plaintiff's claim against CEL for misappropriation of trade secrets is due to be dismissed.

**E.    Count 16 of the Complaint is Barred by the Applicable Statute of Limitations and Therefore Must Be Dismissed for Failure to State a Claim.**

Count 16 of Plaintiff's Complaint alleges "Conspiracy to Commit Theft of Trade Secrets in Violation of the Alabama Trade Secrets Act" as to "All Defendants." Alabama's Trade Secrets Act is found at Ala. Code §§ 8-27-1 – 8-27-6.

Ala. Code § 8-27-5 states "[a]n action for misappropriation must be brought within two years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."

Count 16 of Plaintiff's Complaint contains the following general allegations:

Chain, CEL, Cevon, Stronghold, Treis and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti), for their personal benefit, conspired to misappropriate WAO2. (Am. Compl. ¶ 550).

Chain, CEL, Cevon, Treis and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti) conspired to block Plaintiff's Developer Fee. (Am. Compl. ¶ 552).

Chain, CEL, Cevon, Treis, and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti) performed acts to effect the object of the conspiracy. (Am. Compl. ¶ 553).

While the more specific allegations contained in Plaintiff's Complaint, referenced numerous times previously in this motion, and the existence of the Delaware lawsuit

between the Chain and Treis entities, referenced in Plaintiff's Complaint, logically undermine the existence of a conspiracy between the above-referenced entities, the more important fact remains that, according to Plaintiff's Complaint, Chain and CEL were cut out of any relationship with the other parties in this lawsuit due to Plaintiff's knowledge and suspicions about the very acts being alleged against Chain and CEL in April 2021, more than two years prior to the filing of this lawsuit. (Am. Compl. ¶¶ 136, 145-147, 149-150, 153-154). Therefore, any alleged misappropriation of trade secrets by Chain and CEL was not brought within the two year period proscribed by Ala. Code § 8-27-5. Accordingly, Plaintiff's claim against Chain and CEL for conspiracy to commit theft of trade secrets in violation of the Alabama Trade Secrets Act is due to be dismissed.

**F.     Count 17 of the Complaint Must Be Dismissed for Failure to State a Claim.**

Count 17 of Plaintiff's Complaint alleges "Work and Labor" as to "All Defendants." As it pertains to this Defendant, Plaintiff makes the following allegations:

"In the alternative, if the court finds there was no valid contract, Plaintiff performed thousands of hours of work and labor at the direct request of Defendants Treis, Chain, CEL, Cevon, Pence, Bolick, Smith and Lamberti." (Am. Compl. ¶ 556).

"The work was performed due to direct requests from Defendant Treis, Chain, CEL, Cevon, Pence, Bolick, Smith, and Lamberti." (Am. Compl. ¶ 560).

"Defendants Treis, Chain, CEL, Cevon, Pence, Bolick, Smith, and Lamberti continually requested improvements to WAO2 and required that Plaintiff work additional hours to meet their needs." (Am. Compl. ¶ 561).

Plaintiff has cited to no federal law or statute governing a cause of action for "work and labor done," so it must be presumed that Plaintiff is asserting a state law claim based on the laws of Alabama. The first deficiency in Plaintiff's pleading is that Plaintiff brings this cause "if the court finds there was no valid contract." In Alabama, in order to recover for work and labor done, a contract must exist, either express or implied. *Stewart v. Robinson*, 490 So.2d 13 (Ala. Civ. App. 1986).

The second problem with this cause of action, as pled by Plaintiff, is the nature of the alleged contract Plaintiff has pled. This Defendant was alleged to be performing services for the Plaintiff, not the other way around. Plaintiff claims that "Plaintiff, Chain, and/or CEL entered into a broker style arrangement in they would equally share all profits from any contract **Defendant procured** for Plaintiff's WAO2." (Compl. ¶ 423). (emphasis added). Defendant was the one performing the work; Plaintiff provided the product Defendant "brokered." The Alabama Court of Civil Appeals has stated "[t]he rule is that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered." *CIT Group/Equip. Fin., Inc. v. Roberts*, 885 So. 2d 185, 189 (Ala. Civ. App. 2003).

Here, as pled, it was the Plaintiff accepting the services being rendered by this Defendant. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted and this count against this Defendant is due to be dismissed.

## **CONCLUSION**

For the reasons set forth above, Chain and CEL respectfully request that this Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In addition, Chain and CEL respectfully request this Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3) for improper venue or *forum non conveniens*. If the Court does not dismiss this case under Rule 12(b)(2) or (3), Chain and CEL respectfully request the Court dismiss Counts 5, 9, 13, 16, and 17 for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

*/s/ Clifton E. Slaten*
**CLIFTON E. SLATEN (ASB-4091-N73C)**
**ATTORNEY FOR CHAIN ENTERPRISES,**
**LLC and JOHN CHAIN**

**OF COUNSEL:**
**SLATEN LAW, P.C.**
**7027 Halcyon Park Drive**
Montgomery, Alabama   36117
(334) 396-8882 Telephone
(334) 398-8880 Facsimile
cslaten@slatenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com

Joshua J. Jackson
SAMFORD & DENSON, LLP
P.O. Box 2345
Opelika, AL 36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com

*/s/ Clifton E. Slaten*
**Of Counsel**