## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK GRAMS,<br>An individual Alabama citizen, | ) ) ) | |
| Plaintiff, | ) ) | **Civil Action No.:**<br>**3:23-CV-00299-SMD** |
| v. | ) ) | |
| TREIS BLOCKCHAIN, LLC,<br>CHAIN ENTERPRISES, LLC,<br>CEVON TECHNOLOGIES, LLC,<br>STRONGHOLD DIGITAL MINING,<br>LLC, DAVID PENCE, MICHAEL<br>BOLICK, SENTER SMITH,<br>BRIAN LAMBRETTI, AND<br>JOHN CHAIN, | ) ) ) ) ) ) ) ) ) | **DEFENDANTS' REPLY TO**<br>**PLAINTIFF'S RESPONSE TO**<br>**MOTION TO TRANSFER OR**<br>**ALTERNATIVELY TO DISMISS**<br>**PURSUANT TO RULE 12(b)(2)** |
| Defendants. | | |

The Court should transfer this case to the District of South Carolina because Plaintiff has failed to meet his burden of proving personal jurisdiction over Treis, its directors and/or Stronghold. Plaintiff's opposition does not attempt to allege that the Defendants are subject to general jurisdiction. With respect to specific jurisdiction, Plaintiff relies almost entirely on the *Calder* effects test, arguing that Defendants' intentional conduct subjects them to jurisdiction.  Plaintiff's argument fails because: (1) Plaintiff must support jurisdiction for each of his claims and the effects test cannot support jurisdiction over non-intentional tort claims; (2) even under *Calder*, the alleged actionable injury for misappropriation occurred in South Carolina and/or Pennsylvania where the misappropriation took place; (3) Plaintiff approached Treis to ask if he could

use Treis' machines to further develop his firmware, knowing Treis and its machines were located outside of Alabama; (4) Plaintiff voluntarily installed the firmware on machines outside of Alabama where it was allegedly misappropriated; and, (5) Plaintiff was always working for his own benefit and not at the direction of any of the Defendants because he knew he would only be paid if he could finalize his firmware so that it would work more efficiently. This Court should, therefore, transfer this case to the District of South Carolina because the case could have been brought there and the Defendants have already stated they will not contest jurisdiction of that District Court, thus removing all "obstacle[s] . . . to a prompt adjudication on the merits" and justifying transfer. *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967). *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (this Court is bound by cases decided by former Fifth Circuit before October 1, 1981).

Another independent reason for transfer is that the transfer factors favor transfer to the District of South Carolina: (1) South Carolina is more convenient because most of the witnesses reside there; (2) the location of the bulk of relevant documents and evidence relating to claims of Treis' unauthorized use is South Carolina; (3) the locus of operative facts is primarily in South Carolina where Treis is located and allegedly used and sold Plaintiff's firmware without authorization; (4) Alabama law would not apply to Plaintiff's misappropriation claims since the unauthorized use or disclosure occurred in South Carolina and/or Pennsylvania; and, (5) trial efficiency and the interests of

- 2 -

justice favor transfer to the District of South Carolina which would resolve all the procedural issues raised by Defendants.

## I.    Plaintiff Has Not Established Personal Jurisdiction Is Proper.

Plaintiff's initial burden is to allege in the complaint "sufficient facts to make out a prima face case of personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "'A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict'." *Stubbs v. Wyndham Nassau Resort*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citations omitted).

Where "the defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction'." *Diamond Crystal Brands, Inc. v. Good Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citations omitted). "By that standard, *the plaintiff must offer evidence* that creates a genuine dispute of material fact as to the court's personal jurisdiction over the defendant." *Slocumb Law Firm, LLC v. Trollinger*, 2015 U.S. Dist. LEXIS 103547, at *2 (M.D. Ala. Aug. 7, 2015) (*emphasis added*). Although the Court must construe all reasonable inferences in favor of Plaintiff when evidence conflicts, it "is not obligated to accept [Plaintiff's] mere legal conclusions posited as facts" even if plaintiff submits such statements in an affidavit. *Mewbourne v. Cheytac, USA, LLC*, 2013 U.S. Dist. LEXIS 457743, *32 (N.D. Ala. Mar. 29, 2013) (citing *Mazer*, 556 F.3d at 1276-77). Plaintiff has failed to meet his initial

burden of establishing a *prima facie* case of personal jurisdiction and has further failed to produce evidence to counter Defendants' declarations, making transfer or dismissal appropriate.

### A. General Jurisdiction

The undisputed evidence shows that Treis and Stronghold ("Corporate Defendants") are not "essentially at home" in Alabama because they are not incorporated in and do not conduct continuous and systematic business in Alabama. *See* Am. Compl. ¶¶ 7, 8, 10 and Dkt. 60 at Exs. A-C. *See also BNSF Ry. Co. v. Tyrrell, U.S.*, 58 U.S. 402, 413 (2017). The undisputed evidence also shows that Bolick, Pence, Smith and Lamberti ("Individual Defendants") lack the general contacts with Alabama "that are unrelated to the cause of action and that are both continuous and systematic." *Ex parte M.E.J.*, No. SC-2023-0062, 2023 Ala. LEXIS 113, at *11 (Oct. 13, 2023) (quoting *Ex parte Bradshaw*, 328 So. 2d 236, 242 (2020)). The Individual Defendants are all residents of South Carolina, who have never owned real estate or personal property in Alabama, owed child support or alimony to an Alabama resident, had an office in Alabama, or been involved in litigation in the forum. *See* Am. Compl. ¶¶ 11-15 and Dkt. 60 at Exs. D-G.

Even if Plaintiff's Amended Complaint had established a *prima facie* case of general personal jurisdiction, he fails to rebut the declarations submitted as is required. Plaintiff's failure to address Defendants' general jurisdiction arguments and declarations

not only fails his evidentiary burden, it constitutes abandonment. *Jones v. Bank of Am., N.A.*, 564 Fed. Appx. 432, 434 (11th Cir. 2014) ("party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed").

## B. Specific Jurisdiction

When evaluating specific jurisdiction, the Court must do so on a claim-by-claim basis. *Slocumb Law Firm*, 2015 U.S. Dist. LEXIS 103547, at *9. For each claim, Plaintiff must prove that Defendants' conduct (1) is related to Plaintiff's cause of action; (2) constitutes purposeful availment and (3) is such that Defendants should reasonably anticipate being haled into court in Alabama. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

### 1. Suit-related conduct

In his Response, Plaintiff fails to address Defendants' argument that the first prong of the minimum contacts test for specific jurisdiction has not been met. *See* Dkt. 60, pp. 10-13. Plaintiff has therefore abandoned or waived this issue, and Defendants' Motion should be granted. *Jones,* 564 Fed. Appx. at 434. None-the-less, Plaintiff has failed to meet his burden of showing that Defendants' suit-related conduct creates a substantial connection with Alabama. *Hand v. Wholesale Auto Shop, LLC*, 2018 WL 305818, at *6 (N.D. Ala. Jan. 5, 2018) ("to exercise jurisdiction consistent with due process the defendant's *suit-related* conduct must create a substantial connection with the forum state"). The crux of Plaintiff's Amended Complaint is that Defendants

conspired to misappropriate and steal his firmware to avoid paying him a Development Fee and were unjustly enriched along the way. Plaintiff's argument fails to account for the fact that it was Plaintiff who voluntarily sent his firmware outside of Alabama, where it was allegedly stolen. *See* Am. Complaint, ¶¶ 60, 69-71, 199, 333-339 and Ex. 1 ¶¶ 11-13, 15-17 (Dec. of Treis). Plaintiff's allegations are akin to having his car stolen while he was in South Carolina, the redress for which would surely be in the South Carolina courts. Plaintiff's allegations that the firmware was installed on machines located in South Carolina and Pennsylvania and subsequently misappropriated by non-resident Defendants through the unauthorized use and sale of the firmware, all of which took place outside of Alabama, demonstrate a lack of suit-related contacts. *See Ala. Aircraft Indus. v. Boeing Co.*, 2022 U.S. App. LEXIS 4039, at *28-29 (11th Cir. Feb. 14, 2022)[1] (actionable injury occurs at time of misappropriation or when disclosure of trade secret is made); *E.A. Ren-froe & Co., Inc. v. Rigsby*, 2008 U.S. Dist. LEXIS 134717, at *11 (N.D. Ala. Oct. 29, 2008) (applying Alabama law and noting that "[t]here is extensive case law holding that for the tort of misappropriation of trade secrets, the tort occurs where the misappropriation occurs" (collecting cases)).  *See also Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 265 (2017) (no jurisdiction where "all the conduct giving rise to the [plaintiffs'] claims occurred elsewhere"). All the alleged misappropriation activities occurred outside of Alabama, which prevents jurisdiction

---

[1]Eleventh Circuit Rule 36-2: unpublished opinions may be cited as persuasive authority.

from being proper.

### 2. Purposeful Availment

#### a. Non Intentional Torts – Counts 6-8, 17-18 (Unjust Enrichment, Breach of Contract, Work and Labor, and Quantum Meruit)

Plaintiff's contract and non-intentional tort claims are governed by the traditional purposeful availment test, not the *Calder* effects test. *See Louis Vuitton*, 736 F.3d at 1356-57. Plaintiff relies heavily on *Empirian*. However, this reliance is misplaced as *Empirian* is factually distinguishable from this case in several ways.

<u>*First*</u>, the nonresident defendant, SpecialtyRX retained Alabama-based Emperian's rebate administration services. *Empirian Health, LLC v. Specialty Rx, Inc.*, 2023 U.S. Dist. LEXIS 203518, at *1 (M.D. Ala. Nov. 14, 2023).

Here, Plaintiff used Chain/CEL, who are not residents of or incorporated in Alabama (Am. Compl. ¶¶ 8, 13), to reach out to and engage in negotiations with Treis. Am. Compl. ¶¶ 50-53; Dkt. 60 at Ex. A ¶12; and Ex. 1 ¶¶ 11-13, 15-17. It was not until after negotiations that Plaintiff first introduced himself to Treis, and Treis did not learn that Plaintiff was not an employee of CEL until more than a year after Treis negotiated with Chain/CEL. Am. Compl. ¶¶ 50-53, 66, 150-151.

Plaintiff sent the firmware to Treis. Dkt. 60 at Ex. A ¶ 13. Plaintiff, to further his own goals, requested use of Treis' machines. Dkt. 60 at Ex. A ¶¶ 14-15; Ex. 1 ¶¶ 10-18. Plaintiff installed firmware on Treis' machines knowing they were in South Carolina. Ex. 1, ¶¶ 11-17. Treis' sending approximately 20 machines to Plaintiff at Plaintiff's

request so that he could develop firmware is not related to Treis' alleged misappropriation or conversion of the firmware.

*Second*, *Empirian* involved a written agreement between the parties for an initial term of 30 months. For more than two years, Specialty Rx engaged in an ongoing relationship with Empirian by submitting monthly rebate claims to Alabama pursuant to the agreement. *Empirian*, 2023 U.S. Dist. LEXIS 203518, at *2, 5.

Here, the agreement was for Treis to allow CEL, at CEL's request, to test firmware on Treis' computers (located in South Carolina and Pennsylvania) at considerable expense to Treis for the purpose of finalizing the firmware. Dkt. 60 at Ex. A ¶ 13 and Ex.1 ¶¶ 8-15. In exchange, Treis would use the firmware for free and provide feedback and comments on the firmware's development. Ex. 1 ¶¶ 18-26. The relationship was between Treis and CEL, which is not an Alabama-based company.  Moreover, Treis never agreed to pay a development fee. Ex. 1 ¶¶ 19-25, 32-33 and 36(d). Any discussions or negotiations concerning compensation were to occur after the firmware was ready for commercial use. Ex. 1 ¶ 19 & 26.

Once Treis learned Plaintiff was not CEL's employee, more than a year after entering into the agreement to test CEL's firmware on Treis' machines, Treis' communications with Plaintiff were limited to the lawsuit against Chain/CEL, continued involvement of Chain/CEL, if any, and that further negotiations regarding a development fee would have to occur after resolution of the lawsuit. Dkt. 60 at Ex. A ¶

17.

*Third*, Specialty RX "intentionally forged an ongoing relationship with an Alabama-based business and engaged with Empirian on a monthly basis." *Empirian*, 2023 U.S. Dist. LEXIS 203518, at *8.

Here, Treis thought it was forging a relationship with a Nevada-based company. The agreement was between Treis and Chain/CEL for Treis, at Chain/CEL's request, to provide access to its computers (in SC and PA) so that CEL could test its firmware. Dkt. 60 at Ex. A ¶¶ 9, 13.   At the time that Treis sent Plaintiff approximately 20 computers for testing purposes, Treis believed that he was CEL's employee. Dkt. 60 at Ex. A ¶¶ 14-15.

*Fourth*, Specialty RX's execution of a contract with an Alabama-based company was not a "fortuitous" contact with Alabama. *Empirian*, 2023 U.S. Dist. LEXIS 203518, at *7.

In this case, Treis' contacts with Alabama were fortuitous. Treis negotiated with Chain and CEL, neither of whom reside in Alabama, to test CEL's firmware on Treis' machines. This testing did not require Treis or the Individual Defendants to go to or otherwise avail themselves of Alabama. Dkt. 60 at Ex. A ¶¶ 9, 12, 13.

The fact that Plaintiff, CEL's alleged firmware developer, happened to reside and maintain his "lab" in Alabama was fortuitous and not a deliberate contact made by Treis or its directors. Treis and its directors did not even know about Plaintiff until he

introduced himself via a group chat and were unaware Plaintiff was not an employee of CEL until more than a year after working with Chain/CEL. *See* Am. Compl. ¶¶ 66, 150-151. *See also* Ex. 1 ¶¶ 14-15, 21, 23(c), 25-31, and 36.

### b. Intentional Torts – Counts 2-3, 9-11, 14-16 (DTSA, Fraud, Slander, Interference with Contract, ATSA, and Conspiracy)[2]

With respect solely to intentional torts, Plaintiff may prove purposeful availment under the *Calder* effects test where the tort was intentional; aimed at the forum state; and caused harm that Defendants should have anticipated would be suffered in Alabama. *Louis Vuitton*, 736 F.3d at 1356 (11th Cir. 2013).[3] However, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

Plaintiff's Response focuses almost exclusively on the *Calder* effects test for purposeful availment for intentional torts and relies on another recent decision, *SkyHop Tech., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023). Plaintiff's reliance on this case

---

[2] 18 U.S.C. § 1832(A)(5), the basis of Plaintiff's Count 5 is a criminal statute and does not provide a private right of action. See *Vest Safety Med. Servs. v. Arbor Evntl., LLC*, 2020 WL 4003642, at *3 (S.D. Tex. Jul 15, 2020); *Zegato Travel Solutions, LLC v. Bailey*, 2014 WL 7365807, at *2 (D. Md. Dec. 2, 2014 (18 U.S.C. § 1832 "is the federal criminal statute for the theft of trade secrets"). Count 12, Conversion, is preempted by the ATSA. *Arkema Inc. v. Emerson Process Mgmt., LLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019).

[3] "[C]ourts have found as a legal matter that trade-secret claims are intentional torts for purposes of applying *Calder*'s effects test." *Ecolab Inc. v. IBA, Inc.*, 2023 U.S. Dist. LEXIS 192094, at *23 (D. Minn. Oct. 26, 2023).

is also misplaced. In *SkyHop*, the plaintiff alleged the defendant violated the federal Computer Fraud and Abuse Act ("CFAA") and the Florida Computer Abuse and Data Recovery Act. *SkyHop,* 58 F.4th at 1219. The Eleventh Circuit found the essential foundation of specific jurisdiction was present where the defendant knowingly and intentionally directed emails into Florida which contained the alleged threats and "to do damage" to the plaintiff's software that triggered the plaintiff's CFAA claim. *Id.* at 1223, 1229. The emails intentionally directed into Florida and containing the "threats" within the meaning of the CFAA were the very basis for plaintiff's claims. *Id.* In contrast to *SkyHop*, Plaintiff's intentional tort claims involve misappropriation, conspiracy, slander, and fraudulent misrepresentation, all of which occurred outside of Alabama. *See* Dkt. 60, pp. 12-13, 20.

Plaintiff also argues that jurisdiction over Defendants is proper because Defendants "knew stealing WAO2 would injure its creator here in Alabama where he resides and conducts his business." Dkt. 79, p 18. The Eleventh Circuit, however, has determined that the actionable injury for a misappropriation of trade secrets claim occurs where the unauthorized use or disclosure occurs. *Ala. Aircraft Indus.*, 2022 U.S. App. LEXIS 4039, at *29. "Courts in our circuit have found this proposition uncontroversial." *Id.* (citing to *E.A. Ren-Froe & Co.,* 2008 U.S. Dist. LEXIS 134717, at *11 (N.D. Ala. Oct. 29, 2008). The Eleventh Circuit therefore determined that Missouri law, not Alabama law, applied where the misappropriation and use of the trade secret occurred

in Missouri where Defendant Boeing was located and not in Alabama, where Plaintiff

Pemco resided and had its place of business:

> This means that Pemco suffered its trade secrets injury in Missouri. Pemco alleged in its complaint that Boeing misappropriated its trade secrets at Boeing's divisional headquarters in St. Louis, Missouri, where Boeing used Pemco's proprietary information to prepare and submit its own bid. Boeing does not challenge that allegation on appeal, choosing instead to focus our attention on where Pemco felt the financial harm. Because the alleged injury occurred when Boeing misappropriated Pemco's trade secrets in St. Louis, Missouri law applies to Pemco's misappropriation-of-trade-secrets claim.
>
> . . .
>
> Boeing argues that Pemco suffered financial harm in Alabama because its principal place of business, and its coffers, are in Alabama.
>
> Boeing's argument is a non-starter. The *U.S. Bank* court observed that, while federal district courts had used a financial-harm test as a one-size-fits-all approach to determine the place of injury, there was no basis for that approach under Alabama law. *U.S. Bank*, 148 So. 3d at 1017. . .
>
> At bottom, Boeing confuses the concept of injury – the misappropriation – with the concept of damages – the resulting financial harm. The Supreme Court of Alabama has long drawn a clear distinction between the two. "It is clear that the word 'injury' . . . used in its proper legal sense . . . [means] wrongful act or omission. 'Damage,' the result of the wrongful act, . . . is a correlative term of wholly distinct meaning and application." *Age-Herald Pub. Co. v. Huddleston,* 92 So. 193, 197 (Ala. 1921). In effect, *U.S. Bank* admonished federal district courts for not recognizing this distinction when the cause of action arises from an injury – like misappropriation - that is not necessarily financial in nature. Given our pronouncement in *AVCO Corporation* and the Supreme Court of Alabama's reasoning in *U.S. Bank*, we conclude that Missouri law governs Pemco's misappropriation-of-trade secrets claim.

*Id.* In misappropriation cases involving application of the *lex loci delicti* rule, "'many

courts have held that the injury occurs when the information is improperly used' and

occurs at the location where it is used improperly to develop a new product, such as at

the defendant's research facility." *Intellor Grp., Inc. v. Cicero*, 2019 U.S. Dist. LEXIS 65241, at * 23-24 (D. Md. Apr. 16, 2019) (citations omitted).

Here, Plaintiff alleges Defendants improperly used firmware installed on machines located in South Carolina and Pennsylvania, stole the firmware, and that Treis improperly sold its machines with the firmware to Stronghold. The misappropriation occurred in South Carolina and/or Pennsylvania where the firmware was acquired and installed and where Treis allegedly used the firmware for its own advantage and subsequently sold the machines. Plaintiff's injury for any alleged misappropriation therefore occurred outside of Alabama, and he has failed to establish purposeful availment under the *Calder* effects test for Counts 2, 3, and 14-16 (DTSA, ATSA, and conspiracy to violate ATSA).

Furthermore, in support of his argument that he has met the *Calder* effects test, Plaintiff, without providing additional evidence, alleges he formed a "long-term commercial relationship with" Treis. Dkt. 79, p. 14. He alleges that to further the relationship, Treis sent its machines to Alabama for Grams to optimize his firmware to suit Treis's directives. *Id.* These statements, without supporting evidence, are not evidence sufficient to counter Defendants' declarations. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1336 (5th Cir. 1980). Treis' agreement was with CEL for Treis to provide access to its machines in South Carolina and Pennsylvania for CEL to develop the firmware. Dkt. 60 at Ex. A ¶¶ 13, 15; Ex. 1 ¶¶

11-17. It was Plaintiff who desired to use Treis' machines to develop and finalize the firmware, not Treis. *Id*. Treis never entered into an agreement with Plaintiff, and once Treis discovered Plaintiff was not an employee of CEL, Treis's communications with Plaintiff were limited to the lawsuit against Chain/CEL and that negotiations would have to wait. Dkt. 60 at Ex. A ¶ 17. For the reasons stated above and for the reasons set forth in Defendants' Motion, Plaintiff has failed to meet his burden of establishing a *prima facie* case of personal jurisdiction for his intentional torts set forth in Counts 2-3, 9-11, and 14-16. Furthermore, because the alleged misconduct by Defendants occurred outside of Alabama, they should not reasonably anticipate being haled into a court in Alabama. Defendants' Motion should therefore be granted.

## II.    Plaintiff Cannot Rely on RICO to Establish Personal Jurisdiction Because He Has Failed to Adequately Allege a RICO Violation.

Plaintiff states that Defendants have abandoned at this stage any argument that Plaintiff has not "plausibly alleged conduct, pattern, and racketeering activity." To the contrary, Defendants, for the sake of brevity, only argued the insufficiency of Plaintiff's Amended Complaint to establish an enterprise and specifically reserved the arguments contained in Defendants' Rule 12(b)(6) motion. Dkt. 60, p. 24, fn. 3.

Plaintiff is not entitled to rely upon RICO as a basis for jurisdiction because it is a criminal statute that does not provide for a private right of action. *See Smith v. JP Morgan Chase,* 837 Fed. Appx. 769, 769 (11th Cir. Feb. 24, 2021) ("criminal statutes do not provide for private civil causes of action, so it follows that Smith's Title 18

allegations are also without merit because those criminal statutes do not provide for private causes of action") (unpublished). "Section 1832 is a criminal statute that establishes a crime and specifies punishment." *Vest Safety Med. Servs. v. Arbor Envtl., LLC*, 2020 WL 4003642, at *3 (S.D. Tex. Jul. 15, 2020). Plaintiff has never disputed this argument, which appears in several of Defendants' prior filings. *See* Dkts. 18-21, 24, 35 and 62. But even if he were, Plaintiff fails to properly allege a RICO claim. *See* Dkt. 62.

"As the existence of an enterprise 'is a central element of a RICO claim,' it 'must be pled with specificity' under Rule 9(b)." *Almanza v. United Airlines, Inc.*, 162 F. Supp. 3d 1341, 1353 (S.D. Ga. 2016), *aff'd,* 851 F.3d 1060 (11th Cir. 2017) (citations omitted). Plaintiff fails to plead specific facts demonstrating Defendants acted as an ongoing organization functioning as a continuing unit for a common purpose *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) (defining RICO enterprise).

First, Plaintiff argues he has sufficiently alleged an enterprise because Treis' individual members "conspired to use the entity to misappropriate WAO2 from Grams." Dkt. 79, pp. 25-26. It is well established that "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alchua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000).

Second, Plaintiff alleges an enterprise exists because Stronghold "decided to join in Treis's misappropriation." Dkt. 79, p. 31. Plaintiff alleges Stronghold and Treis came

to a "meeting of the minds," that Stronghold "did a quick calculation and realized it benefited most from ignoring [Plaintiff's] assertion of right" (Dkt. 79, p. 31) and that "[i]n a call between Stronghold, Pense, and Treis's legal counsel Doug Kim, the group agreed they needed to work together against [Plaintiff]." Am. Compl. ¶ 284. These allegations by Plaintiff are speculative and conclusory and insufficient to show some agreement, explicit or implicit, between Treis and Stronghold to deprive Plaintiff of a development fee or the firmware. *Almanza*, 162 F. Supp. 3d at 1353 (conclusory allegation that defendants agreed at some point without specifics of terms simply not sufficient to support finding an enterprise). Plaintiff argues "[b]oth entities chose to continue using WAO2," "[b]oth entities chose to lie to Grams that they had removed WAO2 from their devices," and "[b]oth entities found a way to use WAO2 without paying Grams's Dev Fee by blocking it." Dkt. 79, p. 32.

At best, Plaintiff's allegations show "parallel conduct" which "by itself, does not plausibly demonstrate that those defendants ever reached an understanding that they would undertake such concerted action." *Almanza*, 62 F. Supp. 3d at 1354. Plaintiff also fails to allege what benefit Treis gained by Stronghold's alleged misappropriation after Treis had already sold its machines to Stronghold. *See Ambrosia v. Pages Morales*, 482 F.3d 1309, 1336 (11th Cir. 2007).

Third, Grams was aware of and failed to object to Treis's belief it had the right to use and sell the firmware pursuant to the Cevon joint venture agreement about which

Grams was fully aware. *See* Ex. 1, ¶ 21-25, 28-29, 35 and 37. Grams was present for the negotiations of the joint venture agreement. *Id.* Grams was also aware of and did not object to Treis' belief that it could use the firmware for free. *Id.*, ¶ 19, 23(b) and 24-25. Treis never directed Grams to maintain or optimize the machines once they were sold to Stronghold. *See* Ex. 3, ¶ 3 (Dec. of Lamberti).

Fourth, Stronghold was completely unaware that Plaintiff's firmware was installed on the machines it was purchasing. *See* Ex. 2, ¶ 6. As part of the purchase agreement, Stronghold obtained a written representation that Treis owned "free and clear of encumbrances" the machines being sold. *Id.*, ¶5. Upon learning that Plaintiff alleged to be the owner of the firmware, Stronghold's general counsel directed the appropriate persons to remove the firmware from the machines. *Id.*, ¶ 10-12. *See also* Am. Compl. ¶ 287. Plaintiff's motion for a TRO has confirmed that the firmware was in fact removed from all the functioning machines in Stronghold's possession. Ex. 2, ¶10-12.

Plaintiff's allegations are insufficient to establish that Treis and Stronghold were engaged in an ongoing organization functioning as a continuing unit for a common purpose. But even if they were, they are insufficient to overcome the allegations contained in the declarations presented by Tries and Stronghold. For these reasons and the reasons set forth in Defendants' Motion to Transfer, Plaintiff has failed to establish an enterprise as required under RICO and has failed to meet RICO's heightened pleadings standard; therefore, he cannot rely on RICO's nationwide service provision to

obtain personal jurisdiction. Dkt. 60, pp. 23-29.

### III. This Case Should Be Transferred to The District of South Carolina.

#### A. Plaintiff's Claims could have been brought in South Carolina.

In this case, there is no question venue is proper under 28 U.S.C. § 1391(b)(2) in South Carolina where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred. See, supra, I.B.1. and Dkt. 60, pp. 12-13. Furthermore, the District of South Carolina may exercise personal jurisdiction over all Defendants.

Defendants Treis, Bolick, Pence, Smith, and Lamberti are all residents of or are incorporated in South Carolina. Am. Compl. ¶¶ 7, 11, 12, 14, 15. Defendant Cevon's principal place of business is in South Carolina. Dkt. 60 at Ex. B ¶ 4.

Stronghold is also subject to personal jurisdiction in South Carolina because of its agreements with Treis, a South Carolina-based company. Stronghold entered into a Purchase Agreement to buy Treis' machines. *See* Am. Compl. ¶¶ 264, 270, 335-336; Ex. 1 ¶ 38-41; Ex. 2 ¶¶ 3, 13 (Dec. of Stronghold). Stronghold also entered a power purchase contract with Treis, whereby Stronghold would supply power to Treis for the purpose of running some of the machines in question. *Id.* Stronghold both sent and received payment from Treis' South Carolina bank account, and had multiple communications with Treis, who was located in South Carolina, concerning the operation and/or purchase of Treis' machines. Ex. 2 ¶ 13. Under these circumstances, the District of South Carolina has personal jurisdiction over Stronghold. See

*Orangeburg Pecan Co., Inc. v. Farmers Inv.*, 869 F. Supp. 351, 357 (D.S.C. 1994) (even

"a single contract with the forum state is sufficient transacting of business to give its

courts personal jurisdiction over a nonresident if the contract gives rise to or figures

prominently in the cause of action under consideration").

Defendants Chain and CEL are also subject to personal jurisdiction in South

Carolina where they initiated negotiations with Treis, a South Carolina-based company,

entered an agreement with Treis concerning the testing of the firmware on Treis'

machines and were involved in the installation of firmware on those machines in South

Carolina, and had an ongoing relationship with Treis for more than year, including

forming Cevon under a joint venture agreement, before that relationship deteriorated.

*See* Ex. 1 ¶¶ 11-37; *Paired Pay Inc. v. ClearObject Inc*., 2022 U.S. Dist. LEXIS 106037,

at * 11 (D.S.C. Jun. 14, 2022) ("personal jurisdiction is reasonable given Defendant

choose to solicit business in South Carolina with a company with its principal place of

business in this state"). Defendants have therefore established that this case could

originally have been brought in the District of South Carolina. To the extent there is any

question of personal jurisdiction over Defendants in South Carolina, Defendants have

consented to personal jurisdiction in South Carolina.

### B. Plaintiff's Claims should be transferred to the District of South Carolina pursuant to Section 1406(a)

28 U.S.C. § 1406(a) provides that if plaintiff files a case "laying venue in the

wrong division or district," the district court where the case is filed "shall dismiss, or if

it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1406 "operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there." *Dubin*, 380 F.2d at 816. As set forth above and in Defendants' Motion to Transfer, the Middle District of Alabama is improper because personal jurisdiction over Defendants is lacking.

Rather than transfer to South Carolina, Plaintiff asks this Court: to dismiss Stronghold so that he may refile in Pennsylvania against Stronghold; transfer claims against Chain/CEL to Nevada or dismiss them; transfer claims against Cevon to Delaware or dismiss Cevon; and, transfer claims against Treis to Delaware or Pennsylvania. Dkt. 79, p. 35. Plaintiff's requests are not in the interests of justice or judicial economy.

"Courts generally perceive transfer to further the interests of justice more than dismissal." *Alpha Comm Enterprises, Inc. v. Next Vision, Inc.*, 2014 WL 2539706, *4 (M.D. Fla. 2014). Here, transfer to the District of South Carolina is in the interests of justice where: Plaintiff's claims have a substantial overlap of issues, facts, evidence, and witnesses; trying Plaintiff's claims in different forums against the different Defendants rather than in a single proceeding would be costly, inefficient and burden the court system; and, the majority of the relevant acts or omissions occurred in South Carolina. Under these circumstances, transferring Plaintiff's case to South Carolina, where all

Defendants are subject to and have consented to personal jurisdiction and where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, is in the interests of justice.

### C. The District of South Carolina is more convenient because it removes procedural obstacles and it is where the majority of evidence and witnesses are located.

If this Court determines Alabama is an appropriate venue, this Court should still, in its discretion, transfer this case to the District of South Carolina pursuant to Section 1404(a). See *Holmes v. Freightliner, LLC*, 237 F. Supp. 2d 690, 692 (M.D. Ala. 2002) ("Section 1404(a) only applies in cases where the plaintiff's chosen venue is an appropriate venue."). As previously set forth, Plaintiff's action could have been brought in the District of South Carolina. In addition, "the balance of convenience favors transfer." In considering the nine factors to analyze on a motion to transfer venue, a majority of the factors favor transfer.

The convenience of the witnesses favors transfer because the majority of the witnesses are located in South Carolina and all known witnesses other than Plaintiff reside outside of Alabama. See *Yaeger v. Wyndham Vacation Resorts, Inc.*, 2013 U.S. Dist. LEXIS 204641, at *4-6 (N.D. Ala. Aug. 12, 2013) (other than Plaintiff's forum choice, "the most important factor in passing on a motion to transfer under 1404(a) is the convenience of the witnesses").

The location of relevant documents and relative ease of access to sources of proof favors transfer to South Carolina. Stronghold's compliance with the TRO revealed that shortly after being contacted by Plaintiff, Stronghold in fact removed the firmware from all functioning machines and that all non-functioning machines on which the firmware remained is now in Plaintiff's possession and/or control. *See* Ex. 2, ¶ 12. Thus, the bulk of Plaintiff's alleged damages stem from Treis' failure to pay the development fee for its use of the firmware. Because Stronghold's use of the firmware was very limited, especially in comparison to the use made by Treis, nearly all evidence of Plaintiff's damages is in South Carolina. Treis' documents, evidence, and financial records are all in South Carolina, including evidence of its dealings with Chain/CEL and Stronghold, and virtually all sources of proof of Plaintiff's claims are in South Carolina and Pennsylvania. Dkt. 60, Ex. A ¶ 9.

The convenience of the parties favors transfer where five of the nine Defendants are in South Carolina, and the other Defendants have consented to personal jurisdiction in South Carolina. Plaintiff has also expressed a willingness to bring his claims in forums outside of Alabama to pursue the Defendants separately (many of which are farther away from Alabama than South Carolina). Dkt. 79, p. 35.

The locus of operative facts favors transfer because a substantial portion of the facts giving rise to Plaintiff's claims occurred in South Carolina and/or Pennsylvania. For instance, any alleged conspiracy involving Treis and its Directors would have taken

place in South Carolina where they are located. The firmware at issue was installed on Treis' machines in Pennsylvania and South Carolina. Am. Compl. ¶ 199. Any alleged unjust enrichment of "several million dollars" from selling the machines containing the firmware benefited Treis and its Directors in South Carolina. *Id.* ¶ 411.

The unavailability of process to compel the attendance of unwilling witnesses in Alabama favors transfer to South Carolina. All witnesses known to Defendants, such as the subsequent purchasers of the machines sold by Stronghold, would be beyond the Court's subpoena power in Alabama.

The parties' financial ability favors a transfer because Plaintiff has expressed a willingness to pursue his claims in multiple forums outside of Alabama if necessary. Dkt. 79, p. 35.

Plaintiff's choice of Alabama is of minimal value in determining whether to transfer because none of the conduct complained of took place in Alabama. *See Holmes*, 237 F. Supp. 2d at 693.

The Forum's familiarity with the governing law is in favor of transfer because Plaintiff's misappropriation claims would be governed by South Carolina law where the majority of any alleged misappropriation or unauthorized use occurred. *Ala. Aircraft Indus.*, 2022 U.S. App. LEXIS 4039WL 433457 (any actionable injury suffered by Plaintiff for alleged misappropriation of his trade secret is where the misappropriation occurred or unauthorized use occurred). Therefore, South Carolina's trade secrets act

would apply to Plaintiff's misappropriation claims. The DTSA and RICO claims are federal statutory claims, not state law claims; therefore, Alabama federal courts and South Carolina federal courts are equally familiar with those laws. In addition, if necessary, the South Carolina District Court is certainly capable of applying Alabama state law for Plaintiff's claims of unjust enrichment, slander, and conversion, especially where the law applying to those claims is not particularly complex. See *Holmes*, 347 F. Supp. 2d at 695 ("[w]here no complex questions of foreign law are presented, courts consider this factor to be of less importance").

Efficiency and the interests of justice, based on the totality of the circumstances favor transfer to South Carolina where: the events or omissions giving rise to Plaintiff's claims occurred in South Carolina or Pennsylvania; the majority of witnesses and sources of proof are in South Carolina; and, all Defendants have consented to personal jurisdiction in South Carolina.

Because the action could have been brought in the District of South Carolina and because the balance of convenience favors transfer, Defendants request their Motion to Transfer be granted.

## CONCLUSION

For the reasons set forth in Defendants' Motion to Transfer and for the reasons set forth above, the Defendants respectfully request that this Court transfer this case to the District of South Carolina pursuant to 28 U.S.C. § 1406 and/or § 1404. Alternatively,

the Defendants request they be dismissed from this case pursuant to Rule 12(b)(2) for

lack of personal jurisdiction.

Respectfully submitted this 8th day of December 2023.


| /s Joshua J. Jackson | /s Hunter S. Freeman |
| --- | --- |
| Joshua J. Jackson (ASB-8286-U79J) | Hunter S. Freeman (pro hac vice) |
| SAMFORD & DENSON, LLP | KIM, LAHEY & KILLOUGH |
| P.O. Box 2345 | 3620 Pelham Road, PMB # 213 |
| Opelika, AL 36803-2345 | Greenville, SC 29615 |
| Telephone (334) 745-3504 | Phone: (864) 973-6688 |
| Email: jackson@samfordlaw.com | hfreeman@kimandlahey.com |

*Attorneys for Defendants Treis Blockchain, LLC, Cevon Technologies, LLC, Stronghold Digital Mining, LLC, Mr. Bolick, Mr. Lamberti, Mr. Pence and Mr. Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on the  8th  day of  December  , 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com

Carissa V. Sears
The Sears Law Office, LLC
7887 E. Belleview Ave. Suite 1100
Greenwood Village, CO 80111
carissa@searslaw.org

Clifton E. Slaten
Slaten Law, P.C.
7027 Halcyon Park Drive
Montgomery, AL 36117
cslaten@slatenlaw.com

/s Joshua J. Jackson
OF COUNSEL

- 25 -