UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARK GRAMS, )<br>Plaintiff, )<br>)<br>)<br>)<br>v. )<br>)<br>)<br>TREIS BLOCKCHAIN, LLC,<br>*et al.*,<br>Defendants. | Case No. 3:23-cv-00299—<br>RAH—SMD |

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS CLAIM V (RICO) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO F.R.C.P. Rule 12 (b)

Plaintiff Mark Grams, by and through undersigned counsel, submits his response as follows:

## INTRODUCTION

While the parties attempt to bury the Court in largely immaterial finger pointing over who knew what when, the fundamental points are irrefutable: 1) Treis does not now, nor has it ever, owned WAO2; 2) even *after suing* over this fact, Treis sold WAO2 to Stronghold in December of 2021 for $7 million dollars and did not distribute a penny to Grams, Chain, Chain Enterprises, or even Cevon, 3) Stronghold knew by summer of 2022 that Grams owned WAO2 and that Treis was suing Chain

1

because of it, and yet 4) Stronghold and Treis continued to misappropriate WAO2 and its profits.

Every single Defendant committed federally prohibited crimes to profit illegally from Grams's firmware. Because the actors all lived in different states, virtually every lie they told to steal WAO2 and the currency it mined was either made over the telephone or in a written electronic communication platform—each time wire fraud. The Defendants not only defrauded Grams and stole his labor and Developer Fees, they even stole, published, sold, and unlawfully deployed WAO2 itself, each time a separate act of misappropriation. Conspiring as a group to commit federal crimes for the purpose of getting rich using intellectual property that you have no rights to violates RICO.

**ARGUMENT**

**I. Plaintiff has plausibly stated a claim that each Defendant participated in a scheme to steal his intellectual property; thereby violating 18 U.S.C. 1962 (RICO).**

A. <u>Plaintiff has standing to assert his civil RICO claim.</u>

Defendants persist in their argument that there is no private civil cause of action for RICO violations and fault Plaintiff for not addressing this argument. In their Reply filed at DKT 90 Defendants argue: "Plaintiff is not entitled to rely upon RICO as a basis for jurisdiction because it is a criminal statute that does not provide for a private right of action…. Plaintiff has never disputed this argument, which

appears in several of Defendants' prior filings." Defendants' argument is simply wrong.

A private party's right to state a claim for RICO violations was indelibly entrenched in our case law by the Supreme Court of the United States almost forty years ago. *Sedima, S.P.R.L. V. Imrex Co., Inc.*. 473 U.S. 479, 481 (1985) (The Racketeer Influenced and Corrupt Organizations Act …provides… for a private civil action."); *see also, e.g. Agency Holding Corp. v. Malley-Duff Assoc., Inc.*, 483 U.S. 143, 148 ("Federal courts have not adopted a consistent approach to the problem of selecting the most appropriate statute of limitations for civil RICO claims."); *General Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F.Supp. 1030, 1036 (M.D. Ala. 1996) ("In a recent civil RICO action, the plaintiff did not allege in the complaint the defendant's specific intent to defraud, but the court held that such an allegation was not necessary[.])

Moreover, an individual plaintiff's right to assert a civil RICO claim is explicit in the act itself: "Any person injured in his business or property by reason of a violation of section 1962 …may sue therefore[.]". 18 U.S.C. § 1964 "Civil Remedies." In turn, it is civil RICO that extends to plaintiffs the right to sue in their home state: "In any action under section 1964 of this chapter in any district of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such

parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof."

Nevertheless, Defendants calculatedly cited only non-RICO matters *Smith v. JP Morgan Chase,* 837 Fed. Appx. 769, 769 (11th Cir. 2021) and *Vest Safety Med. Servs. v. Arbor Envtl., LLC*, 2020 WL 4003642 (S.D. Tex. Jul. 15, 2020) in an attempt to convince the court "criminal statutes do not provide for private civil causes of action." That in their brief Defendants repeatedly cite civil RICO authorities disproves their posture and belies any genuine confusion. This may well be construed as an attempt to mislead the court. Defendants are both on notice of Plaintiff's civil RICO claim and aware of his right to assert it.

B. <u>Plaintiff has stated plausible facts to support each element of Defendants' RICO violations.</u>

To establish a RICO claim, a plaintiff must plausibly allege 1) conduct, 2) of an enterprise, 3) through a pattern, 4) of racketeering activity. The first element "conduct" requires participation in the enterprise's affairs. The second element, "enterprise" requires the involvement of two distinct stakeholders (whether persons or entities) in the scheme. The third element, "pattern" is met by two or more prohibited acts occurring within a ten-year period (close ended) or susceptible of continuing into the future (open ended) to accomplish the purpose of the scheme. The fourth element, "racketeering activity," involves the perpetration of any act prohibited by the federal criminal code at 18 U.S.C. A § 1961 (a lengthy list)

4

including misappropriation of intellectual property (18 U.S.C. 1832 "Theft of trade secrets") and oral or written misrepresentations sent via electronic means. (18 U.S.C. "Wire fraud"). Defendants challenge elements two and three.

## II. Plaintiff has plausibly alleged Defendants formed an association-in-fact enterprise.

An "association-in-fact" enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). To establish an association-in-fact enterprise no formal legal entity, or hierarchical organized structure, with leadership or roles, is required. But a plaintiff must demonstrate 1) a purpose, 2) relationships between those involved, and 3) longevity sufficient to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009).

An enterprise may be composed solely of an entity and its sole shareholder. *Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158 (2001) (plaintiff promotor stated a RICO enterprise existed between the entity's president, who was also the entity's sole shareholder, and the entity itself because each has a separate legal existence). An enterprise may also be composed of a group of individuals, who are not shielded from RICO liability simply because they harness their control over a corporate entity to accomplish the enterprise's unlawful goals.

Relying on the inapposite intra-corporate conspiracy doctrine, Defendants attempt to argue that Bolick, Smith, Lambreti, and Pence could not form an

enterprise, as "it is well established that 'a corporation's employees, acting as agents of the corporation are deemed incapable of conspiring among themselves or with the corporation." DKT 90 at p. 15 citing *Dickerson v. Alchua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (a non-RICO case issued prior to the Supreme Court's decision in *Cedric*). However, the intra-corporate conspiracy doctrine does not shield members of a corporation from RICO liability. Courts have rejected that premise in the wake of *Cedric*:

> But there is a limit to how far that distinctness principle goes. To be sure, the *corporation* cannot be both the "person" and the "enterprise." But that merely means the *corporation* cannot be the RICO defendant where it is also the enterprise…. Some Defendants here, though, try to read the principle more broadly, as in a sense incorporating the intra-corporate conspiracy doctrine, under which corporate officers are not separate from the corporation that they serve. Using that doctrine, they argue that corporate officers likewise cannot be the "persons" in a Civil RICO claim where the corporation is the "enterprise," as the officers are not sufficiently distinct from the corporation. But the Supreme Court explicitly rejected that approach.

*Compound Property Mgmt, LLC v. Build Realty, Inc.*, 462 F.Supp.3d 839, 856 (S.D. Ohio 2020).

This Circuit agrees. In *Kirwin v. Price Communications Corp.*, 391 F.3d 1323, 1327 (11th Cir. 2004) the Eleventh Circuit joined the Seventh and Ninth circuits in holding, "[T]he intracorporate conspiracy doctrine cannot be invoked to defeat a §

6

1962(d) claim. Corporations and their agents are distinct entities and, thus, agents may be held liable for their own conspiratorial actions."

Bolick, Smith, Lamberti, and Pence formed an enterprise to steal WAO2 from Grams, using their closely held entity Treis to do so. Unlike large corporations with thousands of employees and attenuated stock distributions, Bolick, Smith, Lamberti, and Pence directly committed the acts necessary to accomplish the enterprise's purpose and profited handsomely thereby. The enterprise used the Treis name to confer a cloak of corporate legitimacy in each individual's interactions with Grams, to convince him to continue to customize WAO2 for them. The enterprise used Treis to steal from Cevon when participants realized Cevon had never acquired WAO2, to sell Cevon's machines to Stronghold in Treis's name, and to misappropriate Cevon's profits to its participants through Treis. In so doing, the individual directors made Treis itself a participant in their enterprise and an actor in the RICO violation.

Defendants unabashedly argue that as each was stealing from the other, they were at cross purposes, and cannot be found to have been participating in one evolving RICO enterprise. While this is an inviting argument, it merely operates to divide the RICO claims among three separate enterprises instead of one. *Pahmer v. Greenberg*, 926 F.Supp. 287, 300 (E.D.N.Y. 1996) ("plaintiffs have alleged the existence of *three* enterprises…it is clear that all were encompassed" in an overarching enterprise). It is virtually impossible for the victim of a theft by multiple

actors, each of whom allegedly defrauded and stole from the other, to know the ins and outs of their conspiracy. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010). Accordingly, a "plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy 'may be inferred from the conduct of the participants." *Id.*

Plaintiff has plausibly alleged that Bolick, Smith, Lambreti, and Pence formed an enterprise scheme to steal WAO2 from Grams and that Treis participated in the scheme. Unlike RICO cases based on misrepresentation claims, the thrust of Plaintiffs claim is not misrepresentation—it is misappropriation. That machines containing WAO2 were sold to Stronghold is not in dispute.

Meanwhile, many acts of misrepresentation are alleged by Grams in the Complaint. Treis faults Plaintiff for not setting forth the allegations with requisite specificity, citing the claims portion rather than the fact section it incorporates. The allegations are precise. For example, Grams alleges that on June 2, 2020, Pence falsely told Grams in a groupchat that Treis could convey large orders for 1500 m30s to convince Grams to begin letting Treis use WAO2 on the machines. Am. Compl. at ¶¶ 70, 73. He alleges that in August of 2020 Pence misrepresented that if Grams cooperated with Treis he and Chain would earn $400,000 in Developer Fees by January of 2021. (Am. Compl. at ¶ 89). And he alleges that in a call on December 8, 2022, during a telephone call, Pence threatened Grams to discourage him from

asserting his ownership rights. (Am. Compl.¶¶ 292—93). Grams quotes emails he sent to Bolick and Smith reminding Treis that he had 100% of the ownership of his firmware on October 15, 2021 and November 15, 2021, weeks before the directors approved the Stronghold sale. (Am. Compl.¶¶ 237-38). Grams quotes Lamberti as issuing urgent performance directives in January 2022, convincing Grams to work round the clock to optimize WAO2 for Treis even after the Stronghold sale. (Am. Compl.¶ 249). Treis and the Individual Directors thefts and misrepresentations are explicitly set forth in detaili throughout the Amended Complaint.

Similarly, Plaintiff has plausibly alleged that Defendant John Chain formed an enterprise with Defendant Chain Enterprises LLC to perpetuate his scheme to misappropriate WAO2. Without Chain Enterprises, Chain would have had a harder time convincing Treis that Grams was a mere employee (if Treis ever actually believed this). Chain and Chain Enterprises then formed Defendant Cevon Technologies, LLC to accomplish the theft through misrepresentation and misappropriation, which smacks of securities fraud, yet another 18 U.S.C. § 1961 offense.

Plaintiff cannot know whether Stronghold asked, challenged, or in any way confirmed Treis's development, authorship, and/or ownership of WAO2. What Plaintiff does know is:

1) starting in November of 2022 Grams repeatedly alerted Stronghold that he was the author and that the firmware had been stolen from him (Am. Compl. at ¶¶ 270-73);

2) Stronghold knew or should have known that Treis had brought a lawsuit in September of 2021 because it had learned it did not own WAO2, months before the Stronghold deal (Am. Compl. at ¶¶ 274-75, 188-89);

3) Stronghold ignored this lawsuit and Grams's assertion of right and continued to use and profit from WAO2 long after it learned the truth; (Am. Compl. at ¶¶ 290, 292, 297-300);

4) Stronghold willfully dismantled WAO2's automatic payment of Grams's Dev Fee to steal monies legally owed to him. *Id.*

These facts are sufficient to infer Stronghold's agreement to join Treis's enterprise. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010) ("plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy 'may be inferred from the conduct of the participants.'").

If these facts are not sufficient to hold Stronghold accountable pursuant to 18 U.S.C. § 1962 (c) they are sufficient to show Stronghold violated 18 U.S.C. § 1962(d), as "A plaintiff can establish a RICO conspiracy in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2)

by showing that the defendant agreed to commit two predicate acts." As discussed, below Treis's enterprise committed at least two predicate acts. Stronghold's conduct in aligning with Treis to defeat Gram's claim of right and to steal his Developer Fees in the face of the Delaware lawsuit in which Treis admits it does not own WAO2 shows Stronghold agreed to the overall objective of the conspiracy—to use and profit from WAO2 even though they did not own it.

**III. Plaintiff has plausibly alleged the Chain Defendants engaged in a pattern of racketeering activity.**

The Chain Defendants protest they cannot be held liable under RICO because they did not commit two predicate acts or, if they did, the acts occurred over too brief a period of time. DKT 63 p. 7-12.

A. <u>The Chain Defendants committed two or more predicate acts.</u>

As observed above, misappropriation is a predicate act. So too is use of electronic communication to commit fraud. Grams has alleged the Chain Defendants formed an enterprise in February of 2020 in which Defendant John Chain resolved to use his entity, Defendant Chain Enterprises, LLC to steal WAO2 by perpetrating a fraud on Grams and Treis. These are essentially the same allegations Treis made against the Chain Defendants in its Delaware lawsuit.

The Chain Defendants relied on telephone calls, text messages, emails, and other electronic communication platforms to effect their fraud, thefts, and misappropriations systematically, and certainly more than twice. (Am. Compl.¶¶ 47,

51, 54, 104-106, 189); Ex. 1 ¶¶ 1-3 Each communication constitutes a predicate act of wire fraud. The Chain Defendants misappropriated Grams's Dev Fees multiple times, each an act of theft. And the Chain Defendants ultimately misappropriated WAO2 itself—selling WAO2 to Treis even though they knew they had no right to do so.

B. <u>Grams has plausibly alleged pattern/continuity.</u>

The Chain Defendants argue their scheme didn't last long enough to satisfy RICO's continuity requirement. As set forth below, Chain's scheme to misappropriate WAO2 and its profits started in February 2020 and continued through 2023.

There is no bright line rule establishing a minimum duration for a RICO scheme, nor is such a requirement explicit in the RICO statute itself. Rather, courts have interpreted the pattern language to suggest some degree of duration is necessary. The Supreme Court observed, "It is reasonable to infer …that Congress intended to take a very flexible approach, and envisaged that a pattern might be demonstrated by reference to a range of different ordering principles or relationsjhips between predicates, within the expansive bounds set." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238 (1989).

The Court guides us that this requirement of "continuity" of misconduct may be both a closed- ("a closed period of repeated conduct") or open-ended concept,

depending on whether there is a threat of continued criminal activity ("open-ended"). *Id.* at 242. In turn, "Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case." *Id.* An example of when the requisite threat of continued activity exists is when there is a threat that the racketeering acts themselves will continue.

In this case, there is a threat of continued criminal activity because no Defendant has acknowledged that Grams is the true author and owner of WAO2, so that each may continue to misappropriate, use, and profit from WAO2 in defiance of Grams's rights. Grams has plausibly alleged the enterprise continues to use and profit from WAO2 (or a program they have pirated from WAO2 and modified to fit the same purpose). (Am. Compl.¶ 302-304). This is a threat of continued racketeering activity sufficient to establish open-ended continuity.

The Chain Defendants argue that their role in any enterprise ended the day Treis found out Grams claims he owns WAO2. Not so. The Chain Defendants never came forward to legitimize Grams's claim of ownership, instead continuing to argue that they had legitimately conveyed WAO2 to Cevon. In so doing, Chain empowered Treis to maintain the ruse Treis had some form of rights to WAO2 through Cevon. For example, Treis's Delaware complaint does not admit that Grams owns WAO2 but rather states that Grams "contends" that he owns WAO2. (Am. Compl.¶ 189(c)). Instead of admitting that Grams is the only person entitled to profit from WAO2 or

13

empowered to license those rights to others, Treis's complaint defames Grams and accuses him of stealing from Treis. (Am. Compl.¶ 190). The Chain Defendants refused to correct the record to protect their own fraudulent counterclaim that Cevon should have received the $7,000,000 proceeds of the Stronghold deal instead of Treis.

Such mischaracterizations on each side were an attempt to perpetrate a fraud upon the court in their electronic filings over state lines. (Am. Compl.¶ 192). The fraud perpetuated Chain's own scheme to steal WAO2 while it also (directly or indirectly) aided and abetted Treis's scheme, enabling Treis to steal WAO2 and sell it to Stronghold.

## CONCLUSION

Plaintiff has plausibly alleged that each Defendant violated RICO. To the extent any claim is insufficiently stated, or better states a violation of subparagraph (d) rather than (c) of 18 U.S.C. § 1962, Plaintiff respectfully requests permission to replead his RICO allegation or that the claim be dismissed without prejudice and with leave to refile if discovery produces additional evidence.

Dated: this 12th day of April, 2024.

                                              Respectfully submitted,

                                              */s/ Carissa V. Sears*
                                              Carissa V. Sears (CO #33980)
                                              The Sears Law Office, LLC
                                              7887 E. Belleview Ave. Suite 1100

Denver, Colorado 80111  
720.412.1172  
***Attorney for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 12th day of April, 2024, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following counsel of record via e-mail:

Joshua J. Jackson  
SAMFORD & DENSON, LLP

Hunter S. Freeman  
KIM LAHEY & KILLOUGH LAW FIRM

Jonathan K. Corley  
Whittelsey & Corley, LLC

Clifton Slaten  
Slaten Law, P.C.

                                                         */s/ Carissa V. Sears*  
                                                         Carissa V. Sears