# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MARK GRAMS,** ) | |
|     **Plaintiff,** ) | |
| ) | Case No. 3:23-cv-00299— |
| ) | RAH—SMD |
| ) | |
| **v.** ) | |
| ) | |
| ) | |
| **TREIS BLOCKCHAIN, LLC,** | |
| *et al.*, | |
|     **Defendants.** | |

## DECLARATION OF MARK GRAMS

I, Mark Grams, swear and affirm as follows:

1. My communications with John Chain were remote as he lived in Colorado and I lived in Alabama. Accordingly, they occurred almost exclusively over the telephone, text, email, and other electronic platforms. Unless otherwise stated in the complaint, the communications noted were exchanged through wire transmission.

2. My communications with Bolick, Pence, Smith, Lamberti, Kim and other Treis agents were remote as they lived in South Carolina and I lived in Alabama. Accordingly, they occurred almost exclusively over the telephone, text, email, and other electronic platforms. Unless otherwise stated in the complaint, the communications noted were exchanged through wire transmission.

3. My communications with Stronghold and its agents were remote as they were in Pennsylvania and I lived in Alabama. Accordingly, they occurred almost exclusively over the telephone, text, email, and other electronic platforms. Unless otherwise stated in the complaint, the communications noted were exchanged through wire transmission.

4. In Summer of 2022, I put Stronghold on notice of the Delaware lawsuit. I believe Treis also referred to the Delaware lawsuit during our teleconference with Stronghold.

**Responsive to the Declaration of Michael Bolick:**

5. My firmware was complete and ready for public use before I ever met or interacted with anyone from Treis and already contained an immersion feature. Immersion was not a goal or focus of mine as the Whatsminer factor had already authored immersion firmware. When we switched from an air to immersion environment my pre-authored immersion firmware worked perfectly. The switch took less than one minute. I had no need for Treis's machines to develop this feature, or any other feature.

6. During introductions throughout the relevant time period I was introduced as "Mark, the firmware developer." I never made any representation to Treis or its agents that I was an employee of Chain Enterprises. Treis never asked me any questions on this topic.

7. I never asked Treis to work as a Beta tester for my firmware.

8. I never agreed Treis could use my firmware without paying either my Developer Fee or for a license.

9. I was never a member or agent of Chain Enterprises.

10. As we were collaborating, the possibility of a joint venture was discussed from time to time. This could have taken many forms, such as licensing agreements. However, I never agreed to any plan wherein my firmware would be owned by anybody but myself.

11. I participated in calls in which the formation of Cevon was loosely contemplated but never solidified. Not once during those calls did I suggest that John Chain or Chain Enterprises owned my firmware—nor was I ever asked. Cevon would have needed rights in WAO2 to pursue its goals and I believed I was included on the calls to hear what Treis could contribute. During the calls Treis misrepresented that it could bring big clients to the table, which was false. During the calls Treis misrepresented that it could provide deals for installations on 1500 machines which was also false. I was later led to understand that while I was called in on a few early meetings the group switched to holding meetings without me and left me out of all their final negotiations completely. I have also learned that

all Treis actually gave Cevon was $100—a ludicrous amount if they actually believed they were buying my firmware, which has been valued in the industry in the seven and eight figures.

12. Later Doug Kim, Treis's corporate counsel, sent me a declaration he had authored on behalf of Treis for my signature. The declaration he sent for me to sign correctly stated that I was never an employee of Chain Enterprises.

13. I had no part in the drafting or enactment of the Cevon deal. My understanding is that in that deal, John Chain agreed to convey all of Chain Enterprises' intellectual property. He may have done so. But the conveyance could not have included WAO2 because neither Chain nor Chain Enterprises ever owned WAO2. I do not know what the deal defined or identified as Chain Enterprises's intellectual property but it did not include my firmware. I do not know what Chain said to Treis, but I did witness Treis being told that I was the developer. I cannot fathom how Treis would think the developer of valuable firmware had no rights in it.

14. I participated in calls throughout my work with Treis. I did not ever convey my rights to my firmware during those calls. From time to time the group discussed ways to work together but nothing materialized for my role or contribution.

15. I was never a representative of Chain Enterprises. I worked with Chain and Treis to customize my firmware for Treis's machines knowing that I would receive my Developer Fee and access to a broader customer/user base. I could not collect anything from Cevon because I owned no membership rights in Cevon or Chain Enterprises. I did receive directives from Treis, as documented throughout my complaint.

16. Privacy and protection of the firmware was always of paramount concern. To protect the firmware, we kept access tight, had discussions supporting the protection of the raw code and discussing security. We told Treis they were not permitted to distribute any installers; only we could perform installations. Treis was instructed that the firmware was special and not public or available anywhere.

17. I never represented Cevon or Chain Enterprises. Vnish told me he wanted to work only with me because I was the firmware developer—Treis and Chain had nothing to offer him. VNish contracted with me as the

    developer of the firmware. I am not aware of Treis, Cevon, or Chain Enterprises ever challenging my authority to enter into this transaction as sole owner of WAO2. If I did not own the software, I believe Treis and/or Cevon would have sued over this transaction. I cannot fathom why Mr. Bolick believes the value of any work I would have performed for VNish to develop the use of my firmware for his machines would be payable to an entity that did not employ me, have a contract with me, or convey any membership rights to me.

18. WAO2 did not destroy any of Treis's miners.

19. Reports from Treis regarding the firmware were positive, not negative.

20. Bitcoin prices dropped in the summer of 2022 impacting profitability.

21. As quoted in my Complaint Treis at all times knew about the Developer Fee which is industry standard. I would never have agreed to let Treis use WAO2 for free collecting all of the profits while I worked for free.

22. I broadly informed everyone in April of 2021 that I was no longer working with Chain.

**Responsive to the Declaration of Brian Lamberti:**

23. As stated in my complaint, during our telephone conversation Lamberti stated that Treis needed the miners to reach 60PH. Lamberti asked if I would get the miners to that speed by tuning them. We discussed my need to access the machines to do so and he stated he would look into it.

**Responsive to the Declaration of Matt Usdin:**

24. I informed Mr. Usdin that my firmware was private custom code and could not be released to the public.

25. I told Mr. Usdin Treis did not have the right to transfer or publish the code to any third parties.

26. I told Mr. Usdin that I believed that blocking my Developer Fee was illegal, violated the DMCA laws and regulations, and asked Stronghold to reimburse me for all blocked fees.

27. Mr. Usdin told me that Stronghold would pay me anything for its use of my firmware.

28. Mr. Usdin told me that Treis represented to Stronghold that Treis owned the firmware.

29. I am not an attorney; Mr. Usdin is.  Mr. Usdin never asked me if the firmware was a "trade secret," did not tell me what the "trade secret" means, and did not use the term at all to my recollection.  I did not ever tell Mr. Usdin that my firmware is not a trade secret.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of April, 2024.

*Mark Grams*
_____
Mark Grams