**IN THE MIDDLE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| MARK GRAMS, | ) |
| An individual Alabama citizen, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:23-CV-299-RAH-SMD |
| | ) |
| TREIS BLOCKCHAIN, LLC,  ET. AL | ) |
| | ) |
|     Defendants. | ) |

---

**DEFENDANTS' RENEWED MOTION TO DISMISS**
**PURSUANT TO RULE 12(b)(6)**

---

## INTRODUCTION

Treis Blockchain, LLC, Cevon Technologies, LLC, Stronghold Digital Mining, LLC, Michael Bolick, David Pence, Senter Smith, and Brian Lamberti (collectively the "Defendants") respectfully request that Counts 2-6, 9-12, and 14-16 of the Amended Complaint [Dkt. 52] be dismissed for failing to state a claim for which relief can be granted.

Despite being styled as a trade secret misappropriation case, the heart of this dispute involves an alleged breach of contract(s) in which Mark Grams ("Plaintiff" or "Grams") agreed to develop and finalize certain firmware that could be used to mine cryptocurrency in exchange for a development fee that would consist of a

percentage of the value of the cryptocurrency mined using the firmware. The Amended Complaint alleges that the contract(s) in question were breached when computers on which the firmware was installed were sold to Defendant Stronghold Digital Mining, LLC.

But even when viewed through the lens of misappropriation, the Amended Complaint alleges that Defendants gained access to the trade secret WAO2 firmware (the "Firmware") through misrepresentations, false inducements and/or concealments designed to avoid paying Plaintiff the contractually agreed upon consideration. According to Plaintiff, the only reason he agreed to develop, finalize and provide Defendants with access to the Firmware was because Defendants promised that Plaintiff would receive a development fee consisting of a percentage of the value of the cryptocurrency mined using the Firmware. Plaintiff alleges that Defendants misappropriated the Firmware when they refused to pay him the development fee and instead sold mining machines running the Firmware to Stronghold Digital Mining, LLC under the false pretense that Defendants (and not Grams) owned the Firmware.

To safeguard against a finding that Plaintiff's failure to safeguard the Firmware precludes trade secret protection, the Amended Complaint seeks to hedge its bets by alleging several superfluous causes of action, all of which are preempted by the Alabama Trade Secrets Act and/or are inapplicable to the facts alleged.

Defendants, therefore, seek to dismiss each of the claims that provide a theory of relief for misappropriation of a trade secret so that the real dispute (as alleged in Counts 7-8 and 17-18) may be resolved.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Gulf S. Communications, Inc. v. Woof, Inc.*, 2021 WL 2405199, at *1 (M.D. Ala. June 11, 2021) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) (*quoting Ashcroft*, 556 U.S. at 678). The Eleventh Circuit requires "more than labels and conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to survive a Rule 12(b)(6) motion. Further, where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citations omitted).

Ordinarily, the district court should freely give leave to amend a complaint when justice so requires. FRCP 15(a)(2). However, "where a more carefully drafted complaint could not state a claim and amendment would be futile, dismissal with prejudice is proper." *Licht v. Watson*, 567 Fed. Appx. 689, 694 (11th Cir. 2014);

*Cichowski v. Totten*, 2024 U.S. App. LEXIS 11720, at *6-7 (11th Cir. May 15, 2024) (unpublished). "[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal'." *Abbott v. Mega Trucking, LLC*, 2023 U.S. Dist. LEXIS 37646, at *1 (M.D. Ala. Mar. 7, 2023) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citation and internal quotations marks omitted)).

In this case, Plaintiff has previously amended its complaint in the face of a Rule 12(b)(6) motion to dismiss. The Amended Complaint is *93 pages long and contains 577 paragraphs of allegations*. A district court "does not abuse its discretion by denying leave to amend as futile where a plaintiff fails to identify any new facts that might form the basis for stating a claim successfully." *Grant v. Sheriff of Okeechobee Cnty.*, 2023 U.S. App. LEXIS 5590, at *10 (11th Cir. Mar. 9, 2023) (citing *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326-27 (11th Cir. 2001)). Suffice it to say that if the Amended Complaint was unable to allege any new facts upon which relief can be granted, it is unlikely that a second amendment will be able to do so. Accordingly, dismissal of the claims at issue is both appropriate and requested.

## ANALYSIS

I. **Plaintiff's Trade Secret Misappropriation Claims Fail Due to A Total Lack of Reasonable Secrecy Efforts.**

Whether under the Defend Trade Secrets Act or the Alabama Trade Secrets Act, it is firmly established that to qualify for trade secret protection, the information must be subject to reasonable secrecy efforts. *See Resnick v. City of Troy,* 2019 U.S. Dist. LEXIS 79881, *15 (M.D. Ala. May 13, 2019) (outlining elements of DTSA) and *Ala. Code* 8-27-2(1)(e) (outlining elements of ATSA). Because Plaintiff did not take secrecy measures that were reasonable under the circumstances, there is no trade secret that could have been misappropriated. Therefore, each of the claims alleging misappropriation must be dismissed. As will be discussed below, Plaintiff's tort claims must be dismissed as being preempted by the ATSA because they provide "a theory of recovery for the misappropriation of a trade secret." *Arkema, Inc. v. Emerson Process Mgmt., LLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019).

A. **Counts 2-3 For Violation of the Defend Trade Secrets Act Should Be Dismissed because the Alleged Secrecy Measures Are Insufficient.**

Counts 2-3 allege a claim for "Willful and Wanton Misappropriation Pursuant to 18 U.S.C. § 1836," which is also known as the Defend Trade Secrets Act. Because Plaintiff has not alleged any reasonable measures to protect the secrecy of the Firmware, Counts 2-3 should be dismissed.

"To plead a violation of the DTSA, a plaintiff must allege that he '(i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff, (b) *for which the plaintiff took reasonable measures to keep secret*, and (ii) the defendant used and/or disclosed that information despite (iii) a duty to maintain its secrecy'." *Resnick v. City of Troy,* 2019 U.S. Dist. LEXIS 79881, *15 (M.D. Ala. May 13, 2019) (*quoting Trinity Graphic, USA, Inc.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla 2018)) (emphasis added). "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1222 (N.D. Ala. 2021) (citations omitted); *Am. Red Cross v. Palm Beach Blood Bank, Inc.* 143 F.3d 1407, 1410 (11th Cir. 1998). "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *Id.* (citations omitted). However, a mere expectation of secrecy is insufficient. *See Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003) (dismissing a trade secret claim because the complaint stated only that the parties had an "expectation that [the idea] would remain confidential").

The reasonableness of the alleged secrecy efforts must be judged in light of the fact that a prior version of the Firmware had been stolen due to Grams' past failures to take reasonable secrecy efforts. *See Compl.* [Dkt. 1]*,* ¶¶ 54-61. As

explained in the original Complaint, Grams allowed Chain to market the first version of the Firmware but because neither Grams nor Chain devised a plan on how to protect the Firmware from misappropriation, one of the potential customers with whom Chain was negotiating stole it. *Id.* at ¶¶ 54-55. Therefore, Grams was forced to develop a second version of the Firmware[1]. *Id.* at ¶¶ 60-61.  This prior experience placed Grams on notice of how easily the Firmware could be misappropriated and the measures that were required to protect it.  Interestingly, Grams employed the exact same marketing methods that resulted in the prior theft without devising a plan for protecting his Firmware moving forward.

While the Amended Complaint alleges that Grams took reasonable secrecy efforts to protect the Firmware *while it was in his possession*, the Amended Complaint also makes clear that Grams failed *yet again* to take *any* reasonable secrecy efforts to protect the Firmware when he allowed it to leave his possession.

Grams' alleged secrecy efforts fall well short of what is legally required for several reasons.  First, Grams continued allowing Chain to take possession of and market the Firmware without requiring either Chain or the potential buyers to enter a non-disclosure agreement.

---

[1] The Amended Complaint fails to describe what changes were made when developing the second version of the Firmware at issue in the Amended Complaint, which raises questions as to whether the Firmware even "derives independent economic value… from not being generally known", as is required to qualify for protection. *See* 18 U.S.C. § 1839(3).

Second, on two separate occasions, Grams allowed third parties (VNish and a computer fabricator) to access and/or use the Firmware without any obligation of secrecy or nonuse being in place.

Third, Grams allowed Treis to take possession of, access and use the Firmware, all without ever informing Treis that the Firmware was a trade secret or obligating Treis to maintain its confidentiality, through a non-disclosure agreement or otherwise.

Fourth, the only secrecy efforts came after Treis took possession of the Firmware. Those efforts were too little, too late as Grams requested that only minimal safety measures be taken, and he repeatedly failed to verify that Treis had implemented such measures (which it had not). When learning that such measures had not been implemented, Grams did nothing more than repeat his request for the implementation of the safety measures. Because Grams has not met his burden of demonstrating that he has taken reasonable steps to protect the Firmware, Counts 2-3 should be dismissed. *See Rotor Blade*, 545 F. Supp. 3d at 1222.

### 1. Grams Failed to Control the Manner in Which Chain Could Disclose the Firmware to Third Parties.

Grams' failure to safeguard his Firmware began well before he ever met Treis. As clearly stated in the original Complaint, Grams allowed Chain to handle negotiations for the sale of the first version of the Firmware. *See* Dkt. 1, ¶¶ 54-55. In doing so, however, Grams never entered a contract with Chain governing the

manner in which Chain could disclose the Firmware, including the secrecy measures that needed to be in place prior to its disclosure. *Id.* This failure resulted in a potential customer stealing the Firmware and misappropriating the associated trade secrets. *Id.* at ¶ 55-58.

The Amended Complaint makes clear that despite the prior misappropriation, Grams allowed Chain to continue to handle the negotiations for the sale of the Firmware. *See Am. Compl.*, ¶ 51-53. Grams *again* failed to put any safeguards in place that would prevent disclosure of the Firmware without a confidentiality agreement first being reached with the potential customers (e.g., Treis and VNish Mining Software Company). Failure to ensure such an agreement is in place prior to disclosure is by law an unreasonable secrecy effort. *See Physiotherapy Assocs., v. ATI Holdings, LLC*, 592 F Supp. 3d 1032, 1034-35 (N.D. Ala. 2022) ("confidentiality agreements exist in nearly every case where Alabama courts have found reasonable secrecy efforts, and the lack of such agreements is a common thread in cases finding the opposite"), *appeal dismissed,* 2022 WL 2708913 (N.D. Ala. May 9, 2022). Failure to require such an agreement *after having just had the first version of the Firmware stolen* is an extremely unreasonable secrecy effort. But as discussed below, Grams allowed Chain to provide Treis with a copy of the Firmware with nothing more than an unspoken expectation of confidentiality. As a

matter of law, a mere expectation of confidentiality is insufficient. *See Greenberg*, 264 F.Supp.2d at 1077.

**2. Grams Took No Precautions to Protect the Firmware from Use or Disclosure by VNish or a Third-Party Computer Fabricator.**

Even if Grams could prove that he took reasonable secrecy efforts when disclosing the Firmware to Treis, his complete failure to take *any* secrecy efforts prior to disclosure of the Firmware to VNish and/or a third-party computer fabricator hired by Treis defeats his claim for trade secret protection.  Grams allowed another potential buyer (VNish) to *install and use* a copy of the Firmware to see if it was interested in purchasing it. *Am. Compl.* at ¶ 183-185. There is no allegation that Grams required VNish to agree to restrictions that would protect the confidentiality of the alleged trade secrets. *Id.* at ¶ 184. Failure to obtain a confidentiality agreement after having had a prior version of the Firmware stolen approximately one year prior defies logic and falls well short of the legally required level of secrecy efforts.

But that is not the only time that Grams allowed third party access with no confidentiality obligations in place.  Grams was aware that computers running the Firmware were provided to Treis' computer fabricator so that the fabricator could implement the cooling modification on those machines.  *See Am. Compl.* ¶ 129-134. Grams did not object to the fabricator's access to such machines or take any precautions to ensure that the fabricator would maintain the confidentiality of the alleged trade secrets associated with the Firmware. *Id.* Instead, Grams provided the

fabricator with information about how to access and modify the machines to ensure that they remained cool while running the Firmware. *Id.* at 134.

The law is very clear that "[d]isclosing the information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." *Core Labs. LP v. AMSPEC*, 2018 U.S. Dist. LEXIS 228565, *52 (S.D. Ala. May 10, 2018) (*quoting M.C. Dean, Inc. v. City of Miami Beach*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016)). The lack of a confidentiality agreement is a "common thread in cases" finding a lack of reasonable secrecy efforts, *Physiotherapy Assocs*, 592 F. Supp. 3d at 1034-35, and a mere expectation of confidentiality is insufficient. *See Greenberg*, 264 F. Supp. 2d at 1077. Before Grams ever met Treis, he had already provided Chain and VNish complete access to the Firmware without any obligation of confidentiality being in place or otherwise memorialized. To the extent the Firmware *ever* qualified as a trade secret, its status as such was destroyed before Treis was ever involved.

Even if the Court finds that Plaintiff took reasonable secrecy efforts to protect the Firmware *from Defendants*, his unrestricted disclosure *to Chain, VNish and/or the third-party fabricator* destroys his ability to claim the Firmware is a trade secret.

### 3. Grams' Alleged Secrecy Efforts with Treis Were Both Untimely and Insufficient.

Grams allowed Chain to provide the Firmware to Treis, even though Treis was not obligated to confidentiality by a non-disclosure agreement. Treis is the *fourth*

party to whom the Firmware was provided without a confidentiality agreement. The only discussion of a nondisclosure agreement occurring prior to Grams' delivery of the Firmware to Treis occurred in May 2020, when Defendant *John Chain* ("Chain") told Treis that *he* takes security of information seriously and *offered* to enter into a nondisclosure agreement with Treis. *Am. Compl.* ¶ 79. The Amended Complaint makes no mention of such an agreement being reached because it was not. According to Grams, the only party who even requested that certain information be treated as confidential was *Treis*. During the initial negotiations, *Treis requested Chain* to maintain the confidence of a pricing matrix that Treis disclosed to Chain. *Id.* at ¶ 80. At no point in time did Grams, Chain or CEL ever request that any of the information provided by or on behalf of Grams, including the Firmware, be treated as confidential, much less require Treis enter an agreement to that effect.[2]

*After Treis installed the Firmware on its computers*, Grams asked that the computers be password protected and stored in a secure area. *See* Am. Compl. ¶ 203. These facts are substantially similar to, and in some ways more egregious, than those involved in *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 U.S. Dist. LEXIS 231881 (S.D. Fla. Dec. 27, 2022), which ultimately dismissed the plaintiff's trade secrets claim for failure to take reasonable secrecy efforts.

---

[2] Plaintiff makes a single conclusory allegation that "Treis agreed to protect the confidentiality of WAO2" without explaining when or how such an agreement was reached. *See Am. Compl.* ¶ 429. The quoted communications do not support the conclusion that an agreement was reached.

In the *Surfaces* case, the trade secret owner entered a business relationship with a broker relating to the sale and promotion of the trade secret technology. *Id.* at *1. While the owner and the broker executed a confidentiality agreement, neither the owner nor the broker entered into such an agreement with the potential customer who received a Demo Kit containing the trade secrets. The potential customer reverse engineered the trade secrets, causing the trade secret owner to sue both the potential customer and the broker for violation of the DTSA and the Florida Uniform Trade Secrets Act. *Id.* at *2-5.

The Court dismissed the plaintiff's trade secrets claims (with prejudice) for failure to take reasonable steps to safeguard its alleged trade secrets, reasoning that even though the trade secret owner had a non-disclosure agreement with the broker, the potential customer defendants "were not a party to the NDA; thus, there can be no reasonable expectation that Defendants were bound by the NDA, let alone needed to circumvent the NDA." *Id*. at *14. The *Surfaces* court went on to note that "[w]hile Plaintiff was aware that [the potential customer] Defendants had possession of the Demo Kit, the only step Plaintiff took to protect its trade secrets was to ask Defendants to return the Demo Kit" after potential customer Defendants stated that they were putting the sales negotiations on hold. *Id.* at *15.

Like the plaintiff in *Surfaces*, Grams provided the Firmware to Chain so that he could market it to potential customers. But unlike the *Surfaces* plaintiff, Grams

failed to have Chain execute a confidentiality agreement. With Grams' knowledge, Chain provided a copy of the Firmware to Treis; and he did so without ever obtaining a non-disclosure agreement. When he learned that Treis was not implementing the requested security measures, he did not request that the Firmware be returned; he simply reiterated his request for safety measures with no further follow up. Grams attempts to overcome this lack of security measures by alleging that the "group relied on trust and oral or informal instructions." *See Am. Compl.*, ¶ 80. However, Grams' argument fails both factually and legally: prior to or at the time of disclosure, the only party who requested that its information be kept confidential was *Treis*. *Id.* at ¶ 79(b). The Amended Complaint makes no mention of a request that Treis (or any of the other Defendants) refrain from disclosing the Firmware to third parties. As discussed above, Grams knew that Treis provided the Firmware to a computer fabricator and did not attempt to object or otherwise limit its disclosure. It is hard to understand the justification for Grams' "trust" when there were no requests or instructions that were provided to Treis prior to its possession of the Firmware.

As a legal matter, disclosing confidential information with a mere "expectation that [the idea] would remain confidential" is insufficient to maintain the trade secret status of the information regardless of the plaintiff's motives. *Surfaces*, 2022 U.S. Dist. LEXIS 231881, 15 (dismissing trade secret claim where "Plaintiff has not pled that it took any steps to safeguard its trade secrets as between

itself and Defendants. Plaintiff points instead to its motives"). The fact remains that "[d]isclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." *In re Maxxim Med. Grp., Inc.*, 434 B. R. 660, 691 (Bankr. M.D. Fla. 2010).

Grams' after-the-fact request that the computers be password protected and stored in a secure location also fails to establish that he took reasonable security measures for several reasons. First, without a confidentiality agreement in place, such a request constitutes only a minimal secrecy effort. *Temurian v. Piccolo*, 2019 WL 1763022, at *11 (S.D. Fla. Apr. 19, 2019) (dismissing trade secrets claim where password-protecting computer network and limiting employee access were undermined by lack of a confidentiality agreement), *reh'g denied,* 2019 WL 2491781 (S.D. Fla. June 14, 2019). Even written agreements are not enough where the "agreement made no reference to trade secrets or confidential information" *Physiotherapy*, 592 F Supp. 3d at 1040.  Restricting access through computer passwords is merely a "normal business practice in any business." *Id.* (*quoting Maxpower Corp. v. Abraham*, 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008). The court, therefore, explained that "[i]f a basic computer-login password were enough, then every document stored on a company device would potentially be protectible." *Id.* (*quoting Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 397 (D. Minn. 2020)).

Second, such protection measures were meant to prevent parties *other than Treis* from accessing the Firmware. Grams knew Treis would be accessing the Firmware and did nothing to protect it from *Treis'* unauthorized use or disclosure.

### 4. Grams Failed to Verify if Treis Took Measures to Protect the Firmware

Even if Grams' insistence that the computers be securely stored and password protected could be sufficiently reasonable, such measures could only be reasonable if they were actually implemented. But the Amended Complaint admits that Grams failed to inspect the locations of the computers or to take other actions to ensure that the security measures had been implemented. Such a failure is unreasonable, especially considering Grams' prior experience in having his alleged trade secrets misappropriated during the prior year. *See Compl.* ¶ 55.

From at least as early as the summer of 2020, Grams knew that computers running the Firmware were located in South Carolina. *Am. Compl.* at ¶ 84. Despite this knowledge, Grams never made any efforts to inspect or otherwise ensure that any of Grams' previously requested security measures had been put in place for those computers.

Grams also knew that most of the computers on which the Firmware was installed were in Pennsylvania. *Id.* at ¶ 199. Grams failed to make a site inspection to ensure that the requested security measures were in place for such computers until September 2021, when, as requested, Grams visited the Pennsylvania site to work

on the Firmware. Upon learning that the Pennsylvania computers had not been secured such that "anyone could simply walk up to one of the containers… and steal Grams's WAO2," Grams "alerted Lamberti." *Id.* at ¶ 219-220. Curiously, despite the alleged failure by Treis to comply with Grams' prior security request, "Grams trusted Lamberti's reassurances" that the requested security measures would now be put in place. *Id.* at ¶ 226. The Amended Complaint makes no mention of any additional inspections or other efforts taken by Grams to verify that reasonable security measures had been put in place. Grams admits that Treis did not install cameras as allegedly requested by Grams. *Id.* at ¶ 227.

Tellingly, Counts 2 and 3 *never allege* that Grams took reasonable secrecy efforts to protect the Firmware or the alleged trade secrets associated with that Firmware. *Id.* at ¶ 326-358. The only allegations of secrecy efforts relate to those taken by Grams *while the Firmware is in his possession*. Grams failed to take secrecy efforts when the Firmware was most vulnerable (e.g., in the possession of third parties). Accordingly, his claim for trade secret misappropriation under the DTSA should be dismissed with prejudice.

**B.    Plaintiff's Claims Under the Alabama Trade Secrets Act (Counts 14-16) Should be Dismissed against Defendants for Failure to take Reasonable Secrecy Efforts.**

The Alabama Trade Secrets Act (ATSA) "is modeled after and closely parallels the Uniform Trade Secrets Act," *Gulf*, 2021 WL 2405199, at *2, and "is

nearly identical to that in the DTSA." *Rotor Blade, LLC v. Signature Util. Servs.*, 545 F. Supp. 3d 1202, 1221 (N.D. Ala. 2021) (internal quotation omitted). Under the ATSA, information qualifies as a "trade secret" only if in relevant part, it "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Ala. Code* 8-27-2(1)(e).[3]   Moreover, "the burden is on the party asserting trade secret protection to show that reasonable steps were taken to protect secrecy. *Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) (citing comment to *Ala. Code* § 8-27-2). For the reasons discussed above, Plaintiff's claims for misappropriation under the ATSA should also be dismissed with prejudice.

Plaintiff's conspiracy claim similarly fails because "a conspiracy itself furnishes no cause of action… If the underlying cause of action is not viable, the conspiracy claim must also fail." *Allied Supply*, 585 So. 2d at 36.

### C. Conspiracy to Commit Theft of Trade Secrets Should be Dismissed Because There is No Private Right of Action Pursuant to 18 U.S.C. § 1832 and Because There is No Trade Secret to Steal.

Plaintiff's claim for "Conspiracy to Commit Theft or Trade Secrets in Violation of 18 U.S.C. § 1832(A)(5)," should be dismissed because Section 1832 is

---

[3] The ATSA also requires that the information is not generally known and cannot be readily ascertained or derived from a publicly available source. *Id.* subsections (c)-(d). The fact that the first version of the Firmware is publicly known calls into question whether the second version at issue could ever qualify as a trade secret. There are no allegations explaining the nature of changes between the two versions and whether those changes would be obvious or readily ascertainable from the first version.

a criminal statute and does not provide a private right of action. *See Smith v. JP Morgan Chase,* 837 Fed. Appx. 769, 769 (11th Cir. Feb. 24, 2021) ("criminal statutes do not provide for private civil causes of action, so it follows that Smith's Title 18 allegations are also without merit because those criminal statutes do not provide for private causes of action") (unpublished)[4]. "Section 1832 is a criminal statute that establishes a crime and specifies punishment." *Vest Safety Med. Servs. v. Arbor Envtl., LLC*, 2020 WL 4003642, at *3 (S.D. Tex. Jul. 15, 2020); 18 U.S.C. § 1832(a)(5) (punishment is fine, imprisonment, or both); *Zegato Travel Solutions, LLC v. Bailey*, 2014 WL 7365807, at *2 (D. Md. Dec. 22, 2014) (18 U.S.C. § 1832 "is the federal criminal statute for the theft of trade secrets").

"In the Economic Espionage Act of 1996, Congress criminalized the theft of trade secrets, as well as attempts and conspiracies to steal trade secrets. 18 U.S.C. § 1832(a). This criminal provision 'does not provide for a private right of action to redress the trade secret thefts that it proscribes.'" *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021) (*quoting Steves and Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 841 (E.D. Va. 2017)). *See also Stevens and Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 840-43 (E.D. Va. 2017) (holding that a civil plaintiff could not bring a claim for conspiracy to violate the DTSA because Congress did not expressly provide the civil cause of action);

---

[4] Fed. R. App. P. 32.1(a) (permitting citations to unpublished opinions from January 1, 2007 on).

*Power*, 2021 WL 3856459; *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash. 2021) ("the weight of authority tips against the viability of conspiracy claims based on the misappropriation of trade secrets under the DTSA"); and *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (agreeing that 18 U.S.C. § 1832(a)(5), which criminalizes conspiracy to violate the DTSA, does not provide a private right of action). Because no private right of action and/or private remedy exists under 18 U.S.C. § 1832, Plaintiff's claim for conspiracy under this statute must be dismissed.

Even if Plaintiff could sue under this statute, it would first be required to prove the existence of a trade secret that could be stolen, and if the underlying cause of action fails, the conspiracy theory must also fail. *Bell Aero. Servs. v. U.S. Aero Servs*., 690 F. Supp. 2d 1267, 1280-1281 (MD Ala March 5, 2010) (applying this principal to both state and federal trade secret theft conspiracy claims). For the reasons described above, no such trade secret exists.

## II. Plaintiff's Claims for Conversion, Unjust Enrichment, Slander and Fraud are Preempted by the ATSA and Should be Dismissed for Failure to State a Claim.

Plaintiff's claims for Conversion (Count 12), Unjust Enrichment (Count 6), Slander (Count 10) and Fraud (Count 9) must be dismissed because they are premised on the same facts as Plaintiff's Misappropriation of Trade Secret claims and are thus preempted by the ATSA. Plaintiff's claims for conversion and unjust

enrichment allege that Defendants unjustly enriched themselves by converting the trade secret Firmware to their own while Plaintiff's claims for fraud and slander seek to recover for the mechanisms used by Defendants to accomplish and cover up the alleged misappropriation.

The ATSA preempts any tort claim that "provides a theory of recovery for the misappropriation of a trade secret." *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019). This preemption applies when the tort claim is based on the same or similar facts giving rise to a claim under the ATSA. *See Gulf*, 2021 U.S. Dist. LEXIS 109963, at *13-22; and *Arkema*, 413 F. Supp. 3d at 1194. *See also Physiotherapy Assocs., Inc. v. Ati Holdings, LLC,* 592 F. Supp. 3d 1032, 1044 (N.D. Ala. 2022). Under this standard, preemption is not avoided simply because the non-trade secret claims involve facts that "are not identical to a trade secret claim" or "require additional elements of proof." *Gulf*, 2021 U.S. Dist. LEXIS 109963, at *17-18. "The issue is whether the tort claim is an attempt to recover for wrongful appropriation of the same commercially valuable item as the commercially valuable trade secret." *Arkema*, 413 F.Supp.3d at 1195. As such, a plaintiff cannot pursue both statutory and common law theories of recovery for a defendant's alleged "misappropriation of 'trade secrets' or confidential documents." *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991) (interior citations and quotations omitted).

This preemption continues regardless of whether the material converted qualifies as a trade secret. *See Allied Supply Co.,* 585 So. 2d 33, 37 (Ala. 1991) (affirming the trial court's finding that the documents were not trade secrets for failure to maintain reasonable secrecy but finding that the ATSA preempted the plaintiff's claims regarding the same, non-trade secret information). "Following the reasoning of *Allied Supply*, at least three federal courts in Alabama have found that "preemption under the ATSA is not dependent on whether the misappropriated information constitutes a trade secret." *Physiotherapy Assocs.*, 592 F. Supp. 3d at 1047 (citing *Rotor Blade, LLC*, 545 F. Supp. 3d 1202; *Parker v. Petrovics*, No. 2:19-cv-699-RDP, 2020 U.S. Dist. LEXIS 123029, (N.D. Ala. July 14, 2020) and *Gulf South Communs.*, 2021 U.S. Dist. LEXIS 1099630).

## A.    Plaintiff's Claim That His Trade Secret Was Converted is Preempted By the ATSA.

Alabama courts have uniformly held that "a misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA and not under the common law theory of conversion." *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019). *See also Parker v. Petrovics*, 2020 U.S. Dist. LEXIS 123029, at *29-31 (N.D. Ala. July 14, 2020) (finding that "Plaintiff's common law conversion claim is preempted by the ATSA" because the conversion claim was "based on the act of misappropriating the trade secret information") and *Gulf*, 2021 U.S. Dist. LEXIS

109963, *22 ("if the ATSA does not provide a remedy because the information at issue does not rise to the level of a trade secret, then the preemptive scope of the ATSA…will not allow a conversion or trespass to chattels claim arising from the same facts).

Here, Plaintiff's conversion claim is based on allegations that Defendants "have converted property legally belonging to Plaintiff" and that they "took and converted Plaintiff's property to their own use." (Am. Compl. ¶ 481 & 483). The only "property" of Plaintiff's at issue in this matter—and thus the only property possible of having been "converted" by any of the Defendants—is the Firmware, the purported trade secret. Plaintiff even refers to the "WAO2 intellectual property" as being the "property" at issue. *Id.* at ¶ 374 (alleging that Defendants "concocted a scheme to … obscure ownership of the WAO2 intellectual property, and to hold WAO2 out as their owner property"). Defendant further states that "WAO2 contains numerous trade secrets…" *Id.* at ¶ 329 & 508. Accordingly, Plaintiff's conversion claim can only be read as being premised on and/or seeking recovery for Defendants' misappropriation of Plaintiff's purported trade secret. Count 12 must, therefore, be dismissed as being preempted by the ATSA.

**B.**   **Plaintiff's Claim That Defendants Were Unjustly Enriched Through Their Use and Sale of the Trade Secret Is Preempted by The ATSA.**

Plaintiff's Unjust Enrichment claim is a thinly veiled attempt to recover damages for trade secret misappropriation and is therefore preempted by the ATSA. *Gulf*, 2021 U.S. Dist. LEXIS 109963, *20 ("the unjust enrichment claim is preempted by the ATSA").   See also *Madison Oslin, Inc.*, 2012 U.S. Dist. LEXIS 142082, 2012 WL 4730877, *28 (N.D. Ala. Sept. 30, 2012) (finding unjust enrichment claim that "defendants 'have been unjustly enriched at the expense of Plaintiffs as a result' of the misappropriation" is preempted because "the underlying facts are 'essentially the same' as those pled for relief under the ATSA").

Here, as in *Madison Oslin*, the facts underlying Plaintiff's Unjust Enrichment claim are "essentially the same" as those pled for relief under Plaintiff's Trade Secret claims. In fact, Plaintiff's allegations conflate his Trade Secret of Counts 2 and 14 claims with his claim for Unjust Enrichment of Count 6, when he alleges the following:

- Trade Secret Counts 1-4 and 13-16: Plaintiff's "wherefore" clauses demand "damages for any **unjust enrichment caused by the misappropriation of the trade secret**" (Am. Compl. at ¶ 325, 343, 358, 367, 504, 524, 540 and 554); and

- Trade Secret Counts 1-3 and 13-15: Defendants "were **unjustly enriched through their misappropriation of WAO2**." (Am, Compl. at ¶ 324, 340, 357, 503, 522, and 539).

Throughout the Amended Complaint, Plaintiff's allegations demonstrate that his Unjust Enrichment claim is essentially the same as his Trade Secret claims. Plaintiff specifically alleges that:

- "Defendants Chain and CEL were unjustly enriched through their misappropriation." Am. Compl., ¶ 324 & 503.
- "Defendants were unjustly enriched through their misappropriation of WAO2." *Id.* at ¶ 340 & 522.
- "Stronghold was unjustly enriched through their misappropriation of WAO2 because the machines they purchased were able to mine cryptocurrency far faster and more efficiently than machines without WAO2. *Id.* at ¶ 357 & 539."

As shown below, Plaintiff alleges the same conduct as giving rise to both trade secret misappropriation and unjust enrichment (the use and sale of the Firmware) and seeks the same relief for both causes of action (compensation via the Dev Fee).

| **Count 2**<br>**Misappropriation of**<br>**Trade Secrets** | **Count 14**<br>**Misappropriation of**<br>**Trade Secrets** | **Count 6**<br>**Unjust Enrichment** |
|---|---|---|
| Defendants "knowingly **delivered, sent, or conveyed** WAO2 and its Trade Secrets to Stronghold and/or other third parties **without authorization.**"<br><br>Defendants "**sold machines** with Plaintiff's unencrypted firmware [to] Stronghold and/or | "Plaintiff **created and owns** the WAO2 Source Code", and<br><br>"Defendants did not create WAO2 but **used** the code optimization to mine cryptocurrency".<br><br>Am. Compl. ¶¶ 507 and 514, emphasis added. | "Treis **sold the machines** enhanced by WAO2 [to Stronghold] for several million dollars".<br><br>Am. Compl. ¶ 411, emphasis added. |

| | | |
|---|---|---|
| other third parties **without authorization from Plaintiff**." <br><br> Am. Compl. ¶ 335-336 & 517-18, emphasis added. | | |
| Defendants "acted with an intent to economically benefit themselves **while depriving Grams of compensation for his intellectual property**. <br><br> Am. Compl. ¶338 & 520. | "Plaintiff would be paid a Dev Fee for his development of WAO2" <br><br> Defendants "**intentionally blocked Plaintiff's Dev Fee**", and <br><br> "**refused to compensate Plaintiff**". <br><br> Am. Compl. ¶¶ 515-16 and 519, emphasis added. | Defendants "received hundreds of hours of Plaintiff's work **without compensating** him for same". <br><br> Am. Compl. ¶ 410, emphasis added. |
| "Plaintiff sustained actual losses **by the misappropriation of WAO2** including but not limited to the decimation of its value through public dissemination". <br><br> "Plaintiff suffered damages in the form of **lost income and potential income from his Dev Fee**." <br><br> Am. Compl. ¶ 341 -42 and 523, emphasis added. | "Plaintiff sustained actual losses **by the misappropriation of WAO2** including but not limited to the decimation of its value through public dissemination". <br><br> "Plaintiff suffered damages in the form of **lost income and potential income from his Dev Fee**." <br><br> Am. Compl. ¶ 521-23, emphasis added. | "**Without Plaintiff's code and optimization work**, Treis would not have been able to sell the machines, as they would not have functioned as the [sales] contract [with Stronghold] required." <br><br> Am. Compl. ¶ 412, emphasis added. |

Plaintiff's Unjust Enrichment claim (Count 6) is preempted by the ATSA and must be dismissed because it (a) "provides a theory of recovery for the misappropriation of a trade secret" and (b) alleges facts that are "essentially the same" as those supporting his Trade Secrets claims (Counts 1-4 and 13-16).

### C.    Plaintiff's Claim for Fraud Is Preempted Because According to Plaintiff, That Is the Improper Means Used to Misappropriate the Firmware.

The ATSA specifically defines "improper means" for misappropriation as including "misrepresentation," "inducement of a breach of confidence" and "other deliberate acts taken for the specific purpose of gaining access to the information..." *Ala. Code* § 8-27-2(2). Claims of Fraud are preempted by the ATSA when "the purpose of Defendants' misrepresentations was to persuade Plaintiffs to share their novel idea, trade secrets and/or confidential information" as those "underlying facts are 'essentially the same' as those pled for relief under the ATSA." *Madison Oslin*, 2012 U.S. Dist. LEXIS 142082, *29.

The Amended Complaint repeatedly and clearly alleges that Defendants accomplished the misappropriation through a series of fraudulent misrepresentations made for the purpose of inducing Plaintiff to provide Defendants access to his trade secrets (i.e., the Firmware / WAO2).

- "Defendants have conducted their affairs through a pattern of racketeering activity, *including repetitive and continuous fraud, misrepresentation*, and theft designed *to take the economic benefit associated with WAO2 and its*

*trade secrets* for themselves, without compensating the developer, Plaintiff." *Am. Compl.* at ¶ 372.

- "Pence *falsely stated* Treis had ordered 1500 machines solely *to induce Grams to agree to let Treis start using his firmware*." *Id.* at ¶ 73.

- "Defendants *continued to perpetrate* frauds on both Stronghold and Plaintiff *by misappropriating the firmware* and misrepresenting its true ownership." *Id.* at ¶ 398.

- "*Grams believed* he, Treis, and its membership were engaged in a joint effort to ensure *they would all collectively profit* from Grams's customization of WAO2 for Treis's machines." *Id.* at ¶ 449.

- "In April of 2021, *Treis and its directors misrepresented to Grams that they would pay him his Dev Fee*, would not disseminate his code, would protect his code, and they would not sell any machine containing his code." *Id.* at ¶ 442.

- "Treis's directors *falsely represented* to Grams that they would not sell machines containing WAO2." *Id.* at ¶ 451.

- "Defendants… *fraudulently induced Plaintiff* to perform further work [on the Firmware] to achieve speeds demanded by Stronghold, *all while intending to sell Plaintiff's work without compensating him*…. Plaintiff was not aware that Defendants… were planning on illegally selling WAO2, and circumventing the Dev Fee." *Id.* at ¶ 397.

- "Defendants… *falsely told* Defendant Stronghold that they owned the right to sell the machines with WAO Installed." *Id.* at ¶ 396.

- Defendants "*falsely represented* to third party buyers that Treis had the right to sell Whatsminer machines optimized by WAO2." *Id.* at ¶ 309.

The Amended Complaint further alleges that Defendants made misrepresentations to hide and/or prolong the misappropriation.

- "Defendants… *willfully and maliciously misrepresented to Plaintiff* that WAO2 had been from all of their machines." *Am. Compl*. at ¶ 374.

- "Even after learning that Plaintiff is the rightful owner of WAO2, Defendant *Stronghold willfully and maliciously misrepresented* to Plaintiff that WAO had been removed from all of its machines." *Id.* at ¶ 356.

- On or about January 15, 2022, Treis, through *Lamberti, misrepresented to Grams*: That they did not know why Grams's access was blocked;  That they would "fix" the blockage; [and] That Grams should keep customizing WAO2 for Treis."  *Id.* at ¶ 443-46.

Because Plaintiff alleges and relies upon Defendants' fraudulent misrepresentations to prove their use of improper means to misappropriate Plaintiff's trade secrets, he may not also allege a separate cause of action for fraud because such a cause of action is preempted by the ATSA.

### D. Plaintiff's Claim That He Was Slandered by the Allegation That Defendants Owned the Trade Secret Is Preempted by the ATSA.

Plaintiff alleges that Defendants slandered him in attempt to cover up and/or to reap the benefit of the misappropriation by telling Stronghold that Treis owned the Firmware and discrediting Grams when he notified Stronghold that Grams was the true owner of the Firmware.  The Amended Complaint alleges that when Grams alerted Stronghold of his ownership of the Firmware, Defendants represented to Stronghold that "firmware had *di minimus* value and that they owned it" and further "accused Grams of lying [about] and stealing [the Firmware from Treis]."  *Am. Compl.* at ¶¶ 286, 464 and 466. Plaintiff further alleges that "Treis's members disparaged Grams in front of Stronghold… encouraged Stronghold to continue using WAO2 without paying Grams's development fee, and thoroughly discredited Grams in his field, all to ensure they didn't have to turn over the yield from their misappropriation."  *Id.* at ¶ 296.  Plaintiff alleges that as a result, "Stronghold

continued to use WAO2." *Id.* at ¶ 297. Such allegations demonstrate that the alleged slander was used as a mechanism to perpetuate, cover up and continue the alleged misappropriation by selling the Firmware to Stronghold.

According to Plaintiff, Defendants committed misappropriation when they "sold machines with Plaintiff's unencrypted firmware [to] Stronghold" (*Id.* at ¶¶ 335-336 & 517-18) and that Stronghold would not have purchased the machines from Treis "without Plaintiff's firmware" installed thereon (*Id.* at ¶ 418). It is, therefore, easy to see how Defendants' statements that Treis was the true owner of the Firmware and that Grams was lying about his ownership in an attempt to steal the Firmware from Treis are nothing more than the improper means through which Defendants allegedly accomplished the misappropriation. Accordingly, Plaintiff's slander claim is preempted by the ATSA.

### E. Plaintiff's Tortious Interference Claim Should Be Dismissed for Failing to Allege the Most Basic and Necessary Facts.

In Alabama, to state a claim for Tortious Interference with Business or Contractual Relations, a complaint must plausibly allege, "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Walter Energy, Inc. v. Audley Capital Advisors LLP*, 176 So. 3d 821, 828 (Ala. 2015). In *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 U.S. App. LEXIS 21039 (11th Cir. July 29, 2022), the 11th Circuit upheld the Florida district

court's finding that the plaintiff's reliance on mere "assertions that [defendant] UCMS 'knew, and was aware' of, and that UCMS 'purposefully and intentionally' interfered with, CMR's contractual and business relationships with the Association to support its claims" was insufficient to support a claim for tortious interference with business or contractual relations because "CMR failed to allege facts to support those otherwise conclusory assertions." *Id.* at *16.

Like the plaintiff in *CMR Constr. & Roofing*, Grams fails to identify the contracts at issue and simply alleges he was involved in and/or party to "various business or contractual relationships" (*Am. Compl.* ¶ 472), without identifying those purported business or contractual relationships. Such a failure is critical as this claim is asserted against Treis and its officers / employees (Pence, Bolick, Smith and Lamberti). As evidenced by Grams' breach of contract claim in Count 8, Treis was a party to at least one of the alleged contracts. While a party to a contract can *breach the contract*, it cannot intentionally interfere with a contract to which it is a party; nor can the employees and/or officers of the breaching party. *See Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1585 (N.D. Ala. 1996) ("Neither a party to the contract nor an agent or employee or a party to the contract, if acting within the scope of authority, can be liable for tortious interference with the contract"). As such, Plaintiff has failed to allege the first element of a claim for tortious interference, "the existence of a protectible business relationship." *Id.*

Plaintiff also fails to allege that Defendants were *aware* of any purported protectible business relationship, the second element of a claim for tortious interference. *Id*. Rather, Plaintiff merely concludes that <u>he</u> was aware of the contracts at issue. *See Am. Compl.* ¶ 473 ("*Plaintiff* was fully aware of the existence of these business or contractual relationships") (emphasis added). Further, although Plaintiff alleges that Defendants "tortiously interfered with Plaintiff's valid and enforceable contractual or business relationships" (*Am. Compl.* ¶ 474), he fails to offer *any facts* in support of these allegations. *See CMR Constr. & Roofing*, at *16-17 ("Because CMR failed to support its tortious interference claims with facts from which a reasonable trier of fact could infer that CMR's claims were plausible, the district court did not err in dismissing CMR's tortious interference claims.")

Moreover, to the extent Plaintiff attempts to rely on his incorporation and re-allegation of "paragraphs 18 through 159 as if the same were fully set forth herein", (*Am. Compl.* ¶ 470), such pleading is also insufficient to state a claim, as the preceding paragraphs in the Amended Complaint involve nine defendants and various third parties. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir. 2014) (a shotgun pleading, where each count adopts allegations of all preceding counts, renders it virtually impossible to know which allegations of fact are intended to support which claims for relief).

Because Plaintiff fails to allege the necessary factual support of his Tortious Interference claim, Count 11 must be dismissed.

## III.    Plaintiff's RICO Claim Should Be Dismissed Because Plaintiff Cannot Plead an Enterprise Engaging In a Pattern of Criminal Conduct.

In the context of a motion to dismiss, "claims under RICO must be subjected to scrutiny due to their potential for abuse by civil litigants." *Depaola*, 2006 U.S. Dist. LEXIS 29084, *32 (quoting *Bill Buck Chevrolet, Inc. v. GTE Fla., Inc*., 54 F. Supp. 2d 1127, 1132 (M.D. Fla. 1999)).  That is because RICO is reserved for instances in which a group of defendants form a *criminal* enterprise to engage in *criminal conduct* that constitutes a pattern of racketeering activity.  *See* 18 U.S.C. § 1961 ("racketeering activity means….(B) any act which is indictable under any of the following [Crimes and Criminal Procedure] provisions of title 18 United States Code"). If Plaintiff thought that Defendants had engaged in criminal conduct, he would have reported such conduct to law enforcement.  That he has not is telling.

But simply proving criminal conduct is not enough: "RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts…"  *See Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264-65 (11th Cir. 2004).  To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.,* 767 F.3d 1220, 1224 (11th Cir. 2014).  "The 'pattern' element of the [RICO] statute was

designed to limit its application to planned, ongoing, continuing crime as opposed to sporadic, unrelated, isolated criminal episodes." *Id.* at 1264. RICO certainly does not apply to conduct that merely gives rise to civil liability.

Plaintiff's RICO claim should be dismissed because Plaintiff has failed to allege sufficient facts to: (1) show that he owns trade secrets that could be stolen as is required to prove a racketeering activity; (2) show that Defendants shared a common purpose and acted as a continuing unit as is required to participate in an enterprise; and (3) show that Defendants engaged in two racketeering activities, much less a pattern of racketeering activity.

### A. Plaintiff Has Not Established a Racketeering Activity Because He Has Not Alleged the Existence of Trade Secret That Could Be Stolen.

The Amended Complaint clearly identifies the racketeering activities as being the "fraud, misrepresentation and theft" of Plaintiff's trade secrets. *See Am. Compl.* ¶ 372. It goes on to detail Defendants' scheme and conspiracy to wrongly use and assert ownership of the trade secret. *Id.* at ¶ 373-390. In past pleadings, Plaintiff plainly states that "Plaintiff's RICO claim is based on misappropriation." *See* Dkt. 79, pg. 33. Plaintiff has similarly identified the "thrust" of his RICO claim as being trade secret theft in violation of 18 U.S.C. § 1832. *See* Dkt. 95, pgs. 4 & 8.

The very statute upon which Plaintiff relies to prove a racketeering activity plainly states that a trade secret can only exist "**if** the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A)

(emphasis added).  Because Plaintiff did not treat the information like a trade secret, he did not own a trade secret that Defendants could have stolen in violation of 18 U.S.C. § 1832. Therefore, Defendants did not engage in criminal racketeering activity as is required by RICO.

**B. Plaintiff Has Failed to Establish the Existence of An Enterprise Under RICO.**

"Essential to any successful RICO claim are the basic requirements of establishing a RICO enterprise and a 'pattern of racketeering activity'." *Jackson*, 372 F.3d at 1264. Plaintiff fails to plausibly allege an "enterprise" under RICO because on its face, the Amended Complaint demonstrates Defendants could not have formed an association in fact, because the Defendants did not "have sufficient relationships" or "function as a continuing unit" as is required. *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1067-68 (11th Cir. 2017). The Amended Complaint shows that Defendants did not have an agreement, plan or even a common goal for stealing Plaintiff's trade secrets as is required to show that Defendants were working together as a continuing unit.  Instead, Plaintiff has alleged the existence of several parties, each of whom were acting in a disjointed, reactionary manner to protect their own best interests and, at times, against the interests of the other parties.  *See* Dkt. 52, ¶¶ 372, 375, 383 and 398. The fact that one of the alleged conspirators (Treis) sued two of the other conspirators (Chain & CEL) is evidence that Defendants were not working together.

Plaintiff argues that the Defendants formed two separate enterprises, (a) the Treis enterprise, consisting of Treis, Treis' members, and later Stronghold; and (b) the Chain enterprise, comprising Chain and his company (CEL). This argument fails for at least three reasons.

First, to constitute an enterprise for RICO, the individual enterprises must form a larger enterprise. *See Pahmer v. Greenberg*, 926 F. Supp. 287, 300 (E.D.N.Y. 1996) ("plaintiffs have alleged the existence of three enterprises…it is clear that all were encompassed in…a single enterprise"). As *Pahmer* explains, each enterprise may have a specific role to play, but the role of each enterprise must fit within the overall enterprise. *Pahmer*, 926 F. Supp. at 300 ("Although plaintiffs have alleged the existence of three enterprises (one for solicitation of investors, one for running the company, and one for continued funding of the company), it is clear that all were encompassed in the Video USA Enterprise. Accordingly, we will presume the existence of but a single enterprise called the Video USA Enterprise. Plaintiffs have thus adequately alleged an enterprise"). Unlike *Pahmer*, there is no single enterprise encompassing the defendants' conduct and/or operating as a cohesive group. Plaintiff's Amended Complaint specifically states that the two enterprises were at odds with one another, which resulted in one enterprise stealing from and subsequently suing the other. *See Am. Compl.,* Dkt. 52, ¶¶ 383 & 188-194.

Second, the Amended Complaint makes clear that Treis was working against Stronghold. *See Am. Compl.,* Dkt. 52, ¶ 398 (Defendants Treis and each of its Managing Directors…continued to perpetrate frauds on both Stronghold and Plaintiff…"). Therefore, Treis and Stronghold could not be working together as part of the same enterprise. Even if Treis and Stronghold were working together at one point, such an alliance ended at the point when the machines were sold to Stronghold, thus they could not be acting as a "continuing unit" as required. *Almanza,* 851 F.3d at 1067.

Third, there is no mention of how Cevon Technologies fits into either the Treis enterprise or the Chain enterprise. The Amended Complaint makes clear that Cevon Technologies (who purchased the Firmware from Chain/CEL) was cut out of the subsequent sale to Stronghold. *See Am. Compl.,* Dkt. 52, ¶¶ 104, 109-112.

At best, the Amended Complaint alleges that the Defendants engaged in parallel conduct that resulted in the theft of Plaintiff's trade secret. In *Almanza,* the Eleventh Circuit found that the parallel conduct of Defendants did not allege sufficient relationships among Defendants to support a RICO claim. The Eleventh Circuit explained the pleading standard for a RICO enterprise as follows.

> To show that Defendants acted as a continuing *unit*, and not merely independently, Plaintiffs conclusorily allege that Defendants entered into an agreement, either express or tacit…But since Plaintiffs do not allege facts showing that this alleged agreement actually exists, their allegations simply recite a legal conclusion – the existence of an agreement…

Plaintiffs surely recognize this because their real argument is that the Court should infer an agreement – and thus an enterprise – from the parallel conduct of Defendants. And Plaintiffs have indeed alleged parallel conduct....

But parallel conduct alone cannot support a plausible inference of an agreement. In *Twombly*, the Supreme court rejected as inadequate the conclusory allegation of a conspiratorial agreement, despite the fact that the allegation was coupled with allegations of parallel conduct. Parallel conduct, the Court explained, can just as easily indicate "independent action" as it can collusion. *See Twombly*, 550 U.S. at 556-57. To cross the line from a possible to a plausible existence of an agreement, **plaintiffs must allege a "further circumstance pointing toward a meeting of the minds."** *Id.* at 557.

*Almanza*, 851 F.3d at 1068 (emphasis added). Thus, to establish a conspiratorial agreement, a plaintiff must "assert allegations explaining how exactly the defendants went about entering into an agreement with each other. It wasn't enough that the defendants all ended up doing the same fraudulent thing." *Id.* (citing *American Dental*, 605 F.3d at 1291). Although an "enterprise" and "conspiracy" are distinct RICO elements, the *Twombly* parallel-conduct pleading standard "applies equally to both RICO enterprise and RICO conspiracy allegations." *Id.* at 1068, fn. 6.

As in *Almanza*, Plaintiff's Amended Complaint fails to sufficiently allege relationships among the Defendants to show a continuing unit. The fact that the enterprises and/or their members were stealing from one another, lying to one another and in some instances suing one another shows that there was no agreement or meeting of the minds for allegedly stealing Plaintiff's trade secret. "It [i]sn't enough that the defendants all ended up doing the same fraudulent thing" the Defendants must have had an agreement, meeting of the minds or acted as a

continuing unit. *Almanza*, 851 F.3d at 1068.

At best, Plaintiff's allegations show sequential conduct by Defendants who allegedly "all ended up doing the same fraudulent thing," and Plaintiff's request that the Court infer the necessary agreement has been rejected by both the U.S. Supreme Court and the Eleventh Circuit.

### C. Plaintiff has failed to establish a "pattern" of racketeering activity.

"To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson*, 372 F.3d at 1250.

### 1. Plaintiff has failed to allege two or more predicate acts by Treis, its members or Stronghold.

Plaintiff alleges that Treis stole his Firmware (*Am. Compl.,* Dkt. 52, ¶ 383) and then continued to use and profit from Plaintiff's Firmware (*Am. Compl.,* Dkt. 52, ¶¶ 382, 383). While Treis's alleged theft of Plaintiff's Firmware is incorporated into RICO's list of prohibited criminal activity, the misappropriation or use of a trade secret is not. The only predicate act that Treis, its members or Stronghold allegedly committed was the theft of Plaintiff's trade secret.

Misappropriation or use of a trade secret without consent is not included in RICO's list of criminal acts, which define "racketeering activity." *See* 18 U.S.C. § 1961. The law is clear that "the 'use' of a trade secret would not be indictable under

section 1832 [Theft of Trade Secrets] because it is not one of the acts described in the statute. Likewise, 'use' of a trade secret, though independently actionable under section 1836 [Defend Trade Secrets Act], is not a RICO predicate because it is not included in the definition of racketeering activity under section 1961." *ESPOT, Inc. v. Myvue Media, LLC*, 492 F. Supp. 3d 672, 694 (E.D. Tex. 2020).

Whether committed by Chain, CEL, Treis or Stronghold, the alleged theft of Plaintiff's trade secret is a single act which occurred at a single point in time. Defendants can only "steal" Plaintiff's trade secret once. After the trade secret is stolen, there is nothing left to steal from Plaintiff. Any subsequent use, disclosure or transfer of the Firmware by any of the Defendants may constitute "misappropriation" but it cannot constitute "theft" and is not sufficient to establish a second predicate act under RICO. *See ESPOT,* 492 F. Supp. 3d at 694; 18 U.S.C. § 1961; 18 U.S.C. § 1832.

In past briefs, Plaintiff has mentioned wire fraud and/or securities fraud as potentially additional predicate acts. Plaintiff incorporates the arguments in their prior RICO reply brief (Dkt. 96, pg. 13-14) as to why the Amended Complaint's failure to mention these statutes or the purported violations thereof violates Rule 9(b) and precludes Plaintiff from relying on the statutes. Plaintiff has therefore failed to allege two or more predicate acts by Treis, its member or Stronghold necessary to establish a pattern of racketeering activity.

### 2. Plaintiff has failed to sufficiently allege a threat of continuing criminal activity.

To prove a pattern, plaintiff must demonstrate the alleged predicate acts "themselves amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature project into the future with a threat of repetition." *Id.* at 241 (citation omitted). In either case, there must be some allegation of a threat of repetition.

Plaintiff argues that "there is a threat of continued criminal activity because…each [Defendant] may continue to misappropriate, use, and profit from WAO2 in defiance of [Plaintiff]'s rights." Dkt. 95, p. 13. Plaintiff's exact argument has been expressly rejected. The Eastern District of Texas explained that because "the criminal [RICO] statute is limited to the point in time that a trade secret falls into unauthorized hands, then the ongoing use of the trade secrets once obtained cannot be a predicate act to establish a threat of continued criminal activity." *ESPOT*, 492 F. Supp. 3d at 695. The *ESPOT* court explained that because "use" of a trade secret is not a predicate act under RICO, plaintiffs "cannot rely on allegations that the Defendants are using its trade secrets, and will continue to do so, to establish an open-ended pattern of racketeering activity." *Id. See also Nw. Osteoscreening, Inc. v. Mountain View Hops.*, LLC, 2014 U.S. Dist. LEXIS 141407, at *6 (D. Idaho Oct.

2, 2014) (finding plaintiff failed to plead pattern of racketeering activity because "the theft or fraud ceases once the trade secret is obtained"); *Binary Semantics Ltd. v. Minitab, Inc.*, 2008 U.S. dist. LEXIS 28602, at *4 (M.D. Pa. Mar. 20, 2008) ("The theft of trade secrets necessarily implies that they will be used. Therefore, under [the] plaintiff's theory, every misappropriation of trade secrets could result in a RICO claim. This would surely expand the scope of the statute beyond what it was intended to reach"). Therefore, Plaintiff cannot show that Defendants' "predicate acts demonstrate criminal conduct of a continuing nature" as is required.

Even if misappropriation was sufficient to prove a pattern, Plaintiff's allegations are asserted "on information and belief" which constitute conclusory allegations "insufficient to defeat a motion to dismiss." *Resnick v. Troy*, 2019 WL 2092567 (M.D. Ala. May 13, 2019). "The open-ended inquiry requires more than simply alleging unsupported suspicions Plaintiff will suffer future economic harm as a result of Defendants' past conduct." *Fla. Beauty Flora v. Pro Intermodal L.L.C.*, 2020 U.S. Dist. LEXIS 124582, at *27 (S.D. Fla. July 15, 2020). The Court in *Fla. Beauty* found that "Plaintiff's lone, general allegation [that it will continue to suffer economic harm as a result of Perez's *past* conduct] is insufficient to meet the open-ended continuity requirement necessary to sustain a RICO violation." *Id.* at 26, 28.

Here, Plaintiff offers no factual allegations establishing a distinct threat of ongoing or future racketeering activity by Defendants, and merely sets forth his

suspicions that Treis, "on information and belief, continues to use WAO2," and "[i]f they are not using WAO2, on information and belief they have reverse engineered it." *Am. Compl,* Dkt. 52, ¶¶ 302, 304, 393. 399.  Plaintiff's suspicions and conclusory allegations based on information and belief are insufficient to meet the open-ended continuity requirement necessary to plausibly allege a RICO violation.

## CONCLUSION

Grams asks this Court to treat the Firmware as a trade secret when he clearly did not.  Grams' actions invoke the old adage "fool me once shame on you, fool me twice, shame on me."  The fact that after already having a prior version of the Firmware stolen, Grams continued to freely distribute his Firmware to *at least four separate parties, none of whom signed a non-disclosure agreement*, evidences that Grams did not treat the Firmware as a trade secret.  So why should he expect Treis (or even this Court) to treat it as such?

Once all the claims that either allege trade secret misappropriation or seek a preempted remedy for the misappropriation are stripped from this case, we are left with breach of contract claims, on which this case may proceed. For the reasons set forth above, Defendants respectfully request that Counts 2-6, 9-12, and 14-16 be dismissed for failing to state a claim for which relief can be granted.

Respectfully submitted this the  22nd  day of July, 2024.

/s Joshua J. Jackson
Joshua J. Jackson (ASB-8286-U79J)

**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com

/s Hunter S. Freeman
Hunter S. Freeman (pro hac vice)
Attorneys for Defendants Treis Blockchain, LLC,
Cevon Technologies, LLC, Stronghold Digital
Mining, LLC, Michael Bolick, Brian Lamberti,
David Pence, and Senter Smith

**KIM LAHEY & KILLOUGH LAW FIRM**
3620 Pelham Road, PMB #213
Greenville, SC 29615
Phone: (864) 973-6688
hfreeman@kimandlahey.com

## CERTIFICATE OF SERVICE

I hereby certify that on the  22nd  day of  July  , 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com

Carissa V. Sears
The Sears Law Office, LLC
7887 E. Belleview Ave. Suite 1100
Greenwood Village, CO 80111
carissa@searslaw.org

Clifton E. Slaten
Slaten Law, P.C.
7027 Halcyon Park Drive
Montgomery, AL 36117
cslaten@slatenlaw.com

/s Joshua J. Jackson
OF COUNSEL