## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARK GRAMS,** | ) | |
| **an individual Alabama citizen,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **vs.** | ) | **3:23-CV-00299-SMD** |
| | ) | |
| **TREIS BLOCKCHAIN, LLC,** | ) | |
| **CHAIN ENTERPRISES, LLC,** | ) | |
| **CEVON TECHNOLOGIES, LLC,** | ) | |
| **STRONGHOLD DIGITAL MINING,** | ) | |
| **LLC, DAVID PENCE, MICHAEL** | ) | |
| **BOLICK, SENTER SMITH,** | ) | |
| **BRIAN LAMBRETTI, AND** | ) | |
| **JOHN CHAIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS JOHN CHAIN AND CHAIN ENTERPRISES, LLC'S RENEWED AND SUPPLEMENTAL PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED R CIV P 12(b)(6)

COME NOW Defendants John Chain ("Defendant" or "Chain" hereafter) and Chain Enterprises, LLC ("Defendant" or "CEL" hereafter), by and through the undersigned counsel, and moves to dismiss Counts 1, 5, 6, 9, 13, 16, 17, and 18 of Plaintiff's Amended Complaint pursuant to Fed R. Civ. P. 12(b)(6) for failure to state a claim. In further support thereof, Defendants show unto the Court as follows:

## NATURE AND STAGE OF THE PROCEEDINGS

On October 6, 2023, Plaintiff Mark Grams ("Plaintiff") filed an Amended Complaint (Doc. 52) in this civil action against Chain Enterprises, LLC ("CEL"), Treis Blockchain, LLC ("Treis"), Cevon Technologies, LLC ("Cevon"), Stronghold Digital Mining, LLC ("Stronghold"), John Chain ("Chain"), David Pence ("Pence"), Michael Bolick ("Bolick"), Senter Smith ("Smith"), and Brian Lamberti ("Lamberti") in the Middle District of Alabama, Eastern Division, Civil Action No.: 3:23-CV-00299-RAH. Plaintiff asserts eighteen causes of action against nine defendants. Pursuant to this Motion, Defendants Chain and CEL respectfully request that this Court dismiss Count 1 (Misappropriation of Trade Secret), Count 5 (RICO), Count 6 (Unjust Enrichment), Count 9 (Fraudulent Misrepresentation), Counts 13 and 16 (Misappropriation pursuant to Alabama's Trade Secrets Act), Count 17 (Work and Labor Done), and Count 18 (Quantum Meruit) of Plaintiff's Amended Complaint against them for failure to state a claim under Rule 12(b)(6).

## SUMMARY OF ARGUMENT

The following Counts must be dismissed for failure to state a claim under Rule 12(b)(6): Counts 1, 5, 6, 9, 13, 16, 17, and 18. Count 1 (Misappropriation of a Trade Secret) is due to be dismissed because Plaintiff's Complaint makes it clear that these Defendants did not misappropriate a trade secret. Count 5 (RICO) must be dismissed because Plaintiff failed to adequately plead a violation of RICO. Count 9 (Fraudulent

Misrepresentation) is due to be dismissed for failure to state a claim because this claim is barred by the applicable statute of limitations. Additionally, Counts 13 (Misappropriation pursuant to the Alabama Trade Secrets Act) and 16 (Conspiracy to Commit Theft of Trade Secrets in Violation of the Alabama Trade Secrets Act) are due to be dismissed for failure to state a claim because both claims are barred by the applicable statute of limitations. Count 17 (Work and Labor Done) is due to be dismissed for failure to state a claim because plaintiff has failed to state a cognizable cause of action. Finally, Counts 6 (Unjust Enrichment) and 18 (Quantum Meruit) are due to be dismissed because plaintiff has failed to plead a claim for either Unjust Enrichment or Quantum Meruit.

## <u>STATEMENT OF ALLEGED FACTS</u>

Plaintiff alleges the following facts in his Complaint: Plaintiff pioneered firmware, WAO2, which optimized the cryptocurrency mining industry. Doc. 52, ¶ 44. Defendant Chain asked to help Plaintiff monetize the firmware in 2020. Doc. 52, ¶ 47. Plaintiff agreed Chain could try to find companies interested in using WAO and he would pay Chain a fee for any new contracts Chain could procure for him. Doc. 52, ¶ 51. All Dev Fees were sent to an electronic wallet. Doc. 52, ¶ 141. Distributions from the wallet were to be shared equally. Doc. 52, ¶ 142.

In the spring of 2020, Chain negotiated with Defendant Treis, who wanted to install WAO on their Whatsminers. Doc. 52, ¶ 53. Plaintiff believed he, Treis, and Chain were involved in a joint venture. Doc. 52, ¶ 57.

In the fall of 2020, Treis began negotiating with Chain to purchase WAO2 outright. Doc. 52, ¶ 102. The deal was alleged to have occurred through a business called Cevon Technologies, LLC. Doc. 52, ¶ 109. Treis owned 50% of Cevon and CEL owned 50% Doc. 52, ¶ 110. CEL's initial capital contribution to Cevon was "all intellectual property that it owns or exclusively licenses related to firmware and dual phase immersion cooling systems for crypto-currency and blockchain applications." Doc. 52, ¶ 112. WAO2 was never specifically referenced in any way regarding the formation of Cevon. Doc. 52, ¶ 118.

Plaintiff suspected Chain was taking more than 50% of the Dev Fee being deposited into the electronic wallet and suspected Chain was stealing from him. Doc. 52, ¶¶ 145-146. In April 2021 Plaintiff announced that he was not comfortable with the way things were being handled. Doc. 52, ¶ 149. Plaintiff told Treis that he suspected Chain was in breach of their agreement and that he would no longer be working with Chain. Doc. 52, ¶ 150. On April 28, 2021, Treis informed Plaintiff they wanted to work with him directly. Doc. 52, ¶ 153. Plaintiff then told Chain he was redirecting the Dev Fees to an account under Plaintiff's sole management. Doc. 52, ¶ 154.

By April of 2021, Treis knew that Chain had never owned WAO or WAO2 and that Grams was the developer and sole owner. Doc. 52, ¶ 136.

Plaintiff had the ability to monitor the funds going into the wallet originally designated for deposit of the Dev Fees. Doc. 52, ¶ 159. On May 25, 2021, Plaintiff informed Defendant Bolick he no longer had the ability to monitor the funds in that wallet. (Id.)

## ARGUMENT

### I.    Counts 1, 5, 9, 13, 16, and 17 Must Be Dismissed For Failure to State a Claim.

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2)." *Gulf S. Communications, Inc. v. Woof, Inc.*, 2021 WL 2405199, at *1 (M.D. Ala. June 11, 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Whether a complaint states a plausible claim for relief, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "The plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* This standard "does not require 'detailed factual allegations,' but it demands more

than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* "Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the 'grounds' for his entitlement to relief, and a 'formulaic recitation of the elements of a cause of action will not do.'" *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956038, at *2 (S.D. Fla. Dec. 27, 2022) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### A.    Count I is Due to Be Dismissed for Failure to State a Claim

Count I of Plaintiff's Complaint asserts a claim for Willful and Wanton Misappropriation Pursuant to 18 U.S.C. § 1836. Plaintiff states "Defendants Chain and CEL purported to deliver, send, or convey WAO2 and its Trade Secrets to Cevon for Treis's benefit without authorization." Doc. 52, ¶ 318.

Plaintiff undercuts this claim in ¶ 180 of his Complaint when he recounts a meeting between Plaintiff and Defendant Bolick, on behalf of Treis, in July 2021 wherein Bolick acknowledges that Grams owns WAO2. If this is the case, how was WAO2 misappropriated? The party to which Chain allegedly misappropriated and conveyed WAO2 acknowledged that Plaintiff owned it, not them, not Chain. (See also Doc. 52, ¶¶ 168-180).

In other words, based on Plaintiff's own version of events, there was no misappropriation on the part of the Chain Defendants. Plaintiff still maintained

ownership and control of WAO2 after the Chain Defendants were out of the picture. Any alleged misappropriation of WAO2 occurred long after the Chain Defendants were out of the picture. See Doc. 52, ¶¶ 250-257.

**B.    Count 5, Plaintiff's RICO claim, should be dismissed because Plaintiff has failed to plead a viable RICO claim.**

Count 5 of Plaintiff's Complaint alleges violation of RICO "pursuant to 18 U.S.C. 1964 and 18 U.S.C. 1962(c)." To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must "establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014).

In order to allege a pattern of racketeering, a plaintiff must show: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264, 2004 U.S. App. LEXIS 11578 (11th Cir. 2004) (citing 18 U.S.C. § 1961(5); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239-43, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

The Supreme Court has said:

> "[B]oth a closed-and open-ended concept, referring either
> to a closed period of repeated conduct, or to past conduct

> that by its nature projects into the future with a threat of repetition . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time . . . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated."

*H.J. Inc.*, 492 U.S. at 241-42.

For a closed period, a substantial period of time is measured "in years, not weeks." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1267 (11th Cir. 2004)). The Eleventh Circuit has stated that "other circuits have agreed that the substantial period of time requirement for establishing closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Jackson*, 372 F.3d at 1266.

Here, Plaintiff has alleged, at best, a closed-ended concept with allegations of schemes lasting less than a year. Plaintiff specifically alleges the following:

"In fall of 2020 Treis, apparently satisfied with Gram's progress, began negotiating with Chain to purchase WAO2 outright." Doc. 52, ¶ 102.

"Defendant John Chain falsely represented that WAO2 was solely owned by his entity, Chain Enterprises, LLC ("CEL")." Doc. 52, ¶ 104.

"Instead of an outright purchase the deal was funneled through a subsidiary created for the purpose, Cevon Technologies, LLC ("Cevon")." Doc. 52, ¶ 109.

"Cevon is owned 50% by Treis and 50% by CEL." Doc. 52, ¶ 110.

"CEL and Chain initiated the enterprise forming Cevon to steal WAO2 and its Trade Secrets from Grams." Doc. 52, ¶ 373.

"CEL and Chain concocted a scheme to create Cevon to obscure ownership of the WAO2 intellectual property, and to hold WAO2 out as their own property." Doc. 52, ¶ 374.

"CEL and Chain misrepresented to Treis that CEL owned WAO2 and its Trade Secrets." Doc. 52, ¶ 375.

"CEL and Chain misrepresented to Treis that Grams was part of its memberships and approved of transferring WAO2 to Cevon." Doc. 52, ¶ 376.

"Cevon conspired by covering up the fact that Grams was the true owner of WAO2 even in the Delaware federal suit." Doc. 52, ¶ 377.

"CEL, Chain, Cevon, Treis, and its Managing Directors (Pence, Bolick, Smith, and Lamberti) all conspired to convince Grams to continue working on WAO2." Doc. 52, ¶ 378.

It would appear that Plaintiff is trying to argue that Chain and CEL were some sort of enterprise with Treis through Cevon, despite the fact that the Chain Defendants, the Treis Defendants, and Cevon, as alleged, had competing interests and were making misrepresentations to each other. According to Plaintiff's Complaint this enterprise began in the Fall of 2020. Plaintiff's Complaint also

indicates that John Chain, and therefore CEL, was pushed out of the "enterprise" in April 2021. Specifically, Plaintiff alleges the following:

"But regardless, as set forth below, it is beyond dispute that by April of 2021, Treis knew that Chain had never owned WAO or WAO2 and that Grams was the developer and sole owner." Doc. 52, ¶ 136.

"He [Grams] suspected Chain was taking more than fifty percent of the Dev Fee being deposited into the wallet, and was allocating less than fifty percent to Grams." Doc. 52, ¶ 145.

"Simply put, he suspected Chain was stealing from him." Doc. 52, ¶ 146.

"In April 2021 Grams announced that he was not comfortable with the way things were being handled." Doc. 52, ¶ 149.

"Grams told Treis that he suspected Chain was in breach of the agreement between Grams and Chain and that he would no longer be working with Chain." Doc. 52, ¶ 150.

"On April 28, 2021, Bolick wrote to Grams, "Thanks for the call yesterday. I spoke with David and Senter and we want to figure out a way to work directly with you."" Doc. 52, ¶ 153.

Furthermore, by the Fall of 2021, specifically September 3, 2021, Treis had filed suit against Chain in the Court of Chancery of the State of Delaware, a case which was removed to federal court. Doc. 52, ¶ 188. While Plaintiff's Complaint

fails to state the exact date that Cevon – which is alleged to be the RICO enterprise Chain/CEL was a part of – was formed, the formation date is a matter of public record and can be found using a Secretary of State business entity search in Delaware. Cevon was formed on October 7, 2020.[1] Eleven months later the members of Cevon were suing each other in Delaware. Before that, in April 2021, the other members of Cevon had stopped working with Chain. The "enterprise," if there was one, did not last long enough to meet the required length of time to constitute closed-ended continuity according to the Eleventh Circuit. Accordingly, Plaintiff has failed to plead a viable RICO cause of action.

Plaintiff's also fails to allege a viable RICO cause of action because he has failed to plead a "pattern of racketeering." His Complaint contains one alleged fraudulent activity performed by the so-called enterprise – the theft of Plaintiff's intellectual property, WAO2 (which, as stated earlier, is contradicted by allegations of interactions between Plaintiff and other defendants after the Chain Defendants were out of the picture; i.e., the Chain Defendants did not form an enterprise with any other defendants to misappropriate anything). Doc. 52, ¶ 372. Multiple instances

---

[1] As business entity records in Delaware are searchable on the Delaware Secretary of State website, Defendant would ask the Court to take judicial notice of Cevon's formation date. Should the Court disregard October 7, 2020 as the formation date of Cevon, Plaintiff's Amended Complaint still states on its face that the entity was formed in the Fall of 2020, which still makes the duration of the alleged enterprise less than one year even if one chooses the first day of Fall as the starting date.

of deception do not show a pattern of racketeering when they are all in furtherance of a single fraud. *Bandyopadhyay v. Obei*, 2023 U.S. Dist. Lexis 33382 *6, 2023 WL 2263552 (S.D. Fla. February 28, 2023).

Here, Plaintiff has failed to plead the existence of an "enterprise." First, to constitute an enterprise for RICO, the individual enterprises must form a larger enterprise. *See Pahmer v. Greenberg*, 926 F. Supp. 287, 300 (E.D.N.Y. 1996) ("plaintiffs have alleged the existence of three enterprises…it is clear that all were encompassed in…a single enterprise"). As *Pahmer* explains, each enterprise may have a specific role to play, but the role of each enterprise must fit within the overall enterprise. *Pahmer*, 926 F. Supp. at 300 ("Although plaintiffs have alleged the existence of three enterprises (one for solicitation of investors, one for running the company, and one for continued funding of the company), it is clear that all were encompassed in the Video USA Enterprise. Accordingly, we will presume the existence of but a single enterprise called the Video USA Enterprise. Plaintiffs have thus adequately alleged an enterprise"). Unlike *Pahmer*, there is no single enterprise encompassing the defendants' conduct and/or operating as a cohesive group. Plaintiff's Amended Complaint specifically states that the two enterprises were at odds with one another, which resulted in one enterprise stealing from and subsequently suing the other. *See* Doc. 52, ¶¶ 383 & 188-194.

At best, the Amended Complaint alleges that the Defendants engaged in parallel conduct that resulted in the theft of Plaintiff's trade secret. In *Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017), the Eleventh Circuit found that the parallel conduct of Defendants did not allege sufficient relationships among Defendants to support a RICO claim. The Eleventh Circuit explained the pleading standard for a RICO enterprise as follows.

> To show that Defendants acted as a continuing *unit*, and not merely independently, Plaintiffs conclusorily allege that Defendants entered into an agreement, either express or tacit…But since Plaintiffs do not allege facts showing that this alleged agreement actually exists, their allegations simply recite a legal conclusion – the existence of an agreement…
>
> Plaintiffs surely recognize this because their real argument is that the Court should infer an agreement – and thus an enterprise – from the parallel conduct of Defendants. And Plaintiffs have indeed alleged parallel conduct....
>
> But parallel conduct alone cannot support a plausible inference of an agreement. In *Twombly* [*Bell Atl Corp. v. Twombly*, 550 U.S. 544 (2007)], the Supreme Court rejected as inadequate the conclusory allegation of a conspiratorial agreement, despite the fact that the allegation was coupled with allegations of parallel conduct. Parallel conduct, the Court explained, can just as easily indicate "independent action" as it can collusion. *See Twombly*, 550 U.S. at 556-57. To cross the line from a possible to a plausible existence of an agreement, **plaintiffs must allege a "further circumstance pointing toward a meeting of the minds."** *Id.* at 557. Without that "further factual enhancement," "an account of a defendant's commercial efforts stays in neutral territory." *Id.*

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017) (emphasis added). Thus, to establish a conspiratorial agreement, a plaintiff must "assert allegations explaining how exactly the defendants went about entering into an

agreement with each other. It wasn't enough that the defendants all ended up doing the same fraudulent thing." *Id.* (citing *American Dental*, 605 F.3d at 1291). Although an "enterprise" and "conspiracy" are distinct RICO elements, the *Twombly* parallel-conduct pleading standard "applies equally to both RICO enterprise and RICO conspiracy allegations." *Id.* at 1068, fn. 6.

As in *Almanza*, Plaintiff's Amended Complaint fails to sufficiently allege relationships among the Defendants to show a continuing unit. The fact that the enterprises and/or their members were stealing from one another, lying to one another and in some instances suing one another shows that there was no agreement or meeting of the minds for allegedly stealing Plaintiff's trade secret. "It [i]sn't enough that the defendants all ended up doing the same fraudulent thing" the Defendants must have had an agreement, meeting of the minds or acted as a continuing unit. *Almanza*, 851 F.3d at 1068.

At best, Plaintiff's allegations show sequential conduct by Defendants who allegedly "all ended up doing the same fraudulent thing," and Plaintiff's request that the Court infer the necessary agreement has been rejected by both the U.S. Supreme Court and the Eleventh Circuit.

Also under Plaintiff's RICO count is the allegation that "CEL and Chain conspired to steal Gram's earnings in the developer wallet." Doc. 52, ¶ 380. This allegation, that CEL and its sole member conspired to steal earnings from the

14

developer wallet does not meet any definition of what is required to constitute a RICO claim. For one thing, the conduct of which Chain and CEL are accused is not of a continuing nature. Plaintiff himself redirected the Dev Fee to a different wallet under Grams' sole management in 2021. Doc. 52, ¶ 154. For another, it isn't clear from Plaintiff's pleading how CEL and Chain, its sole member, can constitute an enterprise for the purpose of a RICO claim. Furthermore, Plaintiff's complaint does not establish a "pattern of racketeering activity." "RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts." See *Jackson* at 1264 (11th Cir. 2004). There is no accusation in Plaintiff's Complaint that the Chain Defendants continued to misappropriate trade secrets or developer fees after April 2021 or even that these Defendants had the ability to do so. Nor is there an accusation that the Chain Defendants misappropriated from anyone other than Plaintiff.

The allegations in Plaintiff's Complaint are insufficient, as set forth in the preceding case law cited in this motion, to meet the requirements to establish the Chain Defendants as a RICO enterprise.

## C. Parts of Count 9 Are Due to Be Dismissed Because Plaintiff Lacks Standing to Bring Suit for Misrepresentations Made to Other People

Count 13 of Plaintiff's Complaint alleges Fraudulent Misrepresentation as to Defendants Treis, Cevon, CEL, Chain, Lamberti, and Pence. Among the allegations regarding Chain and CEL are the following:

"Chain and CEL also allegedly misled Treis and its directors, claiming that CEL owned WAO2." Doc. 52, ¶ 438.

"Chain and CEL further allegedly misrepresented to Treis that Grams was an employee, when he was not, never had been, and was not being paid anything by Chain or CEL." Doc. 52, ¶ 439.

The elements of a fraudulent misrepresentation claim in Alabama are "(1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *Alexander v. State Farm Fire & Cas. Co.*, 2018 U.S. Dist. LEXIS 139407, at *9, 2018 WL 3956952 (N.D. Ala. Aug. 17, 2018). Obviously, a plaintiff cannot rely on statements made to others and of which the plaintiff has no knowledge.

Because the allegations contained in paragraphs 438 and 439 involve statements made to people other than Plaintiff, Plaintiff cannot recover for those statements.

**D. Additionally, Count 9 of the Complaint is Barred by the Applicable Statute of Limitations and Therefore Must Be Dismissed for Failure to State a Claim.**

Count 9 of Plaintiff's Complaint alleges Fraudulent Misrepresentation as to numerous Defendants. The only specific misrepresentations alleged to have been made by Chain and CEL to Plaintiff are the following:

"In February of 2020, Chain misrepresented to Grams that he would share half the profits of any deal he could strike between Grams and any third party for the sale of WAO2." Doc. 52, ¶ 436.

By April of 2021 Plaintiff either knew this representation had not been true or believed it had not been true. Doc. 52, ¶¶ 144-146, 149-150.

When federal jurisdiction is founded upon diversity of citizenship, the law of the forum state provides the appropriate statute of limitations. *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280 (11th Cir. 2003). Alabama law determines when the applicable statute of limitations begins to run.

It is undisputed that a two-year statutory limitations period applies to Plaintiff's fraud claim. Ala. Code § 6-2-38(l); *Kelly v. Conn. Mut. Life Ins. Co*., 628 So. 2d 454, 460 (Ala. 1993). That being said, in Alabama, causes of action for fraud do not accrue "until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6–2–3. Section 6-2-3 of the Alabama Code tolls the statute of limitations for causes of action that were fraudulently concealed from the aggrieved party. *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010). More specifically, Alabama law tolls the limitations period for a cause of action until the plaintiff

actually discovers the fraud or discovers facts that would alert a reasonable person to the possibility of fraud. *Wheeler v. George,* 39 So. 3d 1061, 1081 (Ala. 2009); *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689 (Ala. 2000).

In other words, "the limitations period begins to run when the plaintiff [is] privy to facts which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 237 (Ala. 2014) (quotations and citations omitted); *see also Jefferson County Truck Growers Ass'n v. Tanner*, 341 So.2d 485, 488 (Ala. 1977) ('Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.')."

The question of when a party discovered, or should have discovered, the fraud is normally a question for the jury. *Kelly*, 628 So. 2d at 458 (citing *Vandegrift v. Lagrone*, 477 So. 2d 292, 295 (Ala. 1985)). There are times when this question is removed from the purview of the jury, however. "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases in which the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Hicks v. Globe Life & Accident*

*Ins. Co.*, 584 So.2d 458, 463 (Ala. 1991) (emphasis in original) (overruled on other grounds).

Here, Plaintiff's Complaint indicates that "[i]n April 2021 Grams announced that he was not comfortable with the way things were being handled" and "[he] told Treis that he suspected Chain was in breach of the agreement between Grams and Chain and that he would no longer be working with Chain." Doc. 52, ¶¶ 149-150. This indicates that Plaintiff actually knew of facts that would have put a reasonable person on notice of fraud.  Plaintiff's Complaint was not filed until May 4, 2023, more than two years after April 2021. Therefore, Plaintiff's fraudulent misrepresentation claim would be barred by the applicable statute of limitations.

**E.**    **Count 13 of the Complaint is Barred by the Applicable Statute of Limitations and Therefore Must Be Dismissed for Failure to State a Claim.**

Count 13 of Plaintiff's Complaint alleges "Misappropriation (Alabama Trade Secrets Act)" as to "Defendants Chain and CEL." Alabama's Trade Secrets Act is found at Ala. Code §§ 8-27-1 – 8-27-6.

Ala. Code § 8-27-5 states "[a]n action for misappropriation must be brought within two years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."

Count 13 of Plaintiff's Complaint contains the following general allegations:

Defendants Chain and CEL purported to deliver, send, or convey the WAO2 trade secrets to Cevon and/or Treis without authorization. Doc. 52, ¶ 494.

Defendants Chain and CEL's delivery of the trade secret constituted a breach of confidence between Chain and CEL and Plaintiff. Doc. 52, ¶ 495.

Defendants Chain and CEL stole and/or without authorization appropriated, took, or carried away WAO2. Doc. 52, ¶ ¶ 496-497.

According to Plaintiff's Complaint, Chain and CEL were cut out of any relationship with the other parties in this lawsuit due to Plaintiff's knowledge and suspicions about the very acts being alleged against Chain and CEL in April 2021, more than two years prior to the filing of this lawsuit. Doc. 52, ¶¶ 136, 145-147, 149-150, 153-154. Plaintiff states "regardless . . . it is beyond dispute that by April of 2021, Treis knew that Chain had never owned WAO or WAO2 and that Grams was the developer and sole owner." Doc. 52, ¶ 136. The reason they knew this is because the Plaintiff himself told them he was the owner, he suspected Chain was in breach of their agreement, he would no longer be working with Chain, and, because of this, Plaintiff and Treis would work with each other directly moving forward and if Treis wanted to continue using WAO2 they had three options. Doc. 52, ¶¶ 146-155.

It is indisputable, based on the Plaintiff's Amended Complaint, that Plaintiff either discovered or by the exercise of reasonable diligence should have been discovered the alleged misappropriation of trade secrets by April 2021. Therefore,

any alleged misappropriation of trade secrets by Chain and CEL was not brought within the two year period proscribed by Ala. Code § 8-27-5. Accordingly, Plaintiff's claim against Chain and CEL for misappropriation of trade secrets is due to be dismissed.

**F.    Count 16 of the Complaint is Barred by the Applicable Statute of Limitations and Therefore Must Be Dismissed for Failure to State a Claim.**

Count 16 of Plaintiff's Complaint alleges "Conspiracy to Commit Theft of Trade Secrets in Violation of the Alabama Trade Secrets Act" as to "All Defendants." Alabama's Trade Secrets Act is found at Ala. Code §§ 8-27-1 – 8-27-6.

Ala. Code § 8-27-5 states "[a]n action for misappropriation must be brought within two years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."

Count 16 of Plaintiff's Complaint contains the following general allegations:

Chain, CEL, Cevon, Stronghold, Treis and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti), for their personal benefit, conspired to misappropriate WAO2. Doc. 52, ¶ 550.

Chain, CEL, Cevon, Treis and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti) conspired to block Plaintiff's Developer Fee. Doc. 52, ¶ 552.

Chain, CEL, Cevon, Treis, and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti) performed acts to effect the object of the conspiracy. Doc. 52, ¶ 553.

While the more specific allegations contained in Plaintiff's Complaint, referenced numerous times previously in this motion, and the existence of the Delaware lawsuit between the Chain and Treis entities, referenced in Plaintiff's Complaint, logically undermine the existence of a conspiracy between the above-referenced entities, the more important fact remains that, according to Plaintiff's Complaint, Chain and CEL were cut out of any relationship with the other parties in this lawsuit due to Plaintiff's knowledge and suspicions about the very acts being alleged against Chain and CEL in April 2021, more than two years prior to the filing of this lawsuit. Doc. 52, ¶¶ 136, 145-147, 149-150, 153-154. Therefore, any alleged misappropriation of trade secrets by Chain and CEL was not brought within the two year period proscribed by Ala. Code § 8-27-5. Accordingly, Plaintiff's claim against Chain and CEL for conspiracy to commit theft of trade secrets in violation of the Alabama Trade Secrets Act is due to be dismissed.

**G.    Count 17 of the Complaint Must Be Dismissed for Failure to State a Claim.**

Count 17 of Plaintiff's Complaint alleges "Work and Labor" as to "All Defendants." As it pertains to this Defendant, Plaintiff makes the following allegations:

"In the alternative, if the court finds there was no valid contract, Plaintiff performed thousands of hours of work and labor at the direct request of Defendants Treis, Chain, CEL, Cevon, Pence, Bolick, Smith and Lamberti." Doc. 52, ¶ 556.

"The work was performed due to direct requests from Defendant Treis, Chain, CEL, Cevon, Pence, Bolick, Smith, and Lamberti." Doc. 52, ¶ 560.

"Defendants Treis, Chain, CEL, Cevon, Pence, Bolick, Smith, and Lamberti continually requested improvements to WAO2 and required that Plaintiff work additional hours to meet their needs." Doc. 52, ¶ 561.

Plaintiff has cited to no federal law or statute governing a cause of action for "work and labor done," so it must be presumed that Plaintiff is asserting a state law claim based on the laws of Alabama. The first deficiency in Plaintiff's pleading is that Plaintiff brings this cause "if the court finds there was no valid contract." In Alabama, in order to recover for work and labor done, a contract must exist, either express or implied. *Stewart v. Robertson*, 490 So.2d 13, 15 (Ala. Civ. App. 1986).

The second problem with this cause of action, as pled by Plaintiff, is the nature of the alleged contract Plaintiff has pled. This Defendant was alleged to be performing services for the Plaintiff, not the other way around. Plaintiff claims that

"Plaintiff, Chain, and/or CEL entered into a broker style arrangement in they would equally share all profits from any contract **Defendant procured** for Plaintiff's WAO2." Doc. 52, ¶ 423. (emphasis added). Defendant was the one performing the work; Plaintiff provided the product Defendant "brokered." The Alabama Court of Civil Appeals has stated "[t]he rule is that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered." *CIT Group/Equip. Fin., Inc. v. Roberts*, 885 So. 2d 185, 189 (Ala. Civ. App. 2003).

Here, as pled, it was the Plaintiff accepting the services being rendered by this Defendant. Nothing in Plaintiff's Complaint indicates Plaintiff was expecting payment for his labor from these Defendants; he was expecting payment for his alleged intellectual property, a product. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted and this count against this Defendant is due to be dismissed.

**H.    Count 18 of the Complaint Must Be Dismissed for Failure to State a Claim.**

Count 18 of Plaintiff's Complaint alleges "Quantum Meruit" as to "All Defendants." As it pertains to this Defendant, Plaintiff makes the following allegations:

"In the alternative, if the court finds there was no valid contract, Plaintiff performed thousands of hours of work and labor at the direct request of Defendants . . .Chain, CEL . . ." Doc. 52, ¶ 567.

"Plaintiff performed this work with the expectation of compensation as his services are extremely valuable." Doc. 52, ¶ 568.

"Defendants . . .Chain, CEL . . .continually requested improvements to WAO2 and required that Plaintiff work additional hours to meet their needs." Doc. 52, ¶ 571.

Alabama law is clear that "[r]ecovery on a theory of quantum meruit arises when a contract is implied." *Mantiply v. Mantiply*, 951 So.2d 638, 656; 2006 Ala. LEXIS 96, **41 (Ala. 2006) (citing *Brannan & Guy, P.C. v. City of Montgomery,* 828 So.2d 914 (Ala. 2002)). Further, "where one knowingly accepts services rendered by another, and the benefit and the result thereof, the law implies a promise on the part of the one accepting with knowledge the services . . . to pay the reasonable value of such services." *Id.* (internal citations omitted).

Further, "the plaintiff must show that it had reasonable expectation of compensation for its services." *Id.* (internal citations omitted).

In this case, the only contract alleged by Plaintiff is one in which he retained Chain and CEL to market **his** product, WAO2. Doc. 52, ¶ 116. Any work Plaintiff did on WAO2, which he claims to have owned throughout the entirety of his

Complaint, was for **his own benefit.** The benefit to Plaintiff (and anyone else involved in the selling and or/marketing of WAO2) occurred when the product was sold. It was in the Plaintiff's own best interest to improve his product for sale. Nothing in Plaintiff's allegations indicates that he had an express or implied labor contract with these Defendants (who he alleged were working on his behalf as a broker) to work on a product the Plaintiff claims to have developed and owned independent of the Defendants.

Accordingly, Plaintiff's Complaint fails to state a claim for quantum meruit and this count is due to be dismissed.

I.      **Count 6 of the Complaint Must Be Dismissed for Failure to State a Claim.**

Count 6 of Plaintiff's Complaint alleges "Unjust Enrichment" as to "All Defendants." As it pertains to this Defendant, Plaintiff makes the following allegations:

"Defendants Chain [and] CEL . . . received hundreds of hours of Plaintiff's work without compensating him for same." Doc. 52, ¶ 410.

Under Alabama law, a claim for unjust enrichment requires the plaintiff to show " (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Invs., LLC*, 77 So.3d 139, 145 (Ala. 2011).

Plaintiff's claim for unjust enrichment is essentially the same as Plaintiff's claim for quantum meruit and fails on its face for the same reasons. Simply put, there was no expectation from Plaintiff at any point in his allegations that he would be compensated for his labor from someone he alleged was acting as a broker on his behalf. Compensation was expected at the end of the process, when the product resulting from the labor could be marketed and sold.

## CONCLUSION

For the reasons set forth above, Chain and CEL respectfully request the Court dismiss Counts 1, 5, 6, 9, 13, 16, 17, and 18 for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

*/s/ Clifton E. Slaten*

**CLIFTON E. SLATEN (ASB-4091-N73C)
ATTORNEY       FOR       CHAIN
ENTERPRISES, LLC and JOHN CHAIN**

**OF COUNSEL:
SLATEN LAW, P.C.
7027 Halcyon Park Drive**
Montgomery, Alabama  36117
(334) 396-8882 Telephone
(334) 398-8880 Facsimile
cslaten@slatenlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of July, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com

Joshua J. Jackson
SAMFORD & DENSON, LLP
P.O. Box 2345
Opelika, AL 36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com

Carissa V. Sears
The Sears Law Office, LLC
7887 E. Belleview Ave. Suite 1100
Greenwood Village, CO 80111
carissa@searslaw.org

Hunter S. Freeman
KIM LAHEY &
KILLOUGH LAW FIRM
3620 Pelham Road, PMB #213
Greenville, SC 29615
Phone: (864) 973-6688
hfreeman@kimandlahey.com

*/s/ Clifton E. Slaten*
**Of Counsel**