UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARK GRAMS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.  3:23-cv-00299—** |
| | | **RAH—SMD** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **TREIS BLOCKCHAIN, LLC,** | | |
| ***et al.*,** | | |
| **Defendants.** | | |

## RESPONSE TO DEFENDANTS' RENEWED MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Plaintiff Mark Grams, by and through undersigned counsel, submits his response as follows:

## INTRODUCTION

WAO2 is a computer program protected by federal copyright law. The Treis Defendants are a group of sophisticated technology investors.  Boiled down, their defense is that they were allowed to steal from Grams because he didn't make them sign a nondisclosure agreement.  This is simply not an accurate representation of Alabama law.  Grams has plausibly alleged facts demonstrating Treis knew WAO2 must be kept confidential and agreed to do so.  This is what the law requires.

Next, Defendants claim that all their crimes are protected by ATSA's preemption clause because they had to lie, cheat, and steal in order to pull off their various schemes. This argument fails for two reasons. First, Grams asserts common law tort claims to recover his injuries outside of the misappropriation of his intellectual property. Specifically, Treis's theft of his currency and his labor. Currency and labor are not trade secrets; accordingly claims for their theft are not preempted by ATSA. Second, to the extent Treis's misappropriation of Grams's intellectual property also supports common law theories of recovery, these are not preempted if the jury finds that WAO2 is not a trade secret. Grams may plead alternative theories of recovery.

Finally, Defendants argue that they are immune from RICO liability because they do not see themselves as "criminals." It is well established that even well-respected businesses will be held liable for violating RICO. Grams alleges the Treis Directors convinced him to surrender control of WAO2 under false pretenses, blocked his Developer Fees, stole currency, defrauded him into working for them for thousands of hours without compensating him, infringed his copyright by distributing WAO2 to Stronghold without his permission, then threatened and slandered him when he tried to assert his rights. In so doing they violated several federal laws, dozens of times, over a period spanning at least three years. Grams has plausibly alleged the Treis Directors violated RICO. While Stronghold did not

become involved until later, Stronghold conspired to participate in Treis's RICO scheme to continue infringing on Grams's copyright and steal his Developer Fees. Grams has sufficiently alleged Stronghold violated RICO's conspiracy provisions.

## BACKGROUND

The Court is familiar with the background of this case. Grams includes fact specific references to the First Amended Complaint ("FAC") throughout his argument as appropriate to demonstrate the factual basis for each claim. This brief responds to the arguments raised by Stronghold, Treis, Cevon, and Treis's Managing Directors. Responses related to Chain and Chain Enterprises, LLC are briefed separately.

## STANDARD OF REVIEW

A pleading survives a motion to dismiss when it states a claim for relief that is plausible on its face. *Warne v. Hall*, 373 P.3d 588, 591 (Colo. 2016). In assessing plausibility, the court accepts as true all well-pleaded factual allegations. *Id.* at 589. A claim is plausible if the factual content allows the Court to draw a reasonable inference the defendant is liable. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court "must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Rotor Blade, LLC v. Signature Utility Services, LLC*, 545 F.Supp.3d 1202, 1211 (N.D. Ala. 2021); quoting *Sun Life Assurance C. v. Imperial Premium Fin., LLC,* 904 F.3d 1197, 1207 ( 11th Cir.). The complaint need

not contain "detailed factual allegations" so long as it it not a conclusory and formulaic recitation of the elements of each offense. *Id.*

## I. Grams has Plausibly Alleged the Defendants Misappropriated his Trade Secret.

### A. Defendants Misappropriated WAO2 in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*

The Defense of Trade Secrets Act makes it illegal to misappropriate a trade secret and grants its owner a private cause of action under 18 U.S.C. § 1836(b). Anyone who "with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly" (1) obtains such information by fraud, artifice, or deception, or (2) without authorization copies, alters, or delivers such information, or 3) possesses such information, "knowing the same to have been" converted without authorization, commits theft of trade secrets. 18 U.S.C. § 1832. It is illegal to even continue possessing a trade secret in knowing defiance of the owner's rights. *Id.*

The Treis Defendants acquired WAO2 by fraud, artifice and deception. 18 U.S.C. § 1832(a)(1). Treis later delivered WAO2 to Stronghold without Grams's consent. 18 U.S.C. § 1832(a)(2). Stronghold and Treis continue to possess WAO2 "knowing the same have been stolen or appropriated, obtained, or converted"

without Grams's authorization. 18 U.S.C. § 1832(3). Grams believes Treis and/or Stronghold have altered WAO2 to block his Developer Fee. 18 U.S.C. § 1832(2). And they have conspired with each other to continue to profit from WAO2 and avoid paying Grams his Developer Fee. 18 U.S.C. § 1832(5). Grams has plausibly pleaded that the Treis Defendants and Stronghold have misappropriated WAO2.

Defendants impliedly admit Grams has plausibly pleaded misappropriation. They argue instead that WAO2 is not a trade secret.

Trade secrets include computer programs and codes such as WAO2. 18 U.S.C. § 1839(3). In order to attach protection of a trade secret, the owner must allege he engaged in reasonable efforts to keep the program confidential. *Id.* 18 U.S.C. § 1839(3)(A). "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *Rotor Blade, LLC v. Signature Utility Services, LLC*, 545 F.Supp.3d 1202, (N.D. Ala. 2021) quoting *S. Field Maint. & Fabrication LLC v. Killough ("Southern Field I")*, No. 2:18-CV-581-GMB, 2018 WL 4701782, at *6 (M.D. Ala. Oct. 1, 2018) (quoting *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011)); *Drill Parts & Service Co. v. Joy Manuf. Co.*, 439 So.2d 43, 49 (Ala. 1983).

The Treis Defendants argue that WAO2 isn't a trade secret because Grams didn't make them sign an NDA. Their defense fails in three ways. First, it is premature. "Whether something is a trade secret is a question typically 'resolved by

a fact finder after full presentation of evidence from each side.'" *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020); *S. Field Maint. & Fabrication LLC v. Killough*, No. 2:18-cv-581—GMB, 2019 WL 360515, at *4 (M.D. Ala. Jan. 29, 2019. Second, WAO2 is a work that from inception carried federal copyright protection, putting the world on notice it could not be used without permission of the author. Third, Grams only shared WAO2 with sophisticated parties who agreed to keep it confidential, and only as necessary to monetize the program.

1. <u>Whether Grams's efforts to keep WAO2 confidential were reasonable under the circumstances is an issue of fact for the jury.</u>

Under both state and federal law, whether Grams's efforts to maintain the secrecy of WAO2 were reasonable is an issue of fact for the jury. *Soap Co. v. Ecolab, Inc.*, 646 So.2d 1366, (Ala. 1994); *S. Field Maint. & Fabrication LLC v. Killough*, No. 2:18-cv-581—GMB, 2019 WL 360515, at *4 (M.D. Ala. Jan. 29, 2019); *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020); *Tax Track Sys. Corp. v. New Inv. World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007).

There is "no precise definition of what 'reasonable measures' are; what is reasonable depends on the situation." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 768 (10th Cir. 2011). Instead, "the reasonableness of the measures employed to maintain secrecy of a trade secret …is a function of the nature of the purported secret, the economic value of the secret relative to the costs of employing

various security measures, the probability of misappropriation, the magnitude of the harm that would result from misappropriation, the size of the business and the number of its employees, and the extent of the business's need to disseminate the secret to exploit its economic value. WWMAP*, LLC v. Birth Your Way Midwifery*, 5:23-cv-243—MJF, 2024 WL 151411 (N.D. Fla. Jan. 10, 2024); *see also Ecolab*, (reserving for the jury to determine whether placing papers containing trade secrets in a dumpster destroyed their confidential nature; *Mason v. Jack Daniel Distillery*, 518 So.2d 130 (Ct. Civ. App. Ala. 1987) (disclosing recipe to only a few employees and preparing beverages out of public view displayed sufficient reasonable effort).

"[O]nly in an extreme case can 'what is reasonable' precaution be determined [even] on a motion for summary judgment, because the answer depends on a balancing of costs and benefits that will vary from case to case." *Rockwell Graphic Sys., Inc. v. DEV. Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991). "Courts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets." *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1134, 1141 (M.D. Fla. 2007). It is "not a matter that should be addressed at this early point in the litigation." *Parker v. Petrovics*, 2:19-cv-00699, 2020 WL 3972761, at *6 (N.D. Ala. Jul. 14, 2020) (refusing to dismiss trade secret claim pursuant to 12(b)(6) based on alleged insufficient secrecy efforts).

### 2. By their nature, unpublished computer programs are confidential.

Unlike customer lists and drawings, computer programs carry indicia of confidentiality because they receive federal copyright protection from the minute they are authored. 17 U.S.C. §§ 102, 106. "Anyone who violates any of the exclusive rights of [an author] is an infringer of the copyright or right of the author." 17 U.S.C. § 501(a). Said author is entitled "to institute an action for any infringement of that particular right[.]". An NDA could not protect WAO2 anymore than federal law already does.

### 3. Grams plausibly alleges Defendants knew they needed to keep WAO2 confidential, agreed to do so, and actually did so for years.

A division of this court recently held that when only a limited number of participants had access to a trade secret, that was kept password protected, efforts to maintain secrecy were reasonable. *S. Field Maint. & Fabrication LLC v. Killough*, No. 2:18-cv-581—GMB, 2019 WL 360515, at *4 (M.D. Ala. Jan. 29, 2019); *see also*, *ClearOne Advantage, LLC v. Kersen*, No. JKB—23-03446, 2024 WL 69918, (D. Md. Jan. 5, 2024).

The issue is not whether in hindsight there were additional protections an owner could have instituted, but whether it is plausible that a jury could find the steps the owner did take were reasonable based on the information the owner had at the time. *Nephron Pharma. Corp. v. Hulsey*, No. 6:18-cv-1573—Orl-31-LRH, 2020

WL 7684863, *13 (M.D. Fla. Oct. 7, 2020). Important in the analysis is the extent to which sharing the information was the only way to monetize it. *Rockwell*, 925 F.2d at 179. Courts also consider whether the information was in fact kept confidential by the group until the violation. *See, e.g. Mason v. Jack Daniel Distillery*, 518 So.2d 130 (Civ. App. Ala. 1987) ("The testimony also reflected that Mason's efforts to keep the recipe to Lynchburg Lemonade a secret were apparently successful, until Winston Randle learned the recipe. It appears that one could not order a Lynchburg Lemonade in any establishment other than that of the plaintiff.")

Defendants try to reduce a highly nuanced and fact intensive analysis to a bright line test—whether the author made the recipient sign a nondisclosure agreement. This is not what the law requires. What matters is not whether the owner of the trade secret reduces a confidentiality obligation to writing (ie: with an NDA) but whether the recipient of the trade secret "knows or has reason to know that the owner intends or expects the information to be secret." *S. Field Maint. & Fabrication LLC v. Killough*, No. 2:18-cv-581—GMB, 2019 WL 360515, at *4 (M.D. Ala. Jan. 29, 2019) *quoting Lasermaster Corp. v. Sentinel Imaging*, 931 F.Supp. 628, 635 (D. Minn. 1996). If the owner alleges the recipient had reason to know the information is secret, the confidentiality measures "are sufficient." *See also United States v. Lange,* 312 F.3d 263, 266 (7th Cir. 2002) (J. Easterbrook) ("This makes it irrelevant that [owner] does not require [recipients] to sign confidentiality

agreements; it relies on *deeds* (the splitting of tasks) rather than *promises* to maintain confidentiality.").

Defendants rely on *Physiotherapy Assoc., Inc. v. ATI Holdings, LLC*, 592 F.Supp.3d 1032 (N.D. Ala. 2022), which held that while use of password protection shows reasonable secrecy, it should be paired with other substantial efforts. As a preliminary matter, Grams did engage in other substantial efforts. Moreover, *Physiotherapy* is in most ways inapposite. The claimant in *Physiotherapy* was a large, sophisticated business that stored confidential documents on a server that all of its area vice presidents, regional vice presidents, regional directors of sale, direct and indirect managers, supervisors, and those involved with individual customers had access to. Critically, *Physiotherapy* never told the employees that any of the documents on the server were confidential, never marked any of the documents confidential, never told anyone the information should be kept secret, and the employees had no reason to suspect that the documents were confidential. Meanwhile, *Physiotherapy* did have a written contract with the defendant employee and had not bothered to include any confidentiality provisions even though it included such provisions in other employee's contracts

More analogous is *Parker v. Petrovics*, 2:19-cv-00699, 2020 WL 3972761, (N.D. Ala. Jul. 14, 2020), in which the defendant manipulated an owner to share his confidential idea for an 'app.' The owner then presented the idea to the public at an

entrepreneurial event for budding professionals. He was hesitant to publicize the secret, but reassured by the defendant that the purpose was to "help promote and facilitate his concept." *Parker*, at *2. In reality, the defendant had invited fellow conspirators to attend the invent to misappropriate the idea. Perhaps guided by his entrepreneurial courses, the owner had presented the defendant a proposed nondisclosure agreement—which they refused to sign. Yet the court refused to dismiss, finding the plaintiff plausibly alleged he tried to maintain the secrecy of his idea under the circumstances.

Grams and Treis were not competitors, they were collaborators engaged in a joint venture. Grams couldn't monetize WAO2 without machines, and Treis's machines couldn't outperform their competitors without WAO2. The Treis Directors were not unsophisticated employees in a huge corporation, they were a handful of tech savvy investors.

Grams opens his complaint with the allegation: "Treis knew it did not own the firmware, had no right to sell it, and was, in fact, responsible for maintaining its secrecy." FAC at § 5. An early email exchange between Chain and Bolick demonstrates that the group knew the information was confidential, that it was extremely important to keep it so, and that they contemplated exchanging NDAs but

decided to proceed instead on oral agreements and trust.[1]  (FAC ¶¶ 79-80) (offering to circulate an NDA, referring to WAO2 as "proprietary IP" the "security of the info" must be "stringently" maintained, and eventually proceeding on a handshake "Please hold in confidence…."). Grams further alleges the group in fact kept WAO2 confidential, right up until the minute Treis sold it.  FAC ¶ 4, 29-38.  Grams has plausibly alleged sufficient facts for a jury to find he engaged in reasonable efforts to maintain the confidentiality of WAO2. (FAC ¶¶ 79, 201-06; 429-32).

**B.    The Treis Defendants Misappropriated WAO2 in violation of the Alabama Trade Secrets Act ("ATSA"), § 8-27-1, *et seq.***

Defendants do not present any argument under state law that requires separate analysis.

**II.    Grams's Common Law Claims are not Preempted by ATSA because They are not Premised on the Same Factual Allegations.**

Unlike its federal counterpart, ATSA preempts common law claims that seek recovery for misappropriation of a trade secret.  Defendants argue that Grams's common law claims are preempted by ATSA because they couldn't pull off their misappropriation of WAO2 without engaging in other misconduct.  However, a

_____

[1] Treis alleges Grams distributed WAO2 to Chain and a third party without a nondisclosure agreement.  Defendants may not inject their own factual allegations—the purpose of a motion to dismiss is to test the sufficiency of the complaint.

division of this court recently held that ATSA's preemptive scope does not sweep nearly so broadly. *Movement Mortgage, LLC v. CIS Financial Services, Inc.*, 670 F.Supp.3d 1282, 1289 (N.D. Ala. 2023) (preemption applies only to the same set of facts underlying a misappropriation claim not all misconduct the defendants engaged in to accomplish their scheme). Grams alleges violations of common law to redress his injuries other than the misuse of his intellectual property, such as theft of his money, labor, and reputation. These are based on "separate facts" occurring long after Treis misappropriated WAO2 in summer of 2020 and are not preempted.

**A.  Grams's conversion of currency claim is not preempted by ATSA.**

To state a claim for conversion a plaintiff must plausibly allege "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of [his] property, or a wrongful detention or interference with [his] property." *Huntsville Golf Dev., Inc. v. Ratcliff, Inc.*, 646 So. 2d 1334, 1336 (Ala. 1994). A conversion claim is not preempted by ATSA to the extent the claim is directed at the theft of materials that are not trade secrets. *Rotor Blade, LLC v. Signature Utility Services, LLC*, 545 F.Supp.3d 1202, 1226 (N.D. Ala. 2021) (taking of physical property in order to copy design was not preempted).

Grams states his conversion claim in Count XII, Paragraphs 478-84. Nowhere in these paragraphs does Grams mention WAO2 or any trade secret. Rather, Grams states explicitly that Defendants converted "substantial sums of money" and that he

"lost use of those monies." (¶ 483). In his general allegations, incorporated by reference, he adds further detail about how the Treis Defendants were blocking his receipt of his Developer Fee and redirecting the funds for their own benefit. (¶ ¶ 269; 278, 290(c)). Grams has plausibly stated a claim for conversion of his Developer Fees. Theft of currency is not preempted by ATSA because currency is not a trade secret.

**B.** **Grams's claim that Defendants were unjustly enriched by taking his currency and his labor are not preempted by ATSA.**

The doctrine of unjust enrichment "is an old equitable remedy permitting the court …to disallow one to be unjustly enriched at the expense of another." *Battles v. Atchison*, 545 So.3d 814, 815 (Ala.Civ.App. 1989). "One is unjustly enriched if his retention of a benefit would be unjust.").

1. <u>Labor</u>

The doctrine of unjust enrichment operates to imply a contract for labor when no oral or written contract was ever reached as to the value of a contractor's services, but performance was nonetheless made and knowingly accepted. *Autauga Creek Craft House, LLC v. Eddie Brust*, 315 So.3d 614, 628 (Ala.Civ.App. 2020). "It is the settled law of this State that where one knowingly accepts services rendered by another, and the benefit and the result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered." *Id.* (string quotation omitted). Such

"implied contracts normally arise in situations where there is a bargained for exchange contemplated by the parties, but no overt expression of agreement." *Id.* (quotations omitted). Grams's claim that Treis solicited thousands of hours of his labor without compensating him is not preempted by ATSA.

### 2. Slush wallet

An unjust enrichment claim may also be brought when the defendants "hold money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Intersport, Inc. v. T-Town Tickets LLC*, 896 F.Supp.2d 1106, 1114 (N. D. Ala. 2012) quoting *Hancock-Hazlett General Construc. Co., Inc. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986). Grams alleges Treis and Stronghold redirected the Developer Fees that should have been deposited in his 'slush wallet.' (FAC ¶¶ 141-48, 380) ("Treis was making hundreds of thousands of dollars in cryptocurrency while his percentage of those earnings was being blocked."; Grams suspected Chain was stealing from him; "CEL and Chain conspired to steal Grams's earnings in the developer wallet").

### C. Slander is not preempted by ATSA because it seeks to recover damages to reputation not to intellectual property.

To assert a prima facie case of defamation, the plaintiff must allege that the defendant was "at least negligent…in publishing a false and defamatory statement to another concerning the plaintiff," which is either actionable either per se or per quod. *Nelson v. Lapeyrouse Grain Corp.*, 534 So.2d 1085, 1091 (Ala. 1988). In

Alabama, accusing a person of stealing from you is slander *per se*. *Id.* In such cases, the law "infers injury to reputation as a natural consequence of the defamation and, as a result, the plaintiff is entitled to presumed damages." *Id.* at 1092. Grams alleges that Treis disparaged him when he reached out to Stronghold in in November of 2022 to let them know he was the true author and owner of WAO2, claiming that Grams was a liar and a thief. (FAC ¶¶ 270-72, 286, 296, 464, 466).

Treis's defense is that they had to lie about Grams in order to trick Stronghold, and therefore their slander was "nothing more than the improper means" they used to accomplish their misappropriation. First, Plaintiff's defense fails as a matter of law. "Improper means" in ATSA refers only to the acquisition of a trade secret. Ala. Code § 8-27-3(1). Treis does not allege it slandered Grams to *acquire* WAO2— they allege they slandered Grams so they could keep using it. When Treis slandered Grams in November of 2022 it had sold the program to Stronghold a year earlier, collected its profits, and didn't need to talk to Stronghold at all. Second, Treis could have talked to Stronghold without accusing Grams of being a thief and a liar. But most importantly, Grams's slander claim is based on a different set of factual allegations than his misappropriation claim. He does not seek a duplicative recovery for theft of a trade secret, he seeks a remedy for Treis's damage to his reputation.

**D.    Fraud is not preempted beyond its use to acquire a trade secret.**

As detailed above, ATSA only preempts actions for fraud used to acquire a trade secret. It does not apply to new instances of fraud that occur long after acquisition. Grams alleges numerous instances of fraud that Defendants engaged in to secure his continued free labor long after they had acquired WAO2:

"In April of 2021, Treis and its directors misrepresented to Grams that they would pay him his Dev Fee, would not disseminate his code, would protect his code, and they would not sell any machine containing his code." (FAC ¶ 442);

"On or about January 15, 2022 …[t]hat they did not know why Grams's access was blocked; [t]hat they would 'fix' the blockage; [t]hat Grams should keep customizing WAO2 for Treis" implying he would be compensated when they intended the opposite. (FAC ¶ 443-47);

Treis also "falsely represented to Grams that they would not sell machines containing WAO2," (FAC ¶ 451); and that they had removed WAO2 prior to the Stronghold sale (FAC ¶ 453). Because Grams's fraud allegations have nothing to do with Treis's efforts to acquire WAO2 but rather are based on misrepresentations Treis made long after the fact, they are based on separate facts and are not preempted.

### E. Tortious Interference

Plaintiff requests that the Court dismiss Plaintiff's tortious interference without prejudice and with leave to refile if additional supporting facts come to light through discovery.

### III. Grams has plausibly alleged that Defendants engaged in a RICO scheme to misappropriate WAO2, steal its profits, and discredit Grams as the firmware's actual author.

In accordance with the Court's order at ECF 98, Plaintiff respectfully incorporates by reference ECF 95, responding to Defendant's first motion to dismiss Plaintiff's RICO claims, and responds only to Defendant's new arguments below.

RICO is a complex set of statutes, the interpretation of which would easily fill a library shelf. The statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. 1992(c).

Of these elements, Defendants argue Plaintiff has failed to allege racketeering acts, an enterprise, or a pattern. Each will be addressed in turn. But first Plaintiff must address Defendant's theme that RICO doesn't apply to them because it only applies to 'criminals.' Defendants conjure the long-abandoned perception of RICO as a mafia statute targeted at thugs and mobsters. The United States Supreme Court

resolutely rejected such arguments forty years ago in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985); *see also King v. Gandolfo*, 714 F.Supp. 1180 (M.D. Fla. 1989).

The facts of *Sedima* are similar to this case, in that one corporation sued another for violating their joint business venture. Sedima became convinced Imrex was cheating it out of its share of the profits by presenting inflated bills and collecting nonexistent expenses. The only predicate acts alleged were mail and wire fraud based on their transatlantic communications. Observing that nothing in the RICO statute, which applies to "any person," suggests it should only be applied to 'criminals' as opposed to 'legitimate' businesses, the Court ruled that even respected businesses are not immune from liability for their unlawful acts. *Id.* at 498.

In *Al-Rayes v. Willingham*, this Circuit extended *Sedima* to find that even a wife and husband conspiring only with each other could be found liable under RICO. 914 F.3d 1302, 1308-09 (11th Cir. 2019). In that case, a wife helped her husband hide his assets in order to impede his creditor's attempts to collect on their judgment. The Circuit *reversed* the district court's mistaken belief that the husband and wife, managing only their personal funds, could not form an association-in-fact sufficient to violate RICO.

Other cases finding RICO violations under similar facts include *Lockheed Martin Corp. v. Boeing Co.,* 314 F. Supp. 2d 1198, 1221 (M.D. Fla. 2004) (one

competitor suing another for theft and use of trade secrets); *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F.Supp. 1084 (S.D. Fla. 1992) (insurance company sued single customer for underreporting receipts to avoid premiums); and *Water Intern. Network, U.S.A., Inc. v. East*, 892 F.Supp. 1477, 1482 (M.D. Fla. 1995) (one corporation suing another and its members for false invoicing and false representations over profitability).

But perhaps the closest fit is *Wicker v. Paramatma*, No. 2:19-cv-21-RWS, 2019 WL13212652 (N.D. Ga. 2019). In *Wicker* a few individuals conspired to steal from a single foreign investor. They created an entity to hold his investments, much like Treis created Cevon to purportedly hold WAO2, while they did not themselves contribute anything other than their services (Treis contributed $100). They cheated the investor by inflating expenses and stealing his real property.

Grams alleges that Defendants engaged in fraud to steal a copyrighted trade secret worth millions. Such acts are 'criminal.' Answering Defendant's question as to why Grams did not call the police? —Grams has no interest in seeing Treis and its Directors behind bars, or in dissipating their assets on defense costs. He has an interest in forcing them to reimburse him for everything they stole.

### A. Plaintiff's complaint plausibly states that Treis and its Managing Directors engaged in more than two acts of racketeering activity.

RICO defines racketeering activity as any of a long list of commercial crimes set forth at 18 U.S.C. § 1961(1). Relevant here, they include theft of trade secrets

(18 U.S.C. 1832); copyright infringement (18 U.S.C. § 2319(A) cross-referencing 17 U.S.C. § 506); and wire and mail fraud (18 U.S.C. §§ 1831 and 1833). Each single violation of any of these statutes constitutes a separate 'predicate act of racketeering activity' under RICO.

Defendants' argument that Plaintiff has not alleged sufficient racketeering activity teeters on their flawed and unsupported assumption that the Court cannot find that their dozens, if not hundreds, of acts racketeering activity are predicate acts simply because Plaintiff did not reference the federal statutes Defendants violated. [ECF 101, p. 40]. However, Defendants do not cite a single case applying this supposed mandate. Rather, courts maintain that "Rule 9 must be read in harmony with rule 8…. The object of rule 9 is to insure that the plaintiff provides a description of the claim sufficient to permit the defendant to intelligently answer the complaint." *King v. Gandolfo*, 714 F.Supp. 1180 (M.D. Fla. 1989). Plaintiff has alleged the *facts* necessary to state his claims for relief; Rule 9 does not require him to explicitly cite federal statutes. If, however, the Court finds that Grams's lack of citation to the federal statutes gave Defendant's insufficient notice, Grams respectfully requests leave to amend.

1. <u>Grams plausibly alleges Defendants engaged in numerous acts of misappropriation.</u>

Failing to limit the number of misappropriations they can be held accountable for, Defendants protest that while *acquiring* WAO2 was illegal their continued use

was not (ignoring their alteration, sale, and delivery to Stronghold, each of which was also a separate illegal act). Defendant's base their argument on the fact that 18 U.S.C. § 1832 does not contain "use" language. Their argument fails because § 1832 does not need to contain "use" language—mere possession is illegal. 18 U.S.C. § 1832(a)(3) (it is illegal to "receive[], buy[], or **possess**[] such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization.") (emphasis added).

Grams has alleged Treis and its Managing Directors initially obtained WAO2 by deception (fraud in the inducement). 18 U.S.C. § 1832(a)(1). He claims they later "download[ed], upload[ed], alter[ed] …"replicate[d], transmit[ed], deliver[ed], sen[t], mail[ed], communicate[ed], or convey[ed] WAO2 without his authorization. 18 U.S.C. § 1832(a)(2). He alleges at the time he filed his complaint both the Treis Defendants and Stronghold continued to possess WAO2 "knowing the same to have been stolen or appropriated, obtained, or converted without authorization." 18 U.S.C. § 1832(a)(3). He alleges the Treis Defendants conspired to violate 18 U.S.C. § 1832(a)(1) and (2). And he alleges Treis and Stronghold conspired with each other to keep WAO2 in their possession in defiance of Grams's rights. 18 U.S.C. § 1832(a)(5). Each of these violations of the law is a predicate act under RICO. 18 U.S.C. § 1961(B). Defendants engaged in at least six separate acts of racketeering activity by misappropriation, and further illegal acts as set forth below.

Finally, as the issue of whether WAO2 is a trade secret is an issue for the jury, as discussed in Section I, it is too soon to dismiss Plaintiff's RICO claim on that basis. Grams has plausibly pleaded Defendants engaged in acts of misappropriation.

2.     <u>Grams plausibly alleges Defendants engaged in criminal infringement of Grams's copyright.</u>

WAO2 is a firmware program protected as a literary work. 17 U.S.C. § 101. Grams is its author, and the law grants him complete control over its copying, use, and delivery. 17 U.S.C. § 201(a), (d). It is not necessary to register a work to obtain copyright protection, it is automatic. 17 U.S.C. § 408. It is a violation of the copyright act to infringe on an author's exclusive rights. 17 U.S.C. § 501(a). And the violation is criminal if it is committed "for purposes of commercial advantage or private financial gain." The Treis Defendants and Stronghold infringed on Grams's exclusive rights to control WAO2 to secure a commercial advantage and to secure private financial gains. Each act of infringement was an act of racketeering activity.

3.     <u>Treis and its Directors engaged in numerous acts of mail and wire fraud.</u>

18 U.S.C. § 1343 forbids the use of wires in support of a fraudulent scheme and 18 U.S.C. § 1961 makes the misuse of wires a predicate act. 18 U.S.C. § 1343 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted …any writings,

signs, signals …for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned[.]").  Each fraudulent communication is a separate predicate act.  *Water Intern.* 892 F.Supp. at 1482.

The crime of wire fraud stands independent of the ultimate objective, as the statute reflects a 'policy choice' to 'free the interstate wires from fraudulent use, irrespective of the object of the fraud."  *Pasquantino v. U.S.*, 544 U.S. 349, 358 (2005).   Misuse of either the internet or the telephone constitutes wire fraud.  *Id.* The facts in *Pasquantino* are resemble Grams's allegations, in that the participants schemed to import liquor without paying import taxes, much like Treis schemed to use WAO2 without paying Grams's Developer Fee.

Grams's Complaint details Defendants' acts of mail and wire fraud.

<u>Blocking the "wallet" to steal money</u>: Throughout the Complaint and within Claim V at ¶ 392 Plaintiff identifies that Treis and its Managing Directors used the internet to block and misappropriate his Developer Fee.  Each such redirection of funds was an act of wire fraud.

Emails and telephone calls:  In Claim V Grams also identifies the fraudulent scheme Defendants engaged in to mislead him into spending thousands of hours optimizing their machines, to deter him from going to Stronghold, and to blackball him in the cybercommunity with slander—all in an effort to keep the proceeds from the sale of the firmware they stole from him.   See e.g.  at ¶ 372: "Defendants have

conducted their affairs through a pattern of racketeering activity, including repetitive and continuous fraud, misrepresentation and theft," ¶ 378: "CEL, Chain, Cevon, Treis, and its Managing Directors [] all conspired" to defraud Grams, ¶ 388: "continued to make **false representations**…to make him continue working for them," ¶ 392: "repeatedly **defrauded** Plaintiff," ¶ 396 "**falsely** told Defendant Stronghold that they owned the right to sell the machines with WAO2 installed," ¶ 397: **false** assurances, ¶ 404: **false** slander to cover up crime. (emphasis added).

Each of these allegations relates back to paragraphs in the general allegations that explicitly state these conversations took place across state lines from Treis in South Carolina to Grams in Alabama and to Stronghold in Pennsylvania using electronic platforms: ¶¶ 66-73: Pence's fraud over groupchat to induce Grams to sign onboard; ¶¶ 86, 90-91: virtually all communications occurred by phone or internet; ¶ 89: Bollick and Pense make false representations via phone call; ¶¶101(a-f), 139(a-x), 177, 231-33, 240, 249-53: Bollick's perpetuation of the fraud via chat; ¶ 264-655: "Lamberti called Grams …[and] falsely assured Grams that Wao2 had been removed from the machines prior to sale." ¶ 283: "a scurry of conferences calls and emails were exchanged" that perpetuated the deceptions, ¶¶ 284-86 "In a call between Stronghold, Pense, and Treis's legal counsel Doug Kim, the group agreed they needed to work together against Grams" falsely accusing Grams of lying and stealing, ¶ 292-93: "During the call, Kim, Bollick, and Pence threatened Grams."

Grams has alleged that the Treis Defendants engaged in numerous racketeering acts, and that Stronghold chose to conspire with Treis to protect its profits. If permitted, Grams will develop in discovery how much money Stronghold stole from him, and how many times Stronghold used WAO2 in violation of his rights, infringed on his copyright, and communicated with the Treis Directors to maintain the scheme.

**B.      Grams has plausibly pleaded the existence of an enterprise.**

"A RICO enterprise exists 'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004). As this Circuit recognized in *Al-Rayes*, an enterprise "need not have a hierarchical structure or a 'chain of command,'" and the "group need not have a name, regular meetings, dues," etc. 914 F.3d at 1309 (quoting *Boyle v. U.S.*, 556 US 938, 948 (2009). Grams plausibly alleges that Pence, Bolick, Lamberti, Smith, and Treis formed an enterprise. The group, formally or informally, associated with the purpose of defrauding and stealing from Grams.

Defendants completely ignore Gram's argument that Treis and its directors, without any other person or entity, formed an enterprise. [ECF 95 at p. 7]. Apparently conceding their original argument that the intra-corporate conspiracy doctrine does not apply here, Treis pivots and instead argues that Grams hasn't

plausibly alleged the Treis enterprise extended to Chain or Stronghold. Grams does not need to. Whether Stronghold or Chain can be held to be part of Treis's enterprise does nothing to save those who clearly were.[2]

Stronghold: It is not uncommon for co-conspirators to be self-interested, to lie to one another, and even to cheat each other. They only need to successfully conspire toward one end—as they did here. Grams plausibly alleges that Stronghold joined in Treis's RICO conspiracy late in the game by continuing to use WAO2 after learning that Grams was its developer and Treis did not lawfully acquire it. Stronghold agreed to cooperate with the fiction that Grams was not the developer and blocked his Developer Fee for their own profit. It is puzzling that Treis argues it cannot possibly be working with Stronghold (ECF 101 at p. 37) when they have the same counsel. If they are at cross purposes, it would seem such dual representation would be a conflict of interest.

Cevon: Grams cannot know, prior to discovery, whether Treis actually believed Chain owned WAO2. It is entirely plausible based on Gram's allegations that Cevon was in fact formed exactly to steal WAO2 from Grams. Grams alleges that Treis and Chain largely cut him out of their communications around the time

_____

[2] Defendants overread *Pahmer v. Greenberg*, 926 F.Supp. 287, 300 (E.D.N.Y. 1996). *Pahmer* did not rule that a plaintiff cannot allege the existence of separate enterprises, it merely observed that the plaintiff in that case had unnecessarily divided one overall enterprise into three.

Cevon was formed and that Treis and its Directors knew WAO2 was worth way more than the $100 Treis contributed for it. (FAC ¶¶ 109-25). Grams interacted regularly with Treis directors on other issues but not one ever asked him whether he was a member of CEL, asked CEL to verify its ownership of WAO2, or asked Grams to sign the Cevon deal. (FAC ¶¶108, 117, 122). After Grams confronted Treis and Chain, Treis's directors continued to use the Cevon fiction to manipulate Grams. (FAC ¶ 128). Grams has plausibly alleged Cevon participated in Treis's RICO scheme.

Grams acknowledges that the Managing Directors with Treis may be the only enterprise he can establish on his current knowledge. Whether and to what extent other actors joined Treis's enterprise is an issue largely known only to the conspirators themselves. If this claim is dismissed as to other actors, Plaintiff respectfully requests that the dismissal of this claim as to those actors be without prejudice and with leave to replead as facts become known through discovery.

### C. Grams has plausibly pleaded that Treis and its Managing Directors' misconduct formed a pattern.

As RICO requires a "pattern" of racketeering activity a plaintiff must allege the enterprise engaged in at least two separate predicate acts. *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 237 (1989). Further, the acts must be related. "It is not the number of predicate[ acts] but the relationship that they bear to each other[.]" *Id.* at 238. Finally, there must be continuity—either "closed" or "open-ended." *Id.* at 241-

42.  A party may demonstrate continuity over a closed period "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242.  Open ended patterns involve "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.  Grams has plausibly alleged both closed and open-ended continuity.

        1.      <u>Grams has alleged the Treis Defendants engaged in a series of related predicates extending over a substantial period of time (close-ended continuity)</u>

For a plaintiff to allege close-ended continuity in the Eleventh Circuit, they must allege a pattern of racketeering activity lasting longer than one year. *New York Packaging II LLC v. Private D Capital Group Corp.*, No. 22-20276—CIV—MARTINEZ, at *6 (S.D. Fla. Mar. 1, 2023).  Courts also consider "the number of victims, number of racketeering acts, whether the injuries were distinct, complexity and size of the scheme, and nature or character of the enterprise or unlawful activity." *Id.* (quotation string omitted).  If the RICO allegation involves "only a single scheme with a discrete goal" courts have refused to find close ended continuity. *Id.*

<u>Duration</u>: Grams alleges the Treis Defendants began conspiring to defraud him on or about summer of 2020 and continue to this day, by continuing to possess WAO2 in violation of 18 U.S.C. § 1832 and by continuing to misrepresent that they

own it, that he is a thief, and by refusing to return his Developer Fees or unblock the wallet.

Number of schemes: .  Each time a defendant defrauds a victim to accomplish a different goal is considered a separate RICO scheme.  For instance, in *New York Packaging II LLC*, the court found that the defendants engaged in two separate schemes to defraud the same plaintiff—first by misrepresenting the safety of a product, and later by misrepresenting their capacity to ship a replacement.  *New York Packaging II LLC*, at *7.  However, "there is no requirement that the predicate acts each be a part of separate illegal 'schemes.'"  *Lockheed Martin Corp. v. Boeing Co.,* 314 F. Supp. 2d 1198, 1221 (M.D. Fla. 2004) (quoting *H.J. Inc.*, 492 U.S. at 237, 241–42 & n. 3).

Grams alleges that the Treis Defendants launched numerous fraudulent schemes as events unfolded over time:1) to obtain WAO2 under fraudulent pretense, 2) to block, redirect, and steal it's Developer Fees, 3) to induce Chain to convey legal ownership of WAO2 to Cevon, 4) to force Chain out of Cevon by filing a court action against him, 5) to induce Grams to optimize their machines without compensation, 6) to convince Stronghold they had the right to sell everything they contracted to deliver, 7) to hide the sale from Grams until long after it had occurred, 8) to convince Grams they removed WAO2 from the machines before selling them, and 9) to discredit Grams to Stronghold.

Differing injuries: Each scheme that the Treis Defendants accomplished damaged Grams and/or others differently. 1) Grams lost control of WAO2, a program worth millions, 2) Grams and Chain were conned out of their Developer Fees, estimated at $500,000, 3) Chain lost his membership in Cevon and his deal with Grams, 4) Grams lost thousands of manhours optimizing the performance of Treis's machines with WAO2 for free, valued at 1,000,000, 5) Stronghold overpaid for the machines it obtained, which were worth at most $3,500,000 without WAO2, and 6) Grams's reputation in the tight-knit cybercommunity was injured.

Number of victims: Grams was not the only victim of Treis's misconduct. First, the same fraud in the inducement Treis used to acquire WAO2 from Grams also defrauded Chain and Chain Enterprises. Then, Treis swindled Stronghold out of $7,000,000, by selling them machines controlled by WAO2 without ever divulging the machines depended on firmware Treis had no right to use.

Number of predicate acts: Grams has alleged at least two predicate acts; as detailed above he alleges that the Treis Defendants engaged in dozens, if not hundreds, of acts of racketeering activity. *See above* at Section III.A.

Complexity and size: Grams cannot know, until discovery, the full scope of Defendants' misconduct.

2. <u>Grams has alleged a pattern of racketeering activity that plausibly demonstrates open-ended continuity:</u>

Open ended continuity exists when racketeering activity is part of the defendant's regular way of doing business, or by its nature includes a threat of repetition. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S 229, 242 (1989); *Wicker v. Paramatma*, No. 2:19-cv-21-RWS, 2019 WL13212652 (N.D. Ga. 2019). The existence of such threat is measured not at the time of the motions, but at the time the scheme was discovered. "[I]t is no defense to argue that a threat of continuing activity did not exist because the scheme was discovered." *Continental Casualty Co. v. Cura Group, Inc.*, 2005 WL 8155321 (S.D. Fla. Apr. 6, 2005) quoting *Concern Sojuzvneshtrans v. Buyanovski*, 80 f.Supp.2d 273, 279 (D.N.J. 1999).

Open-ended continuity exists when the defendants retain control over the object of their scheme, or claim ownership of stolen property. *Wicker*, at *3 (defendants "claimed right to unilaterally control [the entity] and [another's] claimed ownership of the [real estate] provide sufficient threats of continuing racketeering activity to find that Plaintiff has adequately alleged open-ended continuity."). Treis and Stronghold continue to deny that Grams owns WAO2 or that they owe him his Developer Fees. And Grams has plausibly alleged they continue to possess it, with virtually unchecked capacity to continue to replicate, alter, and distribute it, or at least use it internally for illegal profit. There is "no natural end point" to frustrate

an author's attempt to reestablish control over his program. *Pataro v. Castellon*, No. 22-20866-CIV, 2023 WL 4025877, at *5 (S.D. Fla. May 9, 2023), *report and recommendation adopted*, No. 22-20866-CV, 2023 WL 4014794 (S.D. Fla. May 24, 2023). Meanwhile, with the number of victims Grams is already aware of and the ease with which Treis deceived him over a period of *years*, it certainly seems plausible that this is Treis's "regular way of doing business."

The Treis Defendants have in their hands a product that has already proven itself to be worth millions. They lied, cheated, and deceived their way into possession, lied to Stronghold to sell it, and continue to pretend that they are its rightful owners—a ruse they are unlikely to voluntarily set aside. They have engaged in racketeering acts since Spring of 2020, and continue to lie to this day, consistently perpetuating the illusion WAO2 is their intellectual property and they can sell it to whomever they please. The posture that Treis and the Managing Directors would have stopped selling WAO2 without intervening litigation is far-fetched, and Gram's allegation that they intend to continue to distribute it to new buyers is at least plausible. It is also plausible that Grams will learn of the sale, inform the purchasers they were defrauded, and the circle will continue. This is exactly what courts have found sufficient to establish open ended continuity.

## CONCLUSION

Defendants have failed to meet their burden to establish a basis to dismiss Plaintiff's claims. Plaintiff respectfully requests that this Court dismiss Plaintiff's Interference claim without prejudice and with leave to refile and DENY the remainder of Defendants' requests for relief. In the alternative, Plaintiff requests leave to amend his Complaint to cure any curable deficiencies.

Respectfully submitted this 16th day of August, 2024.

Respectfully submitted,

*/s/ Carissa V. Sears*
Carissa V. Sears (CO #33980)
The Sears Law Office, LLC
7887 E. Belleview Ave. Suite 1100
Denver, Colorado 80111
720.412.1172
***Attorney for Plaintiff***

# CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of August, 2024, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following counsel of record via e-mail:

Joshua J. Jackson
SAMFORD & DENSON, LLP

Hunter S. Freeman
KIM LAHEY & KILLOUGH LAW FIRM

Jonathan K. Corley
Whittelsey & Corley, LLC

Clifton Slaten
Slaten Law, P.C.

/s/ Carissa V. Sears
Carissa V. Sears