# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| MARK GRAMS,<br>    Plaintiff,<br><br>v.<br><br>TREIS BLOCKCHAIN, LLC, *et al.*,<br>    Defendants. | Case No. 3:23-cv-00299—RAH—SMD |

**PLAINTIFF'S RESPONSE TO DEFENDANTS JOHN CHAIN AND CHAIN ENTERPRISES, LLC'S RENEWED AND SUPPLEMENTAL PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED R CIV P 12(b)(6)**

Plaintiff Mark Grams, by and through undersigned counsel, submits his brief as follows:

## INTRODUCTION

The Chain Defendants' motion primarily rests on factual defenses inoperable at this stage of the proceedings. Grams has plausibly alleged that Chain asked Grams to let him be his agent then lied to him, stole from him, and infringed on his copyright in repeated acts of misappropriation. When caught, he did not confess but countersued Treis to manifest additional profit from his fraudulent scheme. Chain has not established any basis to dismiss.

## BACKGROUND

As Defendants' brief primarily rests on factual allegations, Grams sets forth responsive references to the First Amended Complaint within each argument section.

## ARGUMENT

## STANDARD OF REVIEW

Plaintiff incorporates the standard of review set forth in ECF 113.

I.      **Plaintiff has plausibly stated a basis for Counts 1, 5, 9, 13, 16, and 17.**

   A.   **Plaintiff has plausibly stated a basis for Count 1: Violation of the Defense of Trade Secrets Act.**

Misappropriation under the DTSA occurs when a person acquires a trade secret by improper means or discloses a trade secret beyond the restrictions established by the owner. 18 U.S.C. § 1839(5); 1836(b); 1836(3)(B), (C) (private right of action). "Improper means" include fraud or breach of a duty to maintain secrecy.

The Chain Defendants do not challenge the sufficiency of Gram's legal allegations or cite any authorities in support of their position that Grams has failed to state a claim for misappropriation. Instead, the Chain Defendants' sole argument is a factual one. They maintain that because Grams claims one defendant on one day acknowledged his ownership of WAO2 during a private conversation it is implausible that Chain misappropriated WAO2. Defendants confuse misappropriation with sale. Certainly, Chain's attempt to transfer ownership of WAO2 was legally inoperative. This does not absolve Chain or CEL from liability for their acts of misappropriation to acquire WAO2 in the first place, the fraud surrounding their delivery of WAO2 to Treis, or their attempt to convey ownership of WAO2 to Cevon. (FAC ¶¶ 47-58, 67, 101(c), 102-25). At best Chain has presented an implausible defense that would be an issue of fact for the jury.

   B.   **Plaintiff has plausibly stated a basis for Count 5: Violation of RICO.**

Plaintiff relies initially on its presentation of RICO in his most recent Treis Brief, ECF 113, commencing on page 18 and continuing through the brief; and incorporates per order of the Court the RICO argument advanced in its prior brief ECF 95.

1. <u>Grams has plausibly alleged that Chain and CEL committed more than one racketeering act.</u>

It is illegal to obtain a trade secret by fraud, artifice, or deception. 18 U.S.C. § 1832(1). Grams would never have provided Chain or CEL access to WAO2 if he knew Chain's true intention was to misrepresent to others that CEL owned it. (FAC ¶¶ 102-25). To convince Grams to share access, Chain misrepresented that he would share all proceeds of any deal with Grams equally. (FAC ¶¶ 47-58). He did not. Chain's misrepresentations convinced Grams to share access to WAO2 with Chain such that Chain obtained WAO2 "by fraud, artifice, or deception." This malfeasance alone constituted misappropriation.

It is also illegal to deliver trade secrets in excess of authorization. 18 U.S.C. § 1832(3). By abusing their confidential relationship, Chain delivered WAO2 to Treis by defrauding Grams into installing WAO2 on Treis's machines under false pretenses. This was the Chain Defendant's second act of misappropriation.

It is even illegal to *attempt* to deliver trade secrets in excess of authorization. 18 U.S.C. § 1832(3), 1839(5)(ii)(III). Chain knew that Grams only authorized WAO2 to be used on Treis's machines internally during the development phase, and that if Treis wanted to sell the machines to its third-party customers additional licenses would have to be negotiated. (FAC ¶¶ 59-63). Chain attempted to deliver to Cevon not a license but ownership. (FAC ¶¶ 102-25). This greatly exceeded Grams's restrictions on use in violation of DTSA. 18 U.S.C. § 1839(5).

Defendants argue that Grams has not alleged Chain and CEL committed any racketeering act other than theft of trade secrets and that Chain and CEL only stole WAO2 once—when they attempted to transfer ownership of WAO2 to Cevon. This argument fails for numerous reasons.

First, as set forth above, Chain violated DTSA not once but three times—once to acquire WAO2, once to deliver use to Treis, and once while attempting to convey ownership to Cevon.

Second, Grams alleges numerous acts of racketeering activity other than misappropriation. He alleges the Chain Defendants' racketeering activities began in February 2020, when Chain called Grams soliciting authorization to broker deals for WAO2. (FAC ¶¶ 47-58). At that time, Chain lied to Grams to induce him to agree, claiming he would share the proceeds of any deal equally, and not disclosing he intended to misrepresent to potential customers that CEL owned WAO2 or that Grams was a member of CEL. They engaged in numerous calls and online chats for over a year in which Chain continued to defraud Grams. ((FAC ¶¶ 66, 79-80, 101). Each of these misrepresentations was an act of wire fraud. Chain and CEL did not offer any basis to find otherwise.

Further, as detailed in the Treis Brief, WAO2 was protected by federal copyright law. By defrauding Grams into installing WAO2 onto Treis's machines under false pretenses, and then pretending he had the right to convey ownership of WAO2 to Cevon, Chain infringed on Grams's ownership rights. If Chain had stolen WAO2 and given or sold it to Treis it would be clear that he had infringed Grams's copyright. The fact that he conned the owner, his client, into doing so voluntarily makes him more culpable, not less.

  2. <u>Grams has plausibly alleged that Chain and CEL engaged in a pattern of racketeering activity.</u>

    *a)* *Grams has plausibly asserted that Chain and CEL engaged in a pattern of racketeering activity with closed ended continuity.*

The Chain Defendants acknowledge that schemes lasting a year are sufficiently continuous to find a pattern. Their sole argument for dismissal is a mischaracterization of fact: that Grams's allegations against Chain begin when Chain purported to convey ownership of WAO2 to Cevon and ended when Grams began to suspect Chain was in breach of their contract. These dates are false bookends.

Grams plausibly alleges that the Chain Defendants' racketeering activity began in February of 2020 and continued at least through November of 2021. (FAC ¶¶ 47, 149, 194). This is twenty-two months—substantially more than one year. Grams alleges that the Chain Defendants "countersued Treis for selling machines containing WAO2 in circumvention of Cevon's purported rights," a hard claim to establish if he was also admitting CEL stole it. Rather, the Chain Defendants continued to perpetuate their scheme and its profits well into winter of 2021. Accordingly, after discovery the jury may well find the Chain Defendants' malfeasance continued even longer than is currently known to Grams—and that Chain conspired with Treis, as Grams suspects. *See, e.g., New York Packaging II LLC v. Priv. D Cap. Grp. Corp.,* No. 22-20276-CIV, 2023 WL 2306690, at *7 (S.D. Fla. Mar. 1, 2023) ("But discovery may just as likely reveal that the alleged scheme lasted longer than seventeen months and touched more victims than RediBag identified[.]").

        b)    *Grams plausibly asserted that Chain and CEL engaged in a pattern of racketeering activity with open ended continuity.*

Chain approached Grams to steal WAO2 from him, then cut him out of the deal. He stole Grams's currency out of their partnership wallet and then even purported to transfer WAO2 itself—all without paying Grams a dime. He lied to Treis by pretending to own WAO2, pretending Grams was a partner in CEL, and pretending to convey WAO2 to Treis. He did not stop voluntarily—he was forced out by Grams when Grams caught him. Grams has certainly demonstrated that the Chain's "regular way of doing business" is to use the federal wires to defraud others, and then to steal from them.

### c) Grams plausibly alleged Chain and CEL formed an enterprise, that Cevon joined

Defendants essentially fault Grams for not knowing, without any discovery, whether Treis and CEL were conspiring. Grams has alleged sufficient facts to make it plausible, for instance that Treis knew WAO2 was worth more than the $100 Treis contributed to Cevon. Moreover, the Court may find that Chain, CEL, and/or Cevon were an enterprise even without Treis's involvement.

In *Crowe v. Henry, III,* plaintiff Crowe argued many possible configurations of an enterprise. 43 F.3d 198 (5th Cir. 1995). Both plaintiff and defendant had been involved in a joint farming venture, much like Grams and Chain were involved in a joint venture to monetize WAO2. The Fifth Circuit ultimately held that the joint venture itself was an enterprise, with an existence separate and apart from the defendant's racketeering activity by fraud and theft. This was sufficient for the Fifth Circuit to find an association-in-fact venture.

**C.  Plaintiff has plausibly stated a basis for Count 6: Unjust Enrichment**

A party is enriched when they 1) "knowingly accept[] and retain[] a benefit, 2) "provided by another," 3) who has a "reasonable expectation of compensation." *Gibson v. Outokumpu Stainless Steel USA, LLC*, Civ. No. 21-00103—JB—N, 2023 WL 2604812, *29 (S.D. Ala. Mar. 22, 2023). Their enrichment is unjust when the recipient "engaged in unlawful conduct," like "fraud, coercion or abuse of a confidential relationship." *Id.* at 145 (citations omitted).

Unjust enrichment will be found when the enriched party "acted in a fraudulent manner or abused their business relationship." *Patterson v. Joyhnson's Heavy Salvage, Inc.*, 541 F.Supp.3d 1316, 1324 (M.D. Ala. 2021). In *Patterson*, the recipient failed to honor the terms under which it received goods, never paying in full. A confidential relationship arises "between persons occupying fiduciary relations towards each other" and is not "confined to cases in which there is

any formal or technical relations of that character" but to any business relationship which "gave the one advantage of superiority over the other." *Cannon v. Gilmore*, 33 So. 659, 659 (Ala. 1903). The burden of showing that a transaction was "fair and righteous" in on the person who received the benefit.

### 1. Chain was enriched

Neither Chain nor CEL has ever 1) returned the currency he stole from the wallet, 2) offered to share any compensation or distributions Chain or CEL received from Cevon, 3) offered to turn over any membership rights in Cevon to Grams, 4) distributed any settlement funds received in the Delaware lawsuit. Rather, Chain and CEL retained all profits of their agency relationship with Grams in violation of their deal to share the proceeds 50/50. (FAC ¶ 51).

### 2. Chain's enrichment was unjust because it was procured by fraud and by abuse of a confidential relationship

Chain offered to help Grams monetize WAO2. (FAC ¶¶ 47, 116). The only contribution Chain had to offer the collaboration was his superior business acumen. But instead of honoring his role as Grams's agent, Chain violated the trust Grams placed in him, and abused their business relationship to 1) redirect Grams's share of the Developer Fees, 2) instruct Grams to perform work for Treis while never intending to share the profits, 3) attempting to deliver all rights to WAO2 to Treis in exchange for fifty percent of Cevon, 4) actually delivering the appearance of those rights and accepting fifty percent of Cevon. (FAC ¶¶ 140-47, 91, 100-13 121, 125). Chain and CEL's enrichment was unjust.

**D.  Plaintiff has plausibly stated a basis for Count 9: Misrepresentation.**

### 1. Grams has standing to pursue his fraud claims.

Chain protests that Grams has no standing to state a claim for lies he told Treis and its Directors. This is simply wrong. In Alabama, anyone foreseeably injured by a fraudulent

7

statement has standing to state a claim for their injuries. *Ex parte DaimlerChrysler Corp.*, 952 So. 2d 1082, 1090 (Ala. 2006). As *DaimlerChrysler* holds, "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place." *Quoting* 37 C.J.S. *Fraud* § 60, p. 344 (1943). Moreover, Chain lied directly to Grams, which is actionable.

Once uttered and relied upon, a fraudulent statement may continue to do damage for so long as it remains uncorrected. For this reason, tort law recognizes a duty to correct fraudulently misleading statements by disclosing the truth. *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1164 (10th Cir. 2008). CEL, through Chain, made numerous misrepresentations to Grams and apparently Treis, in violation of § 6-5-103. Based on the confidential relationship that existed between Chain, CEL, and Grams, Chain further violated his duty to be transparent with Grams about all material facts in the Treis/CEL negotiations. Ala. § 6-5-102.

Chain's refusal to correct the record and tell the world that Grams is the actual author and sole owner of WAO2 allowed him to continue receiving benefits from the lie to Grams's injury well into the Delaware litigation and even now.

   2.   Statute of limitations

If the Court finds that Chain was under a duty to correct his fraudulent statements, there are no allegations in the Complaint that would create a time bar to Grams's fraud claim. Further, as Chain acknowledges, whether a claim is time barred is typically an issue of fact for the jury. Chain relies solely on the allegation that Grams "suspected" Chain had "breached" their agreement in April of 2021. First, there is a difference between breach of contract and fraud. Second, discovery is likely to yield that Chain continued to lie well into May of 2021 and beyond, throughout the Delaware lawsuit that did not even start until November of 2021. Third, given the difference is only a few days long, a jury could find that Grams could did not know enough about

8

Chain's misconduct for his cause to accrue until May 4, 2021. If the Court dismisses this claim, Grams respectfully requests permission to replead if additional factual basis is revealed in discovery.

### E. Plaintiff has plausibly stated a basis for Count 13: ATSA

Defendants' only argument is that Grams's claim under ATSA is time barred. The analysis for ATSA is the same as for fraud, directly above at § E2.

### F. Plaintiff has plausibly stated a basis for Count 16: Conspiracy ATSA

Defendants' only argument is that Grams's claim under ATSA's conspiracy provision is time barred. The analysis for ATSA is the same as for fraud, directly above at § E2.

### G. Plaintiff has plausibly stated a basis for Counts 17 and 18: Work and Labor; Quantum Meruit

Again, the Chain Defendants present an issue of fact instead of law: whether Gram's work helped himself or Treis/Chain. They again present a false factual defense that Grams was working on WAO2 and therefore his labor only benefited himself. But Grams was not working on WAO2, which was complete when Chain approached him in February 2020. Grams was working to optimize WAO2 to work on Treis's machines—something that only benefited the Defendants. At best, this presents a factual defense for the jury to consider.

Defendant also presents a second misleading factual argument that because Chain was acting as Grams's broker Grams could not have been doing work for him. However, in the Delaware lawsuit, Treis claims that Chain presented Grams as an employee of Cevon. (FAC ¶ 189). He could not have maintained this ruse if he was not involved in directing Grams to perform work to optimize WAO2. (FAC ¶ 101(c)). Again, this is at best a factual defense for the jury to consider.

9

In Count VII, Grams states a breach of contract claim against Chain and CEL. As their collaboration was not put in writing, Grams does not know to which terms of that agreement will be denied by the Chain Defendants or what the jury will find to be the terms of their contract. Accordingly, Grams states alternative causes of action available to him under the law to address the fact that, to date, all of the Defendants have profited from Grams's thousands of hours of labor except the man who performed them—Grams himself.

## CONCLUSION

Defendants have not met their burden to state a basis for the Court to dismiss Plaintiff's claims. Grams respectfully requests that the Court DENY Defendant's motion in its entirety. Dated, this 23rd day of August, 2024.

Respectfully submitted,

*/s/ Carissa V. Sears*
Carissa V. Sears (CO #33980)
The Sears Law Office, LLC
Denver, Colorado 80220
720.412.1172
***Attorney for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of August, 2024, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following counsel of record via e-mail:

Joshua J. Jackson
SAMFORD & DENSON, LLP
Post Office Box 2345
Opelika, Alabama 36803-2345
jackson@samfordlaw.com

*/s/ Carissa V. Sears*
Carissa V. Sears