**IN THE MIDDLE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK GRAMS, | ) | |
| An individual Alabama citizen, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:23-CV-299-RAH |
| | ) | |
| TREIS BLOCKCHAIN, LLC,  ET. AL | ) | |
| | ) | |
|     Defendants. | ) | |

---

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

---

When taken as true, the Amended Complaint sets forth a breach of contract claim for unpaid compensation Plaintiff was promised for his development and implementation of the Firmware. Plaintiff's failure to take reasonable secrecy efforts defeats his misappropriation claims. His failure to obtain a confidentiality agreement from Treis is just one example of the unreasonableness of his secrecy efforts. Plaintiff's opposition admits Treis' only assurances of confidentiality came "long after acquisition" of the Firmware. Plaintiff also failed to take reasonable secrecy efforts when dealing with Chain, VNish and a computer fabricator, each of whom received the Firmware without *any* obligations of secrecy. Despite his duty to allege the secrecy efforts taken, the Amended Complaint fails to allege Plaintiff ever (1)

1

informed any of the *four* recipients the Firmware constituted a trade secret or (2) obtained an express confirmation the recipient would maintain the confidentiality.

Plaintiff has drastically changed his legal theory of his RICO claim in violation of Rules 8 and 9. *SE Prop. Holdings, LLC v. Braswell*, 2013 U.S. Dist. LEXIS 119130, *19 fn. 6 (S.D. Ala. Aug. 21, 2013) (sufficiency of Complaint must be evaluated on its contents, not a subsequent memo of law). The only predicate act referenced in the Amended Complaint is theft of trade secrets. FAC ¶ 372. Realizing one predicate act was insufficient, Plaintiff's prior opposition made passing reference to wire fraud. Dkt. 95, p. 2. Realizing his lack of secrecy efforts may doom his trade secret theft claim, Plaintiff alleges for the first time in the 15-month pendency of this case, that Defendants committed criminal copyright infringement. These new allegations fail because Plaintiff has not registered his copyright, and the "misrepresentations" do not rise to the requisite level of fraud.

Plaintiff's tort claims fail because they rely on the same actions that the Amended Complaint cites as constituting misappropriation. Therefore, they are pre-empted by the ATSA, regardless of whether Grams can prove that the Firmware is a trade secret. *See Allied Supply Co. v. Brown,* 585 So. 2d 33, 37 (Ala. 1991).

## I.   Plaintiff's Secrecy Efforts Were Unreasonable as a Matter of Law

Dismissal is appropriate because (1) no discovery is needed for Plaintiff to allege the reasonable secrecy *that he took*; (2) Plaintiff has the burden of

demonstrating that his secrecy efforts were reasonable; and (3) the case law is clear that failure to take basic and ordinary protective measures is grounds for dismissal.

### A. Plaintiff's unrestricted disclosure to third parties is conclusive.

"The plaintiff bears the burden of demonstrating…that it has taken reasonable steps to protect this secrecy." *American Red Cross v. Palm Beach Blood Bank, Inc*., 143 F.3d 1407, 1410 (11th Cir. 1998). Failure to allege the secrecy efforts subjects the claim to a motion to dismiss. *Wwmap, LLC v. Midwifery*, 2024 U.S. Dist. LEXIS 8849, *8-9 (N.D. Fla. Jan 10, 2024); *Physiotherapy Assocs. v. ATI Holdings, LLC*, 2019 U.S. Dist. LEXIS 157533, *30 (N.D. Ala. Sept. 16, 2019). Here, Plaintiff admits he: knowingly allowed Chain to market and distribute the Firmware; provided a demo copy of it to VNish; and allowed a computer fabricator to freely access it.  FAC, ¶ 51-53, 129-134 and 183-185. The Amended Complaint fails to identify *any* restrictions placed on any of these individuals. Because Plaintiff is required (but fails) to allege that secrecy efforts were taken, the clear and reasonable inference is that none were. Plaintiff's opposition does not contradict that no secrecy efforts were taken or allege that additional secrecy efforts could be included in a further amendment because Rule 11's duty of candor prevents him from doing so. No jury could find that reasonable secrecy efforts were taken under these circumstances. Plaintiff's failure to protect the Firmware occurred both *before* and

*after* he delivered it to Treis. Thus, the trade secret status of the Firmware was destroyed before it was ever in Treis' possession.

### B. Plaintiff admits that prior to receiving the Firmware, Treis never agreed to maintain confidentiality.

It is undisputed the Amended Complaint does not allege Treis agreed to maintain confidentiality *prior to receiving the Firmware*.  That is because Treis did not.  Plaintiff's opposition admits as much. Dkt. 113, pg. 17.   It is further undisputed that prior to receiving the Firmware, Treis was never requested to maintain confidentiality. Treis was the only party to request confidential treatment of its information. FAC, ¶ 79-80.  According to Plaintiff, the first time Treis indicated (verbally) that it would maintain confidentiality was in April of 2021, nearly a year after it received the Firmware in June 2020.  FAC, ¶ 65 & 442.

While secrecy efforts need not be extravagant, they must exist. There is nothing extravagant about taking basic and obvious precautions such as informing others of the trade secret, placing restrictions on access and obligating recipients to confidentiality. Dismissal is appropriate here because it is "readily apparent that reasonable measures simply were not taken." *DM Trans., LLC v. Scott*, 38 F.4th 608, 622 n.5 (7th Cir. 2022); *see also Physiotherapy Assocs. v. ATI Holdings, LLC,* 592 F. Supp. 3d 1032, 1040 (N.D. Ala. 2022) (finding as unreasonable the following secrecy measures: housing information on password-protected computer network and making information available only to a "few executives and managers");

*Alagold Corp. v. Freeman*, 20 F. Supp. 2d 1305, 1315 (M.D. Ala. 1998) (no reasonable secrecy when (1) employees needing to know information had free access; (2) company did not lock filing cabinets; (3) company did not mark information "confidential;" and (4) company did not require confidentiality agreements). Using password-protected servers is not enough: there must be additional protections. *Physiotherapy,* 592 F. Supp. 3d at 1041. The *Physiotherapy* Court noted that "confidentiality agreements exist in nearly every case where Alabama Courts have found reasonable secrecy efforts, and the *lack* of such agreements is a common thread in cases finding the opposite." *Id.* at 1042.

Plaintiff's reliance on *ClearOne* and *WWMAP* is misplaced because (a) those cases indicate that reasonableness depends on situational circumstances and (b) this case requires more secrecy efforts given that the first version of the Firmware had been stolen by a prospective buyer mere months before the second version was provided to Treis. Dkt. 1, ¶ 54-61. The *WWMAP* factors dictate that Plaintiff's "secrecy" efforts were unreasonable because (a) the value of the trade secret, which is allegedly "between seven and eight figures" (FAC ¶ 103), dwarfs the minimal costs of restricting access until assurances of confidentiality were obtained, preferably in writing; (b) history showed the probability of misappropriation was high; (c) the magnitude of harm caused by misappropriation would be "irreparable" (TRO – Dkt. 71, pg. 2; FAC ¶ 204) and (d) Plaintiff did not need to disseminate

software – he could have (i) stored the computers at his facility or (ii) purchased his own computers, cutting Treis out entirely. Furthermore, Plaintiff's reliance on *Mason* is inapposite because that case dealt with the disclosure to "a few" employees and "each one was specifically instructed not to tell anyone the recipe." *Mason v. Jack Daniel Distillery*, 518 So. 2d 130, 133 (Ala. Civ. App. 1987).

### C. Plaintiff's expectation of Confidentiality is insufficient.

Plaintiff, by installing the Firmware on Treis's machines, and *then* asking Treis to take security measures, and not requiring a confidentiality agreement at any point, "effectively abandoned all oversight in the security" of the Firmware. See *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018) ("implicit understanding" and mere verbal statements not enough for reasonable security measures). Plaintiff's belief that Treis "would not want anyone to steal hundreds of their valuable machines" (FAC ¶ 226), and Treis's alleged assurances it would take security measures are not sufficient to establish that *Plaintiff* took reasonably security measures to protect the Firmware. Plaintiff argues he need not take any secrecy efforts prior to disclosure of the Firmware based on his conclusory allegation that Defendant "knew" it needed to help maintain confidentiality. This unsupported allegation is insufficient because regardless of what Defendants knew, they *never agreed* to maintain confidentiality prior to

disclosure.  A mere expectation of secrecy is insufficient.  *See Greenberg v. Miami Children's Hosp. Research Inst., Inc*., 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003).

Plaintiff's reliance on *Nephron*, *Rockwell*, and *Killough* are misplaced. The plaintiffs in those cases took security measures far beyond any taken by Plaintiff and, unlike Plaintiff, they did so prior to disclosure. In *Nephron*, the Court denied summary judgment  where the plaintiff had all its employees execute confidentiality agreements; password protected all of its computers; and limited access to its secure network to its employees. *Nephron Pharms. Corp, v. Hulsey*, 2020 WL 7684863, at *42 (M.D. Fla. Oct. 7, 2020).

Plaintiff cites *Rockwell* to argue it is important to consider the extent to which sharing information is the only way to monetize it. What Plaintiff omitted is that in *Rockwell*, the trade secret owner required its employees to sign agreements not to disseminate the materials or disclose their contents, and outside vendors that were allowed access were "required to sign confidentiality agreements, and materials were stamped as proprietary material. *Rockwell Graphic Systems, Inc. v. Dev. Industries, Inc*., 925 F.2d 174, 177 (7th Cir. 1991).  Unlike *Rockwell*, Plaintiff did not need to share the Firmware to monetize it.

*Killough* is also distinguishable because the trade secrets were marked as confidential, the disclosure was made to a limited group of employees over whom the trade secret owner had control and prior to the disclosure, the employer "made

presentations and discussed with [the employees] the need to maintain the confidentiality of the information." *Southern Field Maint. & Fabrication LLC v. Killough*, 2019 U.S. Dist. LEXIS 13826, *4 (M.D. Ala. Jan. 29, 2019). That is a far cry from Plaintiff's unrestricted disclosure of unmarked trade secrets to third parties over whom he had no control.

*Parker v. Petrovics* is also no help to Plaintiff. In that case, the plaintiff alleged he expressed to the defendant "on multiple occasions that he was concerned about his idea being stolen and thereafter receiving her assurances that it would not." *Parker v. Petrovics*, 2020 U.S. Dist. LEXIS 123029, *13 (N.D. Ala. July 14, 2020). These assurances were provided *before* Parker disclosed his trade secrets. The Amended Complaint does not allege that *any* assurances of confidentiality were received from Chain, VNish or the computer fabricator to whom Plaintiff admittedly provided the Firmware. Even Treis's alleged assurances came well *after* it had received the Firmware.

### D. Plaintiff's lack of secrecy efforts is not saved by the Copyright Act.

Plaintiff's reliance on the Copyright Act fails for two reasons. First, the Copyright Act has *nothing* to do with confidentiality or protection of the idea and/process embodied within a trade secret. *See Google LLC v. Oracle America, Inc.,* 141 S. Ct. 1183, 1196 (2021) ("copyrights protect 'expression' but not the 'ideas' that lie behind it") and 17 U.S.C. § 102(b) ("in no case does copyright protection for

an original work of authorship extend to any idea, procedure, process, system, method of operation…embodied in such work." "[S]imply placing a copyright symbol on a presentation that Plaintiff freely distributed to multiple public officials without any statement that the contents were confidential does not transform information that is not otherwise secret into a trade secret." *Regalado v. Atrium Health*, 2023 U.S. Dist. LEXIS 241149, *5 (N.D. Ga. Oct. 31, 2023).

Second, Plaintiff is incorrect that the Firmware was not published. It was published when Plaintiff (a) offered to sell, license and/or lease the Firmware to third parties; (b) gave it to Chain/CEL to market in exchange for a Dev Fee; (c) gave a demo copy to VNish; and (d) provided it to Treis in exchange for the promise of a Dev Fee (some of which was paid). "Publication is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or *by rental, lease, or lending*." 17 U.S.C. § 101. Publication occurs "when an authorized offer is made to dispose of the work in any such manner[,] even if a sale or other such disposition does not in fact occur." *Brown v. Tabb*, 714 F.2d 1088, 1091 (11th Cir. 1983) (quoting Nimmer on Copyright § 4.04). Publication also occurs when copies are "given away" to the public, because a sufficient transfer of ownership has occurred. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1303 (11th Cir. 2012).

Third, there is no allegation that Plaintiff owns a valid copyright or that the copyright has been registered as is required for enforcement. *See* 17 U.S.C. § 411

("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title").

## II.    Plaintiff's Conversion Claim Is Preempted and/or Fails Because Failure to Pay Money That Is Contractually Owed Is Not Conversion.

The Amended Complaint does not allege that money was converted. It alleges Defendants converted Plaintiff's "property…thereby causing Plaintiff to suffer…loss of substantial sums of money." FAC ¶ 483. The Amended Complaint specifically references the Firmware as the "property" in question. FAC ¶ 374. As such, this conversion claim is preempted.

Even if the Amended Complaint could be read as alleging conversion of money, such a claim still fails. "Alabama appellate courts recognize that ordinarily a creditor cannot sue a debtor alleging conversion." *SouthTrust Bank v. Donely*, 925 So. 2d 934, 941(Ala. 2005). Money that is contractually owed is not "property" that can be converted. Currency does not become convertible property unless it is identifiable and was in the plaintiff's possession at one point in time. "When there is no obligation *to return the identical money*, but only a relationship of debtor or creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor." *Lewis v. Fowler*, 479 So. 2d 725, 727 (Ala. 1985).

### III.    Fraud/Slander That Accomplishes or Hides Misappropriation Is Preempted.

Unlike the criminal Theft of Trade Secrets statute, which applies only to the initial theft of the trade secret, the Defend Trade Secrets Act and the ATSA both apply to subsequent use and disclosure. *Fla. Beauty Flora v. Pro Intermodal L.L.C.*, 2020 U.S. Dist. LEXIS 124582, *28 (M.D. Fla. July 15, 2020) (theft of trade secrets necessarily implies they will be used; otherwise, every misappropriation of trade secrets could result in a RICO claim); *Ala. Code* § 8-27-3. Had Defendants not broken their promises, provided false assurances and then lied about their ownership, their acquisition, use and distribution of the Firmware would not constitute misappropriation. Plaintiff recognizes this, arguing "Defendants engaged in fraud to steal a copyrighted trade secret worth millions" and that Defendants' efforts "to keep WAO2 in their possession in defiance of Grams's rights is misappropriation."  Dkt. 113, pg. 20 & 22. Therefore, Plaintiff's fraud claims allege the same set of facts underlying his misappropriation claim and are preempted.

As discussed in Defendants' Motion, the Amended Complaint is replete with allegations that fraudulent statements were used to misappropriate the Firmware. Dkt. 101, pg. 27-28.  The Amended Complaint cites Defendants' false promise of a Dev Fee (FAC, ¶ 332-333) and their sale of the Firmware to Stronghold without authorization (FAC, ¶ 334-335) as instances of misappropriation.  Thus, fraudulent statements made for the purpose of achieving these actions relate to the same facts

upon which Plaintiff's misappropriation claims are based. Plaintiff argues, without any authority, that preemption cannot apply to statements made after the Firmware was initially acquired. That argument fails for at least two reasons. *First*, misappropriation is not limited to acquisition but also includes subsequent disclosure or use of the trade secret. *Ala. Code* § 8-27-3. Therefore, preemption applies where "the facts supporting each cause of action originate from the same allegations, specifically that the 'named Defendants . . . participated in the wrongful *use and/or disclosure* of the novel ideas, trade secrets and/or other confidential information of the Plaintiff'." *Madison Oslin, Inc. v. Interstate Res., Inc.*, 2012 U.S. Dist. LEXIS 142082, \*26-27 (N.D. Ala 2012). The Amended Complaint admits that the fraudulent and/or slanderous statements were made to continue the misappropriation. FAC ¶ 388, 404-405. *Second*, the misrepresentation regarding the Dev Fee was made in an effort to acquire the Firmware and is therefore preempted even under Plaintiff's overly narrow interpretation. FAC, ¶ 54-55.

## IV. If Limited to Unpaid Labor, the Unjust Enrichment Claim Is Duplicative and Should Be Dismissed.

To the extent that Plaintiff's unjust enrichment claim involves use of the Firmware, that claim is preempted. To the extent that the claim is limited to unpaid labor, that claim is subsumed by Plaintiff's claim for breach of contract (Count 8), work and labor done (Count 17) and/or Quantum Meruit (Count 18). Given that the unjust enrichment claim clearly seeks damages for use of the Firmware (FAC ¶ 411-

413), it should be dismissed so that the causes of action which are clearly directed to labor may move forward.

### V. Plaintiff's RICO Claim Fails Because He Cannot Prove That A Criminal Enterprise Committed Two Criminally Predicate Acts.

RICO is essentially a criminal statute aimed at addressing ongoing criminal activity. *Rolle v. Houston*, 2014 U.S. Dist. LEXIS 43642, at *20 (N.D. Ala. Mar. 28, 2014); *American Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1291-1292 (11th Cir. 2010). Plaintiff is attempting to fit his breach of contract claim into RICO, and it does not fit. "The RICO statute was not designed to provide the extraordinary remedy of treble damages to a garden-variety contract dispute." *Prince Heaton Enterprises v. Buffalo's Franchise*, 117 F. Supp. 2d 1357 (N.D. Ga. 2000).

#### A. Plaintiff cannot show an enterprise.

Plaintiff admits that "the Managing Directors with Treis may be the only enterprise he can establish on his current knowledge," as alleged in the Amended Complaint. Dkt. 113, pg. 28. The problem is that Treis and its directors cannot legally form an enterprise. The 11th Circuit has stated "[i]t is well established that a RICO enterprise must be an entity separate and distinct from any individual defendant – a person cannot conspire with itself." *Cisneros v. Petland, Inc*., 972 F.3d 1204, 1215 (11th Cir. 2020). "Thus, plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Id*. "Permitting plaintiffs to plead an

enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints. Because every corporation acts through its own employees as a matter of course, allowing such pleadings to go forward would turn every claim of corporate fraud into a RICO violation. No matter how broadly RICO is interpreted, there is no reason to think that Congress intended the law to provide treble damages in every conceivable case of corporate fraud. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) (internal citations omitted); *see also Dickerson v. Alachua County Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000). For this same reason, as well as those set forth in the Motion filed by Chain/ CEL, CEL and Chain could not have formed an enterprise. Dkt. 108, pgs. 12-15. Obviously, Stronghold could not have joined an enterprise that did not exist.

At best, Plaintiff has alleged parallel conduct amongst separate entities. The Amended Complaint does not, however, "assert allegations explaining how exactly the defendants went about entering into an agreement with each other" as is required to establish an enterprise. *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1068 (11th Cir. 2017)

### B. Plaintiff cannot prove two predicate acts.

The only predicate act mentioned in the Amended Complaint is misappropriation. Plaintiff's argument that he need not identify copyright

infringement or wire fraud as potential predicate acts is mistaken. "The point [of Rule 8] is to give the defendant fair notice of what the claim is *and the grounds upon which it rests*. In addition, Fed. R. Civ. P. 10 requires each claim founded on a separate transaction or occurrence to be stated in separate counts if needed for clarity. *Fed. R. Civ. P.* 10(b). These rules work together to require the pleader to present his claims discretely and succinctly, *so that his adversary can discern what he is claiming* and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Grimsley v. Marshalls of MA, Inc*., 284 Fed. Appx. 604, 610 (11th Cir. 2008) (*emphasis*). "Rule 9(b) requires a plaintiff to alert defendants to the precise misconduct with which they are charged." *Hackler v. GM LLC*, 2022 U.S. Dist. LEXIS 15986, *13 (N.D. Ga Jan 28, 2022). Obviously, Defendants are not alerted to charges of criminal copyright infringement and wire fraud if the Amended Complaint never states as much.

It is improper and patently unfair for Plaintiff to use his brief to continually change his theories upon learning the one alleged in the Amended Complaint fails as a matter of law. Even if this Court entertains Plaintiff's newly presented arguments, he still fails to allege sufficient facts showing Defendants committed two predicate acts.

### 1. Failure to register copyright or to provide notice precludes criminal copyright infringement.

Because the enforcement of a copyright requires copyright registration, a properly pled claim for criminal copyright infringement under either 17 U.S.C. § 506(a) or 18 U.S.C. § 2319 must allege a registered copyright exists. *Bischoff v. Waldorf*, 660 F. Supp. 2d 815, 818 (E.D. Mich. 2009) ("the slightest scrutiny disposes of all of Mr. Bischoff's criminal allegations: Because he has claimed no registered copyright . . . [criminal copyright infringement] do[es] not apply"). One reason registration is required is that not all works are protectable. *BUC Int'l Corp. v. Int'l Yacht Council Ltd*., 489 F.3d 1129, 1143 (11th Cir. 2007) ("The [merger] doctrine holds that, when there are so few ways of expressing an idea, not even the expression is protected by copyright"). One or more elements of a computer program may be deemed unprotectable under the merger doctrine where "it is the only and essential means of accomplishing a given task." *CMAX/Cleveland, Inc. v. UCR, Inc*., 804 F. Supp. 337, 353 (M.D. Ga. 1992).

Criminal copyright infringement further requires the infringement be willful. 17 U.S.C. § 506(a). The Amended Complaint fails to allege Defendants were ever notified of Plaintiff's copyright or told they did not have the right to reproduce, use and/or distribute the Firmware. In fact, Plaintiff provided Defendants with the Firmware specifically so that they could reproduce and use it on Treis' approximately 1,000 machines. FAC ¶ 54-55 & 249. Plaintiff also intended for Treis

to distribute the Firmware to its customers.  *Id* at ¶ 70-72.  In fact, Plaintiff saw Treis'

distribution as "a real incentive… because the more machines that he could operate

his firmware on the more compensation he would accrue from his share of the Dev.

Fee.  *Id.* at ¶ 71. Grams did not seek to prevent sale of the Firmware to Stronghold

– he simply wanted his "commission off that sale."  FAC ¶ 290-291. Even if the

allegations show Defendants infringed Plaintiff's copyright, they do not show the

infringement was willful as is required to be criminal.

### 2. Plaintiff's claim for wire fraud fails because broken promises are insufficient to prove fraud, especially when there is no reliance upon them.

Mail and wire fraud "consist of intentional participation in a scheme to

defraud another of money or property" through use of the mails or electronic forms

of communication. *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998). A "scheme

to defraud" involves the making of misrepresentations intended and reasonably

calculated to deceive persons of ordinary prudence and comprehension. *Id.*.  Fraud

requires misrepresentation or concealment of a material fact. *Bahamas Sales Assoc.,

LLC v. Byers*, 2017 U.S. Dist. LEXIS 140762, at * 22, fn. 16 (M.D. Fla. Aug. 31,

2017); *Ala. Code* § 6-5-101.  Defendants' alleged blocking of the Dev Fee is not a

misrepresentation and is therefore not actionable under the mail/wire fraud statute.

Defendants' alleged misrepresentations similarly fail because "mere breach of

a contractual provision is not sufficient to support a charge of fraud." *Brown-Marx*

17

*Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1370-71 (11th Cir. 1983) (citing *McAdory v. Jones*, 260 Ala. 547, 71 So. 2d 526, 528 (Ala. 1954)). The "failure to perform a contract obligation is not a tort." *C & C Products, Inc. v. Premier Industrial Corp.*, 290 Ala. 179, 275 So. 2d 124, 130 (Ala. 1972). Thus, 'to assert a fraud claim that stems from the same general facts as one's breach-of-contract claim, the fraud claim must be based on representations independent from the promises in the contract and must independently satisfy the elements of fraud." *Hunt Petroleum Corp. v. State,* 901 So. 2d 1, 11 (Ala. 2004) (noting that parties may intentionally breach a contract without liability for fraud).   Failure to deliver consideration promised only gives rise to breach of contract *not* fraud.  *Id.* at 12.

Plaintiff cites to uses of the word fraud and/or misrepresentation appearing in the complaint, but the only "fraudulent" statements in the Amended Complaint that comply with Rule 9 are that Defendants (i) would pay a Dev Fee (FAC ¶ 54-55); (ii) would maintain confidentiality and not sell the Firmware to a third party (FAC ¶ 442 & 453); (iii) would fix the Dev Fee blockage (FAC ¶ 443-447); (iv) had removed the Firmware prior to the Stronghold sale (FAC ¶ 453); and (v) lied to Stronghold about Grams' ownership of the Firmware and theft from Treis (FAC ¶ 372).

Plaintiff's breach of contract claim alleges Defendants agreed to "pay Plaintiff a Dev Fee of 3% for their internal use of WAO2;" "protect the confidentiality of WAO2;" "not to sell any machine containing WAO2" and that Defendants "breached

18

the agreement by: proactively blocking and refusing pay to Plaintiff's Dev Fee, not protecting the confidentiality of WAO2, and selling machines containing WAO2." FAC ¶ 428 & 432. Statements (i) – (iii) are nothing more than a repeat of Plaintiff's breach of contract claim and an improper basis for fraud. That leaves statements (iv) – (v) as potentially qualifying as fraud. As an initial matter, the slanderous statement was made to Stronghold, not Plaintiff. Accordingly, he does not have standing to sue for anything other than potentially slander, which he has done. More importantly, these statements were made well after the Firmware had been provided and after Treis relinquished possession of the trade secret by selling it to Stronghold. Plaintiff has failed to allege how he has relied on such statements.

To establish proximate causation in a civil RICO action predicated on fraud, the purported victim must allege and show reasonable reliance. *Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.*, 165 F. Supp. 2d 1345, 1351 (S.D. Fla. 2001). The plaintiff must show reliance such that the misrepresentation actually induced the injured party to *change its course of action.*" *Exxon Mobil v. Alabama,* 986 So.2d 1093, 1115 (Ala. 2007). In this case, the only fraudulent misrepresentation made *before* the Firmware was provided was that Defendants would pay a Dev Fee. FAC ¶ 54-55. Defendants in fact paid a Dev Fee for a period after delivery of the Firmware. FAC ¶141-145. Thus, the statement was true at the time it was made. The remainder of the misrepresentations were made after the Firmware had been

delivered. The statements regarding the sale of machines to Stronghold and/or Plaintiff's ownership of the Firmware installed on those machines was made after the machines were sold and delivered to Stronghold.

Fraudulent statements occurring *after* delivery of the Firmware are not available to support wire fraud because they were not used by Defendants to obtain the "property" and thus, Plaintiff did not rely on such fraudulent statements when deciding to deliver the Firmware. The only items that Plaintiff provided in response to the fraud were the Firmware and his optimization labor. Wire fraud only applies to "money and property." Thus, statements to induce labor do not qualify. Plaintiff has not cited any authority suggesting that one may be defrauded of money absent the plaintiff's payment of money in reliance on the fraud. Failure to pay contractually owed money (even if for purposes of extortion) does not qualify as a "scheme to defraud" under the wire fraud statute. *Johnson Enters. of Jacksonville v. Fpl Group*, 162 F.3d 1290 1318-1319 (11th Cir. 1998).[1]

### 3. Even if a trade secret existed, only its initial theft can qualify as a predicate act – subsequent use and distribution cannot.

As has been thoroughly explained, Plaintiff did not own a trade secret because he did not treat it as such; therefore, there can be no criminal theft of it. Even if Plaintiff could survive the pleading requirements for reasonable secrecy efforts, he

---

[1] For these same reasons, Plaintiff's Count IX for fraud fails even if not preempted by the ATSA.

can only show a single predicate act. The law is clear that for purposes of violating 18 U.S.C. § 1832 (entitled "theft of trade secrets"), it is only the initial theft that counts; subsequent use and distribution violates the civil statute (Defend Trade Secrets Act), but it does not violate the criminal statute.

Plaintiff argues the ongoing possession of the trade secret violates the criminal statute.  Numerous courts have rejected Plaintiff's argument. As noted by one district court, "Plaintiffs' theory that 'ongoing use' of trade secrets can somehow constitute two predicate acts under RICO is entirely unsupported and illogical . . . Accepting Plaintiff's theory would turn a single trade secret misappropriation claim into a RICO offense every time a defendant violated the DTSA and the did not immediately stop their allegedly unlawful use of the trade secrets." *Attia v .Google LLC*, 2018 WL 2971049, at *18 n. 15 (N.D. Cal. June 13, 2018).  See also *Fla. Beauty Flora Inc. v. Pro Intermodal, LLC,* 2020 U.S. Dist. LEXIS 124582 (S.D. Fla. Jul. 15, 2020); *Espot, Inc. v. Myvue Media, LLC*, 492 F. Supp. 3d 672 (E.D. Tex. 2020); *Mgmt. Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48, 51 (7th Cir. 1989).

## C. Plaintiff Cannot Show A Threat Of Continuing Criminal Activity.

Defendant's continued use, possession or disclosure of a trade secret is not racketeering activity – only the initial theft is.  But that continued use is exactly what Plaintiff relies on to prove "a pattern of racketeering activity lasting longer than one year."  According to the Amended Complaint, negotiations with Treis began in

"Spring of 2020" and the Firmware was provided to Treis by at least June 2, 2020. Thus, the "theft" occurred during a two-month period.  FAC ¶ 53 & 65.

More importantly, Plaintiff knows that _none of the Defendants_ continue to possess the Firmware as is currently alleged.  As acknowledged in the Amended Complaint, Treis sold the Firmware to Stronghold.   FAC ¶ 251-52.  Plaintiff submitted evidence that a Bitcoin mining company working with him purchased all the machines Treis sold to Stronghold.  Dkt. 71-1, ¶ 18-24.   During the hearing, it was established that Stronghold no longer possessed any of the machines containing the Firmware that it purchased from Treis. Dkt 85, ¶ 5. It would be a violation of Rule 11 if Plaintiff were allowed to argue that Defendants' continued possession of the Firmware provides a basis for his RICO claim.

### Conclusion

Plaintiff has alleged a breach of contract claim and he should be allowed to pursue that.  If successful, he can seek payment of the Dev Fees that he was allegedly promised.  But he should not be able to turn this into a quasi-criminal case or to seek damages other than those he was contractually promised.  Plaintiff's trade secret claims ask this Court to treat the Firmware as a trade secret when Plaintiff repeatedly failed to do so. Plaintiff's other claims fail because no trade secret existed and/or they are preempted by the Alabama Trade Secrets Act.

Respectfully submitted this the  28th  day of August, 2024.

/s Joshua J. Jackson
Joshua J. Jackson (ASB-8286-U79J)

**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Email: jackson@samfordlaw.com

/s Hunter S. Freeman
Hunter S. Freeman (pro hac vice)
Attorneys for Defendants Treis Blockchain, LLC,
Cevon Technologies, LLC, Stronghold Digital
Mining, LLC, Michael Bolick, Brian Lamberti,
David Pence, and Senter Smith

**KIM LAHEY & KILLOUGH LAW FIRM**
3620 Pelham Road, PMB #213
Greenville, SC 29615
Phone: (864) 973-6688
hfreeman@kimandlahey.com

## CERTIFICATE OF SERVICE

I hereby certify that on the   28th   day of  August  , 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Jonathan K. Corley
WHITTELSEY & CORLEY, LLC
PO Box 106
Opelika, AL 36803-0106
jcorley@wwp-law.com

Carissa V. Sears
The Sears Law Office, LLC
7887 E. Belleview Ave. Suite 1100
Greenwood Village, CO 80111
carissa@searslaw.org

Clifton E. Slaten
Slaten Law, P.C.
7027 Halcyon Park Drive
Montgomery, AL 36117
cslaten@slatenlaw.com

/s Joshua J. Jackson
OF COUNSEL

23