IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MARK GRAMS,                        )
                                   )
            Plaintiff,             )
                                   )
     v.                            )    CASE NO. 3:23–cv–299–RAH
                                   )              [WO]
TREIS BLOCKCHAIN, LLC, *et al.*,   )
                                   )
            Defendants.            )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Mark Grams brings this suit against Treis Blockchain, LLC, Brian Lamberti, Michael Bolick, Senter Smith, David Pence, John Chain, Chain Enterprises, LLC, Cevon Technologies, LLC, and Stronghold Digital Mining, LLC concerning the alleged misappropriation of a trade secret. Grams pleads a variety of federal trade secret, Alabama trade secret, Racketeer Influenced and Corrupt Organizations Act, contract, and common law tort claims. Pending before the Court are the Defendants' motions to dismiss. The motions are fully briefed and ripe for decision. The motions are due to be GRANTED IN PART.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1332, and venue properly lies in the Middle District of Alabama, *see* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

In deciding a Rule 12(b)(6) motion, a court considers only the allegations contained in the complaint and any attached exhibits. *Hoefling v. City of Miami*, 811

F.3d 1271, 1277 (11th Cir. 2016). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Id.* at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the–defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV. BACKGROUND

This case concerns the alleged misappropriation of cryptocurrency mining firmware. Cryptocurrency is an intangible digital currency. One way to acquire cryptocurrency is to "mine" for it using computers or specialized mining machines that are instructed how to mine by firmware. Firmware impacts a cryptocurrency

machine's mining speed. A machine's mining speed can be enhanced by firmware code optimizations ("FCO"). FCO are used to enable the firmware to perform better and faster. The faster a machine can operate, the more cryptocurrency it can mine; the more a machine can mine, the more lucrative the machine.

In 2017, Plaintiff Mark Grams, a resident of Alabama, began developing code to optimize miners. By 2019, Grams had developed his first FCO which improved the Antminer S17 Series machines. Grams sold this FCO for $30,000 with the help of Defendant John Chain, who acted as the broker for that deal. After the Antminer sale, Grams began developing a new code to optimize a different mining machine—the Whatsminer. Whatsminer is a leading brand of miner that stores its firmware on an application–specific integrated circuit ("ASIC") chip integrated into the machine's hardware. Grams' new FCO was called the MicroBT Whatsminer ASIC Miner FCO ("WAO2").

In February 2020, Chain learned that Grams had developed a new FCO and asked if he could help Grams monetize it. Grams and Chain ultimately agreed that Chain would find companies that wished to use WAO2 on their mining machines. These companies would then pay Grams either by paying a licensing fee or giving Grams a percentage of the cryptocurrency mined with the WAO2 firmware—known as a "developer fee" or "dev fee." Grams agreed that Chain would receive 50% of any new contract he helped Grams acquire. Per their agreement, all the developer fees would be sent to a shared electronic wallet.

In the Spring of 2020, Chain began negotiating with Defendant Treis Blockchain, LLC ("Treis"), and Treis employees and members Defendants Brian Lamberti, Michael Bolick, Senter Smith, and David Pence (collectively, the "Individual Defendants"), to install Grams' WAO2 firmware on Treis' Whatsminer machines, which they hoped to sell to third parties. The parties agreed to a demonstration phase to test the firmware on Treis' machines so that Grams and Chain

could prove to Treis that WAO2 functioned as promised.  The parties further agreed that Chain and Grams would receive a developer fee for cryptocurrency mined on the Whatsminer machines that Treis sold and mined during the demonstration phase.

During the negotiations, Chain informed Treis about the importance of security and confidentially, which Block acknowledged, and therefore they discussed an NDA or confidentiality agreement.  The parties, however, never formalized an NDA or confidentiality agreement.

By Summer 2020, Treis had begun its demonstration phase.  Throughout the demonstration phase, Treis sent machines that needed repair and optimization to Grams in Alabama.  Grams would work on the machines and then send them back to Treis.  Treis would periodically contact Grams with questions about fixing broken machines and the firmware.

In Fall 2020, Treis began negotiating to acquire the rights to the WAO2 firmware from Chain.  During these negotiations, Chain falsely represented to Treis that the WAO2 firmware was solely owned by Chain Enterprises, LLC ("CEL") and that Grams was a business partner and member of CEL.  Rather than Treis outright purchasing the WAO2 firmware, Treis and CEL agreed to funnel the deal through Cevon Technologies LLC ("Cevon" and together with Treis and the Individual Defendants collectively, the "Treis Defendants").  Grams alleges that he was left in the dark about these negotiations and the resulting transaction.

By April 2021, Grams no longer trusted Chain and suspected that Chain had breached their agreement, specifically that Chain was stealing from him, because Grams had only received $4,300 in developer fees from Treis.  Grams informed Treis that he suspected Chain was stealing from him and that he and Chain would no longer be working together.  According to Grams, the Treis directors were shocked to hear that Grams was not a member of CEL and that Grams was the actual owner of the WAO2 firmware.

4

In May 2021, Grams informed Bolick that Chain had blocked him from accessing the electronic wallet and developer fee. Ultimately, in September 2021, Treis sued Chain in Delaware, alleging, among other things, that Chain had misrepresented to Treis that CEL employed Grams and that Grams' and Chain's developer fee was a scheme to steal from Treis ("Chain Litigation").

Despite the issues that arose with Chain, Grams, Treis, Cevon and the Individual Defendants continued working together.[1] According to Grams, his work under this arrangement largely mirrored the work he had performed before the revelations of Chain's dishonesty. Grams alleges that Treis also agreed that Grams would receive a developer fee.

In Fall 2021, Grams and his brother flew to Pennsylvania to work onsite at one of Treis' facilities. During the trip, Grams discovered that there was no security protecting the computers that contained his WAO2 firmware despite previously having been assured by Treis "that all devices using WAO2 would be password protected, locked, and otherwise secured." (Doc. 52 at 34.) According to Grams, there were no passwords on the computers, no security cameras, no locked containers that stored the computers, and that the containers were located on a publicly accessible site.

According to Grams, he informed Lamberti that the lack of security measures was unacceptable. Grams alleges that Lamberti installed passwords on the machines; nevertheless, Grams still insisted that the computers needed to be monitored and locked. Lamberti "assured Grams that he would take the security

---

[1] The Amended Complaint includes statements indicating that Grams simultaneously worked with Treis (*see, e.g.*, doc. 52 at 9), and Cevon (*see, e.g.*, *id.* at 20 (quoting an email from Bolick in which Bolick states that "Treis has agreed that [Grams] can continue to work for Cevon[.]")), and that Grams' work benefitted both companies. It appears that the Individual Defendants also worked on behalf of both companies. In other words, the contours separating Treis and Cevon (not to mention the Individual Defendants who were involved in both) appear to have been, at best, poorly defined.

issue up with his team and they would provide ample security." (Doc. 52 at 36.) Despite these assurances, Treis never undertook any new security measures.

In December 2021, unbeknownst to Grams, Treis (but not Cevon) sold 1,000 computers containing Grams' WAO2 firmware to Stronghold Digital Mining, LLC ("Stronghold" and together with the Treis Defendants collectively, the "Treis and Stronghold Defendants"). In February 2022, Lamberti informed Grams that Treis had sold the machines but that the firmware had been removed before the sale. Not believing Lamberti, Grams contacted Stronghold and discovered that the machines *did* in fact contain his firmware. He also discovered that his developer fee was blocked—meaning that Stronghold could use and benefit from the WAO2 firmware without paying Grams. After Stronghold was informed that Grams, and not Treis, owned the WAO2 firmware, Stronghold told Grams that it would remove the WAO2 firmware from its Treis machines but, according to Grams, Stronghold did not do so.

To this day, Grams believes that Treis is either (1) still using his WAO2 firmware on its internal machines and blocking Grams' receipt of developer fees, or (2) using a pirated version of the firmware to avoid paying Grams his developer fees.

Grams filed this lawsuit in May 2023, bringing eighteen claims against nine defendants. All Defendants have moved to dismiss.

## V. DISCUSSION

### A.    The Trade Secrets Act Claims (Counts I, II, III, IV, XIII, XIV, XV and XVI)

Grams' first set of claims are misappropriation of trade secrets brought under the Defend Trade Secrets Act ("DTSA") and the Alabama Trade Secrets Act ("ATSA"). 18 U.S.C. § 1836(b)(1); Ala. Code § 8–27–3. The ATSA's statutory language is "nearly identical to that in the DTSA," *see Rotor Blade, LLC v. Signature Util. Servs., LLC*, 545 F. Supp. 3d 1202, 1221 (N.D. Ala. 2021) (citation omitted),

and therefore the same analysis is applied in determining whether Grams has sufficiently pleaded these claims.

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

> In order to plead a violation of the DTSA, a plaintiff must allege that he (i) "possessed information of independent economic value" that (a) "was lawfully owned by" the plaintiff, (b) for which the plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or disclosed that information" despite (iii) "a duty to maintain its secrecy."

*Resnick v. City of Troy*, No. 17cv815, 2019 WL 2092567, at *5 (M.D. Ala. May 13, 2019) (quoting *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018)); *see also Primo Broodstock, Inc. v. Am. Mariculture, Inc.*, No. 17-cv-9, 2017 WL 1502714, at *11 (M.D. Fla. Apr. 27, 2017); *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (discussing the trade secret standard under Florida law); 18 U.S.C. § 1839.

"Whether information constitutes a 'trade secret' is a question of fact." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003) (citing *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410–11 (11th Cir. 1998)). "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Am. Red Cross*, 143 F.3d at 1410 (citation omitted). "The analysis of the measures taken to protect secrecy is fact–specific, however, and 'under all the circumstances, if the [person] knows or has reason to know that the owner intends or expects the information to be secret, confidentiality measures are sufficient.'" *S. Field Maint. & Fabrication LLC v. Killough*, No. 18–cv–581, 2019 WL 360515, at *4 (M.D. Ala. Jan. 29, 2019) (quoting *Lasermaster Corp. v. Sentinel Imaging*, 931 F. Supp. 628, 635 (D. Minn.

1996)).  "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required."  *S. Field Maint. & Fabrication LLC*, 2018 WL 4701782, at \*6 (quoting *AvidAir Helicopter Supply, Inc. v. Rolls–Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011)).

There are several important terms that the DTSA defines which are relevant to determining whether a DTSA misappropriation claim is sufficiently stated.  These include trade secret and improper means.  *See* 18 U.S.C. § 1839(3) (defining "trade secret" under the DTSA); Ala. Code § 8–27–2(1) (defining "trade secret" under the ATSA); 18 U.S.C. § 1839(5) (defining "misappropriation" under the DTSA); 18 U.S.C. § 1839(6) (defining "improper means" under the DTSA); Ala. Code § 8–27–3 (making misappropriation of a trade secret actionable).

### 1. The DTSA and ATSA Misappropriation Claims Against Chain and CEL (Counts I and XIII)

In Counts I and XIII, Grams alleges that Chain and CEL misappropriated Grams' WAO2 firmware, which Grams alleges is a trade secret, in violation of the DTSA and the ATSA.  Both claims stem from allegations that Chain fraudulently misrepresented facts that induced Grams into sharing his WAO2 firmware with Chain and CEL, such as the fact that Chain would broker deals for the WOA2 firmware.  Grams also alleges that Chain and CEL worked to steal his WAO2 firmware to convey to Treis and Cevon.  Chain and CEL move to dismiss these claims, arguing that they could not have misappropriated the WAO2 firmware because they did not acquire the WAO2 firmware by improper means.

The Amended Complaint alleges that Chain and CEL fraudulently misrepresented to Grams that they would share the proceeds of any contract Chain acquired and that Chain and CEL allegedly made the false statements to induce Grams into sharing his WAO2 firmware with them. These alleged misrepresentations

fall within the definition of "improper means" under the DTSA, which defines "improper means" as including a misrepresentation or inducement, *see* 18 U.S.C. § 1839(6) ("[I]mproper means" includes "misrepresentation . . . or inducement . . . ."), and the ATSA which contains a similar definition, *see* Ala. Code § 8–27–2(2) ("'Improper means' are means such as . . . Misrepresentation . . . .").

Grams also alleges that, since Chain and CEL used improper means to acquire his WAO2 firmware, any subsequent disclosure or use would also fall within the DTSA and ASTA definitions of "misappropriation," and therefore any subsequent conveyance, disclosure of the WAO2 firmware by Chain and CEL to Treis, or use by Treis, would also constitute misappropriation. While the Amended Complaint is unclear as to whether Cevon obtained the WAO2 firmware, Grams' allegations are enough to state DTSA and ASTA misappropriation claims against Chain and CEL.

Further, since Grams' allegations must be assumed true at this stage, the Court is also not persuaded by Chain's and CEL's argument that they did not misappropriate Grams' WAO2 firmware. Their arguments on this issue are factual ones more appropriate for consideration at the summary judgment stage when tested against the actual evidence. Regardless, the heart of a DTSA/ASTA misappropriation claim is the acquisition, disclosure, or use of the trade secret, not its ownership. *See* 18 U.S.C. § 1836; Ala. Code § 8–27–3. Accordingly, Grams has sufficiently stated DTSA/ASTA claims that Chain and CEL misappropriated Grams' WAO2 firmware.

Chain and CEL also move to dismiss the ATSA claim on the separate ground that the claim is time-barred under the two-year statute of limitations applicable to ATSA claims. Ala. Code § 8–27–5 ("An action for misappropriation must be brought within two years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."). They argue the alleged misappropriation was or should have been discovered by Grams in April 2021

because Grams alleges the following in his Amended Complaint — "[i]n April 2021 Grams announced that he was not comfortable with the way things were being handled. . . . Grams told Treis that he suspected Chain was in breach of the agreement between Grams and Chain and that he would no longer be working with Chain." (*See* doc. 52 at 25.)  According to them, April 2021 is when the statute of limitations began to run, and as such, the claim was time-barred when Grams filed his lawsuit over two years later on May 4, 2023.

Grams responds, stating the Amended Complaint also alleges that "[o]n May 25, 2021, Grams let Bolick know Chain was blocking his access to the Developer Fee," (doc. 52 at 26), and that this is when the statute of limitations began to run since that is when Grams began to suspect actual misappropriation rather than just breach of contract through nonpayment of the developer fee.  Thus, according to Grams, the claim is not time-barred or at least raises enough of a factual dispute that requires the question to be presented to a jury.

Grams' April allegations of distrust do suggest that Grams was at least suspicious of something, but the complaint allegations are too vague to dispositively conclude at this stage that a reasonable person would be on notice of misappropriation.  *Bryant Bank*, *v. Talmage Kirkland & Co.*, 155 So. 3d 231, 237 (Ala. 2014) ("'[W]hen a disputed issue of fact is raised, the determination of the date of accrual of a cause of action for statute–of–limitations purposes is a question of fact to be submitted to and decided by a jury.'" (quoting *Jim Walter Homes, Inc. v. Kendrick*, 810 So. 2d 645, 650 (Ala. 2001))).  Further factual development is necessary to bring clarity to this issue.  As such, the Amended Complaint does not show on its face that the ATSA claim is time-barred.  The Court will revisit this issue at the summary judgment stage if it is raised again with a more clarifying evidentiary showing.

2.    **The DTSA and ATSA Misappropriation Claims Against the Treis Defendants (Counts II and XIV)**

In Counts II and XIV, Grams claims that the Treis Defendants misappropriated his WAO2 firmware when (1) the Treis Defendants used his firmware to mine cryptocurrency without paying Grams the requisite developer fee and (2) they sold his firmware to Stronghold without his authorization.  In their motion to dismiss, the Treis Defendants argue that Grams' claims fail because Grams failed to take reasonable secrecy measures to protect his WAO2 firmware.

The DTSA and ATSA require Grams to take reasonable measures to keep his firmware a secret.  *See* 18 U.S.C. § 1839(3)(A) ("[T]he owner thereof has taken reasonable measures to keep such information secret . . . ."); Ala. Code § 8–27–2(1). Grams bears the burden on this issue.  *Parker v. Petrovics*, No. 19-CV-00699, 2020 WL 3972761, at *5 (N.D. Ala. July 14, 2020).

In his Amended Complaint, Grams alleges that he took secrecy measures such as "keep[ing] all copies of WAO2 only on password–protected devices, with a camera system recording all access, on private property." (Doc. 52 at 34.)  He further argues that courts have held that these are sufficient secrecy measures.  *See, e.g., Physiotherapy Assocs., Inc. v. ATI Holdings, LLC*, 592 F. Supp. 3d 1032, 1041–42 (N.D. Ala. 2022), *appeal dismissed*, No. 22–11206–G, 2022 WL 2708913 (11th Cir. May 9, 2022) ("[T]his court's research indicates that the use of password–protected servers shows reasonable secrecy only when paired with other substantial efforts. . . . Persuasive authority also indicates that the use of password protection shows only a minimal effort at secrecy.") (emphasis omitted); *Killough*, 2019 WL 360515, at *3–6 (finding that there were reasonable security measures when password protection was paired with marking hard copies as confidential, limiting access to the trade secret, and discussion of confidentiality); *see also WWMAP, LLC v. Birth*

*Your Way Midwifery*, No. 23-cv–243, 2024 WL 151411, at *5 (N.D. Fla. Jan. 10, 2024) (listing facts that can indicate reasonable security measures).

The most common type of secrecy measure is a confidentiality agreement or NDA. And the Treis Defendants largely claim that this is the dispositive consideration here. But this is not so. While it is unclear whether Grams requested a confidentiality agreement or NDA when he shared his WAO2 firmware with the Treis Defendants, that fact alone is not dispositive as to the lack of secrecy measures.

Grams minimizes the lack of a confidentiality agreement by arguing that he is owed an implicit duty of confidentiality by the Treis Defendants. Grams claims "[a]ll Parties knew that protecting the confidentiality of WAO2 was essential as the value of the firmware to both user and developer is drastically reduced by public dissemination." (Doc. 52 at 34; Doc. 113 at 4–12.) Grams argues that, given the nature of the FCO at issue and in the cryptocurrency industry, the parties knew that the WAO2 firmware's confidentiality was paramount. Grams also points out that Chain, as Grams' broker, emphasized confidentiality to the Treis Defendants and offered to sign an NDA.

The Amended Complaint alleges discussions of secrecy and confidentiality between the parties. These allegations, along with Grams' secrecy measures, are sufficient to support Grams' claim. In trade secret claims, the mere expectation of secrecy is not enough to show reasonable secrecy measures, but here there is more than just a mere expectation. The Amended Complaint alleges both expectations of secrecy paired with actual secrecy measures. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297–301 (11th Cir. 2018) (holding that there were no reasonable secrecy measures when the plaintiff relying on an implicit understanding of confidentiality disclosed the trade secret without a confidentiality agreement and no instructions on how to protect the trade secret). Further, "whether something is a trade secret is a question typically 'resolved by a fact finder after full

presentation of evidence from each side.'" *Yellowfin Yachts*, 898 F.3d at 1298–99 (quoting *Lear Siegler, Inc. v. Ark–Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir. 1978)). Accordingly, Grams has sufficiently stated DTSA and ATSA claims against the Treis Defendants for misappropriation of his WAO2 firmware, and therefore Counts II and XIV will proceed.

### 3. The DTSA and ATSA Misappropriation Claims Against Stronghold (Counts III and XV)

In Counts III and XV, Grams claims that Stronghold misappropriated his WAO2 firmware in violation of the DTSA and ATSA. Stronghold, like the Treis Defendants, also moves to dismiss this claim because Grams failed to take reasonable secrecy measures. Stronghold's argument is unpersuasive for the same reasons that the Treis Defendants' argument is unpersuasive. Accordingly, Grams sufficiently states DTSA and ATSA claims against Stronghold also, and therefore Counts III and XV will proceed.

### 4. The DTSA Conspiracy Against Treis and Individual Defendants (Count IV)

In Count IV, Grams claims that Treis and the Individual Defendants conspired to steal his WAO2 firmware. This claim is brought under 18 U.S.C. § 1832(a)(5) of the DTSA. Treis and the Individual Defendants move for dismissal because 18 U.S.C. § 1832(a)(5) does not afford a private civil right of action.

Section 1832(a) indeed does not expressly contain a private right of action. While the Eleventh Circuit has not directly addressed the issue, several district courts, including a judge in this District, have concluded that no private right of action exists. *See Uniti Fiber LLC v. Minor*, No. 22–CV–327, 2022 WL 2116365, at *2 (M.D. Ala. June 13, 2022) (quoting *Steves & Sons, Inc. v. JELD–WEN, Inc.*, 271 F. Supp. 3d 835, 842 (E.D. Va. 2017) ("Nowhere in Section 1832(a) does the

statutory text mention a private right of action to redress violations of its prohibitory terms.  Nor does the remedial section of Section 1832(a) permit the inference that a private civil action is to be implied in Section 1832(a).")).  The Court finds the *Uniti Fiber* decision persuasive.  As such, Count IV will be dismissed.

### 5.     The ATSA Conspiracy Claim Against All Defendants (Count XVI)

In Count XVI, Grams brings an ATSA conspiracy claim against all Defendants.  The Treis and Stronghold Defendants generally argue this claim fails because the underlying ATSA claim fails, and the Chain Defendants additionally argue that this claim is time-barred.

The Court has already concluded that Grams has sufficiently stated an ATSA claim.  The Court has also concluded that the Amended Complaint does not show on its face that the ATSA claim is time-barred.  As such, this claim will not be dismissed.

## B.     The RICO Claim Against All Defendants (Count V)

In Count V, Grams brings a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against all Defendants.  *See* 18 U.S.C. §§ 1961-64. Grams alleges that the Defendants constituted an enterprise, or several enterprises, devoted to stealing his WAO2 firmware.  The Defendants move to dismiss this claim on the basis that Grams has failed to state an actionable RICO claim.

Under RICO, "[t]o recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts."  *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014) (citations omitted).  As the Eleventh Circuit has noted:

> Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.  To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; 2) the time and place of and person responsible for the statement; (3) the content and

manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (citations omitted). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1317 (citation omitted)); *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015) (stating that the Eleventh Circuit "has repeatedly held that lumping multiple defendants together in such generalities is insufficient under Rule 9(b)") (citation omitted).  Therefore, if Grams' RICO claim fails to meet Rule 9's heightened pleading standard, it must be dismissed.

This Court must first determine whether the Amended Complaint sufficiently alleges the existence of an enterprise between the Defendants.  RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

The Eleventh Circuit has discussed the Supreme Court's standards of what constitutes an enterprise and the necessary pleading standard.

> In the simple case, the enterprise is an "individual, partnership, corporation, association, or other legal entity." The more challenging case occurs when the enterprise is alleged to be a "union or group of individuals associated in fact although not a legal entity." . . . .
>
> An associated–in–fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." While "the very concept of an association in fact is expansive," the Supreme Court has nevertheless found that an association–in–fact enterprise must have three "structural features": (1) a "purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." As a result, an associated–in–fact enterprise can be either "formal or informal," as long as the enterprise's "various associates function as a continuing unit."

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067–68 (11th Cir. 2017) (citations omitted).

Grams argues there are several enterprises: (1) Chain, CEL, Treis, the Individual Defendants, and Cevon, (2) Treis and the Individual Defendants, which Stronghold later joined, and (3) Chain, CEL, and possibly Cevon.

### 1.    Chain, CEL, Treis, the Individual Defendants, and Cevon

Starting with Chain, CEL, Treis, the Individual Defendants, and Cevon, Grams alleges they formed an enterprise to steal his WAO2 firmware from. These Defendants argue that Grams only alleges parallel conduct and alleges contradictory facts that do not evidence an enterprise existing between them. The Court agrees.

To plead an enterprise via association-in-fact, Grams must sufficiently allege a shared "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v, U.S.*, 556 U.S. 938, 946 (2009). As for shared purpose, "[a]n abstract common purpose, such as a generally shared interest in making money, will not suffice." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). "Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.* (citation omitted). So, a plaintiff is required to show that the alleged enterprise members had both "interpersonal relationships and a common interest" and functioned as a continuing unit. *Boyle*, 556 U.S. at 945–46 (citations omitted). It is not sufficient for a plaintiff to merely plead "that the defendants all ended up doing the same fraudulent thing," i.e., parallel conduct. *Almanza*, 851 F.3d at 1068–69. This rule applies to both unknown parallel conduct and conscious parallelism. *Id.* at 1069. To allege that parallel conduct constitutes a RICO enterprise, a plaintiff must allege "consciously

16

parallel conduct plus multiple 'further factual enhancements.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

While the Amended Complaint alleges that these Defendants misappropriated Grams' WAO2 firmware and exploited Grams' work, the Amended Complaint also repeatedly describes how these Defendants were allegedly lying to and stealing from each other. (Doc. 52 at 31–32, 60–61.) No alleged facts support an inference that these Defendants were acting in any way but in their own independent self-interests. Glaringly absent are sufficient allegations of "interpersonal relationships [or] a common interest." *Boyle*, 556 U.S. at 946. For example, Grams alleges that, at several points throughout the enterprise, the members of the enterprise actively worked against each other and had competing interests. (Doc. 52 at 31–32, 60–61.) This is highlighted by the Chain litigation, in which Treis and the Individual Defendants sued Chain and CEL. Grams also alleges that Chain and CEL actively misrepresented facts and lied to Treis and the Individual Defendants, and that Treis and the Individual Defendants conspired to steal the WAO2 firmware from Chain and CEL. These, and other allegations, do not plausibly show that these Defendants acted together to accomplish a fraudulent purpose rather than acting independently according to the terms of a normal business relationship. At most, Grams pleads that these Defendants all allegedly misappropriated Grams' firmware and took advantage of Grams' work, but this evidences parallel conduct. Without more, it is not enough to plausibly show an enterprise under RICO.

### 2. Treis, the Individual Defendants, and Stronghold

Treis, the Individual Defendants and Stronghold argue that Treis, as a corporate defendant, cannot form an enterprise with the Individual Defendants, and further that Grams has failed to allege a pattern of racketeering activity. Assuming that Grams has sufficiently pleaded the existence of an enterprise between Treis and

the Individual Defendants with Stronghold, Grams' RICO claim still fails because Grams fails to allege facts evidencing a pattern of racketeering activity.

To successfully allege a pattern of racketeering activity, a plaintiff must show "that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004 (citations omitted). "[T]he 'pattern' element of the RICO statute was designed to limit its application to planned, ongoing, continuing crime as opposed to sporadic, unrelated, isolated criminal episodes." *Id.* (citation and alterations omitted).

Grams must first show that these Defendants committed two or more predicate acts within ten years. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290–91 (11th Cir. 2010) ("In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity."). Among the predicate acts identified under 18 U.S.C. § 1961 are copyright infringement, mail and wire fraud, and theft of trade secrets, all of which Grams argues are at issue in this case.

As to copyright infringement, the Amended Complaint makes no mention that Grams' WOA2 firmware is copyrighted. The copyright status of the firmware was only raised in Grams' briefing, and that does not satisfy Grams' pleading obligations on this issue because he cannot amend his complaint through argument in a brief. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief . . . .") (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).

Likewise, the Amended Complaint is similarly devoid of sufficient allegations of mail or wire fraud. "Mail or wire fraud occurs when a person (1) intentionally

participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental*, 605 F.3d at 1290 (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991)). The Amended Complaint does broadly allege that these Defendants committed fraud and misrepresentation, but these barebone allegations are not enough to show that these Defendants committed sufficient predicate acts of mail and wire fraud for RICO purposes, especially under Rule 9's heightened pleading standard. *See id.* at 1291 (holding that any claim predicated upon mail and wire fraud must be plead with specificity); *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) ("Under Rule 9(b), claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008))); *Ambrosia Coal*, 482 F.3d at 1317 (requiring that in RICO cases involving multiple defendants "the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

While the Amended Complaint does contain several emails and communications between Grams and these Defendants as the basis for the claimed wire and mail fraud, the Amended Complaint fails to sufficiently allege the deceptive conduct contained within these communications. *See Am. United Life Ins. v. Martinez,* 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of plaintiff's substantive RICO claims where complaint did not allege that defendants made any affirmative misrepresentations in the mailings); *Am. Dental.*, 605 F.3d at 1291–92 (affirming dismissal of plaintiff's substantive RICO claim because the "complaint provide[d] a list of mailings and wires, without ever identifying any actual fraud").

And even if these barebone allegations and emails were sufficient, the Amended Complaint still fails to sufficiently allege the continuing nature of the alleged mail and wire fraud. *Cisneros*, 972 F.3d at 1216 ("In addition to alleging the

requisite number of individually chargeable predicate acts, a plaintiff must plausibly allege that the defendant is engaged in 'criminal conduct of a continuing nature.'" (emphasis omitted) (quoting *Jackson*, 372 F.3d at 1264)); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) ("[W]hile two acts are necessary, they may not be sufficient."). Grams may do this "by alleging 'a series of related predicates extending over a substantial period of time' or 'the threat of continuity.'" *Cisneros*, 972 F.3d at 1216 (alteration adopted) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989*)*). A "substantial period of time" is measured "in years, not in weeks." *Id.* (citing *Jackson*, 372 F.3d at 1267). "To show the 'threat of continuity,' a plaintiff must allege 'either that the alleged acts were part of the defendants' regular way of doing business, or that the illegal acts threatened repetition in the future.'" *Id.* (quoting *Jackson*, 372 F.3d at 1267).

The Eleventh Circuit and other courts "have held that independently chargeable instances of mail or wire fraud cannot constitute a 'pattern of racketeering activity' when they arise from a single transaction." *Cisneros*, 972 F.3d at 1216; *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (concluding that "multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern" (quoting *Tellis v. U.S. Fid. & Guar. Co.*, 826 F.2d 477, 478 (7th Cir. 1986))); *see also Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) (citation omitted) ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."). "Because each use of the mails or wires in furtherance of a single instance of fraud is independently indictable under the federal mail and wire fraud statutes, to hold otherwise could make RICO cases out of one allegedly fraudulent transaction. That would contravene the clear purpose of RICO. *Cisneros*, 972 F.3d

20

at 1216 (citations omitted); *see Jackson*, 372 F.3d at 1265 (noting that "the sort of offense that RICO is designed to address" is "one that is part of a pattern of ongoing, continuing criminality").

Here, the alleged mail and wire fraud arise from a single transaction. While Grams asserts that the mail and wire fraud relate to different schemes intended to: (1) block the developer fee, (2) acquire Grams' WOA2 firmware, and (3) convince Grams to continually work on WAO2, all of these alleged schemes arise from Grams' transaction with Treis.  Further, Grams fails to sufficiently delineate in his Amended Complaint which mail and wire fraud go towards each scheme as required under RICO's heightened standard.  Thus, Grams fails to sufficiently plead mail and wire fraud as a predicate act and that such fraud would satisfy the continuity element.

As to Grams' allegations that theft of trade secrets constitutes a predicate act, as has already been discussed in the Count IV theft of trade secrets conspiracy claim, Grams fails to sufficiently plead this claim. And even if he did, it still would only constitute one predicate act.  *See, e.g., Attia v. Google LLC*, No. 17-cv-06037, 2018 WL 2971049, at *18 n.15 (N.D. Cal. June 13, 2018) (explaining the plaintiffs' theory that "ongoing use" of trade secrets constitutes two predicate acts under RICO was "entirely unsupported and illogical" (quotation marks omitted)); *Nw. Osteoscreening, Inc. v. Mountain View Hosp., LLC*, No. 13-cv-00414, 2014 WL 4955673, at *6 (D. Idaho Oct. 2, 2014) (finding that the plaintiffs failed to plead a pattern of racketeering activity because "the theft or fraud ceases once the trade secret is obtained"); *Brake Parts, Inc. v. Lewis*, Nos. 09-132 10-212, 2010 WL 3470198, at *8 (E.D. Ky. Aug. 31, 2010) (concluding the plaintiff failed to satisfy the continuity requirement because once the defendants stole the plaintiff's trade secrets, the scheme ended); *Binary Semantics Ltd. v. Minitab, Inc.*, No. 07-CV-1750, 2008 WL 763575, at *4 (M.D. Pa. Mar. 20, 2008) ("[T]he theft of trade secrets necessarily implies that they will be used. Therefore, under [the] plaintiff's theory,

every misappropriation of trade secrets could result in a RICO claim. This would surely expand the scope of the statute beyond what it was intended to reach." (alterations added)). Thus, Grams has failed to show in his Amended Complaint that theft of a trade secret is an actionable predicate act and the continuing nature of that act required to support such a claim.

Finally, as to Stronghold, again Grams fails to sufficiently plead the existence of an enterprise between Stronghold, Treis and the Individual Defendants. Like with the alleged enterprise between the Treis and Chain Defendants, the Amended Complaint fails to allege facts plausibly showing the Stronghold enterprise had a common purpose. At most, Grams shows that these Defendants engaged in parallel conduct to make money for their own self-interests, but he does not show that these Defendants acted together to accomplish wire or mail fraud. After all, the Amended Complaint explicitly alleges that Treis and the Individual Defendants perpetrated a fraud against Stronghold. (Doc. 52 at 65 ("Defendants Treis and each of its Managing Directors (Pence, Bolick, Smith, and Lamberti) continued to perpetrate frauds on . . . Stronghold . . . .").) Thus, Grams fails to sufficiently allege the existence of an enterprise between Treis, the Individual Defendants, and Stronghold.

### 3. The Chain, CEL, and Cevon Enterprise

Finally, as to Chain, CEL and Cevon, Grams fails to plausibly plead an enterprise here as well.

Ordinarily, Grams may not show that an enterprise exists between a corporation and its agent. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016). Thus, Grams cannot show that there is an enterprise comprised of Chain and CEL (whose sole member is Chain), unless he sufficiently pleads that they are distinct entities. *See id.* at 1356. Grams alleges that Chain, as the sole member of CEL, unlawfully conducted the affairs of CEL. He does not allege that they are

distinct entities, and therefore he has not sufficiently plead an enterprise between Chain and CEL.

Grams also fails to plead a pattern of racketeering activity sufficient to show that Chain unlawfully conducted the affairs of CEL.  *See Jackson*, 372 F.3d at 1264; *Am. Dental*, 605 F.3d at 1290–91.  Again, Grams alleges that there is both mail or wire fraud and theft of a trade secret, but these alleged predicate acts are plagued by the same problems as the alleged predicates asserted against Treis and the Individual Defendants.  Grams' mail and wire fraud allegations, which relate to the blocked developer fee, lack the specificity required by Rule 9 because Grams' allegations, as to Chain and CEL, are even more broad than those asserted against Treis.  As for Grams' allegation of theft of a trade secret, it fails for the same reason as discussed above, suffering from defects in the underlying claim and the continuity requirement.

Grams also alleges that there is an enterprise between the Chain Defendants and Cevon.  This alleged enterprise has the same problems as the first alleged enterprise between the Treis Defendants and the Chain Defendants because Grams fails to sufficiently plead that this was done for a common purpose beyond making money and was done beyond the terms of a normal business.  As a result, Grams fails to sufficiently plead that the Chain Defendants and Cevon constituted an enterprise.  As to these Defendants, Grams' RICO claim will be dismissed.

## C.    Unjust Enrichment Claim Against All Defendants (Count VI)

In Count VI, Grams brings a state law unjust enrichment claim against all Defendants.  Grams claims that the Defendants substantially profited from Grams' continued work in developing his WAO2 firmware and in fixing Treis' machines. The Treis Defendants argue this claim is preempted by the ATSA, and Chain and CEL additionally argue that Grams fails to sufficiently plead a reasonable expectation of compensation, a necessary element for any claim of unjust enrichment.

23

### 1.    Preemption by the ATSA

The ATSA preempts any common law tort claim that, no matter its name, provides a theory of recovery for the misappropriation of a trade secret. *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019); *see Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991) ("The committee's comments to the Act indicate that the legislature intended for the Act to replace common law tort remedies for the misappropriation of trade secrets, while leaving existing contract remedies or safeguards in place."). ATSA preemption applies to any common law tort claim that has a factual basis that "is essentially the same as the one for the ATSA claim." *Madison Oslin, Inc. v. Interstate Res., Inc.*, No. 11–cv–01343, 2012 WL 4730877, at *9 (N.D. Ala. Sept. 30, 2012). "[P]reemption under the ATSA 'is not dependent on whether the 'misappropriated information' constitutes a trade secret.'" *Rotor Blade*, 545 F. Supp. 3d at 1225 (N.D. Ala. 2021) (quoting *Parker*, 2020 WL 3972761, at *11).

Treis, the Individual Defendants, and Stronghold argue that Grams' unjust enrichment claim is preempted because it is essentially a claim for misappropriation of a trade secret. Grams argues that the preemptive scope of the ATSA is not so broad as to reach this claim because the main thrust of his unjust enrichment claim is for the "hundreds of hours of [Grams'] work" that the Defendants received without compensating him. (Doc. 52 at 66; citing *Movement Mortg., LLC v. CIS Fin. Servs., Inc.*, 670 F. Supp. 3d 1282, 1289 (N.D. Ala. 2023) (finding that common law torts claims are preempted to the extent that they are duplicative of an ATSA claim but otherwise are not preempted), and *Allied Supply*, 585 So. 2d at 37.) In other words, according to Grams, he is not seeking redress for the misappropriation of his WAO2 firmware, and the facts are different than those of his ATSA claim.

The Amended Complaint shows there are components of the unjust enrichment claim distinct from Grams' ATSA misappropriation claim because the

allegations in this count do not entirely stem from the disclosure, appropriation, or use of Grams' WAO2 firmware.  Instead, the claim also asserts unjust enrichment from the work that Grams preformed for Treis such as fixing Treis' machines and answering questions about the WAO2 firmware.  To this end, the Amended Complaint alleges that Grams worked ten or more hours a day on Treis' machines and in optimizing the WAO2 firmware on them, that Treis and the Individual Defendants repeatedly acknowledged Grams' work for Treis' benefit, and that Grams had a reasonable expectation of compensation because Treis paid Grams' brother $6,700 for his work during the Pennsylvania trip.  As for this work, the unjust enrichment claim is not preempted.  But to the extent the claim is based on the misappropriation of his firmware without paying Grams for it, the claim is preempted.

The outcome of the preemption issue is different as to Stronghold, which claims that the unjust enrichment claim against it is entirely duplicative of the ASTA claim.  And it is.  The Amended Complaint does not plead facts separate from the ATSA claim.  As the Amended Complaint makes clear, Grams seeks to recover from Stronghold for using Grams' WAO2 firmware without compensating him.  (Doc. 52 at 67 ("Stronghold deployed Plaintiff's code to collect substantial cybercurrency without compensating him.").)  This claim is the same as Grams' ASTA claim.  *Madison Oslin*, 2012 WL 4730877, at *9 (finding that the ATSA preempted an unjust enrichment claim because "[t]he allegations setting forth [the unjust enrichment] claim assert no independent conduct or injury except that [the] defendants 'have been unjustly enriched at the expense of Plaintiffs as a result' of the misappropriation").  Therefore, it is preempted as to Stronghold.

### 2.    Unjust Enrichment Claim Against Chain and CEL

Chain and CEL move to dismiss the unjust enrichment claim against them, claiming there was no reasonable expectation that Grams would be compensated by Chain and CEL for his work on Treis' machines.

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)).

Grams alleges that Grams and Chain had a broker-style relationship and that he conferred benefits to the Chain Defendants in the "hundreds of hours of Plaintiff's work," the stolen developer fees, and the proceeds expected as part of their business relationship. Grams adequately alleges that the Chain Defendants redirected Grams' share of the developer fees, that the Chain Defendants benefited from Grams' labor for Treis, and that Grams had a reasonable expectation of compensation in the form of the developer fees or profits. These allegations are sufficient to state a plausible unjust enrichment claim against Chain and CEL.

### D.    Fraudulent Misrepresentation Claim Against Treis, Cevon, Chain, CEL, Lamberti, and Pence (Count IX)

In Count IX, Grams brings a fraudulent misrepresentation claim against Treis, Cevon, Chain, CEL, Lamberti, and Pence, alleging that these Defendants repeatedly misrepresented that they owned Grams' WAO2 firmware and would pay Grams the developer fee. Treis, Cevon, Lamberti, and Pence argue that this claim is preempted by the ATSA, and Chain and CEL argue that this claim is time-barred and fails to sufficiently allege reliance.

1.    **Grams' Fraudulent Misrepresentation Claim Against Treis, Cevon, Lamberti, and Pence is Preempted by the ATSA**

Treis, Cevon, Lamberti, and Pence first argue that the fraudulent misrepresentation claim is preempted by the ASTA because the claim seeks redress for misappropriation of the WAO2 firmware, and its underlying facts are essentially the same as the facts supporting the ATSA claim.

The Amended Complaint repeatedly alleges that these Defendants fraudulently misrepresented facts to Grams by falsely claiming ownership over the WAO2 firmware, fraudulently inducing Grams into providing them his WAO2 firmware and working on it, and fraudulently misrepresenting facts related to the electronic wallet. These are the same factual allegations made the basis of the ATSA claim and are therefore preempted.

Grams attempts to save this claim by arguing that much of the alleged fraud occurred after the Treis Defendants had already acquired his WAO2 firmware. Even so, the continued misrepresentations to maintain the fraud constitute part of the initial misappropriation. *See, e.g.*, *Madison Oslin*, 2012 WL 4730877, at *9–10 (applying ATSA preemption because "the facts supporting each cause of action originate from the same allegations, specifically that the 'named Defendants . . . participated in the wrongful use and/or disclosure of the novel ideas, trade secrets and/or other confidential information of the Plaintiff'"); *Penalty Kick Mgmt.*, 318 F.3d at 1292 (11th Cir. 2003) ("There are no technical limitations on the nature of the conduct that constitutes 'use' of a trade secret. . . . As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" (quoting Restatement (Third) of Unfair Competition § 40 cmt. c (1995))); *Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20–20966–CIV, 2020 WL 4003494, at *11 (S.D. Fla. July 15, 2020) (discussing how in the RICO context when theft of a trade secret occurs the ongoing

use of the trade secret and other fraudulent acts to maintain the theft are not considered separate predicate acts because theft of a trade secret necessarily implies use).

Grams' allegations of fraudulent misrepresentation in the Amended Complaint do not present any underlying facts that differ from the misrepresentations that occurred as a part of the ATSA misappropriation claim. Grams' claim for fraudulent misrepresentation against Treis, Cevon, Lamberti, and Pence are therefore preempted by the ATSA.

## 2.    Grams' Fraudulent Misrepresentation Claim Against Chain and CEL

Chain and CEL argue that the fraudulent misrepresentation claim against them is time-barred and that Grams has failed to plead actionable reliance.

The Amended Complaint alleges two sets of misrepresentations by Chain and CEL: (1) the representations that Chain and CEL made to Grams regarding their contract and sharing of the developer fee, which Chain and CEL say are time-barred, and (2) the representations Chain and CEL made to Treis and the Individual Defendants regarding the ownership of the WAO2 firmware and Grams' employment, which the Chain Defendants say fails because of reliance concerns.

As to the statute of limitations, under Alabama law, the statute of limitations for fraudulent misrepresentation, like the ASTA, is two years. Ala. Code § 6–2–3. "[A] fraud claim accrues only when the plaintiff discovers the fraud or when the plaintiff, acting as a reasonable person, should have discovered the fraud." *Bryant Bank*, 155 So. 3d at 237 (quoting *Liberty Nat'l Life Ins. Co. v. McAllister,* 675 So.2d 1292, 1297 (Ala. 1995)). "[T]he limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'" *Id*. (emphasis and citations omitted). "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a

matter of law only in cases in which the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud." *Id.* (emphasis omitted) (quoting *Liberty Nat'l Life Ins. v. McAllister*, 675 So. 2d 1292, 1297 (Ala. 1995)). Here, Chain's time-bar argument fails for the same reasons it does with the ASTA claim; that is, the Amended Complaint does not affirmatively show on its face that this claim is time-barred. Like with the ASTA claim, the Court will revisit this issue if and when presented with an evidentiary showing at the summary judgment stage.

The Chain Defendants also move to dismiss the second set of alleged misrepresentations — which are directed to Chain's and CEL's representations to the Treis Defendants — on the basis that Grams does not plead any reliance on the alleged misrepresentations made to Treis. Under Alabama law, a plaintiff bringing a claim of fraudulent misrepresentation must show that he relied on the misstatements to his detriment. *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004) (holding that for a plaintiff to bring a claim of misrepresentation which were made to third parties that the plaintiff must show that he or she "in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party").

As the Amended Complaint makes clear, Chain's and CEL's alleged misrepresentations about ownership and Grams' employment status were made by Chain and CEL to Treis, not Grams. Nowhere in the Amended Complaint does Grams allege that he relied on these statements. While these may be misrepresentations or false statements, they are not actionable under a fraudulent misrepresentation theory in the absence of reliance by Grams.[2] Grams thus fails to plead a plausible fraudulent misrepresentation claim.

---

[2] Grams' brief cites the statute for suppression of material facts. Ala. Code § 6-5-102. But suppression of a material fact is a distinct cause of action from fraudulent misrepresentation. Grams' Amended Complaint contains no claim for suppression of material facts.

**E.    Slander Claim Against Treis and Individuals Defendants (Count X)**

In Count X, Grams brings a slander claim against Treis and the Individual Defendants.  Grams claims that Treis and the Individual Defendants slandered Grams by lying to Stronghold about Grams' WAO2 firmware and in accusing Grams of lying and stealing.  In particular, Grams alleges that "Treis' directors Bolick and Pence accused Grams of lying and stealing," that "Smith and Lamberti repeated and/or supported those false claims to third parties," and "that Grams' firmware had *di minimus* value and that they owned it."  (Doc. 52 at 73.)  Grams alleges that "[t]hese representations damaged Grams' reputation with Stronghold and its representatives, agents, members, and employees." (*Id*. at 74.)  Treis and the Individual Defendants argue this claim is preempted by the ATSA because the same facts underly both claims.

As a common law tort, slander is within the preemptive scope of the ATSA, unless the underlying facts are different from the facts of the ATSA claim.  Therefore, Grams' slander claim is subject to preemption if the claim is duplicative of his ATSA claim.

The Amended Complaint alleges that the lies and slanderous statements that Treis and the Individual Defendants made to Stronghold were part of their alleged misappropriation of the WAO2 firmware and were "all to ensure they didn't have to turn over the yield from their misappropriation."  (Doc. 52 at 47, 73–74.)  While some of the same operative facts support both claims, Grams is seeking reputational damages which he cannot seek under his ATSA claim.[3] As a result, the slander claim

---

[3] Grams' slander claim seems to mirror his tortious interference with business or contractual relations claim, which Grams concedes should be dismissed without prejudice. That said, the tortious interference claim (Count XI), consistent with Grams' concession, will be dismissed without prejudice.  (Doc. 113 at 18.)

is not preempted to the extent it seeks reputational damages. In all other aspects, it is preempted.

## F.    Conversion Claim Against Treis and Individual Defendants (Count XII)

In Count XII, Grams brings a claim of conversion against Treis and the Individual Defendants. Grams alleges that Treis and the Individual Defendants "took and converted Plaintiff's property to their own use in knowing violation of Plaintiff's rights and Alabama law, thereby causing Plaintiff to suffer injuries and damages, including but not limited to loss of substantial sums of money and loss of the use of those monies, for which he claims compensatory and consequential damages." (Doc. 52 at 76.) Treis and the Individual Defendants argue the claim is preempted by the ATSA and fails to state a claim under Alabama law since money cannot be converted.

First, with respect to preemption under the ATSA, a conversion claim based on misappropriation of a trade secret is preempted by the ATSA. *See, e.g.*, *Arkema*, 413 F. Supp. 3d at 1194 ("A misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA and not under the common law theory of conversion."); *Parker*, 2020 WL 3972761, at *10 ("Plaintiff's common law conversion claim is preempted by the ATSA" because the conversion claim was "based on the act of misappropriating the trade secret information"). Here, the Amended Complaint repeatedly alleges that Treis and the Individual Defendants used and exercised control over machines with Grams' WAO2 firmware. These are the same facts made the basis of the ASTA misappropriation claim, and thus the conversion claim related to the misappropriation is preempted.

Second, Treis and the Individual Defendants argue that any alleged conversion of money is not actionable under Alabama law. "Generally, an action will not lie for the conversion of money. However, if the money at issue is capable

of identification, then a claim of conversion may be appropriate." *Greene Cnty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991). Alabama courts require plaintiffs claiming conversion of money to show that they are entitled to "specific money capable of identification." *Waddell & Reed, Inc. v. United Invs. Life Ins.*, 875 So. 2d 1143, 1163 (Ala. 2003), *as modified on denial of reh'g* (Sept. 5, 2003) (citing *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654 (Ala. 2002)).

Grams argues that, in part, his conversion claim is based on the developer fees that the Defendants allegedly blocked. This is too vague and nonspecific to constitute the type of identifiable money required to support such a claim. *Campbell*, 842 So. 2d at 660 (holding that a conversion for money claim is insufficient where the plaintiff failed to allege money owed is capable of identification). The claim for conversion over the developer fees is due to be dismissed against Treis and the Individual Defendants.

## G.    Work and Labor Claim Against All Defendants (Count XVII)

In Count XVII, Grams brings a claim for work and labor against all Defendants. The Chain Defendants move to dismiss this claim against them for failure to state a claim.

"In order to recover for work and labor done, a contract must exist, either express or implied." *G.S. Gothard & Son Contractors, Inc. v. Mansel*, 611 So. 2d 1101, 1103 (Ala. Civ. App. 1992) (citing *Stewart v. Robertson*, 490 So. 2d 13 (Ala. Civ. App. 1986)). "Furthermore, a party may recover for work and labor done in excess of the . . . . requirements of the contract where that aspect is not of the type which must be in writing and where there is mutual assent." *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So. 2d 792, 796 (Ala. 1978).

The Amended Complaint alleges that a contract existed between Grams and Chain. This contract is described as a broker-style arrangement for the sale and use of Grams' WAO2 firmware. Further, the Amended Complaint sufficiently alleges

that Grams did work in excess of the requirements of the contract. The Amended Complaint alleges that Grams' continued work on Treis' machines was in excess of his contract with the Chain Defendants and that the Chain Defendants have derived a benefit from this work for which Grams has a reasonable expectation of compensation. Moreover, while the Chain Defendants argue that Grams has inconsistently pled the contract requirements for this claim, viewing the allegations in the light that it must at this stage, the Court finds that this is not sufficient to warrant dismissal of this claim. Therefore, Count XVII of the Amended Complaint will proceed.

**H.    Quantum Meruit Claim Against All Defendants (Count XVIII)**

In Count XVIII, Grams brings a claim of quantum meruit against all Defendants.  Again, only the Chain Defendants move to dismiss this claim.

"Recovery on a theory of quantum meruit arises when a contract is implied." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (citing *Brannan & Guy, P.C. v. City of Montgomery*, 828 So. 2d 914 (Ala. 2002)).

> It is the settled law of this State that where one knowingly accepts services rendered by another, and the benefit and the result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered.

*Id.* (quoting *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So. 2d 792, 795 (Ala. 1978)). "In order to succeed on a claim based on a theory of quantum meruit, the plaintiff must show that it had a reasonable expectation of compensation for its services." *Id.* (citing *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So. 2d 1345 (Ala. 1991)).

Here, Grams sufficiently states a claim for quantum meruit against the Chain Defendants for the same reasons as his unjust enrichment and work and labor claims against them.  That is, Grams sufficiently alleges that there was reasonable

expectation of compensation from the Chain Defendants in the form of developer fees or shared profits. As the Chain Defendants point out, this claim is premised upon the work performed on the Treis computers in excess of his agreement with the Chain Defendants. Therefore, this claim will not be dismissed.

## VI. CONCLUSION

For the reasons discussed, it is **ORDERED** that the Defendants' motions to dismiss (doc. 101; doc. 108) are **GRANTED IN PART** and **DENIED IN PART** as follows:

1.     The *Renewed Motion to Dismiss Pursuant to Rule 12(b)(6)* (doc. 101) filed by Defendants Treis Blockchain, LLC, Cevon Technologies, LLC, Stronghold Digital Mining, LLC, Michael Bolick, David Pence, Senter Smith, and Brian Lamberti is **GRANTED IN PART and DENIED IN PART**. Accordingly, Counts 4, 5, 9 and 12 against Treis Blockchain, LLC are **DISMISSED WITHOUT PREJUDICE**; Counts 5 and 9 against Cevon Technologies, LLC are **DISMISSED WITHOUT PREJUDICE**; Counts 5, 6 and 10 against LLC, Stronghold Digital Mining, LLC are **DISMISSED WITHOUT PREJUDICE**; Counts 4, 5 and 12 against Michael Bolick are **DISMISSED WITHOUT PREJUDICE;** Counts 4, 5, 9 and 12 against David Pence are **DISMISSED WITHOUT PREJUDICE**; Counts 4, 5 and 12 against Senter Smith are **DISMISSED WITHOUT PREJUDICE**; Counts 4, 5, 9 and 12 against Brian Lamberti are **DISMISSED WITHOUT PREJUDICE**; Count 6 against Treis Blockchain, LLC, Cevon Technologies, LLC**,** Michael Bolick, David Pence, Senter Smith, and Brian Lamberti is **DISMISSED WITHOUT PREJUDICE** to the extent it is preempted by the ATSA and duplicative of those claims, but to the extent it seeks redress for Grams' work, Count 6 will proceed; Count 10 against Treis Blockchain, LLC**,** Michael Bolick, David Pence, Senter Smith, and Brian Lamberti is **DISMISSED WITHOUT PREJUDICE** to the extent it is preempted by the ATSA and duplicative of those claims, but to the extent

Count 10 seeks redress for reputational damages, it will proceed; and, Count 11 against Treis Blockchain, LLC**,** Michael Bolick, David Pence, Senter Smith, and Brian Lamberti is **DISMISSED WITHOUT PREJUDICE;**

2.      The *Renewed and Supplemental Partial Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed R Civ P Rule 12(b)(6)* (doc. 108) filed by Defendants John Chain and Chain Enterprises, LLC is **GRANTED IN PART** and **DENIED IN PART**.  Accordingly, Count 5 against John Chain is **DISMISSED WITHOUT PREJUDICE**; Count 5 against Chain Enterprises, LLC is **DISMISSED WITHOUT PREJUDICE**; and Count 9 against John Chain and Chain Enterprises, LLC is **DISMISSED WITHOUT PREJUDICE** to the extent it seeks redress for representations made by the Chain Defendants to Treis and the Individual Defendants, but to the extent it seeks redress for misrepresentations the Chain Defendants made to Grams, Count 9 will proceed;

3.      All remaining counts shall proceed.

**DONE** on this the 29th day of January, 2025.

R.  AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE